Michael I. Neil, SBN 40057
mneil@neildymott.com
Robert W. Frank, SBN 95392
rfrank@neildymott.com
Matthew R. Souther, SBN 227910
msouther@neildymott.com
Phillip E. Stephan, SBN 283818
pstephan@neildymott.com
NEIL, DYMOTT, FRANK, McCABE & HUDSON
A Professional Law Corporation
110 West A Street, Suite 1200
San Diego, CA 92101
**P** 619.238.1712   |
**F** 619.238.1562

*[Additional counsel listed on following page]*

Attorneys for ALEX MONTOYA, REX SHIRLEY,
PHILIP PRESSEL, and AARON GREESON
On Behalf of the Plaintiff Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ALEX MONTOYA, REX SHIRLEY, PHILIP PRESSEL, and AARON GREESON, individually, and on behalf of all others similarly situated,

         Plaintiffs,

vs.

CITY OF SAN DIEGO, a public entity, BIRD RIDES, INC., a Delaware corporation, d/b/a BIRD; NEUTRON HOLDINGS, INC., a Delaware corporation, d/b/a LIME; WHEELS LABS, INC., a Delaware Corporation, UBER TECHNOLOGIES, INC., a Delaware corporation, d/b/a JUMP, LYFT, INC.; RAZOR USA, LLC, a California corporation; and DOES 1-100,

         Defendants.

CASE NO. 3;19-cv-00054-JM-BGS

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

1. **42 U.S.C. §12101** *et. seq.* **[THE AMERICANS WITH DISABILITIES ACT];**
2. **29 U.S.C. § 794** *et seq.* **[Section 504 of the Rehabilitation Act;**
3. **California Civil Code §54** *et seq.* **[California Disabled Persons Act];**
4. **California Civil Code §51** *et seq.* **[ Unruh Civil Rights Act];**
5. **California Government Code §4450** *et seq.*;
6. **California Government Code § 11135** *et seq.*

**[DEMAND FOR JURY TRIAL]**

Judge:  Honorable Jeffrey T. Miller
Courtroom:  5D (Schwartz)
Magistrate Judge:
Honorable Bernard G. Skomal
12th Floor (Carter/Keep)

1

1  Ann E. Menasche, SBN 74774
   Ann.menasche@disabilityrightsca.org
2  DISABILITY RIGHTS CALIFORNIA
   1111 Sixth Avenue, Suite 200
3  San Diego, CA 92101
   P 619.239.7861
4  F 619.239.7906

5  Ben Conway, SBN 246410
   Ben.conway@disabilityrightsca.org
6  DISABILITY RIGHTS CALIFORNIA
   350 S. Bixel Street, Suite 290
7  Los Angeles, CA 90017
   P 213.213.8000
8  F 213.213.8001

9  / / /

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

2

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

# COMPLAINT

## I.  INTRODUCTION

1.      This action challenges the failure of the City of San Diego and private companies to maintain the accessibility of the City's public sidewalks, curb ramps, crosswalks and transit stops for people with disabilities, in the face of an onslaught of unregulated dockless vehicles. Private dockless electric scooter and bike companies have been allowed to appropriate the public commons for their own profit, regardless of the impact on the City's residents. Persons with mobility impairments, including people who use wheelchairs or walkers, and people with significant visual impairments are thereby being denied their right to travel freely and safely on our public walkways.

2.      Without full use of the sidewalk and curb ramps at street intersections, persons with mobility and/or visual impairments have significant barriers in crossing from a pedestrian walkway to a street.  This is exacerbated when the sidewalk itself is full of obstructions and no longer able to be fully and freely used by people with disabilities.

3.      When dockless vehicles are left in the middle of the sidewalk and other rights of way, at points of ingress and egress, they block off access to the public rights of way; furthermore, as Defendants know, the dockless vehicle riders often ride the vehicles on the sidewalk, turning the sidewalk into a vehicle highway rather than a space for safe pedestrian access and use.

4.      On July 26, 1990, Congress enacted the Americans With Disabilities Act (ADA), ADA §§ 2 et seq. [42 U.S.C.A. §§ 12101 et seq.], establishing the most important civil rights for persons with disabilities in our country's history, including the right to have full and equal enjoyment of services, programs, or activities of a public entity.

5.      Congress explicitly stated that the purpose of the ADA was to provide a clear and comprehensive national mandate for the elimination of discrimination

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

against individuals with disabilities. 42 U.S.C. §12101(b)(1)-(2). Congressional statutory findings include: "historically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; "discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services"; "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers"; and, "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101.

6.     In the House Report accompanying the ADA, Congress expressly noted that the "employment, transportation, and public accommodation sections of [the ADA] would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets." See H.R. Rep. No. 101-485(II), at 84, reprinted in 1990 U.S.C.C.A.N. 303, 367.

7.     Congress gave public entities, including state and local governments, 18 months to implement the ADA. By January 26, 1992, the effective date of the ADA, all public entities had to comply with the statutory and regulatory provisions of the ADA.

8.     Nevertheless, instead of complying with the ADA, Defendants have failed to maintain and respect the public sidewalks of the City of San Diego in a way that allows for disabled residents to enjoy unencumbered access. People with disabilities who wish to travel in the City using the City's walkways are being forced to either put their physical safety at risk or just stay home. This is not a choice that they should have to make.

4

FIRST AMENDED CLASS ACTION COMPLAINT                          Case No. 3:19-cv-00054-JM-BGS

9.     Alex Montoya, Rex Shirley, Philip Pressel, and Aaron Greeson ("Lead Plaintiffs"), as individuals and on behalf of all other similarly situated (the "Putative Class") hereby move against the City of San Diego (the "Municipal Defendant"), and Neutron Holdings, Inc. a Delaware corporation doing business as Lime ("Lime"), Razor USA LLC, a Delaware corporation ("Razor"),  Uber Technologies, Inc., a Delaware corporation d/b/a Jump ("Uber"), Lyft, Inc., a Delaware corporation ("Lyft"), Wheels Labs, Inc. ("Wheels"), a Delaware corporation, and Bird Rides, Inc., a Delaware corporation, Inc. d/b/a Bird ("Bird")(collectively, the "Dockless Vehicle Defendants").

## II.  VENUE AND JURISDICTION

10.     The claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiffs' federal claims, Defendants have also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

11.     Venue over Plaintiffs' claims is proper in the Southern District of California because the Municipal Defendant resides in the Southern District of California within the meaning of 28 U.S.C. § 1391, and because the acts, events, and omissions giving rise to Plaintiffs' claims occurred in the Southern District of California.

## III.  PARTIES

12.     Alex Montoya is a San Diego, California resident. Alex Montoya is congenital triple amputee - a birth defect rendered Mr. Montoya without arms and one leg since birth, and Mr. Montoya wears prosthetics on both arms and his right leg

every day. Mr. Montoya is mobility impaired. He does not drive, and for that reason, chose to live and work in the East Village neighbourhood of San Diego, where he could access several places as a pedestrian. Because of his prosthetics, Mr. Montoya's reaction time is slower than an average, non-disabled person – yet, almost every single day since October of 2018, Mr. Montoya finds his access impeded as the Dockless Vehicle Defendants' dockless electric scooters and bikes diminish available sidewalks for walking and diminish his enjoyment of the sidewalk, as he finds himself dodging dockless vehicles on sidewalks and street crossings, coming from all directions and rapid rates of speed without warning. As a result of the proliferation of dockless vehicles on public sidewalks, Mr. Montoya now will avoid walking somewhere if he can, as he does not feel safe walking. Mr. Montoya, as well as his special-needs brother, have nearly tripped over discarded dockless electric vehicles, as the scooters and bikes are strewn all over the sidewalks. Plaintiff Montoya is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

13. Rex Shirley is a San Diego, California resident, in the neighbourhood of Mission Beach. Rex Shirley has been diagnosed with Parkinson's disease, which has progressively advanced over several years. Mr. Shirley requires the use of a mobility scooter for his transportation. In October of 2018, Mr. Shirley was nearly hit by an electric scooter on the Mission Beach Boardwalk. Since approximately October of 2018, Mr. Shirley has found Dockless Vehicle Defendants' dockless electric bikes and scooters blocking his access to the sidewalks of Mission Beach, on a nearly continuous basis. Mr. Shirley has seen dockless electric scooters left on their sides on the alleys and streets of Mission Beach, near his home, and those scooters block access and impede Mr. Shirley's ability to safely travel the streets and sidewalks of Mission Beach. Mr. Shirley has to drive his mobility scooter around the dockless

FIRST AMENDED CLASS ACTION COMPLAINT            Case No. 3:19-cv-00054-JM-BGS

electric vehicles to get places. Mr. Shirley fears further close encounters with the dockless vehicles, and cannot use the sidewalks and public rights of way as he would please because of blocked access and the inability to avoid electric vehicles that he cannot hear coming or easily evade. As a result of these issues created by dockless vehicles, Mr. Shirley goes out less, avoids the Mission Beach Boardwalk and strand areas near where he lives, and finds his local travel impeded when he does go out. Mr. Shirley also finds it difficult to utilize the public rights of way to walk his dog. Mr. Shirley is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

14.    Philip Pressel is a San Diego, California resident, living in downtown San Diego. Mr. Pressel has lost the use of his left leg and is an amputee. Mr. Pressel has also undergone two back surgeries and has severe lower back pain. Mr. Pressel now requires the use of an electric mobility scooter unless walking very short distances, usually no more than one block or so. Mr. Pressel is also immunosuppressed because of an organ transplant. Mr. Pressel chose to live in downtown because of the ability to easily access numerous places. Since approximately October of 2018, Mr. Pressel has encountered the Dockless Vehicle Defendants' brands of dockless electric scooters and bikes on sidewalks and near or in curb cuts. Mr. Pressel's wife has had to move dockless scooters and bikes out of the way for Mr. Pressel to access the pedestrian walkways. Mr. Pressel has had numerous occasions where he could not see a discarded dockless scooter laying on the ground, and has nearly collided with those grounded scooters. Plaintiff Pressel is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

7

15.     Aaron Greeson is a Spring Valley, California resident. Mr. Greeson has been blind for the past ten years and several times per week goes to the Blind Community Center of San Diego, located at 1805 Upas Street, San Diego, CA 92101. Since October of 2018, Mr. Greeson has had several incidents where he has nearly been hit by or has collided with the Dockless Vehicle Defendants' dockless electric scooters and bikes, as he cannot see them coming and cannot see the dockless vehicles laying down on the sidewalk when walking. Mr. Greeson now will only walk near the Blind Community Center of San Diego if he has somebody to walk with, to avoid discarded dockless vehicles he cannot see and active dockless vehicles he cannot easily evade. Plaintiff Greeson is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

16.     The putative class consists of all persons with mobility and/or visual impairments who have been denied equal access to city sidewalks, streets, crosswalks, and transit stops as a result of the Defendants' policies and practices with regard to dockless vehicles that impede and deny disability access.

17.     Hereafter, references to Plaintiffs shall be deemed to include Lead Plaintiffs and each member of the Putative Class, unless otherwise indicated.

18.     Defendant Bird Rides, Inc. d/b/a BIRD ("Bird") is a for-profit corporation which rents Bird Scooters (defined below) to Bird Customers (defined below) through the Bird App (defined below). Bird is a Delaware corporation, with its principal office located at 406 Broadway, #369, Santa Monica, California 90401.

19.     Defendant Neutron Holdings, Inc. d/b/a LIME ("Lime") is a for-profit corporation which rents Lime Scooters (defined below) to Lime Customers (defined below) through the Lime App (defined below). Lime is a Delaware corporation, with its principal office located at 66 Bovet Rd, Suite 320, San Mateo, California 94402.

8

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

20.     Defendant Razor USA LLC ("Razor") is a for-profit corporation which rents Razor Scooters to Razor Customers through the Razor App. Razor USA LLC is a Delaware corporation, with its principal office located at 12723 166th Street, Cerritos, California.

21.     Defendant Uber Technologies, Inc. d/b/a Jump ("Uber") is a for-profit corporation which rents Jump Scooters and Bikes (defined below) to Uber Customers (defined below) through the Uber App (defined below). Uber is a Delaware corporation, with its principal office located in San Francisco, California.

22.     Defendant Lyft, Inc. ("Lyft") is a for-profit corporation which rents Lyft Scooters (defined below) to Lyft Customers (defined below) through the Lyft App (defined below). Lyft is a Delaware corporation, with its principal office located in San Francisco, California.

23.     Defendant Wheels Labs, Inc. ("Wheels") is a for-profit corporations which rents Wheels Bikes (defined below) to Wheels Customers (defined below) through the Wheels App (defined below). Wheels is a Delaware corporation, with its principal office located in West Hollywood, California.

24.     Defendant City of San Diego is a public entity within the meaning of Title II of the Americans with Disabilities Act (the "ADA") and on information and belief, has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, et seq. (the "Rehabilitation Act") and state financial assistance within the meaning of Government Code 11135. Defendant City of San Diego has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

25.     Defendant City of San Diego is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant City of San Diego is responsible for maintaining and

regulating the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways within the City of San Diego.

## IV.  FACTUAL ALLEGATIONS

26.    The City of San Diego has failed to adequately maintain the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, by allowing dockless vehicles to proliferate unchecked throughout San Diego and to block safe and equal access for people with disabilities who live in or visit the City.  Defendant City of San Diego has thereby denied Plaintiffs the benefits of the City's services, programs, and activities based on their disabilities.

27.    The Dockless Vehicle Defendants have used and appropriated varying portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and walkways with impunity for their own private profit – effectively turning them into their private retail stores, showrooms, highways, and storage facilities -in abject disregard for the safety and access rights of San Diego's residents or visitors with disabilities.

28.    Bird rents electric scooters ("Bird Scooters") to its customers ("Bird Customers") through a mobile application (the "Bird App").  Travis VanderZanden, Bird's CEO, stated on or about October 9, 2018 that "[w]e don't go to New York because it's technically illegal to use a scooter at the state level" and that "[w]here there's no laws, that's where we go in." See "Bird CEO: 'The Places Where There Are No Laws, That's Where We Go In'", *Fortune*, at <http://fortune.com/2018/10/09/bird-ceo-scooters-laws/>, last accessed March 20, 2019 at 9:32 A.M.

29.    Razor also rents electric scooters ("Razor Scooters") to its customers ("Razor Customers") through a mobile application ("Razor App").

30.    In or around April of 2018, Uber Technologies, Inc. acquired JUMP, a company that produces dockless electric scooters and bikes. Uber rents dockless scooters electric scooters and bikes ("Uber Scooters and Bikes" or "Uber Dockless

10

Vehicles") bearing the name "JUMP" to its customers ("Uber Customers") through a mobile application ("Uber App").

31.    Lyft also rents electric scooters ("Lyft Scooters") to its customers ("Lyft Customers") through a mobile application ("Lyft App").

32.    Wheels rents dockless electric bikes ("Wheels Bikes") to its customers ("Wheels Customers") through a mobile application ("Wheels App").

33.    Lime also rents electric scooters ("Lime Scooters", together with Bird Scooters, Uber Dockless Vehicles, Wheels Bikes, and Razor Scooters, hereinafter, collectively, "Dockless Vehicles") to its customers ("Lime Customers", together with Bird Customers, Lyft Customers, Uber Customers, Wheels Customers, and Razor Customers, hereinafter, collectively, "Dockless Vehicle Customers") through a mobile application (the "Lime App", together with the Bird App, the Uber App, the Lyft App, the Wheels App, and the Razor App, hereinafter, collectively, "Dockless Vehicle Apps").

34.    Dockless scooters and bikes present obstacles and block full access and use of the sidewalk when left on the ground. Across the City of San Diego, idle dockless vehicles clog the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways.

35.    Perhaps even more dangerous, Dockless Vehicle Defendants enable or recklessly allow Dockless Vehicle Customers to drive dockless vehicles at speeds much faster than the speed of foot traffic through the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, despite the California Vehicle Code's prohibition against operation of a motorized vehicle upon the sidewalks. Effectively, the practice turns the systems of sidewalks into a dockless vehicle highway.

36.    Once a Dockless Vehicle Customer is done using the dockless vehicle, Dockless Vehicle Defendants permit and/or recklessly enable the Dockless Vehicle Customers to leave the dockless vehicles anywhere the user may see fit, as part of

11

their "dockless" business model – typically, idle dockless vehicles end up on public property in the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, either on the ground, parked upright, or left resting sideways blocking portions of the systems of sidewalks and rights of way. Groups of dockless vehicles may be discarded in close proximity, causing a blockade and diminishing full use of the sidewalks for pedestrians.

37.     37. This "dockless" business practice violates San Diego Municipal Code §129.0702(a)(2), which requires a Public Right-of-Way Permit for the construction of "privately owned structures, facilities, or improvements in the public right-of-way or in a public service easement."  The Dockless Vehicle Defendants have never sought or obtained such permits despite appropriating the public right-of-way for their own private use.

38.     This "dockless" practice also violates San Diego Municipal Code §54.0110, which states: "It is unlawful for any person to erect, place, allow to remain, construct, establish, plant, or maintain any vegetation or object on any public street, alley, sidewalk, highway, or other public property or public right-of-way, except as otherwise provided by this Code." Yet, the City, while vigorously enforcing this provision against homeless individuals - citing and arresting them for placing sleeping bags, shopping carts and other personal belongings on the ground – has intentionally or recklessly overlooked the egregious actions of the Dockless Vehicle Defendants and their severe negative impact on disability access.

39.     To continue appropriating and re-purposing the City of San Diego's sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings, the Dockless Vehicle Defendants hire independent contractors to tend to any dockless vehicles with any kind of maintenance need, including battery exhaustion, before returning the dockless vehicles to the system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

40.     Dockless vehicles cause barriers in paths of travel when they are operated. Dockless vehicles are operated on the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways. The dockless scooters are motor powered via an electric battery, propelling them at speeds around twenty (20) miles per hour, or more. Dockless bikes are also motor powered via an electric battery, propelling them at speeds around fifteen (15) miles per hour, or more. Defendants do not require any training or education for people to ride dockless vehicles. The combination of high relative speeds, compared to pedestrians, and lack of restrictions regarding the operator, creates hazardous conditions which causes Lead Plaintiffs, and others in the Putative Class, difficulty, frustration, and risk of serious physical harm. Lead Plaintiffs, should they wager trying to access the benefits of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, do so in a state of hypervigilance and stress as the concern of being struck and possibly injured by a wayward dockless vehicle persists, and Lead Plaintiffs do not know if they will successfully be able to access the sidewalks on an independent basisfiling.

41.     Dockless Vehicle Defendants hinder and inhibit Plaintiffs from using the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, and have actually caused Plaintiffs to use the sidewalks less often. As in-use dockless scooters and bikes speed by and deny safe, equal and full access to the sidewalks, and as idle dockless vehicles occupy, partition, and block the sidewalks and other pedestrian rights of way, the sidewalk has become inaccessible, dangerous, and much more difficult to trust as a walkway. As a result of the difficulty and frustration with the experience of attempting to use the sidewalks and other pedestrian rights of way and fear of injury, Plaintiffs are disheartened and deterred from using the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

42.   The Dockless Vehicle Defendants' burgeoning proliferation and uncurbed growth comes at the detriment of the rights of all disabled persons with mobility and/or visual impairments who are residents and visitors of the City of San Diego, causing Plaintiffs injury and severe anxiety, diminishing their comfort and discriminating against them based on their disabilities by denying them access to and safe use of public walkways and other essential public services, resulting in isolation in their homes and deterioration in Plaintiffs' quality of life.

43.   The Municipal Defendant is responsible for maintaining the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, which constitute an essential government program, service, and activity for residents and visitors of the City of San Diego.

44.   The Municipal Defendant is responsible for providing public transportation for the residents and visitors to the City of San Diego, which constitutes an essential government program, service and activity for residents and visitors of the City of San Diego.

45.   The Municipal Defendant has further failed to maintain the system of sidewalks and rights of way in a fashion that ensures that access is not only assured to all residents and visitors with disabilities, but also that allows residents and visitors with disabilities to enjoy the full and equal benefit of the sidewalks and pedestrian rights of way. Notably, the City of San Diego has failed to develop an adequate number of alternative lanes that are not on the sidewalk (i.e., bike lanes) that might provide for a lawful and proper use of Dockless Vehicles.

46.   Despite knowledge of the California Vehicle Code, the Dockless Vehicle Defendants chose to carry out business in the City of San Diego by appropriating public spaces and have allowed and continue to allow use of the Dockless Vehicles on the City's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, declining to employ geo-fencing or other available mechanisms to ensure that Dockless Vehicles are used or reasonably maintained in a

way that ensures full and equal access for people with disabilities to the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

47.   The combination of the City of San Diego's failure to maintain the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in compliance with the needs of disabled individuals, and the Dockless Vehicle Defendants' knowing and reckless disregard for the need to maintain full and equal access to public walkways for people with disabilities, results in Plaintiffs suffering disproportionate harm based on their disabilities. The City of San Diego's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways is no longer readily accessible to and usable by persons with mobility and/or visual disabilities due to the pervasive, unregulated, and ever-growing presence of Dockless Vehicles that create physical access barriers along the path of travel on the City's public walkways.

48.   Lead Plaintiffs and other persons with mobility or visual impairments must roll the dice every time they choose to use the system of sidewalks and other pedestrian rights of way, as they gamble as to whether the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways might be unfettered or instead that Plaintiffs might be blocked or themselves placed in danger by encountering Dockless Vehicles strewn along their path. These obstructions deny people with disabilities access to the City of San Diego's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways and strip them of their freedom and their right to safely use the public sidewalk in the same fashion and with the same benefit as enjoyed by those without disabilities.

49.   Lead Plaintiffs and class members have mobility and/or visual impairments. Lead Plaintiffs and class members have encountered Dockless Vehicles strewn across, blocking, and/or being driven upon the system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the

15

City of San Diego, denying them full and equal access based on disability, and, causing Plaintiffs difficulty, frustration and embarrassment, and placing them in danger of injury or death. Plaintiffs continue to be deterred from leaving their homes and their places of business since the invasion of these Dockless Vehicles onto the streets of the City of San Diego.

50.    The maintenance of an accessible system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for people with disabilities go to the heart of the purpose of the ADA and other disability rights laws, and is essential for full integration into the community. The Dockless Vehicle Defendants' private appropriation and exploitation of varying portions of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways turning them into inaccessible places of public accommodation for their business use - and the Municipal Defendant's failure to ensure that the system of public walkways is kept accessible to persons with mobility or visual impairments free of dockless vehicle obstructions - discriminates based on disability in violation of multiple federal and state disability rights laws. This lawsuit seeks to ensure fair, full, and equal access to the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for all residents and visitors with disabilities in the City of San Diego.

51.    Plaintiffs thus bring this action to, among other things, remedy violations of Title II of the ADA, 42 U.S.C. §12131, et seq., and its accompanying regulations, Title III of the ADA,  42 U.S.C.§ 12182, et seq. and its accompanying regulations; the Rehabilitation Act and its accompanying regulations, as well as analogous state statutes including California Government Code §11135, California Civil Code §54, et seq., California Government Code §4450, and California Civil Code §51, et seq. Plaintiffs seek declaratory and injunctive relief pursuant to the above, as well as an award of attorneys' fees and costs under applicable law. Plaintiffs also seek statutory damages under California law.

16

# V.  CLASS ACTION ALLEGATIONS

52.     The Lead Plaintiffs bring this action individually, and on behalf of all persons with disabilities with mobility or visual impairments who have been denied access to or full enjoyment of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of San Diego because of their disabilities.

53.     Each member of the Putative Class is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926. The persons in the Putative Class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The Putative Class consists of tens of thousands of persons with disabilities of mobility or visual impairment that reside in or regularly visit the City of San Diego.

54.     Lead Plaintiffs are informed, believe, and thereon allege that the Defendants' policies and procedures violate the ADA, the Rehabilitation Act, and analogous state statues with regard to the system of sidewalks, crosswalks, curb ramps, pedestrian crossings and other walkways and disability access.

55.     Lead Plaintiffs are informed, believe, and thereon allege that Defendants have not adopted and do not enforce appropriate policies to prevent discrimination against persons with disabilities and to ensure equal access to programs, services and activities and places of public accommodation for persons with disabilities.

56.     The violations of the ADA, the Rehabilitation Act and related California statutes set forth in detail have injured all members of the Putative Class, violating their rights.

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

57.   Defendants acted or refused to act on grounds generally applicable to the Putative Class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole appropriate.

58.   The claims of the Lead Plaintiffs are typical of the Putative Class that they arise from the same course of conduct engaged in by Defendants. The relief sought herein will benefit all class members alike.

59.   Lead Plaintiffs will fairly and adequately represent the interests of the class. Lead Plaintiffs have no interests adverse to the interests of other members of the class and have retained counsel that is competent and experienced in litigation complex class actions, including disability rights cases.

60.   With regard to the Putative Class, the requirements of Rule of the Federal Rules of Civil Procedure are satisfied as such:

   a.   The class is so numerous that it would be impractical to bring all class members before the Court;

   b.   There are questions of law and fact which are common to the class;

   c.   The Lead Plaintiffs' claims are typical of the claims of the class;

   d.   The Lead Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in class actions and the disability rights issues in this case.

   e.   Defendants have acted or generally refused to act on grounds generally applicable to the class; and,

   f.   The common questions of law and fact which are common to the class predominate over individual questions.

61.   The common questions of law and fact, shared by all class members, include:

   a.   Whether the Municipal Defendant is violating Title II of the ADA, 42 U.S.C. § 12131 et seq., by depriving persons with disabilities access to programs, services and activities of the City of San

18

Diego, and otherwise discriminating against persons with disabilities, as set forth above;

b. Whether the Municipal Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq., by depriving persons with disabilities access to programs, services and activities of the City of San Diego, and otherwise discriminating against persons with disabilities, as set forth above;

c. Whether the Dockless Vehicle Defendants are violating Title III of the ADA, 42 U.S.C. §12182 et seq. by discriminating against persons with disabilities in a place of public accommodation.

d. Whether the Defendants are violating California Government Code Section 11135(a), which prohibits denial of benefits to persons with disabilities of any program or activity that is funded directly by the state or receives any financial assistance from the state;

e. Whether the Defendants are violating California Civil Code §54 et seq., by depriving persons with disabilities to full and equal access;

f. Whether the Defendants are violating California Government Code §4450; and,

g. Whether the Defendants are violating California Civil Code §51 et seq.

## VI.  **FIRST CAUSE OF ACTION**

### **The Americans with Disabilities Act – Title II**

### **(Against Municipal Defendant)**

62.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

63.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such

19

forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

64.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

65.    Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

66.    At all times relevant to this action, the Municipal Defendant was a "public entity" within the meaning of Title II of the ADA and provided and provides a program, service or activity to the general public.

67.    At all times relevant to this action, Plaintiffs were qualified individuals with disabilities within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of the City of San Diego. 42 U.S.C §12131.

68.    Municipal Defendant is mandated to operate each program, service, or activity "so that, when, viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149 & 35.151. The system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways themselves constitute an essential public service, program, or activity under Title II of the ADA. 28 C.F.R. § 35.104; see *Barden v. City of Sacramento*, 292 F.3d 1073 (2002).

69.    The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA.

20

28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks and passageways. 28 C.F.R. § 1035.104.

70.    Plaintiffs are informed, believe and thereon allege that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are not fully, equally and safely accessible to Plaintiffs when viewed in their entirety.

71.    Plaintiffs are informed, believe and thereon allege that the Municipal Defendant violated and continues to violate the ADA by failing to ensure that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are kept free of the Dockless Vehicle obstructions and thereby deny Plaintiffs due to their disabilities the benefits of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

72.    Plaintiffs are informed, believe and thereon allege that the Municipal Defendant failed and continues to fail to adopt, implement or enforce ordinances or other regulations necessary to ensure that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are kept free of the Scooter obstructions.

73.    Plaintiffs are informed, believe and thereon allege that the Municipal Defendant and their agents and employees have and continue to violate the ADA by failing to timely respond to and remedy complaints about the said barriers through their policies and practices with regard the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways thereby denying disability access.

74.    Plaintiffs are informed, believe and thereon allege that the Municipal Defendant committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

75.    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to

21

1 | Defendants' failure to address accommodations, modifications, services and access
2 | required for Plaintiffs' disabilities.

3 |      76.    Municipal Defendant's discriminatory conduct is ongoing, and causing
4 | continuing harm.  Plaintiffs have no adequate remedy at law and are therefore entitled
5 | to declaratory and injunctive relief pursuant to 42 U.S.C. § 12133.

6 |      77.    Plaintiffs are further entitled to reasonable attorneys' fees and costs
7 | incurred in bringing this action.

8 | **VII.  SECOND CAUSE OF ACTION**

9 | **(The Rehabilitation Act)**

10 | **(Against Municipal Defendant)**

11 |      78.    Plaintiffs incorporate by reference each and every allegation contained in
12 | the foregoing paragraphs.

13 |      79.    Section 504 of the Rehabilitation Act of 1973 provides in relevant part:
14 | "[N]o otherwise qualified person with a disability…shall, solely by reason of her or
15 | his disability, be excluded from the participation in, be denied the benefits of, or be
16 | subjected to discrimination under any program or activity receiving federal financial
17 | assistance…" 29 U.S.C. § 794.

18 |      80.    Plaintiffs are otherwise qualified to participate in the services, programs,
19 | or activities that are provided to individuals in the City of San Diego. See 29 U.S.C. §
20 | 794(b).

21 |      81.    The Municipal Defendant is a direct recipient of federal financial
22 | assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act
23 | and have received such federal assistance at all times relevant to the claims asserted in
24 | this Complaint.

25 |      82.    Plaintiffs are informed, believe and thereon allege that the Municipal
26 | Defendant and their agents and employees have violated and continue to violate the
27 | Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs
28 | from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to

22

FIRST AMENDED CLASS ACTION COMPLAINT           Case No. 3:19-cv-00054-JM-BGS

discrimination in the benefits and services of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for the reasons set forth above, based solely by reason of their disability.

83.     Plaintiffs are informed, believe and thereon alleges that the Municipal Defendant committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

84.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to the Municipal Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

85.     Municipal Defendant's discriminatory conduct is ongoing. Plaintiffs have no adequate remedy at law and are entitled to declaratory and injunctive relief set forth in 29 U.S.C. §794(a) and the Civil Rights Act of 1964, 42 U.S.C. 2000d-7(2).

86.     Plaintiffs are also entitled to reasonable attorneys' fees and costs incurred in bringing this action.

## VIII.   <u>THIRD CAUSE OF ACTION</u>

### The Americans with Disabilities Act, Title III

### (Against Dockless Vehicle Defendants)

87.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

88.     Title III of the ADA provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a).

89.     Places of public accommodation are facilities operated by a private entity including a sales or rental establishment and a place of exercise and recreation. 42 U.S.C. § 12181 (7)(E) & (I); 28 C.F.R. § 36.104.

23

90.    Discrimination under Title III includes a failure to remove barriers to access when the removal of a barrier is readily achievable.    42 U.S.C. § 12181(2)(a)(iv).

91.    The ADA's broad protection against discrimination based on disability under Title III is not limited to clients or customers of the operator of a place of public accommodation. See *Molski v. Cable, Inc.*, 481 F. 3d 724 (9th Cir. 2007).

92.    The Dockless Vehicle Defendants have used and appropriated and continue to use and appropriate various portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossing and walkways, effectively turning them into their private retail stores, showrooms and storage facilities for their dockless vehicle rental business. The public walkways utilized by Dockless Vehicle Defendants are therefore places of public accommodation covered by Title III of the ADA.

93.    The Dockless Vehicle Defendants have violated Title III of the ADA by discriminating against persons based on their disability as described herein and denying access to Dockless Vehicle Defendants' facilities.

94.    The Dockless Vehicle Defendants' use and appropriation of portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and walkways for its business operations have created multiple barriers and hazards for Plaintiffs due to their mobility and/or visual disabilities making these walkways inaccessible to them, forcing Plaintiffs to risk their safety and well-being whenever they venture around the City and deterring them from leaving their home.

95.    The removal of these barriers and hazards is readily achievable by Dockless Vehicle Defendants but Defendants have failed and refused to remove or mitigate them.

96.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 12188(a).

24

97.   Plaintiffs are further entitled to reasonable attorneys' fees and costs incurred in bringing this action.

## IX.  **FOURTH CAUSE OF ACTION**

### (California Government Code §4450)

### (Against Municipal Defendant)

98.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

99.   The system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are publicly funded and intended for use by the public within the meaning of California Government Code § 4450, et seq.

100.   Plaintiffs are informed, believe and thereon alleges that the Municipal Defendant and its agents and employees have and continue to violate California Government Code § 4450 et seq. and regulations implemented pursuant thereto by operating the system of sidewalks, crosswalks, curb ramps, pedestrian crossings and other walkways in violation of disability access requirements, for the reasons set forth above.

101.   The aforementioned acts and omissions of the Municipal Defendant constitute denial of equal access to and use of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways and caused Plaintiffs to suffer deprivation of their civil rights.

102.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, due to the Municipal Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

103.   The Municipal Defendant's discriminatory conduct is ongoing. There is no adequate remedy at law, and Plaintiffs are entitled to declaratory and injunctive relief.

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

104.  Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## X.  **FIFTH CAUSE OF ACTION**

### (California Government Code §11135)

### (Against All Defendants)

105.  Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

106.  Section 11135(a) of California Government Code provides in relevant part: "[N]o person in the State of California shall, on the basis of…disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

107.  The Municipal Defendant is funded directly by the State of California and receives financial assistance from the State of California sufficient to invoke the coverage of Government Code Sections 11135, et seq. The Municipal Defendant was and is the recipient of such funding and financial assistance at all times relevant to the claims asserted in this Complaint.

108.  Section 11150 of the California Code of Regulations defines a "program or activity" as "any project, action or procedure undertaken directly by recipients of State support or indirectly by recipients through others by contracts, arrangements or agreements, with respect to the public generally or with respect to any private or public entity."

109.  Section 11150 of the California Code of Regulations defines "[s]tate financial assistance" as "any grant, entitlement, loan, cooperative agreement, contract or any other arrangement by which a State agency provides or otherwise makes available aid to recipients in the form of… (3) real or personal property or any interest

26

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 3:19-cv-00054-JM-BGS

1   in or use of such property, including: (A) transfers or leases of property for less than

2   fair market value or for reduced consideration…"

3       110.   Section 11150 of the California Code of Regulations defines "[r]ecipient"

4   as any "person, who…receives State support…in an amount in excess of $10,000 in

5   the aggregate per State fiscal year…by grant, contract or otherwise, directly or

6   through another recipient…".

7       111.   The Municipal Defendant is a direct recipient of state financial

8   assistance. The Dockless Vehicle Defendants are recipients of state financial

9   assistance through another recipient, the Municipal Defendant.

10      112.   Plaintiffs are informed, believe and thereon allege that Defendants and

11  their agents and employees have and continue to violate California Government Code

12  §11135 by unlawfully denying Plaintiffs the benefits of the system of sidewalks,

13  crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, and

14  unlawfully subjecting Plaintiffs to discrimination regarding the Municipal

15  Defendant's programs and activities, for the reasons set forth above.

16      113.   Defendants have refused and failed to provide Plaintiffs with full and

17  equal access to their facilities, programs, services and activities as required by

18  California Government Code Sections 11135, et seq. through their policies and

19  practices with regard to the system of sidewalks, crosswalks, curb ramps, transit stops,

20  pedestrian crossings and other walkways that fail to maintain and/or that obstruct the

21  system's accessibility for people with disabilities.

22      114.   As a direct and proximate result of the aforementioned acts, Plaintiffs

23  have suffered, and continue to suffer humiliation, hardship and anxiety, due to

24  Defendants' failure to address accommodations, modifications, services and access

25  required for Plaintiffs' disabilities.

26      115.   Defendants' discriminatory conduct is ongoing. There is no adequate

27  remedy at law, and Plaintiffs are entitled to declaratory and injunctive relief.

28

27

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 3:19-cv-00054-JM-BGS

116.   Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## XI.  SIXTH CAUSE OF ACTION

### California Civil Code § 54 et seq.

### (Against All Defendants)

117.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

118.   California Civil Code § 54(a) provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of …sidewalks, walkways… and other public places."

119.   Plaintiffs are persons with disabilities within the meaning of California Civil Code § 54(b)(1) and California Government Code § 12926.

120.   California Civil Code Section 54.3 provides that "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2."

121.   Defendants have deprived Plaintiffs of their right to have full and free use of sidewalks, walkways, transit stops, and other public places, and therefore violate California Civil Code § 54.

122.   For all the reasons outlined above, Defendants violated the rights of Plaintiffs under California Civil Code § 54.

123.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, due to

28

1  Defendants' failure to address accommodations, modifications, services and access
2  required for Plaintiffs' disabilities.

3      124.   Because Defendants' discriminatory conduct is ongoing, declaratory and
4  injunctive relief are appropriate remedies.

5      125.   Plaintiffs are entitled to reasonable attorneys' fees and costs in filing this
6  action.

7      126.   Plaintiffs also seek an award of statutory damages under California Civil
8  Code § 54.3.

## XII.  SEVENTH CAUSE OF ACTION
### (California Civil Code §51 et seq.)(The Unruh Act)
### (Against All Defendants)

127.   Plaintiffs incorporate by reference each and every allegation contained in
the foregoing paragraphs.

128.   California Civil Code § 51(b) (the Unruh Civil Rights Act) provides that
"All persons within the jurisdiction of this state are free and equal, and no matter what
their sex, race, color, religion, ancestry, national origin, disability, medical condition,
genetic information, marital status, sexual orientation, citizenship, primary language,
or immigration status are entitled to the full and equal accommodations, advantages,
facilities, privileges, or services in all business establishments of every kind
whatsoever".

129.   The Unruh Civil Rights Act prohibits discrimination on the basis of
disability in the full and equal access to the services, facilities, and advantages of a
business establishment. The term "business establishment" has been interpreted in the
broadest sense reasonably possible, to include public entities such as schools, see
*Gibson v. County of Riverside*, 181 F. Supp. 2d 1057 (2002), and entities whose
activities demonstrate that it is the functional equivalent of a classical place of public
accommodation or amusement, see *Stevens v. Optimum Health Institute, San Diego*,
810 F. Supp. 2d 1074 (2011).

29

130. A violation of the right of any individual under the ADA is also a violation of the Unruh Act. Ca. Civil Code § 51(f).

131. Defendant City of San Diego's system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways is a "business establishment" operated by the City as defined by the Unruh Act, Ca. Civil Code § 51.

132. The Dockless Vehicle Defendants' appropriation of varying portions of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossing, and other walkways for use as their functional retail stores, showrooms and storage facilities for their dockless scooter business is a "business establishment" of said Defendants as defined by the Unruh Act.

133. Defendants have denied full and equal accommodations and/or services to Plaintiffs, harming Plaintiffs as set forth throughout this action. The conduct of Defendants was a substantial factor in causing Plaintiffs' harm.

134. Whoever denies, aids, or incites a denial, or makes any discrimination or distinction contrary to the provisions of the Unruh Civil Rights Act, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than a $4,000, suffered by a person denied rights under the Act. In addition, a court may award attorney's fees to a prevailing plaintiff. Ca. Civil Code § 52(a).

135. Plaintiffs also seek an award of statutory damages, attorneys' fees and costs pursuant to Civil Code §52.

136. Defendants are engaged in conduct of resistance to the full enjoyment of rights of people with disabilities as described herein. Plaintiffs are therefore entitled to preventative relief including a permanent or temporary injunction and other equitable relief. Ca. Civil Code § 52(c)(3).

30

## **PRAYER FOR RELIEF**

137.  Lead Plaintiffs, individually, and on behalf of the Putative Class, pray for judgment and relief against Defendants as Follows:

    A.  For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Putative Class described herein and appointing Lead Plaintiffs to serve as class representatives and Plaintiffs' counsel Neil Dymott Frank McCabe and Hudson, APLC as Lead Counsel for the Putative Class;

    B.  For an order enjoining the Dockless Vehicle Defendants from continuing to operate on the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways in the City of San Diego;

    C.  For an order that this matter remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court;

    D.  For an order requiring disgorgement of monies wrongfully obtained as a result of the Dockless Vehicle Defendants wrongful and illegal conduct;

    E.  For statutory damages arising from Defendants' wrongful and illegal conduct;

    F.  For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

    G.  For pre-judgment and post-judgment interest at the legal rate; and

    H.  For such other and further relief as the Court deems just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /

FIRST AMENDED CLASS ACTION COMPLAINT      Case No. 3:19-cv-00054-JM-BGS

1

## JURY DEMAND

2       Plaintiffs demand a trial by jury on all issues so triable.

3

4                           Respectfully submitted,

5   Dated:  March 21, 2019    NEIL, DYMOTT, FRANK, MCCABE & HUDSON
                              A Professional Law Corporation
6

7                           By:   *s/ Robert W. Frank*
                                  Michael I. Neil
8                                 mneil@neildymott.com
                                  Robert W. Frank
9                                 rfrank@neildymott.com

10                          By:   *s/ Matthew R. Souther*

11                                Matthew R. Souther
                                  msouther@neildymott.com
12                                Phillip E. Stephan
                                  pstephan@neildymott.com
13                                Attorneys for Plaintiffs
                                  ALEX MONTOYA, PHILIP PRESSEL,
14                                REX SHIRLEY, and AARON GREESON

15

16  Dated:  March 21, 2019    DISABILITY RIGHTS CALIFORNIA

17                          By:   *s/ Ann E. Menasche*

18                                Ann E. Menasche,
                                  Ann.menasche@disabilityrightsca.org
19                                Attorneys for Plaintiffs
                                  ALEX MONTOYA, PHILIP PRESSEL,
20                                REX SHIRLEY, and AARON GREESON

21

22  Dated:  March 21, 2019    DISABILITY RIGHTS CALIFORNIA

23

24                          By:   *s/ Ben Conway*

                                  Ben Conway
25                                Ben.conway@disabilityrightsca.org
                                  Attorneys for Plaintiffs
26                                ALEX MONTOYA, PHILIP PRESSEL,
                                  REX SHIRLEY, and AARON GREESON

27

28
                                    32
    FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 3:19-cv-00054-JM-BGS

**VERIFICATION**

*US District Court Southern Division of California*
*Case No. 3:19-cv-00054-JM-BGS*
*Montoya, et al. vs City of San Diego, et al.*

I, ALEX MONTOYA, have read **PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** and know the contents thereof.  I certify that the same is true of my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct and that this declaration was executed this 20 day of March 2019 at San Diego, California.

Alex Montoya

---

1

VERIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

*US District Court Southern Division of California*
*Case No. 3:19-cv-00054-JM-BGS*
*Montoya, et al. vs City of San Diego, et al.*

I, PHILIP PRESSEL, have read **PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** and know the contents thereof. I certify that the same is true of my own knowledge, except as to the matters which are therein stated upon information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct and that this declaration was executed this 20 day of March 2019 at San Diego, California.

Philip Pressel

1
VERIFICATION

1

## VERIFICATION

2

3   *US District Court Southern Division of California*
*Case No. 3:19-cv-00054-JM-BGS*
*Montoya, et al. vs City of San Diego, et al.*

4

5       I, AARON GREESON, have read **PLAINTIFFS' FIRST AMENDED CLASS**

6   **ACTION COMPLAINT** and know the contents thereof.  I certify that the same is true

7   of my own knowledge, except as to the matters which are therein stated upon

8   information or belief, and as to those matters, I believe it to be true.

9       I declare under penalty of perjury, under the laws of the State of California, that

10   the above is true and correct and that this declaration was executed this 21 day of March

11   2019 at San Diego, California.

12

13                                            

14                                      Aaron Greeson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1                    **VERIFICATION**

2          *US District Court Southern Division of California*
3             *Case No. 3:19-cv-00054-JM-BGS*
            *Montoya, et al. vs City of San Diego, et al.*

5     I, REX SHIRLEY, have read **PLAINTIFFS' FIRST AMENDED CLASS**
6  **ACTION COMPLAINT** and know the contents thereof. I certify that the same is
7  true of my own knowledge, except as to the matters which are therein stated upon
8  information or belief, and as to those matters, I believe it to be true.

9     I declare under penalty of perjury, under the laws of the State of California, that
10  the above is true and correct and that this declaration was executed this _19_ day of
11  March 2019 at _San Diego_, California.

14               Rex Shirley