MAYER BROWN LLP
BRONWYN F. POLLOCK (SBN 210912)
*bpollock@mayerbrown.com*
EVAN M. WOOTEN (SBN 247340)
*ewooten@mayerbrown.com*
SANDOR A. CALLAHAN (SBN 318200)
*scallahan@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Attorneys for Defendant
BIRD RIDES, INC.

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGES]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MONTOYA, REX SHIRLEY, PHILIP PRESSEL, and AARON GREESON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, a public entity; BIRD RIDES, INC., a Delaware corporation, d/b/a BIRD; NEUTRON HOLDINGS, INC., a Delaware corporation, d/b/a LIME; WHEELS LABS, INC., a Delaware Corporation; UBER TECHNOLOGIES, INC., a Delaware Corporation, d/b/a JUMP; LYFT, INC.; RAZOR USA, LLC, a California corporation; and DOES 1-100,<br><br>Defendants. | Case No. 3:19-cv-00054-JM-BGS<br><br>**JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS BY DEFENDANTS BIRD RIDES, INC., NEUTRON HOLDINGS, INC., AND RAZOR USA, LLC**<br><br>Date:        May 20, 2019<br>Time:       10:00 a.m.<br>Courtroom: 5D<br><br>Honorable Jeffrey T. Miller |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

RELEVANT BACKGROUND ........................................................................................ 3

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................... 6

    I.    The Putative Class Is An Impermissible Fail-Safe Class ............................... 6

    II.    The Putative Class Cannot Satisfy Rule 23(a)(2)'s Commonality Requirement Or Rule 23(b)(3) Predominance .................................................. 8

    III.    The Putative Class Does Not Satisfy Rule 23(b)(2) ................................... 12

CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A Helping Hand, LLC v. Baltimore Cty.*,
   355 F. App'x 773 (4th Cir. 2009) ................................................................... 12

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
   2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ................................................. 3

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 2, 8, 12

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Trust*,
   867 F.3d 1093 (9th Cir. 2017) ........................................................................ 11

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ........................................................................................... 6

*Davoll v. Webb*,
   194 F.3d 1116 (10th Cir. 1999) ....................................................................... 9

*Desert Palace, Inc. v. Costa*,
   539 U.S. 90 (2003) ......................................................................................... 12

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ....................................................................................... 12

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
   654 F.3d 989 (9th Cir. 2011) ......................................................................... 12

*Gen. Tel. Co.of S.W. v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................... 5

*Ariz. ex rel. Goddard v. Harkins Amusement Enters.*,
   603 F.3d 666 (9th Cir. 2010) ..................................................................... 7, 10

*Heffelfinger v. Elec. Data Sys. Corp.*,
   2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) .................................................... 7

*Kamar v. RadioShack Corp.*,
   375 F. App'x 734 (9th Cir. 2010) .................................................................... 7

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ........................................................................... 5

*Kissling v. Ohio Cas. Ins. Co.*,
   2010 WL 1978862 (E.D. Ky. May 14, 2010) .................................................. 8

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ......................................................................................... 11

*Lith v. Iheartmedia*
  2016 WL 4000356, at *4 (E.D. Cal. July 25, 2016) ...................................................... 6

*Mata v. CitiMortgage, Inc.*,
  2012 WL 7985175 (C.D. Cal. July 20, 2012) ......................................................... 5, 11

*Nat'l Fed'n of Blind v. Target Corp.*,
  582 F. Supp. 2d 1185 (N.D. Cal. 2007) ................................................................... 10

*Nevarez v. Forty Niners Football Co.*,
  326 F.R.D. 562 (N.D. Cal. 2018) ............................................................................. 10

*Pepka v. Kohl's Dep't Stores, Inc.*,
  2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ............................................................ 6

*Prise v. Alderwoods Grp., Inc.*,
  2010 WL 3432299 (W.D. Pa. Aug. 31, 2010) .......................................................... 12

*Sengupta v. City of Monrovia*,
  2010 WL 11507457 (C.D. Cal. Feb. 22, 2010) ........................................................ 10

*Stearns v. Select Comfort Retail Corp.*,
  763 F. Supp. 2d 1128 (N.D. Cal. 2010) ..................................................................... 6

*Stokes v. CitiMortgage, Inc.*,
  2015 WL 709201 (C.D. Cal. Jan. 16, 2015) ................................................. 3, 5, 11, 12

*Tidenberg v. Bidz.com*,
  2010 WL 135580 (C.D. Cal. Jan. 7, 2010) ............................................................. 7, 8

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................... 6

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................. 8, 9, 11, 12

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ..................................................................................... 6

**Statutes**

28 U.S.C. § 2072(b) ....................................................................................................... 11

42 U.S.C. § 12188(a)(1) ................................................................................................. 12

Americans with Disabilities Act ............................................................................. *passim*

Cal. Vehicle Code § 21220 ............................................................................................... 1

Rehabilitation Act § 504 .................................................................................................. 5

**Other Authorities**

Fed. R. Civ. P. Rule 12(f) .................................................................................................... 5
Fed. R. Civ. P. Rule 23 ................................................................................................... 6, 11
Fed. R. Civ. P. Rule 23(a) ................................................................................................ 6, 8
Fed. R. Civ. P. Rule 23(a)(2) ....................................................................................... 2, 6, 8
Fed. R. Civ. P. Rule 23(b) ................................................................................................... 6
Fed. R. Civ. P. Rule 23(b)(2) ..................................................................................... 3, 6, 12
Fed. R. Civ. P. Rule 23(b)(3) .................................................................................. 2, 6, 8, 12
Fed. R. Civ. P. Rule 23(d)(1)(D) ........................................................................................ 5

**INTRODUCTION**

Shared mobility solutions are an affordable and sustainable alternative to using a personal automobile to travel short distances. Some of these solutions have been around awhile—like public transit, airport shuttles, and taxis. Due to the growth and sophistication of smartphone applications and the technology that powers them, new solutions have emerged, including ridesharing, bikesharing, and, relevant here, scooter-sharing.

The California Legislature has declared it a matter "of paramount importance" to find and implement solutions to the "severe traffic congestion air pollution problems" throughout the State and "particularly in its cities." Cal. Vehicle Code § 21220. And the Legislature has acted specifically "to promote the use of alternative low-emission or no-emission transportation," like "[m]otorized scooters." *Id.* Defendants Neutron Holdings, Inc. ("Lime"), Bird Rides, Inc. ("Bird"), and Razor USA, LLC ("Razor") independently work toward that same goal.

Likewise, the laws that guarantee equal access to individuals with disabilities and prohibit disability-based discrimination serve important public interests. Litigation has a role to play in enforcing the rights those laws seeks to protect. This lawsuit, however, does not seek to vindicate those rights. This lawsuit seeks to coopt the interests of all individuals with disabilities in San Diego to indict the entire shared-mobility-solutions industry in the name of statutory penalties and attorneys' fees.

According to Plaintiffs, sometimes electric scooters and bikes are improperly parked, and sometimes they are driven too fast or in the wrong place. Plaintiffs allege that they are individuals with disabilities who nearly encountered wayward scooters and bikes on San Diego's sidewalks, which Plaintiffs claim constitutes disability-based discrimination in violation of the Americans with Disabilities Act ("ADA") and related laws. Plaintiffs do not sue whoever improperly parked or drove these scooters or bikes; they sue the City of San Diego and six unrelated companies (the "Vehicle Defendants") which offer scooter or bike-sharing smartphone applications and related services to their

customers.[1]

Plaintiffs do not assert these claims only for themselves. They seek to represent a putative class of

> all persons with disabilities with mobility or visual impairments who have been denied access to or full enjoyment of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of San Diego because of their disabilities.

Am. Compl. ¶ 52. Plaintiffs' claims should be dismissed with prejudice for the reasons explained in the Scooter Defendants' concurrently filed motion to dismiss. But if the Court declines to dismiss Plaintiffs' claims in their entirety, it should strike the putative class allegations because they are facially deficient in several ways.

*First*, Plaintiffs have proposed an improper "fail-safe" class, or a class whose members include only those persons who prove their claims on its merits. The proposed class definition parrots the elements of liability for the putative class's claims. Class membership therefore is defined by the elements of liability, and requires a determination of the merits of each individual's claim prior to permitting inclusion in the proposed class. This "fail-safe" class is improper because it is unfair: any putative class member against whom Defendants successfully defend themselves will automatically drop out of the class and not be bound by the result. For precisely this reason, courts in this Circuit regularly strike fail-safe class allegations at the pleadings stage.

*Second*, Plaintiffs have not (and cannot) identify any common question to satisfy Rule 23(a)(2)'s commonality requirement. The alleged "common questions" are not in fact common; they turn on individualized and fact-intensive inquiries for each putative class member—including inquiries into third-party conduct. And Plaintiffs necessarily cannot satisfy Rule 23(b)(3)'s "far more demanding" predominance requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Plaintiffs allege that unidentified third

---

[1] For ease of reference, we refer to the three private Defendants who were named in the original Complaint and who are bringing this motion—Bird Rides, Inc. ("Bird"), Neutron Holdings, Inc. d/b/a Lime ("Lime"), and Razor USA, LLC ("Razor")—as "Defendants" or the "Scooter Defendants."

parties have ridden scooters on the sidewalks and parked scooters in public rights-of-way in a way that obstructs access for individuals with disabilities.  Am. Compl. ¶¶ 35, 37-38.  If Plaintiffs' allegations are true, these third parties are acting contrary to the instructions each Scooter Defendant provides to its customers.  Accordingly, each putative class member's claim is based on his or her own individualized experiences with scooters used or operated contrary to the Scooter Defendants' instructions.  These issues of third-party conduct cannot be determined on a classwide basis or be attributed to the Scooter Defendants.

*Third*, Plaintiffs also cannot satisfy the standard for an injunction-only class.  Rule 23(b)(2) requires that a single injunction be capable of providing uniform, classwide relief.  Such relief is unavailable here as a matter of law because any given putative class member's eligibility for injunctive relief depends upon an individualized assessment of that class member's individual circumstances—including, for example, to determine whether there is an imminent risk that each particular putative class member will suffer irreparable harm.

In sum, it is clear from the face of the Complaint that Plaintiffs' proposed class cannot be certified.  As courts in this circuit have recognized, it is "appropriate to strike class allegations prior to discovery where the allegations make it obvious that classwide relief is not available."  *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015); *accord Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015).

### RELEVANT BACKGROUND[2]

Defendants Bird, Lime, and Razor are unrelated companies that rent electronic scooters to third parties using mobile applications.  Am. Compl. ¶¶ 18-20, 28-29, 33.

///

///

---

[2] Defendants assume the truth of the Complaint's allegations for purposes of this motion, but reserve their right to challenge all allegations and deny Plaintiffs' claims.

    Because third-party riders of the Scooter Defendants' scooters can use the scooters to travel to a variety of locations, the Scooter Defendants specifically and independently instruct riders not to block public pathways or to ride on the sidewalks.  For example:

- **Bird** instructs its riders to "[r]ide in bike lanes or close to the right curb," and specifically warns them: "No riding on sidewalks unless local law requires or permits."  RJN Ex. A.  The instructions also clearly state to *"[p]ark Birds out of the public right of way – keeping walkways, driveways, access ramps, and fire hydrants clear."*  *Id.* (emphasis added).  Bird also instructs riders to "[p]ark Birds close to the curb, facing the street near designated bike or scooter parking areas, trees, or street signs.  Make sure your kickstand is securely in the down position so that the Bird stays upright."  *Id.*  Each Bird rider also agrees to obey "[a]ll applicable laws (including, without limitation, those applicable to *traffic, pedestrians, parking*, charging and electric Vehicles)."  RJN Ex. B (emphasis added).

- **Lime** instructs riders to park scooters so as to "not block sidewalks, service ramps, bus stops and shop entrances," and refers riders to its tutorial video on proper parking.  RJN Ex. C.  And Lime riders "agree to follow all laws, rules, regulations, and/or ordinances pertaining to the use, riding, and/or operation of the Products" and expressly agree not to "[o]perate any Product in violation of any laws, rules, regulations, and/or ordinances, *including any and all rules pertaining to riding any Products on sidewalks and/or parking Products*."  RJN Ex. D (emphasis added).

    - **Razor** instructs its riders: Razor Scooters "must be ridden on the street and bike lanes. Sidewalk riding is prohibited."  RJN Ex. E.  Razor further instructs its riders: "Scooters are not allowed in designated "red zones" which are located on the map in the app."  *Id.*  Razor further instructs its riders "do not park in a red zone…in pedestrian walkways, wheelchair accessible paths, driveways, crosswalks or loading zones."  *Id.*

Despite these unequivocal instructions and agreements, each Plaintiff alleges that he has nearly encountered unidentified scooters and bikes of unidentified origin on sidewalks and other pedestrian walkways at unspecified times. Am. Compl. ¶¶ 12-15. Based upon these allegations, Plaintiffs bring claims against the Vehicle Defendants and the City of San Diego for violation of the ADA and Section 504 of the Rehabilitation Act, along with derivative State-law claims. *Id.* ¶¶ 62-136.

Plaintiffs seek to represent a class, which they define as "all persons with disabilities with mobility or visual impairments who have been denied access to or full enjoyment of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of San Diego because of their disabilities." Am. Compl. ¶ 52. On behalf of this putative class, Plaintiffs seek both equitable (declaratory and injunctive) relief *and* classwide statutory damages. *See id.* ¶¶ 57, 137(E).

## **LEGAL STANDARD**

Rule 23(d)(1)(D) directs courts to make appropriate orders "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons." Likewise, Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As the Supreme Court has held, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co.of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

Accordingly, the Ninth Circuit and California district courts repeatedly have confirmed that courts may strike or dismiss class allegations on the pleadings when the pleadings demonstrate that a putative class action cannot be maintained on the facts alleged. *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975) (affirming decision striking class allegations); *Stokes*, 2015 WL 709201, at *4 ("'[W]here the matter is sufficiently obvious from the pleadings, a court may strike class allegations' without first permitting class discovery.") (quoting *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013)); *Mata v. CitiMortgage, Inc.,* 2012 WL 7985175,

at *1 (C.D. Cal. July 20, 2012) (same); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151-53 (N.D. Cal. 2010); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

## **ARGUMENT**

The Supreme Court instructs that to maintain a class action, plaintiffs "must affirmatively demonstrate [their] compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks omitted). To do so, Plaintiffs must first satisfy every element of Rule 23(a). Then, Plaintiffs also must satisfy at least one of the three requirements listed in Rule 23(b). The Amended Complaint demonstrates that Plaintiffs cannot satisfy these requirements for three separate reasons, each of which is independently sufficient to preclude certification: (1) the proposed class definition results in an impermissible fail-safe class; (2) the allegations fail the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3); and (3) Plaintiffs cannot satisfy the requirements of Rule 23(b)(2). Accordingly, Plaintiffs' claims cannot be certified for class adjudication, and their class allegations should be stricken.

### **I.      The Putative Class Is An Impermissible Fail-Safe Class.**

The proposed class definition suffers at the outset from a fatal defect: it is an impermissible "fail-safe" class. A "fail-safe class" is one that "is defined in a way that precludes membership unless the liability of the defendant is established." *Lith v. Iheartmedia + Entm't, Inc.*, 2016 WL 4000356, at *4 (E.D. Cal. July 25, 2016). Such a class "includes only those who are entitled to relief." *Id.* That is, a fail-safe class is defined so that "either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Id.*; *accord Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Fail-safe classes are both "unmanageable" and "unfair." *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *3 (C.D. Cal. Dec. 21, 2016).

Fail-safe classes "should not be certified under Ninth Circuit law" and may be stricken on the pleadings. *Id.* Indeed, the Ninth Circuit has recognized that "obvious problems . . . exist when the class itself is defined in a way that precludes membership

6

unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). "When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Id.* That result "is palpably unfair to the defendant." *Id.*; *see also Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008) ("[P]laintiffs now seek to define the class in terms of workers who were denied overtime in violation of the law. A class defined in this fashion constitutes an impermissible 'fail-safe' class, whose members would be 'bound only by a judgment favorable to plaintiffs but not by an adverse judgment.'"); *cf. Tidenberg v. Bidz.com*, 2010 WL 135580, at *3 (C.D. Cal. Jan. 7, 2010) (when "determining class membership . . . essentially requires resolving the merits of each individual's claim," that "by itself renders the class action unmanageable virtually by definition . . . and makes Plaintiff's class definition unacceptable") (quotation marks omitted).

Plaintiffs' proposed class is the archetypical fail-safe class. The putative class is defined to include "all persons *with disabilities* with mobility or visual impairments *who have been denied access to or full enjoyment of* the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of San Diego *because of their disabilities*." Am. Compl. ¶ 52 (emphases added); *see also id.* ¶ 16 (separately defining putative class as "all persons *with mobility and/or visual impairments* who have been *denied equal access* to city sidewalks, streets, crosswalks, and transit stops *as a result of the Defendants' policies and practices* with regard to dockless vehicles") (emphasis added).

The proposed class criteria state two of the of the principal elements that a plaintiff must prove to establish liability under the ADA and their derivative state-law claims—(i) plaintiff is a person with disabilities and (ii) plaintiff has been denied access because of his disability. *See, e.g.*, *Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010) (plaintiff in Title III ADA action must prove that the plaintiff is disabled within the meaning of the ADA, and that the plaintiff was denied access to a public

7

accommodation due to his or her disability). Accordingly, if Defendants prevail with respect to a particular putative class member by showing, for example, that she or he is not disabled within the meaning of the ADA or that she or he was not denied access to the San Diego public rights-of-way or that any denial was not attributable to Defendants, that person would simply drop out of the class and not be bound by a ruling in Defendants' favor.

When, as here, the class definition is incurably flawed because it alleges a "fail safe class," the Court should strike the Plaintiffs' class allegations. *See, e.g.*, *Tidenberg,* 2010 WL 135580, at *3 (rejecting class definition that "essentially requires resolving the merits of each individual's claim"); *Kissling v. Ohio Cas. Ins. Co.*, 2010 WL 1978862, at *2 (E.D. Ky. May 14, 2010) ("[B]ecause the proposed class is a fail-safe class which is fatally flawed, the Court may dismiss the class allegations at the pleading stage.").

## II. The Putative Class Cannot Satisfy Rule 23(a)(2)'s Commonality Requirement Or Rule 23(b)(3) Predominance.

A party seeking class certification must show that each of the four requirements in Rule 23(a) is satisfied. *See Amchem Prods*, 521 U.S. at 615. Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Here, the pleading demonstrates that Plaintiffs cannot satisfy the commonality requirement of Rule 23(a)(2) or Rule 23(b)(3) predominance.

Under Rule 23(a)(2), Plaintiffs must demonstrate "questions of law or fact common to the class." And Rule 23(b)(3)—which governs Plaintiffs' putative class claims for damages—requires that common questions predominate over individualized ones. The commonality requirement "is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quotation marks omitted) (citation omitted). "What matters to class certification is not the raising of common questions—even in droves—but, rather the

8

capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (quotation marks and citation omitted).

As the Supreme Court made clear, it is not enough to say that whether a practice is "unlawful" presents a common question. *Id.* at 349-50. Yet each purportedly "common" question Plaintiffs identify in the Amended Complaint asks precisely that—*i.e.*, "[w]hether" some or all of the Defendants "is violating" the law (Am. Compl. *id.* ¶ 61(a)-(g))—giving no attention to whether those questions can be *answered* on a classwide basis. But to be suitable for class treatment, a common contention "must be of such a nature that it is capable of classwide *resolution*—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 (emphasis added).

It is apparent from the Amended Complaint that no common answers can be found here. Simply put, each putative class member's experience, if any, on the San Diego sidewalks and other public rights-of-way is inherently individualized and fact-specific. Each alleged encounter must be examined on a case-by-case basis to determine, among other things:

- whether an individual is "disabled" within the meaning of the statutes Plaintiffs invoke, *see Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (affirming denial of class certification because "[t]he district court would have had to conduct individualized inquiries to determine whether a potential class member met the statutory definition" of disability);

- whether the individual ever encountered scooters on the San Diego sidewalks and other public rights-of-way;

- whether the scooter the individual encountered was one rented out by one of the Scooter Defendants, and if so, which one;

- whether the individual's access to public rights-of-way was inhibited, which requires knowing the specific facts and circumstances surrounding each individual's experience with the scooter—including, for example, the location, the sidewalk conditions, the width of the sidewalk, the exact placement of the scooter on the sidewalk, and efforts to remove any obstruction;

- whether the person who parked or drove the scooter in a way that inhibited the individual's access to the public right-of-way did so in a way expressly prohibited by the relevant Scooter Defendant; and

- whether any inhibition in using the public right-of-way is attributable to any Defendant.

Thus, the factual basis for the claims asserted against the Scooter Defendants—how thousands of third parties may have operated or parked countless scooters belonging to three separate Defendant companies (or not belonging to any Defendant at all) in various locations and the effects that such alleged conduct had on any given putative class member—is inextricably individualized and context-specific. These highly individualized circumstances are a far cry from the uniformity present in other ADA cases where classes have been certified. *See, e.g.*, *Nevarez v. Forty Niners Football Co.*, 326 F.R.D. 562, 569-70 (N.D. Cal. 2018) (certifying class of individuals with mobility disabilities who encountered barriers to access at a single location, Levi Stadium); *Sengupta v. City of Monrovia*, 2010 WL 11507457, at *1-2 (C.D. Cal. Feb. 22, 2010) (same for class of hearing-disabled individuals who had difficulties communicating with the Monrovia Police Department, which lacked formal policy regarding communications with deaf or hard of hearing individuals); *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1200-01 (N.D. Cal. 2007) (same for class of visually-impaired individuals who had difficulties accessing defendant's website).

These problems are heightened still by the fact that Plaintiffs' claims rely on the intervening conduct of numerous third parties. Plaintiffs do not (and could not) allege that any of the Scooter Defendants themselves operate scooters on public walkways or leave them in places that obstruct access to those walkways. Indeed, as discussed above, each Scooter Defendant unambiguously instructs riders not to do those things.

Accordingly, to establish liability against any Defendant, each putative class member will have to demonstrate that she or he is disabled, that the denial of her or his access to public rights-of-way was on account of a disability, and that such denial was caused by a particular Defendant. *See Goddard*, 603 F.3d at 670 (plaintiff must prove that he "was denied public accommodations *by the defendant* because of his disability") (emphasis added). Such a determination will necessarily turn on individualized inquiries

requiring examination of a multitude of issues involving putative class members, the Scooter Defendants, and unidentified third-party riders, as discussed above. As the Ninth Circuit has put it in affirming the denial of certification in an ADA class action for lack of commonality, "pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient." *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Trust*, 867 F.3d 1093, 1104 (9th Cir. 2017).

Each Defendant is entitled to an opportunity to litigate any issue that may defeat each claim with respect to any individual proposed class member—including, but not limited to, disability, denial of access to public accommodation, and whether any such denial could be attributable to the particular Defendant despite the third-party conduct alleged. That principle precludes certification under Rule 23, and makes clear that certification would violate due process.

"[A] class cannot be certified" if a defendant "will not be entitled to litigate its . . . defenses to individual claims." *Dukes*, 564 U.S. at 367. Indeed, the Court's rejection of certification in *Dukes* rested on its conclusion that the lower courts had smoothed the way for class certification only by "depriv[ing] defendants of their right to litigate statutory defenses to individual claims." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048 (2016). As the Court reiterated in *Tyson Foods*, the Rules Enabling Act, 28 U.S.C. § 2072(b), bars courts from "giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action." *Id.*; *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense.").

Plaintiffs do not even try to explain how the individualized questions discussed above could be resolved by common answers. The absence of common questions precludes certification. In short, Plaintiffs' claims inherently are ill-suited for class treatment because they are not "subject to 'proof at trial through evidence that is common to the class rather than individual to its members.'" *Mata*, 2012 WL 7985175, at *1 (citation omitted); *Stokes*, 2015 WL 709201, at *5-8.

11

Even if Plaintiffs could identify a true common question (and they have not), their claims necessarily fail the "more demanding" predominance requirement. *Amchem Prods*, 521 U.S. at 624. For all of the above reasons, individualized issues of law and fact will overwhelm any common questions in this case. When "the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Stokes*, 2015 WL 709201, at *8 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (in turn quoting 7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1778)).

### III. The Putative Class Does Not Satisfy Rule 23(b)(2).

Rule 23(b)(2) permits certification only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

But an injunction is appropriate under Rule 23(b)(2) only when each class member is eligible for injunctive relief. *See Dukes*, 564 U.S. at 360. To be eligible for injunctive relief, a plaintiff must prove that:

> (1) . . . it has suffered an irreparable injury; (2) . . . remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) . . . considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) . . . the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (holding that the *eBay* standard is not limited to the patent infringement context and applying it to statutory copyright claims). While the Ninth Circuit has not decided whether the *eBay* standard applies to ADA claims, other courts have held it applies to ADA claims or claims under Title VII, which the ADA's injunctive relief provision incorporates (42 U.S.C. § 12188(a)(1)). *See, e.g.*, *A Helping Hand, LLC v. Baltimore Cty.*, 355 F. App'x 773, 776-77 (4th Cir. 2009); *Prise v. Alderwoods Grp., Inc.*, 2010 WL 3432299, at *4 (W.D. Pa. Aug. 31, 2010); *cf. Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003) (normal rules of

civil litigation apply to Title VII claims absent an express statutory command to the contrary).

Under this standard, classwide injunctive relief is inappropriate here because irreparable harm cannot realistically be asserted on a classwide basis. For all of the reasons set forth above, the Court would have to evaluate each individual claim of a member of the proposed class to determine whether the putative class member was injured.

Moreover, the proposed injunction for "an order enjoining the Vehicle Defendants from continuing to operate on the system of" San Diego walkways (Am. Compl. ¶ 137(B)) is far too vague to support certification and fails to consider the numerous critical questions of third-party conduct discussed above—including what lengths Defendants must take to prevent third-party users from placing scooters in prohibited areas.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court strike the class allegations (¶¶ 9, 16-17, 40, 42, 48-50, 52-61, and 137) from Plaintiffs' Amended Complaint.

Respectfully submitted,

Date: April 4, 2019        MAYER BROWN LLP

By:   s/ Bronwyn F. Pollock
        Bronwyn F. Pollock
Attorneys for Defendant
BIRD RIDES, INC.
E-mail: bpollock@mayerbrown.com

Date: April 4, 2019        MORGAN, LEWIS & BOCKIUS LLP
ANNE MARIE ESTEVEZ
STEPHANIE SCHUSTER
KATHY H. GAO

By:   s/ Anne Marie Estevez
        Anne Marie Estevez
Attorneys for Defendant
NEUTRON HOLDINGS, INC.
E-mail: aestevez@morganlewis.com

Date: April 4, 2019

FISHER PHILLIPS
TYLER J. WOODS

By: s/ Tyler J. Woods
Tyler J. Woods
Attorneys for Defendant
RAZOR USA, LLC
E-mail: twoods@fisherphillips.com