SEYFARTH SHAW LLP
Kristina M. Launey (SBN 221335)
klauney@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone:  (916) 448-0159
Facsimile:  (916) 558-4839

SEYFARTH SHAW LLP
Myra B. Villamor (SBN 232912)
mvillamor@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

Eden Anderson (SBN 233464)
eanderson@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

Attorneys for Defendant
LYFT, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MONTOYA, REX SHIRLEY, PHILIP PRESSEL, and AARON GREESON, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY OF SAN DIEGO, a public entity, BIRD RIDES, INC. a Delaware corporation, d/b/a BIRD; NEUTRON HOLDINGS, INC., a Delaware corporation, d/b/a LIME; WHEELS LABS, INC., a Delaware Corporation, UBER TECHNOLOGIES, INC., a Delaware corporation, d/b/a JUMP, LYFT, INC.; RAZOR USA, LLC, a California corporation; and DOES 1-100,<br><br>    Defendants. | Case No. 3:19-cv-00054-JM-BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LYFT, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        July 8, 2019<br>Time:       10:00 a.m.<br>Courtroom:  5D<br>Before Hon. Jeffrey T. Miller |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   THE FAC'S ALLEGATIONS AND CLAIMS ....................................................2

III.  ARGUMENT..........................................................................................................4

    A.   FRCP 12(b)(1) and 12(b)(6)........................................................................4

    B.   Plaintiffs' ADA Claim Fails .......................................................................5

        1.   Lyft Does Not Own, Operate, or Lease the Public Service, Benefit, or Activity to Which Plaintiffs Claim a Denial of Access and Plaintiffs Do Not Allege Any Denial of Access to a Good or Service Offered by Lyft ................................................5

        2.   Plaintiffs' ADA Claim, Subject to Factual Attack, Fails.....................7

            a.   Because the Relief Sought Is Already Addressed by Lyft's Existing Policies, Plaintiffs' ADA Claim Is Moot ..........8

            b.   The ADA Does Not Prohibit the Staging or Deployment of a Scooter on a Sidewalk and Plaintiffs Do Not Allege They Ever Encountered a Lyft Scooter Staged or Deployed in a Manner That Occluded Access ........................11

    C.   Plaintiffs' DPA Claim Fails ......................................................................12

        1.   Lyft Does Not Face Vicarious Liability Under the DPA for the Conduct of Third-Party Scooter Riders ...............................................12

        2.   There Is No DPA Liability Because Plaintiffs Have No Viable ADA Claim ..........................................................................................16

    D.   Plaintiffs Fail to State an Unruh Act Claim Because They Have No Viable ADA Claim and Because They Do Not Allege That Lyft Engaged in Any Intentional Discrimination or That They Ever Sought to or Actually Patronized Lyft's Business ...................................................16

IV.   CONCLUSION.....................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................5

*Barden v. City of Sacramento*,
    292 F.3d 1073 (9th Cir. 2002) ..................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................4

*Brooke v. Kalthia Group Hotels*,
    2015 WL 7302736 (S.D. Cal. 2015)......................................................4, 10

*Butler v. WinCo Foods, LLC*,
    2013 WL 12076011 (C.D. Cal. 2013) .......................................................10

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) ....................................................................7

*Doe v. John F. Kennedy Univ.*,
    2013 WL 4565061 (N.D. Cal. 2013) ....................................................14, 15

*Funches v. Barra*,
    2016 WL 2939165 (S.D.N.Y. 2016)...........................................................6

*Independent Housing Svcs. of San Francisco v. Fillmore Ctr. Assocs.*,
    840 F.Supp. 1328 (N.D. Cal. 1993)..............................................13, 14, 15

*Kormylo v. Forever Resorts, LLC*,
    2015 WL 106379 (S.D. Cal. 2015).........................................................4, 5

*Lonberg v. Sanborn Theaters Inc.*,
    259 F.3d 1029 (9th Cir. 2001) ..................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................11

*Moore v. Greyhound Bus Lines, Inc.*,
    2019 WL 1283939 (S.D. Cal. 2019)..........................................................10

ii

*Murphy v. Fullbright*,
  2012 WL 4754730 (S.D. Cal. 2012) ........................................................... 15

*Pickern v. Pier 1 Imports*,
  457 F.3d 963 (9th Cir. 2006) ....................................................................... 7

*Powell v. McCormack*,
  395 U.S. 486 (1996) ....................................................................................... 8

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ..................................................................... 4

*Sharp v. Islands Cal. Arizona LP*,
  900 F.Supp.2d 1101 (S.D. Cal. 2012) ........................................................ 7

*Stites v. Hilton Hotels Corp.*,
  2009 WL 4548351 (2009) ...................................................................... 14, 15

*Strother v. Southern Cal. Permanente Med. Group*,
  79 F.3d 859 (9th Cir. 1996)  .................................................................. 16, 17

*Tandy v. City of Wichita*,
  380 F.3d 1277 (10th Cir. 2004) ................................................................. 10

*Thurston v. FCA US LLC*,
  2018 WL 700939 (C.D. Cal. 2018) ............................................................. 5

*U.S. v. Days Inn of America*,
  1998 WL 461203 (E.D. Cal. 1998) ............................................................. 6

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ..................................................................... 8

*White v. Square, Inc.*,
  891 F.3d 1174 (9th Cir. 2018)  ................................................................... 17

*Wilkins-Jones v. Cty. of Alameda*,
  589 F.Supp.2d 1039 (N.D. Cal. 2012) ...................................................... 16

iii

**State Cases**

*Alcorn v. Anbro Engineering, Inc.*,
   2 Cal.3d 490 (1970) ........................................................................................... 16

*Californians for Disability Access Rights v. Mervyn's LLC*,
   165 Cal.App.4th 571 (2008) ........................................................................... 16

*Fiol v. Doellstedt*,
   50 Cal.App.4th 1318 (1996) ........................................................................... 14

*Harris v. Capital Growth Invs. XIV*,
   52 Cal.3d 1142 (1991), *superseded by statute on other grounds* ............................... 16

*Kuegel v. Encina-Pepper Tree*,
   2013 WL 9776871 (Santa Barbara County Superior Court March 26,
   2013 MSJ Order) ............................................................................................. 15

*Lindstrom v. Hertz Corp.*,
   81 Cal.App.4th 644 (2000) ........................................................................... 13

*Munson v. Del Taco, Inc.*,
   46 Cal.4th 661 (2009) ..................................................................................... 16

*Osborn v. Hertz Corp.*,
   205 Cal.App.3d 703 (2009) ........................................................................... 13

*Ruiz v. Musclewood Investment Properties, LLC*,
   28 Cal.App.5th 15 (2018) ......................................................................... 12, 13

*Salazar v. Diversified Paratransit, Inc.*,
   103 Cal.App.4th 131, 126 Cal. Rptr. 2d 475 (2002), *abrogated by statute* ............... 15

**Federal Statutes**

42 U.S.C. § 12131(2) ............................................................................................. 6

42 U.S.C. § 12181(7) ............................................................................................. 6

42 U.S.C. § 12182(a) ......................................................................................... 1, 6

**State Statutes**

Cal. Civil Code § 51 ............................................................................................. 16

Cal. Civil Code § 52(a) ................................................................................ 13

Cal. Civil Code § 54.3 ............................................................................ 12, 13

Cal. Vehicle Code §§ 21235(g), (i) .......................................................... 3, 11

**Rules**

FRCP 12(b)(1) ................................................................................................ 4

FRCP 12(b)(6) ................................................................................................ 4

**Regulations**

28 C.F.R. § 35.149 ......................................................................................... 6

28 C.F.R. § 35.150(a) .................................................................................. 11

## I.    INTRODUCTION

Plaintiffs seek to hold Lyft, Inc. ("Lyft"), and four other electric scooter rental companies, liable for the conduct of third-party riders who allegedly leave scooters in locations that occlude paths of travel on City of San Diego ("City") sidewalks.  Three scooter rental companies have already filed a motion to dismiss Plaintiffs' claims ("Scooter Defendants' Motion").  The arguments presented in the Scooter Defendants' Motion apply equally to Lyft and are succinctly summarized and minimally supplemented here, so as not to burden Plaintiffs and the Court with redundant briefing. The bulk of this Motion focuses instead on additional bases for dismissal of every claim against Lyft in Plaintiffs' First Amended Complaint ("FAC").

The FAC fails to present viable claims for relief and should be dismissed in its entirety for the following reasons.

Plaintiffs' Americans with Disabilities Act ("ADA") claim fails because Lyft does not own, operate, or lease the purported "place of public accommodation" to which Plaintiffs claim a denial of access.  Moreover, a sidewalk is not a "place of public accommodation" covered under Title III of the ADA, but is instead a service, program, or activity of the City of San Diego covered under Title II of the ADA, to which Lyft is not subject.  Plaintiffs' attempt to cobble together a claim fails.  The ADA's statutory language is clear and must be followed: "[a]n ADA claim is not viable unless the defendant 'owns, leases, or operates a place of public accommodation' to which the plaintiff was denied access."  (42 U.S.C. § 12182(a).)

Plaintiffs' ADA claim also fails because the injunctive relief sought—an order requiring Lyft to prevent riders from operating scooters on sidewalks or parking them in areas that occlude access—is already addressed by Lyft's existing policies and practices. As Lyft's policies and Terms of Service with riders make abundantly clear, Plaintiffs' allegation that Lyft "permits and/or recklessly enables" riders to leave scooters "anywhere the user may see fit" is false.  Because existing policies already provide for

1

any remedy Plaintiffs could seek from Lyft, Plaintiffs' ADA claim is moot, and the Court lacks subject matter jurisdiction.  To the extent Plaintiffs request that the City of San Diego enforce the California Vehicle Code, which prohibits the use of scooters on sidewalks and parking scooters in areas that occlude access, against third-party riders, that is an issue Plaintiffs must take up with the City.

Because Plaintiffs' ADA claim fails, so also do Plaintiffs' derivative California Disabled Persons Act ("DPA") and California Unruh Civil Rights Act ("Unruh Act") claims.  Those claims fail because the FAC does not allege Lyft engaged in conduct that gives rise to liability under the state statutes.  Whereas the ADA limits liability to specified covered entities, *i.e.*, owners, operators, lessors, and lessees, DPA liability extends to those whose conduct creates a denial of, or interference with, access.  The only conduct alleged in Plaintiffs' FAC that conceivably violates the DPA is that of third-party scooter riders.  Because the DPA and Unruh Act do not impose vicarious liability, Plaintiffs' DPA and Unruh Act claims against Lyft fail.  There is also no independent violation of the Unruh Act because the FAC does not allege that Lyft engaged in any intentionally discriminatory conduct or that Plaintiffs ever patronized or sought to patronize Lyft's business, as required under the Unruh Act.

For these reasons, and as set forth below and in Scooter Defendants' Motion and Reply, Plaintiffs' FAC should be dismissed with prejudice.

## II.    THE FAC'S ALLEGATIONS AND CLAIMS

Plaintiffs are mobility and visually impaired individuals who allege they have been denied the full and equal enjoyment of city sidewalks.  (FAC ¶ 1.)  They allege that the individuals who rent scooters from Lyft ("riders") ride scooters on sidewalks and leave scooters in locations that occlude Plaintiffs' access to sidewalks.  (FAC ¶¶ 2-3.)

Plaintiffs seek to hold Lyft and four other scooter rental companies liable on claims for: (1) violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; (2) violation of California's Unruh Civil Rights Act, Civil Code § 51, *et seq.*; (3)

and violation of California's Disabled Persons Act, Civil Code § 54, *et seq.*[1]  (FAC ¶¶ 18-23, 87-97, 117-136.)  Plaintiffs also allege claims against the City of San Diego under the Unruh Act and DPA, as well as Title II of the ADA, the Rehabilitation Act, California Government Code § 4450, and California Health & Safety Code § 11135.  (FAC ¶¶ 62-86, 98-136.)  Plaintiffs seek to maintain their claims on behalf of a putative class comprised of all mobility and visually impaired individuals who have allegedly been denied access to San Diego sidewalks.  (FAC ¶¶ 52-60.)

Plaintiffs do not allege that any one of them ever personally encountered a Lyft scooter that occluded their access.  (FAC ¶¶ 12-15.)  Rather, they generally allege that on various occasions, they encountered a scooter that a rider parked in a manner that occluded access.  (*Id.*)  The scooter rental company to whom the particular scooter belonged on such occasions is not specifically alleged.  (*Id.*)

As to wrongful conduct attributed to Lyft, the FAC alleges such conduct consists of: (1) renting scooters (FAC ¶ 31); and (2) "permit[ting] and/or recklessly enable[ing]" riders to leave scooters "anywhere the user may see fit" (FAC ¶ 36).  Plaintiffs do not allege that Lyft itself engages in any alleged violation of the ADA, Unruh Act, or DPA, other than renting scooters to riders.  There are no allegations that Lyft stages or deploys its scooters in a manner that occludes access.  (*See generally* FAC.)  Rather, Plaintiffs attempt to hold Lyft vicariously liable for the alleged conduct of third-party riders and for breaching a purported duty to control these third parties.  (*Id.*)  Furthermore, the FAC acknowledges that the California Vehicle Code prohibits riders from operating Lyft's scooters on sidewalks or leaving them in areas that occlude access.[2]  (FAC ¶ 35.)

---

[1] /    The FAC also alleges a claim for violation of California Health & Safety Code § 11135.  However, Plaintiffs abandoned this claim by indicating in their opposition to Scooter Defendants' Motion that "Plaintiffs choose not to pursue this claim further."

[2] /    Section 21235(g) of the Vehicle Code prohibits riders from riding scooters on sidewalks except as may be necessary to enter or leave adjacent property.  Section 21235(i) prohibits riders from leaving a scooter lying on its side on a sidewalk or parking a scooter on a sidewalk in a manner that blocks the path of travel.

3

III.   **ARGUMENT**

A.   **FRCP 12(b)(1) and 12(b)(6)**

FRCP 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. "'The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction by requiring . . . that plaintiffs have standing and that claims be 'ripe' for adjudication.'" (*Brooke v. Kalthia Group Hotels*, 2015 WL 7302736, at *2 (S.D. Cal. 2015) (citations omitted).) Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). (*Id*.) Rule 12(b)(1) jurisdictional attacks can be either facial or factual. "In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction." (*Id*.)

"Under a factual attack, the allegations in the complaint are not presumed to be true, and 'the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.'" (*Id*. (citations omitted).) "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" (*Id*.) The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. (*Id*.; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).)

By contrast, Rule 12(b)(6) tests the legal sufficiency of a plaintiff's allegations. (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) Accepting all factual allegations as true and disregarding any implausible or conclusory assertions, the complaint must "raise a right to relief above the speculative level." (*Id*. at 555.) A Rule 12(b)(6) motion must be granted unless the plaintiff alleges "enough facts to state a claim for relief that is plausible on its face." (*Kormylo v. Forever Resorts, LLC*, 2015 WL

4

106379 (S.D. Cal. 2015).)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)

Under these settled standards, Plaintiffs' claims must be dismissed in their entirety.

## B.    Plaintiffs' ADA Claim Fails

### 1.    Lyft Does Not Own, Operate, or Lease the Public Service, Benefit, or Activity to Which Plaintiffs Claim a Denial of Access and Plaintiffs Do Not Allege Any Denial of Access to a Good or Service Offered by Lyft

Plaintiffs allege a denial of access *to sidewalks*.  Lyft does not own, operate, or lease *sidewalks*.  The law is clear that "[a]n ADA claim is not viable unless the defendant 'owns, leases, or operates a place of public accommodation' to which the plaintiff was denied access." (*Thurston v. FCA US LLC*, 2018 WL 700939, at *4 (C.D. Cal. 2018).) Accordingly, and as Scooter Defendants' briefing in their pending motion to dismiss makes clear, Lyft does not face liability on Plaintiffs' ADA claim.  Lyft incorporates by reference those points and authorities, and supplements them briefly as follows.

Plaintiffs in ADA cases have often unsuccessfully tried to hold various persons or entities tangentially connected to alleged discriminatory practices liable under the ADA even though the person or entity does not own, operate, or lease the place of public accommodation to which the plaintiff claims a denial of access.  For example, ADA plaintiffs have sought to hold architects liable when buildings they designed contained structural access barriers.  The Ninth Circuit rejects such attempts because architects do not own, operate, or lease the buildings they design.  (*Lonberg v. Sanborn Theaters Inc.*, 259 F.3d 1029, 1036 (9th Cir. 2001) (granting of motion to dismiss affirmed; "We therefore hold that only an owner, lessee, lessor, or operator of a noncompliant public accommodation can be liable under Title III of the ADA . . . .").)

Similarly, ADA plaintiffs often seek to hold franchisors liable under the ADA when they encounter various barriers to access at hotels or restaurants.  The Ninth Circuit

5

has rejected such claims, finding that because Title III of the ADA does not refer to entities that exert "control" over access violations, liability is limited to those entities specifically listed—owners, operators, lessors, and lessees.  (*See, e.g.*, *U.S. v. Days Inn of America*, 1998 WL 461203, *4 (E.D. Cal. 1998) (concluding that these entities are in the best position to ensure accessibility, even though others are tangentially connected to the alleged violations.  "Indeed, if Congress meant to impose liability on entities which influence discriminatory activity, it could have used [different language].").)

By the same token, a product manufacturer that designs an inaccessible product does not face liability when a place of public accommodation offers that product on the market, because the manufacturer does not own, operate, or lease that place of public accommodation.  (*Funches v. Barra*, 2016 WL 2939165, at *3 (S.D.N.Y. 2016) (granting motion to dismiss because "the Amended Complaint does not allege any facts suggesting that the GM Defendants or the Mercedes Defendants were 'own[ers], le[ssors] . . . , or operat[ors]' of either [car] dealerships, rather than suppliers who provided goods for the dealerships to sell").)

In sum, the ADA's plain language compels dismissal of Plaintiffs' ADA claim. The ADA, 42 U.S.C. § 12182(a), prohibits discrimination in the "full and equal enjoyment of the *goods [or] services* . . . of a place of public accommodation by any person who *owns, leases (or leases to), or operates* a place of public accommodation." (Emphasis added.)  The sidewalks of San Diego are the purported "public accommodation" at issue to which Plaintiffs claim a denial of access,[3] and Lyft does not

---

[3] /   As Scooter Defendants' Motion makes clear, contrary to Plaintiffs' allegation, a sidewalk is not a "place of public accommodation" under Title III of the ADA.  Indeed, Title III of the ADA specifically defines the places of public accommodation to which it applies, and says nothing about sidewalks.  (42 U.S.C. § 12181(7).)  Instead, as the FAC (contradictorily) alleges, a sidewalk is covered by Title II of the ADA, which applies to services, programs, and activities of public entities such as the City of San Diego.  (FAC ¶ 68; 42 U.S.C. § 12131(2); 28 C.F.R. § 35.149; *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002) (holding that public sidewalks are a service, program, or activity of the city, subject to accessibility regulations under Title II of the ADA and the

own, operate, or lease public sidewalks.  Nor is there any allegation in the FAC that there was any denial of access to "goods [or] services" of Lyft's business.  Thus, there can be no liability against Lyft under the clear wording of the ADA.  (*See also Sharp v. Islands Cal. Arizona LP*, 900 F.Supp.2d 1101, 1108 (S.D. Cal. 2012) ("The Court agrees that a defendant is not liable for an alleged barrier on property [a parking lot] that it does not own or control."); *Pickern v. Pier 1 Imports*, 457 F.3d 963, 966-68 (9th Cir. 2006) (Pier 1 did not face liability for alleged access violations on public property it did not own, operate, or lease).)

### 2.   Plaintiffs' ADA Claim, Subject to Factual Attack, Fails

The only relief available to private plaintiffs under the ADA is injunctive relief. (*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).)  Plaintiffs have indicated that the injunctive relief they seek is comprised of two parts.  (Declaration of Eden Anderson ¶ 2.)  They seek an order requiring Lyft to (1) preclude riders from operating scooters on sidewalks or parking them in areas that occlude access, and (2) cease staging or deploying scooters on sidewalks.  Yet Lyft already has in place policies that prohibit riders from using scooters on sidewalks, and which require riders to park scooters in places that will not occlude access.  Consequently, the first component of the relief that Plaintiffs seek already exists, and that aspect of Plaintiffs' ADA claim is moot. As to the second component of injunctive relief sought, such relief cannot be obtained because the mere staging or deployment of a scooter on a sidewalk is not an ADA violation, and because the FAC does not allege that Plaintiffs were ever denied access to a sidewalk attributable to this activity.  For these reasons, Plaintiffs' ADA claim fails.

---

Rehabilitation Act).)  Plaintiffs' ADA claim fails for the additional reason that Lyft cannot be subject to liability under Title II for any reason, let alone for purportedly failing to maintain accessible public sidewalks.

### a.   Because the Relief Sought Is Already Addressed by Lyft's Existing Policies, Plaintiffs' ADA Claim Is Moot

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (*Powell v. McCormack*, 395 U.S. 486, 496 (1996).) "Because . . . mootness . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [mootness is] properly raised in a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) . . . . . " (*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).)

As Lyft's evidence establishes, its policies, all of which predate the initiation of this lawsuit, already explicitly prohibit scooters from being ridden on sidewalks and prohibit riders from parking scooters in any manner that occludes access. (Declaration of Kyle Zuvella ("Zuvella Dec.") ¶¶ 2-7 , Ex. A-D.)

For example, FAQs for riders state:

**Where can I ride the scooters?**
. . . You must ride in the street, on bike paths, or in bike lanes - not on sidewalks or the Mission Beach/Pacific Beach Boardwalk.

**Where can I park the scooter?**
- Please ensure the scooter is parked upright.
- Be mindful of others when parking your scooter - use bike racks or park by the curb at all times.
- . . . Do not block sidewalks, pathways, or wheelchair ramps.

**What are the safety requirements for Lyft Scooter rides?**
. . . Follow the rules of the road, including all motor-vehicle laws of the City of San Diego.

(Zuvella Dec. ¶¶ 2-3, Ex. A.)

Lyft scooters also have printed messages affixed to the top of the scooter, facing riders at all times, that reiterate the aforementioned rider policies. (Zuvella Dec. ¶ 4, Ex. B.) Such messages read, both in English and in Spanish, "Obey all traffic laws," "Yield to Pedestrians," and "Do not ride on the sidewalk." (*Id.*)

8

To emphasize these policies further, when riders first book a ride on the Lyft platform, they must acknowledge and click through the following push notifications in the app: "Always ride in the bike lanes when available and on the street.  Don't ride on sidewalks"; "Follow your local traffic laws - they apply to cars, bikes, and yep: scooters"; "Park responsibly **-** Be mindful of others when parking - use bike racks or park by the curb at all times"; "Don't block sidewalks, pathways, or ADA ramps."  (Zuvella Dec. ¶ 5, Ex. C.)

In addition to these scooter policies and Lyft's Terms of Service for riders, the rental agreement between Lyft and riders provides, in relevant part:

1.6.  Product May be Used and/or Operated only in Permitted Areas.  You agree to only use, operate, and/or ride the Product in permitted areas as defined by law and Lyft's policies.

1.7  You Must Follow Laws Regarding Use and/or Operation of Product.  You agree to follow all laws pertaining to the use, riding, parking, charging and/or operation of the Product, including all state and local laws and the rules and regulations pertaining to the Products in the area where you are operating the product, including any helmet laws.

1.8  Prohibited Acts.  YOU EXPRESSLY CERTIFY AND AGREE THAT YOU WILL NOT:

- Operate any Product in violation of any laws, rules, regulations, and/or ordinances, including any and all rules pertaining to the riding of Products on sidewalks and/or parking Products.

- Park any Product in a manner that does not strictly comply with all applicable laws, rules, regulations, and/or ordinances.  You expressly agree that you are responsible with becoming familiar with any and all applicable laws, rules, regulations, and/or ordinances in the location that you are operating the Product.

1.9  Product is Intended for Only Limited Types of Use. . . . You agree you will not operate and/or use the Product . . . in any location that is prohibited, illegal and/or a nuisance to others. . . .

(Zuvella Dec. ¶ 6, Ex. D.)

9

1        Given these policies and Terms of Use, Plaintiffs' ADA claim is moot to the extent

2 it seeks an order requiring Lyft to preclude riders from riding scooters on City sidewalks

3 or from parking scooters in ways that occlude access. (*Brooke, supra,* 2015 WL

4 7302736, at *8 (granting factual attack motion to dismiss where defendant already

5 installed a pool lift, which was the relief plaintiff sought under the ADA); *Butler v.*

6 *WinCo Foods, LLC*, 2013 WL 12076011, at *4 (C.D. Cal. 2013) (where grocery store

7 implemented an exception to its service animal policy to accommodate plaintiff and

8 affirmed it would not revoke the exception, plaintiff's ADA claim was moot); *Tandy v.*

9 *City of Wichita,* 380 F.3d 1277, 1291 (10th Cir. 2004) ("This evidence establishes that

10 both Wichita Transit's policy of designating routes as inaccessible and its driver-

11 discretion policy have been discontinued. Nothing in the record suggests that Wichita

12 Transit intends to resume its discontinued policies if this case is dismissed as moot.");

13 *Moore v. Greyhound Bus Lines, Inc*., 2019 WL 1283939, at *8 (S.D. Cal. 2019)

14 ("Greyhound is already complying with the requirements of Title III and has revised its

15 policies, practices and its implementing regulations. Therefore, the Court is left with the

16 inescapable conclusion" that plaintiffs' ADA claim is moot.).)

17        Here, it is clear that Plaintiffs' allegations of wrongful behavior attributed to Lyft

18 —"permit[ting] and/or recklessly enabl[ing]" riders to leave scooters "anywhere the user

19 may see fit" and "adopt[ing] and [not enforcing] appropriate policies"—are false. Lyft

20 has in place clear policies that prohibit riders from leaving scooters in locations that

21 occlude access.

22        Plaintiffs may argue in response that riders disregard these policies. But Plaintiffs

23 do not allege in their FAC how Lyft can conceivably exert control over the conduct of

24 third-party riders (much less how any purported failure subjects Lyft to liability under the

25 ADA), or any basis for such a supposed duty. The entity with such a duty is the City of

26 San Diego which could readily enforce the above-noted provisions of the Vehicle Code,

27 *i.e*., prohibitions against riders parking scooters on sidewalks in ways that occlude access,

28

and prohibitions against riding scooters on sidewalks.  (Cal. Vehicle Code §§ 21235(g), (i).)  That, after all, is what the City does when the driver of a rental car violates the Vehicle Code, for example, by parking in spaces designated for persons with disabilities without a disability access placard or license plate, parking in a manner that occludes an access aisle, or driving in restricted areas or at excessive speeds.  If the violation is not directly addressed with the driver and a citation issued on the spot, the City contacts the rental company, identifies the driver, and issues a citation to the driver *post hoc*.

Because the only relief that Plaintiffs seek from Lyft already exists, Plaintiffs' ADA claim is moot.

> **b.**  **The ADA Does Not Prohibit the Staging or Deployment of a Scooter on a Sidewalk and Plaintiffs Do Not Allege They Ever Encountered a Lyft Scooter Staged or Deployed in a Manner That Occluded Access**

The second component of injunctive relief that Plaintiffs seek is an order enjoining Lyft from staging or deploying its scooters on sidewalks generally.  Plaintiffs, however, cannot obtain injunctive relief against conduct that does not violate the ADA, and a scooter on a sidewalk does not.[4]  More importantly, Plaintiffs' FAC does not even allege that Lyft has ever staged or deployed its scooters in any way that denied Plaintiffs use and enjoyment of any sidewalk.  Rather, the FAC is focused on alleged injuries caused by third-party riders and their parking habits.  Without any such alleged injury attributable to Lyft, there is no harm to redress.  (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (for a plaintiff to have standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the

---

[4] /   The City must, under 28 C.F.R. § 35.150(a), "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."  However, if a scooter is in a location that does not occlude access to, or use of, the sidewalk, then there is no Title II violation.

1    challenged action of the defendant, and not . . . th[e] result [of] the independent action of
2    some third party not before the court.'").)

3          In sum, Plaintiffs' ADA claim fails because Lyft does not own, operate, or lease
4    the sidewalks to which Plaintiffs claim a denial of access, and sidewalks are not covered
5    by Title III in any event.  Additionally, even if Plaintiffs had a viable ADA claim, the
6    injunctive relief they seek is moot, and seeks redress for conduct that is not a violation of
7    the ADA, and for alleged injuries that are not attributable to Lyft.  The Court should
8    dismiss Plaintiffs' claim for violation of Title III of the ADA.

9          **C.    Plaintiffs' DPA Claim Fails**

10               **1.    Lyft Does Not Face Vicarious Liability Under the DPA for the
                        Conduct of Third-Party Scooter Riders**

12         The ADA limits liability to specified covered entities (*i.e.*, owners, operators,
13   lessors, and lessees).  In contrast, the DPA limits liability to those whose conduct creates
14   a denial of, or interference with, access.  The DPA, California Civil Code § 54.3, imposes
15   liability on "any person . . . or corporation who *denies or interferes with* admittance to or
16   enjoyment of the public facilities as specified in Section 54 and 54.1," which include
17   sidewalks and public walkways.  (Emphasis added.)  The only conduct alleged in
18   Plaintiffs' FAC that conceivably violates the DPA is that of third-party riders.  Because
19   the DPA does not impose vicarious liability, and, indeed, Plaintiffs do not allege such a
20   theory of liability in the FAC, Plaintiffs' DPA claim fails.

21         In their opposition to Scooter Defendants' Motion, Plaintiffs cited *Ruiz v.
22   Musclewood Investment Properties, LLC*, 28 Cal.App.5th 15 (2018), suggesting it
23   supports their DPA claim.  In *Ruiz,* the defendant had a guard dog that it took no action to
24   restrain.  (*Id.* at 18-19.)  The guard dog attacked the plaintiff's guide dog on numerous
25   occasions when it passed by, denying the plaintiff the ability to use an adjacent sidewalk
26   and traumatizing the guide dog.  (*Id*. at 19.)  In finding the plaintiff had sufficiently
27   alleged the requisite "interference" with his rights as an individual with a disability to

28

enjoyment of public facilities under Section 54.3 due to the guard dog's attacks, the court by extension found that the defendant could face liability for *its own conduct* in *failing to take any steps to control* its guard dog (which was readily accomplished).  (*Id.* at 21-22.) The case does not support imposition of DPA liability against Lyft, and is distinguishable, for two reasons.

First, other than renting scooters, Plaintiffs do not allege any conduct on Lyft's part that has caused their alleged harm.  Rather, the alleged wrongful conduct at issue is that of riders who, contrary to Lyft policies and the California Vehicle Code, allegedly ride scooters on sidewalks or leave scooters in locations that occlude sidewalk access. Plaintiffs do not have a viable DPA claim against Lyft because the DPA does not provide for vicarious liability and, even if it did, Plaintiffs have not alleged any theory upon which Lyft could conceivably be held vicariously liable for the conduct of scooter riders.

Second, the *Ruiz* defendant took no action whatsoever to control the guard dog, when doing so was its duty, and something that could be accomplished with relative ease. By contrast, here, just like any company that rents vehicles, there is no duty to control third parties who drive or ride those vehicles, nor is there a realistic way for Lyft to ensure that riders follow the Vehicle Code.  (*See, e.g.*, *Osborn v. Hertz Corp.*, 205 Cal.App.3d 703, 713 (2009) (holding that a car rental company owes no duty to ensure a renter drives the vehicle sober); *Lindstrom v. Hertz Corp.*, 81 Cal.App.4th 644 (2000) (holding that a car rental company had no duty to provide a foreign driver with a copy of the rules of the road).)  At best, such companies can remind drivers or riders of their obligations to follow the law, which Lyft already does at great lengths.

Although there is a dearth of case law under the DPA, case law construing both the DPA and Unruh Act confirm that Lyft does not, as a matter of law, face liability under either.[5]  (*Independent Housing Svcs. of San Francisco v. Fillmore Ctr. Assocs.*, 840

---

[5] /   Like the DPA, liability under the Unruh Act is tied to the defendant's own wrongful conduct.  Civil Code § 52(a) imposes liability upon "[w]hoever denies, aids, or incites a denial, or makes any discrimination or distinction . . . ."  "Mere knowledge that a

13

F.Supp. 1328, 1353-56 (N.D. Cal. 1993); *Stites v. Hilton Hotels Corp.*, 2009 WL 4548351 (2009); *Doe v. John F. Kennedy Univ.*, 2013 WL 4565061 (N.D. Cal. 2013).)

In *Fillmore*, the defendant sold land to a developer/owner and reviewed and approved schematic drawings and preliminary construction documents for a housing project which, when built, contained access violations. (*Id.* at 1332.) The contract between the defendant and the land owner required the owner to comply with all applicable laws. (*Id.* at 1353.) One issue in the case was whether the defendant faced liability under the Unruh Act or DPA for the access violations. (*Id.*) Plaintiffs asserted that the defendant had a duty to ensure the housing project was designed and constructed so as not to discriminate against the disabled. (*Id.*)

The court held that there was no such duty because the defendant, having sold the property, did "not own, lease, or operate [the housing project] and did not design or construct it." (*Id.* at 1354.) As *Fillmore* makes clear, an entity not subject to ADA liability, and which otherwise did not deny, or interfere with, access is not liable under the DPA.

This same point was made by the California Court of Appeal in *Stites v. Hilton Hotels Corp.*, 2009 WL 4548351 (2009). Although the opinion is unpublished, given the dearth of case law under the DPA, it remains instructive. At issue in *Stites* was whether a hotel franchisor that did not itself engage in any conduct to cause the access violation in issue could face liability under the Unruh Act. The court held that because the franchisor did not "own, operate, or control the hotel . . . it cannot be held vicariously liable for the actions of the third-party franchisee." (*Id.* at *4.)

The plaintiff in *Doe v. John F. Kennedy Univ.*, 2013 WL 4565061 (N.D. Cal. 2013) ("*JFK*"), a student with a learning disability, alleged her professors and university denied her various accommodations in the classroom and test-taking context. (*Id.* at **1-

tort is being committed and the failure to prevent it does not constitute aiding and abetting. 'As a general rule, one owes no duty to control the conduct of another . . . .'" (*Fiol v. Doellstedt*, 50 Cal.App.4th 1318 (1996).)

14

2.) In addition to suing the university and professors, the plaintiff sought to hold the Chancellor and an affiliated National University system liable under the Unruh Act, not because they engaged in any discriminatory conduct themselves but because they allegedly exerted control and could have taken steps to remedy the alleged wrong. (*Id*.) The court rejected this theory and dismissed the Unruh Act claim, finding the complaint's allegations of control conclusory and concluding there was no basis for either direct or vicarious liability. (*Id*. at **6-7.)

As *Fillmore, Stites, and JFK* make clear, California's disability access laws do not impose liability unless a defendant itself engages in the discriminatory conduct alleged, or exerts control over the person or entity that does. (*See also Kuegel v. Encina-Pepper Tree*, 2013 WL 9776871 (Santa Barbara County Superior Court, March 26, 2013 MSJ Order) (for a defendant to face liability under the Unruh Act or DPA, the defendant must itself have committed the violation or aided and abetted it); *Murphy v. Fullbright*, 2012 WL 4754730 (S.D. Cal. 2012) (holding that plaintiff's complaint was devoid of any allegations suggesting that the defendant could be held vicariously liable for alleged DPA and Unruh Act violations of another person and dismissing the complaint).)

In sum, the DPA (like the Unruh Act) says nothing about vicarious liability, but instead specifies those who may be held directly liable for discrimination based on their own conduct. (*See also Salazar v. Diversified Paratransit, Inc.*, 103 Cal.App.4th 131 (2002), *abrogated by statute* (employers are not vicariously liable for harassment perpetrated by customers/clients; the court will "not rewrite the statute to include what the Legislature omitted").) Here, Plaintiffs' FAC alleges that the conduct of scooter riders interfered with, or denied them, access to city sidewalks. Because the DPA does not provide for vicarious liability, and because Plaintiffs cannot conceivably allege facts that would support imputing riders' conduct to Lyft, there is no violation of the DPA.

**2.     There Is No DPA Liability Because Plaintiffs Have No Viable ADA Claim**

As Scooter Defendants highlighted in their Motion, the only other way to establish a violation of the DPA is if an ADA violation exists.  (*See*, *e.g.*, *Californians for Disability Access Rights v. Mervyn's LLC*, 165 Cal.App.4th 571, 587-91 (2008).)  Because Plaintiffs do not have a viable ADA claim, their DPA claim fails.

**D.     Plaintiffs Fail to State an Unruh Act Claim Because They Have No Viable ADA Claim and Because They Do Not Allege That Lyft Engaged in Any Intentional Discrimination or That They Ever Sought to or Actually Patronized Lyft's Business**

As Scooter Defendants argued in their Motion, liability under the Unruh Act exists only if there is a violation of the ADA, or intentional discrimination.  (Cal. Civil Code § 51; *Munson v. Del Taco, Inc*., 46 Cal.4th 661, 671-72 (2009).)  Intentional discrimination requires "willful, affirmative misconduct on the part of" the defendant.  (*Harris v. Capital Growth Invs. XIV*, 52 Cal.3d 1142, 1172 (1991), *superseded by statute on other grounds*.)  Because Plaintiffs' ADA claim fails, and because they do not and cannot allege that Lyft has engaged in any willful, affirmative discriminatory conduct, their Unruh Act claim should be dismissed as well.  (*See*, *e.g*., *Wilkins-Jones v. Cty. of Alameda*, 589 F.Supp.2d 1039, 1053 (N.D. Cal. 2012) (dismissing Unruh Act claim because plaintiff's allegations were insufficient to reasonably infer discriminatory intent).)

Plaintiffs' Unruh Act claim also fails because the FAC does not allege that Plaintiffs actually patronized Lyft's business or unsuccessfully sought to do so.  As the California Supreme Court recognized in *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 490, 500 (1970), the Unruh Act was not intended "to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers."  Indeed, "Unruh Act claims [are] appropriate where the plaintiff was in a relationship with the offending organization similar to that of a customer-proprietor relationship . . . ."  (*Strother v. Southern Cal.*

16

*Permanente Med. Group*, 79 F.3d 859 (9th Cir. 1996).)  Moreover, California law is clear that to have standing to maintain an Unruh Act claim, the plaintiff must have either patronized the defendant's business, or sought to do so and been denied access.  (*White v. Square, Inc*., 891 F.3d 1174, 1182-83 (9th Cir. 2018) (citing and analyzing California cases).)  Because Plaintiffs do not allege that they ever patronized Lyft's business and were discriminated against, or sought to do so and were denied access, Plaintiffs fail to state a claim for relief under the Unruh Act.

## IV.  CONCLUSION

Lyft respectfully requests that the Court dismiss each of Plaintiffs' claims asserted against it with prejudice.  Plaintiffs' ADA claim fails as a matter of law based upon the plain statutory language of the ADA, which limits liability to owners, operators, lessors, or lessees of the place of public accommodation to which the plaintiff claims a denial of access.  Lyft does not own, operate, or lease city sidewalks.  In any event, sidewalks are not even places of public accommodation covered under Title III but are instead services, programs, or activities under Title II.  The ADA claim also fails because the injunctive relief Plaintiffs seek from Lyft is already addressed by Lyft's existing policies and contract with riders.  Plaintiffs' DPA and Unruh Act claims fail because there is no underlying ADA violation, and because the FAC fails to allege that Lyft engaged in any conduct that violates the DPA or Unruh Act, and does not allege that Plaintiffs ever patronized or sought to patronize Lyft's business.

DATED:  June 3, 2019                          SEYFARTH SHAW LLP


                                             By:  */s/ Kristina M. Launey*
                                             Kristina M. Launey
                                             Myra B. Villamor
                                             Eden Anderson
                                             Attorneys for Defendant
                                             LYFT, INC.

17