1  Michael I. Neil, SBN 40057
   mneil@neildymott.com
2  Robert W. Frank, SBN 95392
   rfrank@neildymott.com
3  Matthew R. Souther, SBN 227910
   msouther@neildymott.com
4  Phillip E. Stephan, SBN 283818
   pstephan@neildymott.com
5  NEIL, DYMOTT, FRANK, McCABE & HUDSON
   A Professional Law Corporation
6  110 West A Street, Suite 1200
   San Diego, CA 92101
7  **P** 619.238.1712
   **F** 619.238.1562
8
   *[Additional counsel listed on following page]*
9
   Attorneys for ALEX MONTOYA, REX SHIRLEY,
10 PHILIP PRESSEL, and AARON GREESON
   On Behalf of the Plaintiff Class
11
12              **UNITED STATES DISTRICT COURT**
13            **SOUTHERN DISTRICT OF CALIFORNIA**

14 ALEX MONTOYA, REX SHIRLEY,          )   Case No. 3:19-cv-00054-JM-BGS
   PHILIP PRESSEL, and AARON           )
15 GREESON, individually, and on behalf )  **MEMORANDUM IN SUPPORT**
   of all others similarly situated,    )  **OF PLAINTIFFS' OPPOSITION**
16                                      )   **TO DEFENDANT LYFT'S**
                   Plaintiffs,          )   **MOTION TO DISMISS FIRST**
17                                      )   **AMENDED CLASS ACTION**
   vs.                                  )   **COMPLAINT**
18                                      )
   CITY OF SAN DIEGO, a public entity,  )
19 BIRD RIDES, INC., a Delaware         )   Judge:  Honorable Jeffrey T. Miller
   corporation, d/b/a BIRD; NEUTRON     )   Courtroom:  5D (Schwartz)
20 HOLDINGS, INC., a Delaware           )   Magistrate Judge:
   corporation, d/b/a LIME; WHEELS      )   Honorable Bernard G. Skomal
21 LABS, INC., a Delaware Corporation,  )   12th Floor (Carter/Keep)
   UBER TECHNOLOGIES, INC., a           )
22 Delaware corporation, d/b/a JUMP,    )
   LYFT, INC.; RAZOR USA, LLC, a        )
23 California corporation; and DOES 1-  )
   100,                                 )
24                                      )
                                        )
25                 Defendants.          )
   _____)
26
27
28

   Case No. 3:19-cv-00054-JM-BGS

Ann E. Menasche, SBN 74774
Ann.menasche@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA 92101
Telephone:  (619) 239-7861/Fax:  (619) 239-7906

Ben Conway, SBN 246410
Ben.conway@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone:  (213) 213-8000/Fax:  (21**3**) 213-8001

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION           Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

# CONTENTS[1]

I.    INTRODUCTION ..................................................................................... 9

II.   RELEVANT ALLEGATIONS IN FIRST AMENDED COMPLAINT ...... 10

III.  ARGUMENT ......................................................................................... 11

    A.   Legal Standard Under 12(b)(1)                                            11

    B.   Legal Standard Under 12(b)(6)                                            11

    C.   Jurisdiction is Proper Under the Americans with Disabilities
        Act                                                                      12

    D.   The Rare Remedy of Jurisdictional Dismissal is Inappropriate
        In This Case, Which Arises Under Federal Statutes with
        Substantive Issues Intertwined with Any Question on
        Jurisdiction                                                             13

    E.   Title III is Properly Pled as Lyft Conducts the Affairs of a
        Rental Store, Using San Diego's Sidewalks to Offer, Display,
        and Store Rental Vehicles; Architectural Barriers Are Broadly
        Defined                                                                  14

        1.   ADA Regulations on Architectural Barriers Prioritize
            Access To and From A Facility from the Public Rights of
            Way, and Access Within ........................................................ 14

        2.   Plaintiffs Plead That Lyft Conducts the Affairs of a
            Dockless Vehicle Rental Store, Satisfying the "Operate"
            Definition of Title III ............................................................ 16

            a.   Lyft Operates a Place of Public Accommodation on San Diego's
            Sidewalks, Where Lyft Offers, Displays, and Stores Rental Vehicles
               16

            b.   Public Property Operated for Private Purposes May be a Place of
            Public Accommodation ........................................................ 18

        3.   Removal of Architectural Barriers is Alleged to be
            Readily Achievable, as the Dockless Vehicle Defendants,
            Including Lyft, Do Not Require the Use of the Public
            Rights of Way to Operate a Vehicle Rental Business ............. 20

            a.   "Readily Achievable" is a Fact-Intensive Inquiry Rarely
            Appropriate for Summary Judgment, Let Alone the Pleading Stage . 21

            b.   Any Modification Requested (or Removal of Barriers) Would Not
            Fundamentally Alter A Vehicle Rental Business ............................. 22

        4.   Plaintiffs' Allegations Under Title III Ask for Removal
            of Architectural Barriers; Plaintiffs Were Not Required to

---

[1] Numbering begins on the cover page so that the Tables align with the PDF pages. The memorandum is under 25 pages, not counting cover pages, the tables of contents and authorities, and the signature page.

Engage in a Futile Gesture of Asking Dockless Vehicle Companies to Remove Such Barriers ........................................ 23

F.   Plaintiffs Allege Awareness of Alleged ADA Violations Because of Existing and Continuing Non-Compliance and Allege These Violations Deter Patronage and Otherwise Interfere with Access,  Establishing Actual and Imminent Injury That is Capable and Likely to Reoccur                              24

1.   Plaintiffs Establish Standing Through Allegations of Deterrence ................................................................... 24
2.   Plaintiffs Have Standing to Allege ADA Violations When They Are Among the Injured ........................................ 25
3.   Lyft's Own User Agreements Contradict Lyft's Attempted "Factual" Attack – That Attack Consists of Subjective Interpretations, Not Facts ....................................... 26
4.   Mootness, a Heavy Burden, Has Not Been and Cannot be Proven by User Agreements, as Plaintiffs Plead for Removal of Architectural Barriers ............................................ 28
5.   Standing is Already Established, As Is a Real and Immediate Threat of Repeated Injury ................................... 29

G.   Plaintiffs Have Stated Causes of Action under the DPA and Unruh Acts                              30

H.   Plaintiffs Are Actual Victims Under the Unruh Act          31

IV.   CONCLUSION ............................................................................. 32

**Cases**

*Angelucci v. Century Supper Club*,
    41 Cal.4th 160 (2007) ...................................................................................32

*Arnold v. United Artists Theatre Circuit, Inc.*,
    866 F.Supp. 433 (N.D. Cal. 1994) ...............................................................32

*Baughman v. Walt Disney World Co.*,
    685 F.3d 1131 (9th Cir. 2012) ......................................................................23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................11, 12

*Bell v. Hood*,
    327 U.S. 678 (1946) ...............................................................................13, 14

*Botosan v. Paul McNally Realty*,
    216 F3d 827 (9th Cir. 2000) ........................................................................32

*Brooke v. Kashl Corp.*,
    362 F. Supp. 3d 864 (S.D. Cal. 2019) .........................................................27

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987) .....................................................................................11

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) ...........................................................17, 26, 29

*Coronado-Durazo v. Immigration and Naturalization Service*,
    123 F. 3d 1322 (9th Cir. 1997) ....................................................................30

*Delil v. El Torito Restaurants, Inc.*,
    1997 WL 714866 (N.D. Cal. June 24, 1997) ...............................................23

*Dep't of Fair Employment & Hous. v. Law Sch. Admission Council Inc.*,
    896 F. Supp. 2d 849 (N.D. Cal. 2012) ........................................................31

*Disability Rights Action Committee vs. Las Vegas, Inc.*,
    375 F. 3d 861 (9th Cir. 2004) ................................................................18, 19

*Doran v. 7–Eleven, Inc.*,
    524 F.3d 1034 (9th Cir.2008) ................................................................13, 25

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ...................................................................26, 32

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983) .......................................................................11, 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ..........................................................................28

*Jankey v. Twentieth Century Fox Film Corporation*,
    14 F.Supp.2d 1174 (C.D.Ca.1998) ....................................................23

*Kohler v. CJP, Ltd.*,
    818 F. Supp. 2d 1169 (C.D. Cal. 2011)..............................................11

*Lentini v. Cal. Ctr. For the Arts, Escondido*,
    370 F. 3d 837 (9th Cir. 2004) .....................................................18, 31

*Lewis v. Casey*,
    518 U.S. 343 (1996) ..........................................................................26

*Lopez v. Smith*,
    203 F. 3d 1122 (9th Cir. 2000) ..........................................................12

*Los Angeles Cty. v. Davis*,
    440 U.S. 625 (1979) ..........................................................................27

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .....................................................................25, 29

*National Federation of the Blind v. Target Corporation*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ...............................................17

*Nicole M. By & Through Jacqueline M. v. Martinez Unified School Dist.*,
    964 F.Supp. 1369 (N.D. Cal. 1997)...................................................32

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001) .............................................................16, 18, 22

*Rains v. Criterion Systems, Inc.*,
    80 F.3d 339 (9th Cir.1996) ................................................................12

*Roberts v. Corrothers*,
    812 F.2d 1173 (9th Cir. 1987)............................................................11

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION     Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

*Robles v. Domino's Pizza*,
   913 F. 3d 898 (9th Cir. 2019) .......................................................................17

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .....................................................................13

*Schonfeld v. City of Carlsbad*,
   978 F.Supp. 1329 (S.D.Cal.1997) ...............................................................24

*Smith v. United States*,
   508 U.S. 223, 228 (1993) .............................................................................18

*Staron v. McDonald's Corp.*,
   51 F.3d 353 (2d Cir.1995) ...........................................................................23

*Sun Valley Gas., Inc. v. Ernst Enters.*,
   711 F.2d 138 (9th Cir.1983) .................................................................13, 14

*Swiekiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) .....................................................................................12

*Thornhill Publ'g Co. v. Gen. Tel. Co.*,
   594 F.2d 730 (9th Cir.1979) .........................................................................13

*Valdez v. United States*,
   837 F. Supp. 1065 (E.D. Cal. 1993) ............................................................11

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F. 3d 1104, 1114 (9th Cir. 2000) ..........................................................17

*White v. Divine Investments, Inc.*,
   2005 WL 2491543 (E.D.Cal.2005) ..............................................................21

*Wilson v. Pier 1 Imports (US), Inc.*,
   439 F. Supp. 2d 1054 (E.D. Cal. 2006) ........................................................21

*Yates v. Sweet Potato Enter., Inc.*,
   684 F. App'x 655 (9th Cir. 2017) .................................................................21

**Statutes**

28 U.S.C. § 1343 ....................................................................................................10

28 U.S.C. \§1331 ..............................................................................................10, 11

42 U.S.C. § 12101 ................................................................................ passim

42 U.S.C. § 12181 ................................................................................ 17, 21

42 U.S.C. § 12188 ............................................................................ 23, 24, 25

49 U.S.C. § 30106(a) ................................................................................ 30

Cal. Civ. Code § 51 ................................................................................ 30

Cal. Civ. Code § 54 ................................................................................ 30

Cal. Civ. Code § 54.1 ................................................................................ 30

**Other Authorities**

28 C.F.R. § 36.104 ................................................................................ 19

28 C.F.R. § 36.304 ............................................................................ 15, 20

ADA Accessibility Guidelines ................................................................ 17

Fed. R. Civ. P. Rule 12 ............................................................................ 11

H.R.Rep. No. 101–485(II), 2d Sess. (1990) ............................................ 16

Merriam-Webster's Dictionary ................................................................ 18

## I.      INTRODUCTION

Rental stores are public accommodations with duties under the ADA, including the removal of architectural barriers when readily achievable. Under Title III, a rental store is responsible under the ADA for the path into its store, through its displays, and out of its store. When a rental store has appropriated the sidewalk as its store, the rental store is responsible for those paths located on the sidewalk.

Lyft attempts to skirt accountability for its intentional appropriation of the public rights of way for Lyft's use as a rental store where Lyft offers, displays, and stores vehicles for rent. Lyft submits its user agreements for consideration, proclaiming that an extensive agreement imposed on a person renting a vehicle by the hour or hours, for transitory travel, supports the notion that the Lyft could not be responsible for any alleged diminishment of access to or enjoyment of the public rights of way. Lyft would have this Court believe that every user of a dockless vehicle is an expert on accessibility standards, as Lyft's policies ask users to "[p]ark responsibly", and to not "block sidewalks, pathways, or ADA ramps". See Lyft's Motion to Dismiss ("Lyft MTD"), at 8:10-23. Lyft attempts to pass over responsibility, counting on every single user to correctly interpret what might block a sidewalk or a pathway.

Foisting duty to comply with accessibility mandates onto users and disclaiming consequences of the laissez-faire, irresponsible nature of its business model cannot shield a dockless vehicle company. Each company must operate in a method that does not discriminate against any person in access and enjoyment of public accommodations.

Lyft argues it owes no duty regarding its rental business, conflating user agreements with practical actions. Lyft takes no action to control how its business offers, displays, and stores rental vehicles – passive dependence on a dense agreement imposed on a short-term renter is not taking action – it is free-riding, prioritizing profit and convenience over people, and ignoring the inherent consequences of a business model. Rather than comply with Title III, Lyft sits idly and shrugs, casting aside loss of

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION                    Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

1  access, loss of enjoyment, and loss of independence as unfortunate unforeseeable
2  outcomes.

3  **II.    RELEVANT ALLEGATIONS IN FIRST AMENDED COMPLAINT**

4       Plaintiffs Alex Montoya, Rex Shirley, Philip Pressel and Aaron Greeson are
5  people with mobility and/or visual impairments representing a putative class of people
6  with mobility and/or visual impairments whose safe access and enjoyment of the
7  sidewalks, cross walks, curb ramps, and transit stops of San Diego has been severely
8  impeded due to the proliferation of dock-less vehicles. Plaintiffs' First Amended
9  Complaint ("FAC") ¶¶ 12-16. Lyft is a private for-profit dockless vehicle company that
10 has appropriated the public sidewalks for its own private use as its retail stores,
11 showrooms, and storage facilities to carry out their business. FAC ¶¶ 22.

12       The sidewalks of San Diego are the physical location where Lyft's business is
13 carried out. FAC ¶27. Customers rent Lyft's vehicles from the sidewalks using a mobile
14 application, often ride the vehicles on the sidewalk, and then leave the vehicles on the
15 sidewalks in a helter-skelter fashion at the end of the rental. The "dockless" business
16 model includes no action that would prevent or remedy outcomes that obstruct access
17 and enjoyment of public rights of way or violation of statutes. FAC, ¶¶ 36-41. The
18 results are multiple obstructions and dangers for people with disabilities who are blind
19 or have mobility impairments. FAC ¶¶40-42. The Dockless Vehicle Defendants,
20 including Lyft, have appropriated the system of public rights of way to operate them for
21 their private use as a rental shop, with named Plaintiffs and other people with disabilities
22 paying the price. FAC ¶¶ 27, 40-42. Plaintiffs' claims arise under the Americans with
23 Disabilities Act and Section 504 of the Rehabilitation Act, such that jurisdiction is
24 invoked pursuant to 28 U.S.C. §§1331 and 1343. FAC, at ¶10.

25       Plaintiffs have alleged sufficient facts to secure jurisdiction and standing, and to
26 allege that Lyft is operating its vehicle rental business at the physical location of the
27 public rights of way, converting the sidewalks into places of public accommodation
28 covered under Title III of the ADA. Plaintiffs' case therefore cannot properly be

10

1  adjudicated at the pleadings stage. Rather, Lyft's Motion to Dismiss should be denied

2  and Plaintiffs given the opportunity to develop the factual basis of their claims.

### III.   ARGUMENT

#### A.   Legal Standard Under 12(b)(1)

Under Rule 12(b)(1), the moving party may either attack the pleadings on their face or present extrinsic evidence for the district court's consideration. *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011). A district court must determine whether an attack is facial or factual, as this determination governs the scope of the court's review. *Id*. On a factual attack, the court may not "resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Id*. (citations and quotation marks omitted).

When deciding a Rule 12(b)(1) motion that attacks the complaint on its face, a court "must accept the allegations of the complaint as true." *Id*. (citing *Valdez v. United States*, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, 56 F.3d 1177 (9th Cir. 1995)). On a Rule 12(b)(1) motion that raises a factual attack, courts "may weigh the evidence presented, and determine the facts in order to evaluate whether they have power to hear the case." *Id*. (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

Jurisdiction must be determined from the face of the complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1331, federal courts possess jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or that the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal*., 463 U.S. 1, 13 (1983).

#### B.   Legal Standard Under 12(b)(6)

To defeat a motion to dismiss under Rule 12(b)(6), the pleader need only point to a "short and plain statement of the claim showing that the pleader is entitled to relief"

1    sufficient to "give the defendant fair notice" of the claim. *Bell Atlantic Corp. v.*
2    *Twombly*, 550 U.S. 544, 555-6 (2007)(citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).
3    All allegations must be assumed to be true, even if doubtful in fact. *Bell Atlantic*, 550
4    U.S. at 555 (citations omitted). While the factual allegations in a complaint should
5    consist of more than "labels and conclusions" and assert a right to relief beyond mere
6    speculation, "a well-pleaded Complaint may proceed even it appears that a recovery is
7    very remote and unlikely," *Id*. at 556 (citation omitted).

8        A Complaint alleging discrimination is subject to the same liberal pleadings
9    standards as any other type of case. It is not necessary to make a prima facie case of
10   discrimination in the Complaint, as discovery may be required in order to adduce such
11   evidence. *Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 510-511 (2002).

12       A Court that dismisses a Complaint should grant leave to amend "unless it
13   determines that the pleading could not possibly be cured by the allegation of other
14   facts." See *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000)(citations omitted).

15   **C.   Jurisdiction is Proper Under the Americans with Disabilities Act**

16       A court has federal question jurisdiction over a claim if: 1) federal law creates
17   the cause of action; 2) under the artful pleading doctrine, the plaintiff's state law claims
18   should be recharacterized as federal claims; or 3) one or more of the state law claims
19   necessarily turns on the construction of a substantial, disputed federal question. *Rains*
20   *v. Criterion Systems, Inc*., 80 F.3d 339, 343 (9th Cir.1996).

21       It is beyond dispute that the Americans with Disabilities Act is a federal statute;
22   furthermore, additionally in line with the U.S. Supreme Court's ruling in *Franchise Tax*
23   *Bd. v. Constr. Laborers Vacation Trust for S. Cal*., 463 U.S. 1, 13 (1983), Plaintiffs'
24   right to relief under California's Unruh Act and California's Disabled Persons Act
25   requires resolution of a substantial question of federal law in dispute. Plaintiffs have
26   properly pled these jurisdictional bases in the FAC. See FAC, at ¶10.

27       Lyft's attacks on jurisdiction seek a rare remedy, which is exceptionally
28   inappropriate in this case premised on federal question jurisdiction, where a statute

1  provides the basis for both the subject matter jurisdiction of the federal court and
2  Plaintiffs' substantive claim for relief, asserting claims that are not frivolous.

3  **D.  The Rare Remedy of Jurisdictional Dismissal is Inappropriate In This**
4  **Case, Which Arises Under Federal Statutes with Substantive Issues**
5  **Intertwined with Any Question on Jurisdiction**

6          The Supreme Court has instructed courts "to take a broad view of constitutional
7  standing in civil rights cases, especially where, as under the ADA, private enforcement
8  suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7–*
9  *Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir.2008)(quoting *Trafficante v. Metro. Life Ins.*
10 *Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972)). Both the United States
11 Supreme Court and the Ninth Circuit have noted the rarity of jurisdictional dismissals
12 in cases under federal statutes: "[j]urisdictional dismissals in cases premised on federal-
13 question jurisdiction are exceptional, and must satisfy the requirements specified in *Bell*
14 *v. Hood*." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)(citing
15 *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir.1983). In *Bell*, the
16 Supreme Court determined that jurisdictional dismissals are warranted "where the
17 alleged claim under the constitution or federal statutes clearly appears to be immaterial
18 and made solely for the purpose of obtaining federal jurisdiction or where such claim is
19 wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

20         The Ninth Circuit has held that a "[j]urisdictional finding of genuinely disputed
21 facts is inappropriate when 'the jurisdictional issue and substantive issues are so
22 intertwined that the question of jurisdiction is dependent on the resolution of factual
23 issues going to the merits' of an action." *Safe Air for Everyone*, 373 F.3d at 1039 (citing
24 *Sun Valley*, 711 F.2d at 139 (quoting *Augustine v. United States*, 704 F.2d 1074, 1077
25 (9th Cir.1983))). The question of jurisdiction and the merits of an action are intertwined
26 where "a statute provides the basis for both the subject matter jurisdiction of the federal
27 court and the plaintiff's substantive claim for relief." *Id*; see also *Thornhill Publ'g Co.*
28 *v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9th Cir.1979)("[W]hen a statute provides the basis

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION                Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

1   for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive
2   claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than
3   for failure to state a claim is proper only when the allegations of the complaint are
4   frivolous.")(quotation omitted). In this case, the Americans with Disabilities Act
5   provides the basis for both the jurisdiction of the Court and the substantive claim for
6   relief.

7        Despite the scorched earth approach, Lyft has not stretched to the point of arguing
8   that Plaintiffs' claims are "immaterial", "made solely for the purposes of obtaining
9   federal jurisdiction", or "wholly insubstantial and frivolous". *Bell*, 327 U.S. at 682-83.
10  Whether Plaintiffs alleged a claim under the ADA goes to the merits of the action. See
11  *Sun Valley*, 711 F.2d at 140 ("[t]he ability of [the plaintiff] to allege a claim that comes
12  within the definition reach of the [Petroleum Marketing Practices Act] is a matter that
13  goes to the merits of the action.")

14  **E.    Title III is Properly Pled as Lyft Conducts the Affairs of a Rental Store,**
15  **Using San Diego's Sidewalks to Offer, Display, and Store Rental**
16  **Vehicles; Architectural Barriers Are Broadly Defined**

17       ADA protection is not limited to discrimination occurring on the actual physical
18  premises of the public accommodation, but also discrimination occurring on paths of
19  travel from the public right of way into the store, paths in the store, and out of the store
20  to some aspect of the public right of way, as well as discrimination occurring away from
21  places of public accommodation such as through the internet. DOJ Guidelines explicitly
22  instruct that impediments caused by location of temporary or movable structures, such
23  as equipment and display racks, are considered architectural barriers. The ADA thus
24  requires conforming paths of travel through display areas, such as those of the Dockless
25  Vehicle Defendants' stores where rentals are displayed and stored on the sidewalk.

26  **1.    ADA Regulations on Architectural Barriers Prioritize Access To and**
27  **From A Facility from the Public Rights of Way, and Access Within**

28

Regulations issued under the ADA reflect the broad meaning of architectural barriers and provide additional guidance. The regulations list "installing ramps; making curb cuts in sidewalks and entrances; eliminating a turnstile or providing an alternative accessible path; and, [r]earranging ... display racks, and other furniture" among 21 examples of specific "steps to remove barriers." (28 C.F.R. § 36.304(b) (2012).) Public accommodations are urged "to take measures to comply with the barrier removal requirements" in the order of certain priorities. (28 C.F.R. § 36.304(c) (2012).) The first priority is access to the facility from the street, and the next priority is "access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include adjusting the layout of display racks, rearranging tables […] and installing ramps" (28 C.F.R. § 36.304(c)(1), (2) (2012).)

United States Department of Justice (DOJ) publications are in accord. One publication states that retailers must provide a 36–inch minimum width route "between displays and shelves if readily achievable," which is the standard applicable to architectural barriers in existing facilities. (DOJ U.S. Small Bus. Admin., ADA Guide for Small Business, p. 10.) Another DOJ publication states: "Impediments caused by the location of *temporary or movable structures*, such as furniture, equipment, and *display racks*, are also considered architectural barriers," reiterating the regulatory requirement that display racks be rearranged to provide access, if readily achievable. (Americans with Disabilities Act, ADA Title III Technical Assistance Manual (ADA Manual), § 4.4200, pp. 31–33 (1992).) That publication also broadly defines "architectural barriers" as "physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs." (*Id.* at p. 30.)

Discussing the reach of the ADA section governing "architectural barriers" in existing facilities, a congressional committee said: "This section may require the removal of physical barriers, including those created by the arrangement o[r] location of such temporary or moveable structures as furniture, equipment, and display racks.

1  For example, a restaurant may need to rearrange tables and chairs, or a department store
2  may need to adjust its layout of display racks and shelves, in order to permit access to
3  individuals who use wheelchairs, where these actions can be carried out without much
4  difficulty or expense." (H.R.Rep. No. 101–485(II), 2d Sess. (1990).)

5         Plaintiffs have pled that Lyft and the dockless vehicle defendants have converted
6  public rights of way to rental stores with displays and storage. FAC, at ¶27. Lyft uses
7  the sidewalk to showcase its dockless offerings whenever rental is offered – Plaintiffs
8  allege removal of those showrooms is readily achievable. The first priority of ADA
9  regulations is to ensure access into and out of a public accommodation, and the second
10  priority is to ensure access to the areas of the public accommodation where goods and
11  services are made available to the public, including at areas of display.

12         Lyft uses sidewalks and other public spaces in the City to offer, display, and store
13  rental vehicles. Lyft believes that because it operates from the sidewalks, it does not
14  have to comply with the ADA. Lyft's arguments fly in the face of DOJ Guidance,
15  regulations issued under the ADA, and Congressional committees. Lyft's arguments
16  undermine principles of justice - to let Lyft skirt accountability for how its rentals are
17  offered and displayed would reward Lyft for inaction and sidewalk misappropriation.

18         **2.    Plaintiffs Plead That Lyft Conducts the Affairs of a Dockless Vehicle**
19              **Rental Store, Satisfying the "Operate" Definition of Title III**

20         Congress enacted the Americans with Disabilities Act (ADA) "to provide a clear
21  and comprehensive national mandate for the elimination of discrimination against
22  individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress found that
23  "historically, society has tended to isolate and segregate individuals with disabilities,
24  and, despite some improvements, such forms of discrimination against individuals with
25  disabilities continue to be a serious and pervasive social problem." *PGA Tour, Inc. v.*
26  *Martin*, 532 U.S. 661, 674-675 (2001); 42 U.S.C. § 12101(a)(2))("*Martin*").

27         **a.   Lyft Operates a Place of Public Accommodation on San Diego's**
28              **Sidewalks, Where Lyft Offers, Displays, and Stores Rental Vehicles**

16

Title III of the ADA seeks to address these various forms of discrimination by providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, advantage, or accommodations of any place of public accommodation…" 42 U.S.C. § 12182(a). Title III's non-discrimination provisions applies broadly to "any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.*

A private entity is considered a place of public accommodation if it fits under one of twelve broad categories of operations, including "sales or rental establishment," and "place of recreation." 42 U.S.C. § 12181(7)(E) & (I). Under the rulings of the Ninth Circuit, places of public accommodation must be "actual physical places where goods and services are open to the public, and places where the public gets those goods or services." *Weyer v. Twentieth Century Fox Film Corp*., 198 F. 3d 1104, 1114 (9th Cir. 2000). Moreover, as long as the business operates out of a physical location, ADA protection is not limited to discrimination occurring on the actual physical premises of the public accommodation. The ADA also prohibits discrimination occurring away from the place of public accommodation such as through the internet. *Robles v. Domino's Pizza*, 913 F. 3d 898 (9th Cir. 2019)(holding that the ADA applied to the website and mobile application for ordering pizza from the physical stores); *National Federation of the Blind v. Target Corporation*, 452 F. Supp. 2d 946 (N.D. Cal. 2006)(holding that retailer's website that was allegedly inaccessible to the blind was subject to Title III).

The ADAAG provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)("*Chapman*"). ADA Accessibility Guidelines ("ADAAG") regulations require that the accessible entry to a store be connected by a conforming path of travel all of the way out to some aspect of the public right of way. ADAAG §§ 4.1.2(1) and 4.3.2(1). Thus, under ADA regulations, Lyft and the Dockless Vehicle Defendants must provide

1   a path that confirms with ADA requirements all of the way out of vehicle rental stores,

2   between displays, to some aspect of the public right of way that remains fully accessible

3   and enjoyable to all of the public – put simply, the public rights of way and paths within

4   the store must be connected in an accessible way from entry to display to exit.

### b. Public Property Operated for Private Purposes May be a Place of Public Accommodation

7       Title III does not only apply to owners or lessors of places of public

8   accommodation. The statute also applies to any entity that operates a place of public

9   accommodation. The term "operate" is not defined in Title III.  In the absence of an

10   explicit definition, federal courts must look to a word's plain meaning, including the

11   dictionary definition. *Smith v. United States*,

12   508 U.S. 223 (1993).

13       Merriam-Webster's Dictionary defines "operate" to mean "to perform a function:

14   to exert power or influence." This is essentially identical to the definition of "operate"

15   that has been utilized by the Ninth Circuit - "to control or direct the functioning of."

16   *Lentini v. Cal. Ctr. For the Arts, Escondido*, 370 F. 3d 837, 849 (9th Cir. 2004). Under

17   the plain meaning of the word, Plaintiffs have alleged sufficient facts to show that Lyft

18   operates its vehicle rental business on the City's sidewalks. Lyft cannot realistically

19   argue that it does not conduct the affairs of a rental business, offering rental of vehicles

20   property, showcasing its vehicles, and storing its vehicles using the public rights of way.

21       The U.S. Supreme Court has held operation to even include the temporary

22   running of a golf course, as the PGA Tour was held to operate golf courses where its

23   tour events took place, even though the PGA Tour moves from course to course

24   throughout the progression of its tournament schedule. See *Martin*, 532 U.S. at 662.

25       Title III does apply when a private entity operates a facility owned by the public.

26   In *Disability Rights Action Committee vs. Las Vegas, Inc.,* 375 F. 3d 861 (9th Cir. 2004),

27   the Ninth Circuit directly addressed the question of whether two private entities which

28   staged a rodeo at a publicly-owned arena for a limited period of time could be said to

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION        Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

1   "operate" the arena and were therefore required to comply with the accessibility
2   mandates under Title III. Reviewing on appeal the granting of a motion to dismiss by
3   the District Court, the Ninth Circuit answered the question in the affirmative, relying
4   on statutory provisions that make clear that "private entities otherwise covered by Title
5   III may not avoid their obligations through contract, such as by contracting to provide
6   "goods, services, facilities, privileges, advantages or accommodations at venues they
7   do not own." *Id.* at 873, citing 42 U.S.C. § 12182(b)(1)(A)(i), (ii) and (iii).

8        In addition, the Court referred to Department of Justice regulations that state that
9   it is *operation* regardless of ownership that renders a private entity responsible under
10  Title III. *Disability Rights Action Committee*, 375 F.3d at 875, citing 28 C.F.R. §
11  36.104.[2] The Ninth Circuit concluded that whether Title III applies "depends on whether
12  those private entities exercise sufficient control… even temporarily, with regard to
13  accessibility that they can be said to 'operate' the stadium." *Disabled Rights* at 878.
14  Because this was a question of fact, the Court reversed dismissal of the action.

15       Here, Lyft conducts the affairs of a rental store that offers vehicles for rent using
16  the sidewalk as a showcasing and storage room – this alone is enough to demonstrate
17  operation and is pled sufficiently. Plaintiffs should at least have an opportunity to
18  develop the factual basis of their claim regarding if Lyft exercises sufficient control
19  over the public sidewalks to be said to "operate" their business there. Lyft should not
20  be able to skirt responsibility through Lyft's inaction for the state of its rental store –
21  Lyft runs the rental business, offering vehicles, displaying vehicles, and storing vehicles
22  for use, in search of profits from that business. No matter where a vehicle may be left

23  _____

24  [2] The Ninth Circuit also gave deference to Title III Technical Assistance Manual that
25  provided by following illustration: "If the owner of a building is not covered by the
    ADA, is it possible for a private tenant to still have Title III responsibilities? Yes. The
26  fact that a landlord in a particular case is not covered by the ADA does not necessarily
27  negate title III's coverage of private entities that lease or operate places of public
    accommodation within the facility.*" Disabled Rights Action Committee*, at 875, citing
28  Title III Technical Assistance Manual at § III-1.2000 B (1994) Supp.).

1    on the public rights of way, it is still available for rent – the business models of the

2    dockless vehicle companies seek profit from this result, while others pay the price.

3           Lyft's "supplement" adds nothing pertinent. Lyft argues it is "tangentially

4    connected to allegedly discriminatory practices" – this is specious at best, as Lyft offers,

5    displays, and stores vehicles for rental using the sidewalks and other public rights of

6    way in its business model. Lyft's examples are inapt, as Lyft owns and operates its

7    vehicle rental business: architects work in service of those who own or conduct the

8    affairs of the places architects design, but Lyft serves no other entity and conducts the

9    affairs of its rental stores; franchisors do not carry out day-to-day operations of each

10   franchise location, but Lyft offers the vehicles for rental each day; and, Lyft is not a

11   product manufacturer as Lyft conducts the affairs of renting products. There is no

12   separation between Lyft and its rental business on the sidewalks of San Diego – Lyft

13   (and every dockless vehicle company) cannot shift the blame to users, as Lyft is

14   responsible for its conduct in utilizing the City streets in a free-wheeling fashion.

15       **3.    Removal of Architectural Barriers is Alleged to be Readily**

16       **Achievable, as the Dockless Vehicle Defendants, Including Lyft, Do**

17       **Not Require the Use of the Public Rights of Way to Operate a**

18       **Vehicle Rental Business**

19          Regulations issued under the ADA reflect the broad meaning of architectural

20   barriers and provide additional guidance. The regulations list "installing ramps; making

21   curb cuts in sidewalks and entrances; eliminating a turnstile or providing an alternative

22   accessible path; and, [r]earranging...display racks, and other furniture" among 21

23   examples of specific "steps to remove barriers." (28 C.F.R. § 36.304(b) (2012).) Public

24   accommodations are urged "to take measures to comply with the barrier removal

25   requirements" in the order of certain priorities. (28 C.F.R. § 36.304(c) (2012).) The first

26   priority is access to the facility from the street, and the next priority is "access to those

27   areas of a place of public accommodation where goods and services are made available

28   to the public. These measures include adjusting the layout of display racks, rearranging

20

1  tables […] and installing ramps" (28 C.F.R. § 36.304(c)(1), (2) (2012).)." Plaintiffs
2  believe vehicles can be removed just as easily as they arrived at sidewalk-located stores.

### a.  "Readily Achievable" is a Fact-Intensive Inquiry Rarely Appropriate for Summary Judgment, Let Alone the Pleading Stage

To succeed on an ADA claim of discrimination on account of an architectural barrier, the plaintiff must prove that (l) the existing facility at the defendants' place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. See 42 U.S.C. § 12182(b)(2)(A)(iv). If plaintiff satisfies his burden, the burden shifts to the defendant to show that removal of the barriers is not readily achievable. *Wilson v. Pier 1 Imports (US), Inc*., 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006). The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). *Yates v. Sweet Potato Enter., Inc*., 684 F. App'x 655, 657 (9th Cir. 2017). In determining whether an action is readily achievable, factors to be considered include:

(A) the nature and cost of the action needed under this chapter;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9). This is not a bright line rule, but rather involves a "fact intensive inquiry that will rarely be decided on summary judgment." *White v. Divine Investments,*

*Inc.*, 2005 WL 2491543, \*6 (E.D.Cal.2005). Plaintiffs' allegations are sufficiently pled, as the FAC gives notice of the claim and identifies that Plaintiffs allege removing Lyft's displays of dockless vehicles from the sidewalks of the City of San Diego is readily achievable. Plaintiffs' requested injunctive relief seeks to return the status quo and vindicate the civil rights of Plaintiffs, not ban dockless vehicles outright.

### b.  Any Modification Requested (or Removal of Barriers) Would Not Fundamentally Alter A Vehicle Rental Business

Title III requires an entity operating "public accommodations" to make "reasonable modifications" in its policies "when ... necessary to afford such ... accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such ... accommodations," *Martin*, 532 U.S. at 661.

Assessing if a fundamental alteration was present in *Martin*, the Supreme Court wrote: "The use of carts is not inconsistent with the fundamental character of golf, the essence of which has always been shotmaking. The walking rule contained in petitioner's hard cards is neither an essential attribute of the game itself nor an indispensable feature of tournament golf." *Id.*, at 663. A fundamental alteration is one that goes to an "essential attribute" or an "indispensable feature", rather than a peripheral feature, a replaceable characteristic, or a gimmick.

The fundamental nature of Lyft's business is renting vehicles – use of the public rights of way is not required to conduct that business. Plaintiffs seek relief that Lyft and its dockless vehicle confederates return the public rights of way to not being locations for vehicle display and storage - that relief does not alter the purpose of renting vehicles. Plaintiffs' requested injunctive relief seeks to return the status quo and vindicate the civil rights of Plaintiffs, not ban dockless vehicles outright. Lyft and its dockless vehicle confederates had no such right – no business has the right to conduct business in a way that discriminatorily harms civil rights and does not comply with applicable laws.

"Although neither the ADA nor the courts have defined the precise contours of the test for reasonableness, it is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry" *Staron v. McDonald's Corp*., 51 F.3d 353, 356 (2d Cir.1995). In deciding what is reasonable, facilities may consider the costs of such accommodations, disruption of their business and safety; but, businesses must also take into account evolving technology that might make it cheaper and easier to ameliorate the plight of the disabled. *Baughman v. Walt Disney World Co*., 685 F.3d 1131, 1135 (9th Cir. 2012).

### 4. Plaintiffs' Allegations Under Title III Ask for Removal of Architectural Barriers; Plaintiffs Were Not Required to Engage in a Futile Gesture of Asking Dockless Vehicle Companies to Remove Such Barriers

Entities that provide public accommodations must make "remove architectural and structural barriers, or if barrier removal is not readily achievable, must ensure equal access for the disabled through alternative methods (42 U.S.C. § 12182(b)(2)(A)(iv)-(v)). Subsection (iv) explains "discrimination" as a failure to remove architectural barriers, where such barrier removal is "readily achievable." Subsection (v) explains "discrimination" as a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through "alternative methods," where a defendant "can demonstrate" that the removal of a barrier under subsection (iv) is not readily achievable, and where such "alternative methods" are readily achievable. Plaintiffs allege that discrimination under Title III includes a failure to remove architectural barriers to access when removal is readily achievable. FAC, at ¶¶ 90, 95.

Plaintiffs also had "actual notice" that Lyft and its dockless vehicle confederates did not intend to comply with the ADA. To satisfy standing requirements to file suit, "'[a]ctual notice' of an intent not to comply with the ADA is sufficient." *Jankey v. Twentieth Century Fox Film Corporation*, 14 F.Supp.2d 1174, 1180 (C.D.Ca.1998). "[A] plaintiff need not repeatedly suffer discrimination in order to assert [ ] rights under

Title III." *Delil v. El Torito Restaurants, Inc.*, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997). The ADA does not require a disabled person to engage in a "futile gesture." 42 U.S.C. § 12188(a)(1); see also *Schonfeld v. City of Carlsbad*, 978 F.Supp. 1329, 1332 (S.D.Cal.1997)(as to Article III standing, an ADA plaintiff alleging inadequate access to a facility is not required to have "'formally' requested to use the facility."). Once Plaintiffs either encountered discrimination or learned of the alleged violations through expert findings or personal observation, they had "actual notice" that defendants did not intend to comply with the ADA. Plaintiffs are not required to engage in a "futile gesture" and should be allowed to sue for the violations, including those they did not encounter. See 42 U.S.C. § 12188(a)(1).

A formal request for removal of the architectural barriers (or modification of a policy) would have been a truly futile gesture, as Plaintiffs encountered inadequate access and discrimination - Lyft's inaction and stance in its MTD make it quite clear that Lyft does not intend to take any action to comply with the ADA, and the same rationale applies to Lyft's dockless vehicle confederates.

## F. Plaintiffs Allege Awareness of Alleged ADA Violations Because of Existing and Continuing Non-Compliance and Allege These Violations Deter Patronage and Otherwise Interfere with Access, Establishing Actual and Imminent Injury That is Capable and Likely to Reoccur

After Lyft again attempts to disclaim any responsibility for its dockless business model and Lyft's conduct in operating and supporting its business, Lyft summarizes its "factual" attack thusly: "injunctive relief [Plaintiffs] seek is moot, and seeks redress for conduct that is not a violation of the ADA, and for alleged injuries that are not attributable to Lyft". Lyft MTD, at 12:6-7. Despite the rare granting of jurisdictional dismissal, which is particularly inappropriate in this case, Lyft tries to attack standing under Article III. However, Plaintiffs have adequately alleged standing.

### 1. Plaintiffs Establish Standing Through Allegations of Deterrence

"Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III...." *Doran*, 524 F.3d at 1042 n. 5. The *Doran* court added: "Given that an ADA plaintiff has standing because of deterrence from returning in the face of uncertainty, it is prudent to eliminate that uncertainty through the judicial device of discovery, thus allowing the plaintiff to obtain by formal means the information about the scope of the defendant's violations that he may have been unable to safely ascertain himself because of those same violations. This course is consistent with Constitutional requirements, for we have been instructed to take a broad view of Article III standing in civil rights cases where private rights of action are the primary means of enforcing the statute." *Doran*, at 1043 (citing *Trafficante*, 409 U.S. at 209, 93 S.Ct. 364). Plaintiffs have alleged that they were deterred from using public rights of way because of the accessibility barriers posed by dockless vehicle stores. See FAC, at ¶¶12-16, 48, 50-51. Thus, standing is established under Title III.

## 2. Plaintiffs Have Standing to Allege ADA Violations When They Are Among the Injured

Moreover, plaintiffs have standing to allege ADA violations based on their mobility and visual disabilities which they did not encounter, as long as plaintiffs are "among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563, (1992)("*Lujan*"). The ADA's remedial scheme is not limited to orders for the removal of encountered barriers, but instead dictates that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). The ability to pursue this relief extends to "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). The statute

1  provides that "[n]othing in this section shall require a person with a disability to engage

2  in a futile gesture if such person has actual notice that a person or organization covered

3  by this subchapter does not intend to comply with its provisions." *Id*. Thus, the ADA

4  specifically does not require that the disabled individual personally encounter each

5  architectural barrier as a predicate to seeking removal. See *Chapman*, 631 F.3d at 951.

6      Additionally, it is well settled that a plaintiff need not "await the consummation

7  of threatened injury to obtain prospective relief." *Farmer v. Brennan*, 511 U.S. 825, 845

8  (1994)(quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, (1923)); see also

9  *Lewis v. Casey*, 518 U.S. 343, 349 (1996)("It is the role of courts to provide relief to

10  claimants ... who have suffered, or will imminently suffer, actual harm...."). Rather than

11  contending with discriminatory barriers due to a related disability when returning to a

12  public accommodation, a plaintiff may seek a judicial order requiring their removal. It

13  is Lyft's decision to utilize this dockless business model and to take no action to ensure

14  that architectural barriers are not present or removed when the barriers are present –

15  Plaintiffs therefore pray for injunctive relief, to vindicate their rights as a class of people

16  with mobility and visual impairments.

17      **3.    Lyft's Own User Agreements Contradict Lyft's Attempted "Factual"**

18          **Attack – That Attack Consists of Subjective Interpretations, Not**

19          **Facts**

20      Lyft alleges that "Plaintiffs' allegations of wrongful behaviour attributed to Lyft

21  – 'permit[ting] and/or recklessly enabl[ing]' riders to leave vehicles 'anywhere the user

22  may see fit' and 'adopt[ing] and [not enforcing] appropriate policies' – are false". Lyft

23  MTD, at 10:17-19. This not only mischaracterizes Plaintiffs' allegations, but also is

24  disproven by Lyft's own submissions. The "facts" given by Lyft are evidence of policies

25  rather than evidence of if those policies satisfy Lyft's Title III duties – thus, Lyft does

26  not make a true "factual" attack, but instead attacks the merits of the allegations.

27      Lyft submits the Declaration of Kyle Zuvella, which sets forth Lyft's policies,

28  including its extensive user agreement imposed on a person renting a dockless vehicle.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION                    Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

1   Lyft's submitted policies ask users to "[p]ark responsibly", and to not "block sidewalks,

2   pathways, or ADA ramps". See Lyft MTD, at 8:10-23. Lyft's directions ask users to not

3   do certain things, and to make a choice about a user deems "responsible". This is the

4   epitome of letting users "leave the dockless vehicles anywhere the user may see fit" as

5   the FAC alleges – Lyft's own policies ask users to make a choice and an interpretation

6   of what the users deem to be acceptable, as Lyft attempts to assign its Title III duties.

7        Plaintiffs do not dispute that Lyft's user directives exist – Plaintiffs dispute that

8   Lyft takes any action that actually removes architectural barriers that Lyft's dockless

9   vehicles present. See FAC, at ¶¶90, 95; see also Declarations of Philip Pressel, Alex

10  Montoya, Rex Shirley, and Aaron Greeson. Plaintiffs' allegations should be given

11  weight - if Plaintiffs are going to be disbelieved on the issue of standing, it should be in

12  the context of factfinding, not in the context of a Rule 12(b)(1) motion. See *Brooke v.*

13  *Kashl Corp*., 362 F. Supp. 3d 864, 876 (S.D. Cal. 2019). The accumulation of vehicles

14  on the sidewalks of the City of San Diego is an intentional feature and consequence of

15  Lyft's business model and every other dockless vehicle confederate, as they all support

16  the conversion of the City of San Diego's public rights of way into their rental stores,

17  showrooms, and storage facilities. The *modus operandi* of the Dockless Vehicle

18  Defendants seeks to exploit the public sidewalks to avoid the expenditure of resources

19  and to gain more profits, with people with disabilities suffering the consequences.

20       The essence of Lyft's policies is that Lyft may continue to operate and profit, no

21  matter where a vehicle is rented from and/or stored, while at the same time not taking

22  any action to ensure that Lyft operates its rental business in a way that does not deprive

23  individuals of their independence and right to use the public walkways as any other

24  person would. Lyft, and every other dockless vehicle Defendant, freerides while driving

25  this irresponsible dockless business model, while those with mobility and visual

26  impairments pay the price for that business model's consequences and ignorance.

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION      Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC

### 4. Mootness, a Heavy Burden, Has Not Been and Cannot be Proven by User Agreements, as Plaintiffs Plead for Removal of Architectural Barriers

The burden to demonstrate mootness "is a heavy one." See *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)(citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–633. Assessed under a stringent standard, a case might become moot if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000)(citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203). The heavy burden that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *Ibid*.

In a stark contradiction, Lyft argues that its user policies render this case moot, yet avers that violation of its user policies are to blame for any denial of access or enjoyment and subsequent loss of independence that Plaintiffs seek to remedy. To believe Lyft's claim that its user agreements render the controversy moot would necessitate belief that Lyft's contracts, or any contracts, could never be breached – in this case, it is not only possible for the directions to be ignored, but also exceptionally foreseeable that the breach would occur as not every person is an expert on accessibility standards and Lyft's business model does not incorporate any action to practically prevent the breach from occurring and resulting in architectural barriers. It would be hard to fathom that Lyft and the dockless vehicle companies do not know that these agreements have not and are not likely to turn every person into an accessibility expert, or prove capable of deterring or removing impediments to access and enjoyment of rights of way. Clearly, the relief Plaintiffs seek from Lyft does not already exist.

Moreover, Plaintiffs plainly seek removal of architectural barriers, rather than a modification to contracts of adhesion. Plaintiffs allege that discrimination under Title III includes failure to remove architectural barriers to access when removal of a barrier

is readily achievable. FAC, at ¶¶ 90, 95. The nature of the relief requested is the readily achievable removal of architectural barriers, as stated in Plaintiffs' Title III allegations.

Lyft does nothing meaningful or practical to remove vehicles that present barriers, casting aside loss of access, loss of enjoyment, and loss of independence as unfortunate unforeseeable outcomes, rather than doing anything to remove the barriers in line with Title III. Rather than comply with Title III, Lyft instead prioritizes the number of opportunities to display and rent a vehicle and Lyft's bottom line over the people and community Lyft operates in. Lyft attempts to assign the consequences of its business model, as Lyft only wants to be responsible for ensuring its vehicles are available for rent – after that, Lyft would rather do nothing, as having to do anything further doesn't benefit Lyft and isn't necessary to secure another rental.

### 5.    Standing is Already Established, As Is a Real and Immediate Threat of Repeated Injury

When Plaintiffs themselves are the object of the action, "there is ordinarily little question that action or inaction [of the defendants] has caused [them] injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 560-61. Plaintiffs have alleged direct injuries, as objects of this action, as a result of the existence of architectural barriers. See FAC, at ¶¶12-15, 89-90, 92-94. The injuries are fairly traceable to the actions or inaction of Lyft because the injuries occurred in a place of public accommodation Lyft operates, meeting the causation test further.

Plaintiffs have established a "real and immediate threat of repeated injury", as Plaintiffs have alleged that were deterred from using the public rights of way because of awareness of discriminatory conditions, and that they intend to attempt to access and fully enjoy the public rights of way of the City of San Diego again. See FAC, at ¶¶12-16, 48, 50-51. Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. *Chapman*, 631 F.3d at 949. If Plaintiffs were to succeed, a favourable decision would clearly redress the alleged injuries suffered. The injury is actual and imminent

1   because there is a sufficient likelihood that Plaintiffs will be wronged again in a similar

2   way – all Plaintiffs need to do is leave their residences and step outside onto the

3   sidewalks of the City of San Diego, and they will face a real and immediate threat of

4   injury. Plaintiffs have established a history of past patronage of the City's public rights

5   of way and intend to use them again when they want to do so (as is their right),

6   especially if the barriers were removed. See Declarations of Philip Pressel, Alex

7   Montoya, Rex Shirley, and Aaron Greeson.

8   ### G.   Plaintiffs Have Stated Causes of Action under the DPA and Unruh Acts

9          A violation of the ADA constitutes a violation of the DPA and Unruh Act. (Cal.

10  Civ. Code §§ 54(c) and 51(f) respectively).

11         The Lyft MTD erroneously argues that Plaintiffs only allege conduct regarding

12  third-party riders. As set forth, Plaintiffs allege that Lyft's failure to remove

13  architectural barriers denies or interferes with admittance to and enjoyment of the public

14  facilities, including those specified in Section 54 and 54.1. Lyft's attempt to silo issues

15  to users fails, as Lyft is responsible for its business model, including the failure to

16  control how Lyft offers, displays, and stores vehicles that Lyft offers for rent. The theory

17  is not vicarious liability – it is responsibility for a business model in which Lyft offers,

18  displays, and stores vehicles that are available for rent, no matter where the vehicles are

19  offered, displayed, and stored on the public rights of way.[3]

20         With regard to § 54 of the DPA, coverage is not limited to that provided by the

21  ADA nor is there a requirement of intentional discrimination.   Rather, the plain

22  language of the statute guarantees the right of people with disabilities to full and free

23

24  _____

25  [3] A rental car agency typically does not offer, display, and store rental cars just anywhere

26  – it offers, displays, and stores vehicles using a shop or other place that does not block
    public rights of way, and offers a vehicle already rented to a subsequent renter when the

27  vehicle has been returned to that place or other designated drop-off point. Lyft offers
    rental from, displays its rental vehicles on, and stores its rental vehicles on public rights

28  of way. Lyft's example of a rental car agency is inapplicable, as is 49 U.S.C. §30106(a).

1    use of the sidewalks. Civil Code § 54(a). See *Coronado-Durazo v. Immigration and*
2    *Naturalization Service*, 123 F. 3d 1322, 1325 (9th Cir. 1997) ("Where the plain meeting
3    of a provision is unambiguous that meaning is controlling" (cites omitted)). Thus,
4    private interference with access of people with disabilities to public sidewalks can be
5    actionable under the DPA, including the failure to remove barriers that deter those with
6    disabilities from accessing or enjoying a public facility.

7        Similarly, Plaintiffs allege that they have been prevented from safely utilizing the
8    sidewalks due to the uncontrolled proliferation of dockless vehicles that the dockless
9    vehicle defendants have offered, displayed, and stored on the sidewalks. Assuming the
10   allegations of the FAC to be true, the dockless vehicles present every bit the danger to
11   Plaintiffs and putative class members as the guard dog was to the plaintiff in *Ruiz*,
12   thereby denying access based on disability. Lyft tries to distinguish *Ruiz* by raising the
13   user spectre, claiming no duty to control third parties.

14       Lyft does not mention its duty to remove architectural barriers. Lyft submits that
15   "the *Ruiz* defendant took no action whatsoever to control the guard dog, when doing so
16   was its duty". See Lyft MTD, at 13:13-14. The heart of the issue can be seen in this
17   attempt to distinguish a case that is on point. Lyft takes no action whatsoever to control
18   how its shops display and store vehicles on public rights of way, or how that display
19   and storage affects paths into, through, and out of its rental store – passive dependence
20   on a dense, extensive user agreement presented to a vehicle renter is also not taking
21   action at all – it is free-riding, passing the blame, ignoring the consequences of a
22   business model, and ignoring the duty owed by a rental store under the ADA.

23   **H.    Plaintiffs Are Actual Victims Under the Unruh Act**

24       The Unruh Act incorporates the substantive standards of the ADA and creates a
25   private right of action as a matter of state law; whether the ADA itself provides a private
26   cause of action under federal law does not affect enforcement of the Unruh Act—a state
27   statute governed by its own enforcement mechanism. *Dep't of Fair Employment &*
28   *Hous. v. Law Sch. Admission Council Inc*., 896 F. Supp. 2d 849, 865 (N.D. Cal. 2012).

An ADA violation is, per se, a violation of the Unruh Act. *See e.g.*, *Lentini*, 370 F.3d at 847. Therefore, Plaintiffs' Unruh Act claim should go forward because Plaintiffs' ADA claim should go forward.

Independent consideration exists for Plaintiffs' Unruh Act claims, as individuals who are deterred from visiting a business or attempting to use its services as a result of discriminatory practices may have standing to sue under the Unruh Act. *See Botosan v. Paul McNally Realty*, 216 F3d 827, 835 (9th Cir. 2000) (disabled plaintiff deterred from using facility due to lack of disability parking can state claim for minimum statutory damages); *Arnold v. United Artists Theatre Circuit, Inc*., 866 F.Supp. 433, 439 (N.D. Cal. 1994) (disabled individuals deterred from attending movie theater due to knowledge of access barriers have standing). In some circumstances, "mere quiescent inaction" may constitute actionable discrimination. *Angelucci v. Century Supper Club*, 41 Cal.4th 160, 171 (2007). Intentional discrimination may consist of defendant's conscious failure to stop discrimination of which it was or should have been aware by virtue of its severity or pervasiveness. See *Nicole M. By & Through Jacqueline M. v. Martinez Unified School Dist*., 964 F.Supp. 1369, 1378, 1388-1389 (N.D. Cal. 1997). It is well settled that a plaintiff need not "await the consummation of threatened injury to obtain prospective relief." *Farmer*, at 845.

Here, Plaintiffs pled that they were deterred from visiting the public rights of way after personally encountering discriminatory conditions. See FAC, ¶¶12-15; see also Declarations of Philip Pressel, Alex Montoya, Rex Shirley, and Aaron Greeson.

## IV.   CONCLUSION

Under Title III, a rental store is responsible for the path into, through its displays, and out of its store. When the rental store has misappropriated the sidewalk as its store, the rental store is responsible for those paths located on the sidewalk.

Plaintiffs should have an opportunity to develop the factual record in this case, and the Lyft MTD should be denied.

1

2

Dated:  June 24, 2019

Respectfully submitted.
NEIL, DYMOTT, FRANK, MCCABE & HUDSON
A Professional Law Corporation

3

4

5

By:     *s/ Matthew R. Souther*
        Matthew R. Souther
        msouther@neildymott.com

6

7

8

9

By:     *s/ Phillip E. Stephan*
        Phillip E. Stephan
        pstephan@neildymott.com
        Attorneys for Plaintiffs
        ALEX MONTOYA, PHILIP PRESSEL,
        REX SHIRLEY. and AARON GREESON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION              Case No. 3:19-cv-00054-JM-BGS
TO DEFENDANT LYFT'S MOTION TO DISMISS FAC