1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA

10  ALEX MONTOYA; REX SHIRLEY;          Case No.:  19cv0054 JM(BGS)
    PHILIP PRESSEL; and AARON
11  GRESSON, individually, and on behalf of   **ORDER ON MOTIONS TO DISMISS**
    all others similarly situated,
12
13                        Plaintiffs,
14  v.
15  CITY OF SAN DIEGO, a public entity;
    BIRD RIDES, INC., a Delaware
16  corporation d/b/a BIRD; NEUTRON
    HOLDINGS, INC., a Delaware
17  corporation d/b/a LIME; WHEELS
    LABS, INC., a Delaware corporation;
18  UBER TECHNOLOGIES, INC., a
    Delaware corporation, d/b/a JUMP;
19  LYFT, INC.; RAZOR USA, LLC, a
    California corporation; and DOES 1-100,
20
21                        Defendants.
22
23

24          Presently before the court are five motions to dismiss filed pursuant to Federal Rules

25  of Civil Procedure Rules 12(b)(1) and 12(b)(6).  (Doc. Nos. 30, 56, 57, 62, 63.)  All six

26  Defendants move to dismiss the first amended complaint under Rule 12(b)(6), with

27  Defendant Lyft Inc. ("Lyft") and Defendant Uber Technologies Inc., d/b/a JUMP ("Uber")

28  also moving under Rule 12(b)(1).  A hearing on the motions was held on January 13, 2020.

                                         1

For the reasons set forth below, City of San Diego's ("City") motion is denied, and the remaining Defendants' motions are granted.

## I. BACKGROUND

On January 9, 2019, Plaintiffs filed a putative class action complaint asserting claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* California Civil Code section 51, *et seq.,* (the "Unruh Act"), California Civil Code section 54, *et seq.,* (the "Disabled Persons Act"); California Government Code section 4450, *et seq.,* and California Government Code section 11135, *et seq.,.* (Doc. No. 1.)

On March 21, 2019, Plaintiffs filed their First Amended Class Action Complaint ("FAC"). (Doc. No. 14.) The FAC alleges that Plaintiffs, who are individuals with disabilities, have found their access to San Diego's sidewalks diminished by the proliferation of dockless electric vehicles currently in use in the City. (FAC ¶ 1, 12, 13, 14, 15.) They allege that people using the dockless electric vehicles either travel on the sidewalks or block paths of travel because the vehicles are discarded in the middle of sidewalks or at other rights of way, making it difficult for people with disabilities to safely traverse the pathways. (*Id.* at 2, 3.[1])

Further, the FAC alleges that as usage and abandonment of these vehicles and the speed at which they travel increases, Plaintiffs are denied safe, equal and full access to the sidewalks. (*Id.* at ¶ 41.) In Plaintiffs' words, the vehicles' "burgeoning proliferation and uncurbed growth comes at the detriment of the rights of all disabled persons with mobility and/or visual impairments who are residents and visitors of the City of San Diego, causing Plaintiffs injury, severe anxiety, diminishing their comfort and discriminating against them based on their disabilities…." (*Id.* at ¶ 42.)

_____

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Plaintiffs direct allegations at the City regarding its responsibilities as a municipality and the duty it has to maintain the sidewalks. (*See, e.g., id.* at ¶¶ 43-45, 62-76, 78-85, 98-103, 105-115, 117-122, 127-133.) Similarly, the FAC makes allegations against the private entities that rent dockless scooters and bikes, via mobile phone apps, to third-party individuals in San Diego, which Plaintiffs categorize as the "Dockless Vehicles Defendants." (*See, e.g., id.* at ¶¶ 41, 42, 46, 50, 87-95, 105-115, 117-122, 127-133.)

Plaintiffs seek to represent a putative class consisting of "all persons with disabilities with mobility or visual impairments who have been denied access to or full enjoyment of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of San Diego because of their disabilities." (*Id.* at ¶ 52.)

The prayer for relief seeks, amongst other things, an award of statutory damages and an order "enjoining the Dockless Vehicle Defendants from continuing to operate on the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways in the City of San Diego." (*Id.* at ¶ 137B.)

On April 4, 2019, Defendants Neutron Holdings, Inc. d/b/a Lime ("Lime"), Bird Rides, Inc. ("Bird"), and Razor, USA, LLC ("Razor") (collectively the "Scooter Defendants") filed a joint motion to dismiss. (Doc. No. 30.)[2] Plaintiffs filed their opposition to the motion, (Doc. No. 34) and the Scooter Defendants filed a reply, (Doc. No. 38).

On May 31, 2019, both Defendant Wheels Labs, Inc. ("Wheels Labs"), and Defendant City filed motions to dismiss pursuant to 12(b)(6).[3] (Doc. Nos. 56, 57.) The

---

[2] On the same day they filed their motion to dismiss, the Scooter Defendants filed a motion to strike class allegations (Doc. No. 31) which is now fully briefed (Doc. Nos. 35, 39). Uber also joined the Scooter Defendants' motion to strike. (Doc. No. 64.)

[3] The court notes that City's Motion to Dismiss was untimely. Moving forward City shall ensure that its' filings comport with the deadlines set forth in the Federal Rules of Civil Procedure and the Local Rules.

City also filed a Notice of Joinder to the Scooter Defendants' Motion to Dismiss. (Doc. No 58.) Plaintiffs filed their opposition to the motions, (Doc. Nos. 68, 69), and Wheel Labs and City each filed a reply, (Doc. Nos. 71, 74).

On June 3, 2019, Defendant Lyft filed its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. No. 62.) Plaintiffs filed their opposition to the motion, (Doc. No. 62), and Lyft filed a reply, (Doc. No. 73).

On June 7, 2019, Defendant Uber filed its motion to dismiss. (Doc. No. 63.) Uber also joined the Scooter Defendants', Wheel Labs', Lyft's and City's motions to dismiss. (Doc. No. 64.) Plaintiffs filed their opposition to the motion, (Doc. No. 70), and Uber filed a reply, (Doc. No. 72).

## II.     LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This is because a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In contrast, Rule 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). In a class action, at least one of the

named plaintiffs must meet the Article III standing requirements. *Bates v. United Parcel Servs., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007). Article III requires that: "(1) at least one named plaintiff suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted). "For purposes of ruling on a motion to dismiss for want of standing, both the trial judge and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin,* 422 U.S.490, 501 (1975)). "At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citation and quotation marks omitted).

## III.    MOTIONS TO STRIKE

Before addressing the motions to dismiss, the court first turns to two motions to strike filed by Plaintiffs.

The first motion to strike, Request to Strike City's Purported Supplemental Authority (the "Supplement"), was filed by Plaintiffs on July 8, 2019. (Doc. No. 78.) On July 5, City filed a copy of Ordinance Number 0-21070, amending Chapter 8 of the San Diego Municipal Code, which governs shared mobility devices related to "permitting and the operation of shared mobility device rental companies." (Doc. No. 77-1.) The ordinance was passed by the City Council on May 14, 2019. (*Id.* at 18.) The ordinance proclaims that the proliferation of these devices "creates public safety concerns due to improper usage, staging, and parking of such devices, and excessive speeds in high pedestrian traffic areas; and identifies three specific pedestrian paths where the mobility devices create a significant safety hazard to pedestrians, namely Martin Luther King Jr. Promenade, the North and South Embarcadero and Piazza della Famiglia. (*Id.* at 2.) The ordinance also requires the companies to use geofencing within the three identified areas;    places

restrictions on where the devices may be parked and displayed for rent; requires the companies to retrieve improperly left devices within three hours of being notified of a violation by the City; allows the City to impound devices that are not retrieved (with the companies bearing the costs); and requires companies who wish to operate a shared mobility device company to apply and pay for a permit. (*Id.* at 6-16.)

Plaintiffs seek to strike the Supplement by asserting: (1) at a minimum, City knew of the existence of the ordinance when it filed its Reply brief on July 1, 2019, but made no mention of it; and (2) City filed the Supplement after the motion to dismiss was taken under submission without seeking leave of court. (Doc. No. 78.)[4]  Plaintiffs also contend they have not had an opportunity to respond to City's assertion that the "[o]rdinance as well as previously enacted State laws and Municipal ordinances makes the allegations of the First Amended Complaint moot." (Doc. No. 77 at 2.)  Setting aside the propriety in which City brought the existence of the ordinance to the court's attention, the court does not think it appropriate to address a mootness argument at this time.  While the ordinance may institute many of the solutions Plaintiffs suggested, the FAC does not yet clearly define the exact injunctive and declaratory relief that Plaintiffs are seeking.  As such, making a mootness determination at this stage would be premature.  Having decided not to consider the Supplement when ruling on the motions to dismiss, Plaintiffs' Request to Strike City's Purported Supplemental Authority (Doc. No. 78) is hereby **GRANTED**.

On December 17, 2019, Plaintiffs filed a second motion to strike, (Doc. No. 85) in response to the Notice of Supplemental Authority filed by Defendants on November 22, 2019 (Doc. No. 84). Defendants Supplemental Authority consists of a five-page memorandum explaining the similarities between this case and the recent decision in the

---

[4] Upon review of the documents at issue, it is not entirely clear to the court exactly when the attorney responsible for filing the motion to dismiss became aware of the existence of the ordinance, but the court finds nothing untoward in her behavior.  The court will also give the attorney the benefit of the doubt that her failure to seek leave of court was an oversight.

Central District of California, *Labowitz v. Bird Rides, Inc*, Case No. 18-9329-MWF (SK), a copy of an order of dismissal issued in *Labowitz* on October 29, 2019, and a copy of the *Labowitz* complaint. The supplemental authority was filed without permission of the court and after the motions to dismiss were taken under submission.

Plaintiffs move to strike the supplemental authority arguing: (1) it was filed without first obtaining leave of court; (2) it was improperly accompanied by submission of additional argument; and (3) the allegations in the case at bar differ from those submitted as a supplemental authority. (Doc. No. 85). Defendants counter that Plaintiffs' motion is untimely under Local Rule 7.1(e)(1) and that there was nothing improper about the notice. (Doc. No. 87.) Notwithstanding Local Rule 7.1(e)(1), the January 13, 2020, hearing date was given to Plaintiffs by the court in consideration of the likelihood that the *Labowitz* opinion would be raised by the parties at the upcoming hearing and would, therefore, need to be addressed. While the court has reviewed the memorandum and finds nothing improper in the notice, the supplemental authority submitted is not binding authority on this court, was filed after the briefing period was closed and without permission of this court. Consequently, the court **GRANTS** Plaintiffs' motion, (Doc. No. 85) and **STRIKES** the supplemental authority from the docket.

## IV. DISCUSSION

Principally relying on various state statutory immunities contained in the California Government Tort Liability Act (CAL. GOV'T CODE §§ 810 *et seq.*), City moves to dismiss the FAC on the basis that it is immune for discretionary actions related to law enforcement or ordinances regarding the operation and parking of the dockless vehicles on city streets. (Doc. No. 57.) City also moves for dismissal under Rule 12(b)(6) on the basis that the FAC fails to state claims against it under Title II of the ADA, the Rehabilitation Act, California Government Code sections 4450 or 11135, the DPA, nor under the Unruh Act.

The arguments of Dockless Vehicle Defendants for dismissal are based on: (1) the requirement of the ADA that a Defendant own or operate a "place of public accommodation;" (2) Plaintiffs' failure to allege that any of these Defendants received the

requisite State financial assistance to make the alleged section of the California Government Code section 1135 applicable; (3) Plaintiffs' failure, absent an ADA violation, to identify any California accessibility standard in the FAC, nor allege that any of the Dockless Vehicle Defendants violated such standard; and (4) Plaintiffs' failure to allege an independent Unruh Act violation. (Doc. Nos. 30-1, 56-1, 62-1, 63-1.) Because the arguments made by each of the Dockless Vehicle Defendants are substantially similar, if not identical, the Court will consider them together.

Lyft and Uber also move for dismissal under Rule 12(b)(1). Lyft argues the relief Plaintiffs seek, namely an order requiring it to preclude riders from operating scooters on sidewalks or parking them in areas that occlude access already exists, thus making this aspect of Plaintiffs' claim moot. (Doc. No. 62-1 at 13-17.) Lyft also contends that Plaintiffs have not alleged an injury attributable to Lyft and thus, there is no harm to redress. (*Id.* at 17-18.) Uber argues that the FAC does not establish actual notice of discrimination, denial of access or denial of equal treatment. (Doc. No. 63-1 at 13-18).

Where applicable, the court will consider City's arguments in conjunction with those made by the Dockless Vehicle Defendants.

1. **Sufficiency of Plaintiffs' Americans With Disabilities Act Title II Claim and Rehabilitation Act Claim**

City challenges the sufficiency of Plaintiffs' ADA and Rehabilitation Act claims on the grounds that Plaintiffs cannot establish they were excluded from access to or denied the benefits of City's services, programs, or that City discriminated against Plaintiffs.

Title II of the ADA prohibits state and local governments from discriminating against persons with disabilities. The relevant statutory language provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II emphasizes 'program access' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons." *Cohen v. City of Culver*

*City*, 754 F.3d 690, 694 (9th Cir. 2014) (citing *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1215-16, 1222 (9th Cir. 2008)).  Similarly, section 504 of the Rehabilitation Act guarantees meaningful access to, "participation in" and the "benefits of" any programs or activities receiving federal financial assistance for qualified individuals.   29 U.S.C. § 794(a).  *Alexander v. Choate,* 469 U.S. 287, 301 (1985).

 "This prohibition against discrimination is universally understood as a requirement to provide 'meaningful access.'"  *Lonberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009).  "An individual is excluded from participation in or denied the benefits of a public program if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities.'"  *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 987 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149).  The regulations implementing Title II of the ADA provide that:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the services, program, or activity.

28 C.F.R. § 35.130(b)(7) (1993).

Courts have interpreted the scope of Title II to encompass anything a public entity does.  *Lee v. City of L.A.,* 250 F.3d 668, 691 (9th Cir. 2001).  Indeed, the Ninth Circuit has held that "maintaining public sidewalks is a normal function of a city and "without a doubt something that the City does" and therefore "maintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II."  *Barden v. City of Sacramento,* 292 F.3d 1073, 1076 (9th Cir. 2002)[5].  *See also Frame v. City of Arlington*, 657 F.3d 215,

---

[5]  Even if public entities were not subject to applying the feature-specific requirements of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") to public rights-of-way, then they would "not suddenly find themselves free to ignore access concerns when altering of building new rights-of-way, parks, and playgrounds.  The requirements

225 -231 (the fifth circuit provides an in-depth discussion as to why a sidewalk is unambiguously a service, program or activity of a public entity covered under Title II of the ADA.[6])  In so finding, the *Barden* court noted that "this broad construction of the phrase 'services, programs, or activities' of a local government is supported by the plain language of the Rehabilitation Act, … which defines 'program or activity as 'all of the operations of' a qualifying local government."  *Barden,* 292 F.3d. at 1076-77.

To prove that a public program or service violates Title II, a plaintiff must show: (1) he/she is a qualified individual with a disability; (2) he/she is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he/she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his/her disability.  42 U.S.C. § 12132; *Cohen* 754 F.3d at 695; *Weinrich v. L.A. Cnty. Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997).

Here, it is undisputed that Plaintiffs are qualified people with disabilities and are entitled to use the City's sidewalks.  The question is whether Plaintiffs have pled facts

---

of 28 C.F.R. 35.151 would still apply, holding public entities to the 'readily accessible [] and usable' standard."  *Kirola v. City & Cnty. of S.F.*, 860 F.3d 1164, 1180 (9th Cir. 2017).

[6] The court explained:

> As the Supreme Court has observed, sidewalks are general government services provided in common to all citizens to protect pedestrians from the very real hazards of traffic.  The Supreme Court also has recognized that public sidewalks are traditional public fora that time out of mind have facilitated the general demand for public assembly and discourse.  When a newly built or altered city sidewalk is unnecessarily made inaccessible to individuals with disabilities, those individuals are denied the benefits of safe transportation and a venerable public forum.

*Frame,* 657 F. 3d at 227-228 (internal quotation marks and citation marks omitted).

sufficient to support the third and fourth elements of the claim. City posits that the FAC fails in this regard because Plaintiffs have only alleged that City encourages and promotes the use of the Dockless Vehicle Defendants' scooters on the public rights of way and overlooks the conduct of the third parties who ride the dockless vehicles on city streets. (Doc. No. 57-1 at 14-15.) Further, City asserts that Plaintiffs "admit that it is the actions of unidentified third parties and co-defendants [sic] alleged failures to ensure their scooters do not violate the California Vehicle Code and the San Diego Municipal Code that negatively impact Plaintiffs' access." (Doc. No. 57-1 at 15.) The court is not persuaded.

Plaintiffs have pled facts that they were denied participation in or access to a City service, in this instance, the sidewalks. Plaintiffs have also alleged that City "has failed to ensure the sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are kept free of the Dockless Vehicle obstructions." (*See, e.g*., FAC at ¶ 71.) Further, Plaintiffs allege City has failed to adopt, enforce and implement ordinances to control the proliferation of Scooters. (*Id.* at ¶ 72.) Additionally, Plaintiffs allege that City continues to violate the ADA by "failing to timely respond to and remedy complaints about the said barriers through their policies and practices with regard to the system of sidewalks…thereby denying disability access." (*Id.* at ¶ 73.) Furthermore, the FAC contains various general allegations that Plaintiffs have been faced with temporal barriers that have made using the sidewalks difficult because of the conduct of third parties. (*See generally* FAC.)

Plaintiffs do not merely complain of isolated, infrequent, or temporary access barriers to the sidewalks that are a matter of convenience. A closer read of the FAC reveals allegations that City has failed to maintain the system of sidewalks, done nothing to curb the proliferation of scooters on the sidewalk, and failed to introduce regulations to govern their use, etc. *See* FAC at ¶ 3, 25, 26, 35, 38, 40, 45, 46, 47, 50. "[O]bstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities." *Cohen* 754 F.3d at 700. As the *Cohen* court noted, "this is

precisely the sort of subtle discrimination stemming from thoughtlessness and indifference that the ADA aims to abolish." *Id.* (internal quotation and citations omitted).

The FAC also offers solutions City could have implemented in order to avoid the violations and injuries of which Plaintiffs complain. For example, it is alleged City could have introduced alternate travel lanes for these vehicles, ticketed violators, and ensured that the Dockless Vehicles are used and maintained in way that ensures full and equal access for people with disabilities to the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, etc. (*See* FAC at ¶¶ 26, 45, 46.)

Reading the factual allegations in the FAC as true and construing the pleadings in the light most favorable to Plaintiffs, the court finds Plaintiffs' allegations sufficient to support the contention that City may have engaged in the "simple exclusion of disabled persons through "thoughtlessness" and "inaction" that constitutes discrimination under the ADA.

### 2. City's Immunity Defenses

City argues it is entitled to blanket immunity from any of the claims brought against it, pursuant to that body of law commonly known as the California Government Tort Liability Act (CAL. GOV'T CODE §§ 800 *et seq.*) Specifically, City cites sections 818.2, 821[7], 845 and 846 as affording absolute protection against Plaintiffs' claims. (Doc. No. 57-1 at 8-14.)

Ordinarily, under California law, public entities have absolute immunity against claims for tort damages when premised upon their adoption, or failure to adopt an enactment. *Nunn v State of Cal.,* 35 Cal.3d 616, 621 (1984) (the immunity afforded by sections 818.2 and 821 to public entities and employees for injuries, caused by either the

---

[7] The section header in City's motion references section 821, but the substantive portion of this section of the motion makes little to no mention of section 821, instead focusing on sections 815.2 and 820.2. Section 821 provides "a public employee is not liable for injury caused by his adoption of or failure to adopt an enactment." CAL. GOV'T CODE § 821.

adoption of an enactment or the failure to adopt or enforce a law attaches only to discretionary functions)*; see also Gibson v. Cnty. of Riverside,* 181 F. Supp. 2d 1057, 1086, (C.D. Cal. 2002).

Pursuant to section 815.2(b) of the California Government Code, except as provided by statute, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Section 820.2 provides "a public employee is not liable for an injury … where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." CAL. GOV'T CODE § 820.2. But this "immunity only applies to *deliberate and considered* policy decisions, in which a 'conscious balancing of risks and advantages took place.'" *Caldwell v. Montoya,* 10 Cal. 4th 972, 981(1995) (quoting *Johnson v. Cal.*, 69 Cal. 2d 782, 795, n.8 (1968)) (alterations omitted). *See also Mann v. The State of Cal.*, 70 Cal. App. 3d 773, 778 (1983) (section 845 immunity for failure to provide police protection "was designed to prevent political decisions of policy making officials of government from being second-guessed by judges and juries in personal injury litigation."). "The general rule is that the government immunity will override a liability created by a statute outside the [Government] Claims Act." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.,* 730 F.3d 1111, 1126 (9th Cir. 2013) (citation omitted). "To rebuff this general rule, a liability-creating statute must clearly withdraw statutory immunities." *Id.*

The Code also contains provisions "to protect from judicial review in tort litigation the political and budgetary decisions of policy-makers, who must determine whether to provide police officers or their functional equivalents." *Leger v. Stockton Unified Sch. Dist.,* 202 Cal. App. 3d 1448, 1463 (1988). Under section 845, "neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service. CAL. GOV'T CODE § 845. Additionally, "neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." *Id.* § 846.

City asserts the discretionary act or omission immunity for public employees provided under California Government Code section 820, when read in conjunction with section 815.2(b), provide it with immunity. (Doc. No. 57-1 at 10-11.) Relatedly, City argues that just as section 21235(i) of the municipal code[8] allows police officers the discretionary authority to ticket scooter users for abandoning a scooter in a manner that results in an inadequate path for pedestrian travel, and California Vehicle Code section 25225 permits City officials to regulate the parking and operation of scooters in the public ways, City officials have similar discretion when it comes to the parking and regulation of scooters on the sidewalk. Further, City argues it is immune from civil liability for money damages for failing to provide adequate police protection against improper conduct pursuant to California Government Code sections 845 and 846. (*Id.* at 11-14.) In support of this argument, City characterizes Plaintiffs' allegations as a failure to "(a) provide adequate police services to monitor the City's public right-of-way; and (b) arrest, detain or cite persons in violation of the California Vehicle Code and the San Diego Municipal Code." (*Id.* at 12.)

But, City's immunity argument overreaches and requires a narrow reading of the FAC that the court is unwilling to accept. While damages are available to a private plaintiff under section 504 and Title II of the ADA, *see, e.g., Mark H. v. Lemahieu*, 513 F.3d 922, 935 (9th Cir. 2008), Plaintiffs only seek injunctive and declaratory relief under the ADA,

---

[8] California Vehicle Code addresses how the operation and use of motorized scooters is regulated by the state. *See* CAL. VEH. CODE §§ 21220-21235. The City, in turn, may regulate registration, parking and operation of scooters on public ways if such regulation does not conflict with the California Vehicle Code. *Id.* § 21225. Section 21235 makes it unlawful to ride a motorized scooter on a sidewalk, except as may be necessary to enter or leave adjacent property; section 21235(i) makes it unlawful to leave a scooter lying on its side on any sidewalk, or to park a motorized scooter on a sidewalk that impair an adequate path for pedestrian traffic. The San Diego Municipal Code makes it unlawful to block the public ways with scooters. San Diego Municipal Code §§ 54.0110, 54.0105

a remedy that is expressly provided for under section 814 of the California Code. *See* CAL. GOV'T CODE § 815 ("Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."). Not only does the California Government Tort Liability Act not bar equitable remedies, at the hearing, Plaintiffs' counsel conceded that Plaintiffs are not seeking traditional compensatory damages but rather statutory damages, which are not ground in tort recovery.

The FAC does reference City's failure to "adopt, implement or enforce ordinances or other regulations necessary to ensure that the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other sidewalks are kept free of the Scooter barriers." (*See, e.g.,* FAC at ¶ 72.) However, Plaintiffs have alleged City is responsible for removing barriers and ensuring the public sidewalks are readily accessible for people with disabilities under the ADA and the Rehabilitation Act. (*See id.* at ¶ 42, 47, 68-71, 73, 82, 84.) To extend the immunities of the California Tort Claims Act to the arena of federal civil rights law would thwart the very purpose of laws like the ADA and would allow any public entity to avoid the national mandate of uniform protections for persons with disabilities embodied in the ADA. As the Ninth Circuit has explained, "to construe a federal statute to allow a state immunity defense 'to have controlling effect would transmute a basic guarantee into an illusory promise' which the supremacy clause does not allow." *Guillory v. Cnty. of Orange,* 731 F.2d 1379, 1382 (9th Cir. 1984) (quoting *Martinez v. Cal.,* 444 U.S. 277, 284 n.8 (1980)).[9] Furthermore, the cases cited by City do not support application of any of the immunity provisions to the ADA and Rehabilitation Act claims. Public entities have long been held to account for risks of harm posed by third parties. *See, e.g., Mann,* 70 Cal. App. 3d at 778 (stating that liability may attach once a

---

[9] *See also DeJung v. Super. Ct.,* 169 Cal. App. 4th 533, 544 (2008) (quoting *Caldwell* 10 Cal.4th at 989 n.9 and *Farmers Ins. Grp. v. Cnty. of Santa Clara,* 906 P.2d 440, 455 n.12 (1995) (observing that section 815.2 "simply applies principles of vicarious entity liability" and the FEHA's language expressly provided "a basis for direct entity liability independent of the derivative liabilities addressed in section 815.2.").

police officer undertakes affirmative acts that increase the risk of harm to the plaintiff); *Williams v. State,* 34 Cal.3d 18, 24 (1983) (explaining how liability may be imposed if a special relationship between the plaintiff and police officer exists and that a breach of duty can arise out of an affirmative act that places a person in peril or increases the risk of harm, or by an omission or failure to act) (collecting cases); *Peterson v. S.F. Cmty. Coll.,* 36 Cal. 3d 799 (2018) (section 820.2 immunity does not protect a public entity from plaintiff's right to prove that its failure to warn, to trim the foliage, or to take other reasonable measures to protect her was the proximate cause of her injuries); *Slapin v. L.A. Int'l Airport,* 65 Cal. App. 3d 484 (1976) (government entity may be liable for injuries caused by the combination of a dangerous condition on its property and the acts of a third party, if the dangerous condition created a reasonable risk of injury and the public entity had actual or constructive notice of the dangerous condition in time to take measures to protect against it).

Moreover, Title II of the ADA provides "no qualified individual shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act defines "public entity" as "any State or local government [and] department, agency, special purpose district, or other instrumentality of a State or States or local government.'" 42 U.S.C. § 12131(1); *Lee*, 250 F.3d at 691. The very language of the Title II authorizes suits against public entities like the City, and the Ninth Circuit has consistently held that damages claims brought by private plaintiffs under both Acts are permissible. *See, e.g., A.G. v. Paradise Unified Sch. Dist. No. 69,* 815 F.3d 1195, 1204 (9th Cir. 2016) (holding that "a public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.") (quoting *Lemahieu*, 513 F.3d at 938.).

Accordingly, for the reasons set forth above, City's motion to dismiss these claims on all grounds is **DENIED**.

### 3. The Americans With Disabilities Act Title III Claim

The Dockless Vehicle Defendants seek dismissal of the Title III ADA claim, contending that Plaintiffs have failed to plead the necessary elements of this claim. They argue that a sidewalk is not a place of public accommodation, and none of them "own, lease or operate" a place of public accommodation. (Doc. No. 30-1 at 11-13; Doc. No. 56-1 at 8-11; Doc. No. 62-1 at 11-13; Doc. No 63-1 at 16-20.) Plaintiffs counter that Defendants are essentially using the public sidewalks as a store front and have converted the sidewalks into places of public accommodation. (Doc. No. 34 at 8-12; Doc. No. 68 at 8-12; Doc. No. 69 at 14-20; Doc. No. 70 at 14-21.)

Title III of the ADA prohibits discrimination against disabled individuals in any place of public accommodation. The concept of discrimination under the ADA includes obviously exclusionary conduct and "more subtle forms of discrimination – such as difficult-to-navigate restrooms and hard-to-open-doors that interfere with disabled individuals' 'full and equal enjoyment of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(a)); *see also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 at n.4 (9th Cir. 2011) (the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.").

To establish a violation of Title III of the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b); *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007); *Arizona ex rel. Goddard v. Harkins Amusement Enter. Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

"The determination of whether a facility is a 'public accommodation' for purposes of coverage by the ADA [] turns on whether the facility is open 'indiscriminately to other members of the general public.'" *Jankey v. Twentieth Century Fox Film Corp.,* 14 F. Supp. 2d 1174, 1178 (C.D. Cal. 1998) (citing 42 U.S.C. § 12181 (10)) *aff'd* 212 F.3d 1159 (9th

Cir. 2000)[10] (affirming that Title III only applies to establishments open to the public at large); *see also Clegg v. Cult Awareness Network,* 18 F.3d 752 n.3 (9th Cir. 1994) ("Only when the facilities are open to the public at large does Title II govern.").  The ADA lists the types of private entities that are considered "public accommodations" which includes:

      (A) an inn, hotel, motel, or other place of lodging;

      (B) a restaurant, bar, or other establishment serving food or drink;

      (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

      (D) an auditorium, convention center, lecture hall, or other place of public gathering;

      (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment.

42 U.S.C. § 12181(7)[11].

      Plaintiffs' attempt to categorize the public sidewalk as a place of public accommodation, akin to a private retail store, showroom or storage facility (*see* FAC at ¶ 92) while novel, is not persuasive.  Public sidewalks are not featured on the list enumerating entities that constitute a place of public accommodation, and those that are on the list are

---

[10] The Ninth Circuit explained that it is possible for an establishment to be described as a "public accommodation" but not be subject to the Title III requirement because the provision only applies to establishments open to the public at large.  *Jankey v. Twentieth Century Fox Film Corp.,* 212 F.3d 1159, 1160.  (9th Cir. 2000).

[11] For purposes of Title III, laundromats, dry-cleaners, banks, barber shops, beauty shops, travel services, shoe repair services, funeral parlors, gas stations, offices of accountants, pharmacies, insurance offices, professional offices of  health care providers, hospitals, other services establishments, terminals/depots/stations used for public transportation, museums, libraries, galleries, other places of public display and collection, parks, zoos, amusement parks, places of recreation, places of education, day care centers, senior citizen centers, homeless shelters, food banks, adoption agencies, social services center establishments, gymnasiums, health spas, bowling alleys, golf courses, and other places of exercise and recreation  are considered to be "public accommodations."  U.S.C. § 12181(7)(F)-(L).

either actual physical places where goods or services are open or made available to the public or where the public goes to get goods or services.  *See Weyer v. Twentieth Century Fox Film Corp.* 198 F.3d 1104, 1114 (9th Cir. 2000) ("All the items on [§ 12181(7)], however, have something in common.  They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services."); 42 U.S.C. § 12181(7).  *See also Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1114 (N.D. Cal. 2011) ("Under controlling Ninth Circuit authority, "places of public accommodation" under the ADA are limited to actual physical spaces.") (internal quotation marks and citation omitted).

As explained above, the Ninth Circuit has held that a city sidewalk is a service, program, or activity of a public entity under Title II and maintaining their accessibility falls within its scope.  *Cohen,* 754 F.3d at 695; *Barden,* 292 F.3d at 1076; 42 U.S.C. § 12181(7).[12]  Accordingly, the court concludes that the City's system of sidewalks and related features such as curb ramps and pedestrian crossings does not, in the context of this case, constitute a place of public accommodation.

---

[12] Plaintiffs reliance on the ADAAG seems to overlook the practical implications of applying it to the situation Plaintiffs are suggesting.  (Doc. No. 69 at 17-18; Doc. No. 70 at 18.)  On September 15, 2010, DOJ updated its accessibility regulations by incorporating the 2004 ADAAG standards with slight variations.  *See* 2010 ADA Standards for Accessible Design, *available at:* https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf; 36 C.F.R. Pt. 1191, App. B, D; 28 C.F.R. Pt. 36, App. A.  If the court were to find the entire sidewalks of the City of San Diego to be a storefront, the ADAAG require that the accessible entry of a store be connected by a conforming path of travel all the way out to some aspect of the public right of way.  ADAAG § 4(ii).  But, the court is flummoxed as to how the guidelines would be enforceable in this circumstance.  What would constitute an entry to a store that covers the entire City? What would form the public right of way if it was no longer the sidewalk?  Are the parameters of what makes up the store supposed to constantly shift depending on the locations of the vehicles?  If this is the case, it would lead to untenable enforcement issues.

Nor does the express language of the ADA support Plaintiffs' claims that the City's sidewalks are the functional equivalent of a place of public accommodation by virtue of becoming the "retail stores, showrooms … and storage facilities," of the Dockless Vehicle Defendants. While Plaintiffs invite the court to adopt an expansive view of what constitutes a rental store or showroom, the court declines to do so. The cases Plaintiffs rely on, *Robles v. Domino's Pizza*, 913 F.3d 898 (9th Cir. 2019) and *National Federation of the Blind v. Target Corporation,* 452 F. Supp. 2d 946 (2006), are readily distinguishable from the case at bar. Both cases involved disabled plaintiffs being denied access to the goods and services offered via the defendants' online websites and apps. The courts allowed application of the ADA because the websites and apps in question facilitated access to the goods and services of a physical place of public accommodation, i.e. a restaurant and a store. *See Domino's,* 913 F.3d at 905; *Nat'l Fed'n of the Blind*, 452 F. Supp. at 953. As the Ninth Circuit explained, Title III "applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation. To limit the ADA to discrimination occurring on the premises of a public accommodation would contradict the plain language of the statute." *Domino's*, 913 F.3d at 905. However, there is no such physical place of public accommodation nexus, as the Dockless Vehicle Defendants are not tied to a physical place of public accommodation, and the only items physically located on the sidewalks of San Diego are the scooters themselves.

Even if the court were to find that the sidewalks qualified as places of public accommodation, this would not necessitate the conclusion that the Dockless Vehicle Defendants "own, lease or operate" the sidewalk. The FAC does not allege the existence of any agreement between the City and the Dockless Vehicle Defendants by which the Dockless Vehicle Defendants are to operate on the sidewalks or otherwise exercise sufficient control over the sidewalks. *See, e.g., Disability Rights Action Comm. v. Las Vegas, Inc.,* 375 F.3d 861 (9th Cir. 2004) (a public accommodation operated by a private entity leasing space from a public entity is covered by Title III); *Lentini v. Cal. Ctr for the Arts,* 370 F.3d 837, 849 (9th Cir. 2004) (in the context of Title III, "operate" means "to put

or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of, manage."); *Pickern v. Pier 1 Imports,* 457 F.3d 963, 966 (9th Cir. 2006) (the term "operate" means to keep in operation, control or direct the functioning of, conduct, the affairs of, or to manage).

Furthermore, some of the Dockless Vehicle Defendants correctly point out that Plaintiffs' theory of discrimination arises from their limitation of access to the sidewalk system, (*see* FAC ¶¶ 34-36), rather than Plaintiffs being denied access to the goods or services being offered by the Dockless Vehicle Defendants. (*See* Doc. Nos. 30-1 at 12-13; Doc. No. 63-1 at 19.)

Finally, as pled in the FAC, the architectural barriers of which Plaintiffs complain are the scooters and dockless vehicles themselves, which Plaintiffs allege are a "blockade" and "obstructions" that are "strewn along" Plaintiffs' paths of travel, thus making the sidewalks inaccessible and denying them equal access. (*See* FAC at ¶¶ 40, 41, 47, 48.)[13] But the court is not persuaded that these vehicles, which are subject to constant movement, and are not structurally permanent, are the type of architectural barrier Title III was designed to target. Rather, the court views the use of the scooter as a service provided by Defendants. *See Karczewski v. DCH Mission Valley, LLC,* 862 F.3d 1006, 1012 (9th Cir. 2017) ("the phrase – 'architectural barriers in existing facilities' – most naturally

---

[13] Further, under 42 U.S.C. § 12182(b)(2)(A)(ii) a public accommodation is required "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." Uber's argument that Plaintiffs have not alleged that they requested an accommodation from Uber provides an additional ground for dismissal if Plaintiffs are bringing such a claim. (Doc. No. 63-1 at 21-23.) The FAC does not allege Plaintiffs requested a modification of the Dockless Vehicle Defendants' policies, practices of procedures prior to filing suit consistent with the requirements of section 12182(b)(2)(A)(ii). *See Karczewski,* 862 F.3d at 1010 (to prevail under section 12182(b)(2)(A)(ii), a plaintiff must show, *inter alia,* the defendant failed to make "a requested modification.") (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)).

encompasses a business' buildings and surrounding grounds. It would stretch the ordinary meaning of the phrase too far – and it would conflict with Congress' choice to limit the reach of the 'architectural barriers' provision to 'facilities' only, and not to 'goods'…"). To hold otherwise would stretch the meaning of an architectural barrier in precisely the manner the Ninth Circuit has cautioned against.

Because the City's sidewalk system does not constitute a place of public accommodation, and Plaintiffs fail to sufficiently allege the additional elements necessary to plead a Title III ADA violation the court **GRANTS** the Dockless Vehicle Defendants' motions to dismiss the Title III ADA Claim. Although it appears pellucid Plaintiffs will be unable to plead a viable Title III claim against the Dockless Vehicle Defendants, given the early pleading stage, the motions to dismiss are granted with leave to amend. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend should be granted unless the claim "could not possibly be cured by the allegation of other facts.").

Having dismissed the Title III Claim on the strength of the Rule 12(b)(6) grounds, the court declines to address Lyft and Uber's alternate arguments for dismissal of the Title III claim under Rule 12(b)1), even though Plaintiffs have been given leave to amend.

### 4. California Government Code Section 4450 Claim

California Government Code section 4450 is directed at standards for access to buildings, its purpose being "to ensure that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities. CAL. GOV'T CODE § 4450(a).

The City moves to dismiss this claim in one paragraph by asserting that "Plaintiffs' claim is that the City must protect it from the unlawful activity of third parties by arresting and citing specific lawbreakers…. the manner and decisions involved in providing police protection from crime are absolutely immune…" (Doc. No. 57-1 at 16.)

The court again finds City's reading of the FAC grossly oversimplifies the claims alleged. Further, because this provision of the code does not authorize an action for

damages, the City's immunity arguments are misplaced.  *See D'Lil v. Riverboat Delta King, Inc.,* 59 F. Supp. 3d 1001, 1007 (E.D. Cal. 2014) (Although a plaintiff can obtain injunctive relief to remedy a violation of section 19955 [of the California Health and Safety Code] the statute does not authorize an action of damages.") (internal quotation marks and citations omitted); *Donald v. Café Royale, Inc.*, 218 Cal. App. 168, 183 (1990) (section 4490 does not provide a cause of action for damages, rather aggrieved individuals may bring an injunction action).  Having offered no substantive arguments for dismissal, the court **DENIES** City's motion to dismiss the section 4450 claim.

### 5.  California Government Code Section 11135 Claim

All six Defendants move to dismiss the section 11135 claim under Rule 12(b)(6).

California Government Code section 11135 provides that no person in the State of California shall, on the basis of disability, "be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." CAL. GOV'T CODE § 11135.  "A 'program or activity' includes 'any project, action or procedure undertaken directly by recipients of State support' and a 'recipient' includes anyone who 'receives State support, as defined in this Section, in an amount in excess of $10,000 in the aggregate per State fiscal year or in an amount in excess of $1,000 per transaction.'" *Green v. Mercy Hous.*, *Inc.*, No. C 18-04888 WHA, 2018 WL 6704185, at * 5 (N.D. Cal. Dec. 20, 2018) (quoting CAL. CODE REGS. tit. 2, § 11150); *see also D.K. ex rel. G.M. v. Solano Cnty. Office of Educ.*, 667 F. Supp. 2d 1184, 1190 (E.D. Cal. 2009) (section 11135 is identical to section 504 of California's Rehabilitation Act, except the entity must receive state financial assistance rather than federal financial assistance).

#### a.  The City

City offers the same argument for the section 11135 claim as it did for the section 4450 claim.  (Doc. No. 57-1 at 16.)  However, Plaintiffs have alleged, and the parties do not dispute, that City received the requisite amount of qualifying assistance from the State.

(FAC at ¶ 107.) "[I]f a public entity that receives state funding has violated the [Rehabilitation Act] or the ADA, then it has also violated § 11135." *Bassilios v. City of Torrance, CA*, 166 F. Supp. 3d 1061, 1084 (C.D. Cal. 2015). The court is not persuaded by City's arguments for the same reasons discussed with regard to the Rehabilitation and ADA claims.

Specifically, City's immunity argument lacks merit as the relief available to private citizens under this section of the code is expressly limited to equitable relief. *See* Cal. Gov't Code § 11139 ("This article and regulations adopted pursuant to this article may be enforced by a civil action for equitable relief."); *Donovan v. Poway Unified Sch. Dist.,* 167 Cal. App. 4th 567, 594 (2008) (explaining how section 11139 created a private right of action to enforce rights under section 1135, "but expressly limits enforcement to 'a civil action for equitable relief.'") Accordingly, City's motion to dismiss the California Government Code section 11135 claim is **DENIED**.

### b. The Dockless Vehicle Defendants

The Dockless Vehicle Defendants argue they are not recipients of state financial assistance and therefore Plaintiffs' claim fails. (Doc. No. 30-1 at 13-15; Doc. No. 56-1 at 14.) The court agrees.

The FAC does not allege that the Dockless Vehicle Defendants received the requisite amount of qualifying assistance from the State. (*See generally* FAC at ¶¶ 105-116.) The general conclusory allegation that the Dockless Vehicle Defendants "are recipients of state financial assistance through another recipient, the Municipal Defendant," (*id.* at ¶ 111), is insufficient. *See Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555) (a "pleading that offers 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'") Accordingly, the Dockless Vehicle Defendants' motions to dismiss Plaintiffs' California Government Code section 11135 claim are **GRANTED**. Since Plaintiffs have chosen "not to pursue this claim further" (Doc. No. 34 at 14), the dismissal is with prejudice.

### 6. California Civil Code Section 54 et seq., Disabled Persons Act, Claim

All six Defendants move for dismissal of the Disabled Persons Act ("DPA") claims on Rule 12(b)(6) grounds.

Under the DPA "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, … places of public accommodation, amusement, or resort, and other places to which the general public is invited…." CAL. CIV. CODE § 54.1. It specifically provides that individuals with disabilities will have "full and free use of the streets, highways, sidewalks, walkways, … , and other public places. *Id.* § 54. Notably, the DPA is concerned solely with guaranteeing physical access to public spaces and not denial of services. *Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d, 1039, 1055 (N.D. Cal. 2012). Since the DPA imposes no substantive standards of its own, it requires compliance with existing applicable federal ADA regulations or California accessibility standards if the later imposes a higher standard. *See, e.g., Baskin v. Hughes Realty, Inc.,* 25 Cal. App. 5th 184, 202-203 (2018); *Young,* 790 F. Supp. 2d at 1116; CAL. CIV. CODE § 54.1(a)(3) (an independent DPA claim requires a pleading that points to relevant standards established by California law).

### a. The City

City argues that Plaintiffs cannot establish that they were either excluded from access or denied the benefits of its services, programs, or activities or otherwise discriminated against by it because of their disability. (Doc. No. 57-1 at 17.) City also contends that its regulations regarding the operation of motorized vehicles are generally applicable, regardless of disability.

As explained above, Plaintiffs have sufficiently pled a Title II claim because "obstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities." *Cohen* 754 F.3d at 700. Therefore, they have pled a violation of the DPA as well. *See* CAL. CIV. CODE § 54(c) ("A violation of a right of an individual under the Americans with Disabilities Act of 1990 also constitutes a violation of this section"). In addition, Plaintiffs have alleged that they were

denied access to their rights to access city sidewalks and rights of way, which is a right specifically protected under section 54(a) of the California Code. *Id.* § 54(a); (*see generally,* FAC at ¶ 120, 126.) The DPA focuses on physical access to places and is "intended to secure to disabled persons 'the same right as the general public to the full and free use' of facilities open to the public." *Urhausen v. Longs Drug Stores Cal., Inc,* 155 Cal. App. 4th, 254, 261 (2007). Since City controls the sidewalks and is responsible for maintaining accessibility, Plaintiff have sufficiently pled that the City's action and inactions denied them "full and free used of the streets, highways, sidewalks [and] walkways." CAL. CIV. CODE § 54(a). Accordingly, the City's motion to dismiss Plaintiffs' DPA claim is **DENIED**.

### i. City's Immunity Defense to this Claim

City contends that the immunity defenses are equally applicable to the DPA claim. As discussed above, certain portions of the code cited by City were designed to protect public entities and public employees from common law tort liability for adopting and enacting legislation or the failing to adopt or enforce a regulation, and provide immunity for failure to provide police protection or make an arrest.

Although mindful that the DPA is intended to secure to disabled persons "the same right as the general public to the 'full and free use' of facilities open to the public," *Urhausen v. Longs Drug Stores California, Inc.,* 155 Cal. App. 4th 254, 261 (2007), allegations in the FAC reference the Municipal and California Code, and center around the idea that the City has been remiss in ensuring that the system of public walkways is kept accessible to persons with disabilities - a goal that cannot be accomplished without the help of law enforcement personnel. (*See, e.g.*, FAC at 38, 40, 43, 50.) As such, the FAC implicates City's discretionary police determinations, which are entitled to immunity. *See Wilkins-Jones v. Cnty. of Alameda,* No. C-08-1485 EMC, 2011 WL 3652495 at *4-9, (N.D. Cal. Aug. 19, 2011) (finding plaintiff's claims for monetary damages under the DPA against the County barred by statutory immunity) (collecting cases where courts have construed the immunity provision to apply to statutes similar to the DPA) *order vacated in*

*part by Wilkins-Jones,* 2012 WL 3116025 (N.D. Cal, July 31, 2012). *See also Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 947-948 (C.D. Cal, 2004) (denying City's claim for immunity against DPA suit but noting that "had the City claimed that it was immune from suit under section 54.3 and pointed to a specific CTCA immunity provision, the general rule would be no liability).[14]

But, the cases cited by City do not stand for the proposition that application of the Tort Claims Act or any available tort immunities would result in an absolute bar to a DPA claim, they simply suggest that the relief available may be limited. Plainitffs have already conceded that they are not seeking traditional damages but statutory penalties. Thus, the court finds that Plaintiffs are not entitled to a damage award on the DPA claim but may pursue injunctive and declaratory relief. Accordingly, City's motion to dismiss this claim on immunity grounds is **DENIED**.

### b. Dockless Vehicle Defendants

The Dockless Vehicle Defendants move for dismissal of the DPA claim on the grounds that Plaintiffs have failed to state either an ADA claim or independently allege a violation of California standards. (Doc. No. 30-1 at 15-16; Doc. No. 56-1 at 11-12.) Lyft and Uber also that the DPA does provide for vicarious liability against a defendant for the conduct of third-party scooter riders. (Doc. No. 62-1 at 18-21; Doc. No 63-1 at 23-24.)

As set forth above, Plaintiffs have failed to state a Title III ADA claim against the Dockless Vehicle Defendants and do not identify any California accessibility law standards allegedly violated by these defendants. *See Californians for Disability Rights v. Mervyn's LLC,* 165 Cal. App. 4th 571, 587-588 (2008)*; Coronado v. Cobblestone Vill. Cmty. Rentals,*

---

[14] *See also, Dunn v. City of L.A.,* Case No.: CV 14-8327-CBM-MRWx, 2017 WL 7726710, * 4 (C.D. Cal. Apr. 26, 2017) (finding as a matter of law that a City is not a person or persons, firm or corporation for purposes of damages under section 54.3.); *but cf, Beauchamp v. City of Long Beach,* No. CV10-01270-RGK (JCx), 2011 WL 10978002 (C.D. Cal. May 3, 2011) (awarding damages against the City under the DPA, concluding that under the code the term "public facilities" includes a City's streets and sidewalks).

*L.P.*, 163 Cal. App. 4th 831, 851 (2008), *overruled on other grounds by Munson v. Del Taco, Inc.* 46 Cal. 4th 661 (2009) ("[A] plaintiff seeking to establish a cause of action under the Unruh Civil Rights Act or the Disabled Persons Act based solely on the existence of a structural barrier must be able to show that the failure to remove the barrier constituted a violation of a structural access standard set forth in other provisions of law. In the instant case, none of the statutes that were referred to by plaintiff as the source of such structural access standards was applicable to the residential and common areas of the apartment complex."). While Plaintiffs cite to the California Code of Regulations, title 24, section 1111A, *et seq.*, (*see* Doc. No. 68 at 13-14, Doc. No. 68-1), these regulations apply to the surface, width and gradient of public sidewalks, and the court is hard pressed to see how they pertain to the alleged barriers at issue here. Therefore, Plaintiffs have failed to plead facts sufficient to support a claim that the Dockless Vehicle Defendants failed to provide full and equal access as defined by the DPA.

Additionally, Plaintiffs' reliance on *Ruiz v. Musclewood Investment Properties, LLC,* 28 Cal. App. 5th 15 (2018), while informative, is misplaced, as *Ruiz* involved the failure of a guard dog's owner, (as opposed to third party careless or reckless activity), to prevent foreseeable aggressive behavior.[15] (Doc. No. 34 at 13.) Here, the Dockless

---

[15] The guard dog was permitted to roam freely within defendant's property and was able to exit the business property when a large metal gate next to the sidewalk was left open. *Ruiz,* 28 Cal. App. 5th at 19. On six occasions, over a period of four months, the guard dog attacked and growled at plaintiff's guide dog which ultimately resulted in plaintiff having to change his route and his guide dog being unable to consistently perform his guide dog duties. *Id.* Plaintiff sued defendants for violation of the DPA. The court of appeal determined that the allegations surrounding defendant's failure to restrain the guard dog and the resulting interference with the guide dog's function were adequately pled and were the type of behavior actionable under section 54.3(a) of the DPA. *Id.* at 22. The court also found that because the change in the guide dog's behavior affected Plaintiff's ability to use the sidewalk immediately outside of the premises, which in turn was sufficient to state a claim, that he was denied equal access to the sidewalk under section 54.3. *Id.*

19cv0054 JM(BGS)

Vehicle Defendants rent the vehicles to members of the public, provide warnings, and encourage users to leave the dockless vehicles in appropriate places and conform with traffic laws. (*See, e.g.,* Doc No. 62-2 at 6, 7, 11, 14, 15, 18; Doc. No. 63-2 at 27[16]; Doc. No. 65-1 at 7.)

Finally, the DPA is silent regarding the issue of third-party liability, and the court is unaware of any precedent establishing such liability. The court is effectively being asked to hold defendants vicariously liable for the actions of third parties who might abandon a dockless vehicles on a sidewalk, thereby creating a barrier to access. Yet the FAC does not allege that the Dockless Vehicle Defendants exerted, or exacts, control over users who have created, or create, any such barrier or that an agency relationship existed, or exists, between the Dockless Vehicle Defendants and their customers. *See, e.g., Kuegel v. Encina-Pepper Tree,* No. 1402653, 2013 WL 9776871, at *2-3 (Cal. Super. Ct. Mar. 26, 2013) (granting summary judgment in favor of non-agency defendant because of the absence of pleaded facts or evidence that it denied, aided or incited denial of access); *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.,* 840 F. Supp. 1328, 1354 (N.D. Cal. 1993) (granting defendant San Francisco Redevelopment Agency's motion for summary judgment on Unruh claim, finding the Agency did not have a duty under the Act as it did not own, lease

---

[16] Uber asks the court to take judicial notice of news articles from four websites and Jump's Rental Agreement from Uber's Jump.com website. (Doc. No. 63-2.) Uber moves for judicial notice under Federal Rule of Evidence 201 because a court may take judicial notice of publications including newspapers, magazine articles, and web pages and because the rental agreement is readily accessible to the public at https://jump.com/rental-agreement/., and is capable of immediate and accurate determination by simply visiting the website. *See Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 259 n.2 (9th Cir. 2013) (taking judicial notice of publications including newspapers, magazines, articles, newspapers and webpages). Plaintiffs have not opposed the use of these documents or challenged their authenticity and their accuracy cannot reasonably be questioned. However, since the court has only referenced Exhibit B, the court only takes judicial notice of Exhibit B filed in support of Defendant's Motion to Dismiss. (Doc. No. 65-1at 2-15.)

or operate the premises in question, nor design or construct it.) *See also*, CAL. CIV. CODE §§ 2295-2300 (an agent has apparent or ostensible authority "when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him); *Doe v. Roman Catholic Archbishop of L.A.,* 247 Cal. App. 4th 953, 969 (2016) (a principal may be liable for the wrongful conduct of its agent if: (1) the principal directly authorizes the tort or crime to be committed; (2) the agent commits the tort in the scope of his employment and in performing a service on behalf of the principal; or (3) if the principal ratifies its agent's conduct after the fact by voluntarily electing to adopt the agent's conduct as its own.") (internal quotation marks, alterations and citations omitted). In sum, neither the Act nor relevant cases suggest it was intended to impose third party liability under the circumstances alleged by Plaintiffs in the FAC. Accordingly, the Dockless Vehicle Defendants' motions to dismiss Plaintiffs' DPA claim are **GRANTED WITH LEAVE TO AMEND**.

### 7. California Civil Code Section 51 et seq., Unruh Act, Claim

All Defendants move for dismissal of the Unruh claim.

Section 51 provides "All persons within the jurisdiction of this state are free and equal, and no matter what their … disability ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." CAL. CIV. CODE § 51(b). The Ninth Circuit has held that violating the ADA is a *per se* violation of the Unruh Act. *Lentini,* 370 F.3d at 847. *See* CAL. CIV. CODE § 51(f) (providing that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 … shall also constitute a violation of this section"). However, when a Plaintiff has not established an ADA violation, they must plead intentional discrimination.[17] CAL. CIV. CODE § 51(f). *Munson*

---

[17] When an Unruh Act claim is premised on a violation of the ADA, a plaintiff need not show intent. *See* CAL. CIV. CODE § 51(f); *Munson,* 46 Cal. 4th at 670 ("We conclude that a plaintiff proceeding under section 51, subdivision (f) may obtain statutory damages on

46 Cal. 4th at 671-72. "[T]he language of the Act suggests that intentional acts of discrimination, not disparate impact, was the object of the legislation… and impl[ies] willful, affirmative misconduct on the part of those who violate the Act." *Koebke v. Bernado Heights Country Club*, 36 Cal. 4th 824, 853 (2005).

### a. The City

City's primary argument for dismissal of the Unruh claim is that "the City's enactment or legislative decision not to enact legislation does not make it a "business establishment" within the meaning of the statute. (Doc. No. 57-1 at 18.)

As set forth above, Plaintiffs have adequately alleged that City has violated Title II of the ADA. Because the Unruh Act claim is premised on this violation, Plaintiffs have sufficiently pled an Unruh violation. CAL. CIV. CODE § 51(f). Since the allegations in the FAC are not solely concerned with legislative action or inaction, the court interprets the term "business establishment" broadly and finds that City can be subject to suit under the Act. *See Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 76 (1985). *See also K.T. Pittsburg v. Unified Sch. Dist.*, 219 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (holding public school to be a business establishment within meaning of Unruh); *Gibson*, 181 F. Supp. 2d at 1089-1093, (analyzing text of Unruh and previous case law and concluding County was a business establishment under Unruh). Accordingly, City's motion to dismiss Plaintiffs' Unruh claim is **DENIED**.

### i. City's Immunity Defense to this Claim

City also asserts the immunity defenses against Plaintiffs' Unruh claims. The same reasons for denying immunity under sections 845 and 846 are equally applicable here. *See Gates v. Superior Court,* 32 Cal. App. 4th 481 (1995) (finding section 845 immunity precluded suits for failure to provide police protection under Unruh. The court did,

---

proof of an ADA access violation without the need to demonstrate additionally that the discrimination was intentional.").

however, imply that injunctive relief is available under the Act when public officials, acting in their official capacity disregard rights guaranteed to individuals by section 51 of Unruh.); *see also Gibson,* 181 F. Supp. 2d at 1099 (concluding County and individually-named defendants acting in their official capacity are immune from any liability for damages under Unruh, finding Plaintiffs entitled to injunctive relief). Thus, the court finds that although Plaintiffs are not entitled to monetary damages on the Unruh claim, equitable injunctive and declaratory relief is available to them. Accordingly, City's motion to dismiss this claim on immunity grounds is **DENIED**.

### b. Dockless Vehicle Defendants

The Dockless Vehicle Defendants make two arguments in support of dismissal of the Unruh claim. First, they claim that since the Unruh claim is a derivative claim of the insufficiently pled Title III ADA, the pleadings also necessitate dismissal of this claim. (Doc. No. 30-1 at 16; Doc. No. 56-1 at 12-14; Doc. No. 62-1 at 22-23; Doc. No 63-1 at 25.) Second, they contend that the Unruh claim must be dismissed because Plaintiffs fail to allege: (1) intentional discrimination; and (2) that they have, at a minimum, attempted to access the services provided by Defendant

Here, the FAC fails to state either type of Unruh claim. As explained above, Plaintiffs have failed to state a Title III claim against the Dockless Vehicle Defendants. Thus, to the extent Plaintiffs' Unruh Act claim against these defendants is premised on a violation of the ADA, it fails for the same reason that Plaintiffs' Title III claim fails. Further, the FAC does not allege any facts to suggest they were customers or patrons or otherwise attempted to access the services of defendants or to plausibly suggest that the Dockless Vehicle Defendants engaged in any willful, affirmative discriminatory conduct and Plaintiffs' responses in opposition are silent on this issue. *See, e.g., White v. Square, Inc.*, 7 Cal. 5th 1019, 1032 (2019) (concluding that a person who visits a business' website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under Unruh); *Wilkins-Jones,* 859 F. Supp. 2d at 1053 (dismissing Unruh claim where plaintiff did not clearly allege she asked

defendants for a particular accommodation which was refused or that her disabilities warranting accommodations were obvious and should have been known by defendants); *Reycraft v. Lee,* 177 Cal. App. 4th 1211, 1224 (2009) (plaintiff must allege that he/she presented themselves to a business with the intent of using its products or services "in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion."). Even reading the FAC in the light most favorable to the Plaintiffs, there are insufficient allegations to support an inference that the Dockless Vehicle Defendants acted with the required discriminatory intent. Accordingly, the Dockless Vehicle Defendants' motions to dismiss Plaintiffs' Unruh Act claim are **GRANTED WITH LEAVE TO AMEND**.

## V.     CONCLUSION

For the reasons set for above, it is HEREBY ORDERED:

1. Plaintiffs' Request to Strike City's Purported Supplemental Authority (Doc. No. 78) is GRANTED;

2. Plaintiffs' Motion to Strike Defendants' Supplemental Authority (Doc. No. 84) is GRANTED;

3. Defendant City's Motion to Dismiss the entire complaint on immunity grounds is DENIED;

4. Defendant City's Motion to Dismiss the Title II ADA Claim is DENIED;

5. Defendant City's Motion to Dismiss the Rehabilitation Act Claim is DENIED;

6. Defendants Bird, Lime, Razor, Wheels Labs, Uber, and Lyft's motions to dismiss the Title III ADA Claim are GRANTED with leave to amend;

7. Defendant City's Motion to Dismiss the California Civil Code section 4450 is DENIED;

8. Defendant City's Motion to Dismiss the California Civil Code section 11135 claim is DENIED;

9. Defendants Bird, Lime, Razor, Wheels Labs, Uber, and Lyft's motions to dismiss the California Government Code section 11135 claim are GRANTED WITH PREJUDICE;

10. Defendant City's motion to dismiss the California DPA claim is DENIED;

11. Defendants Bird, Lime, Razor, Wheels Labs, Uber, and Lyft's motions to dismiss the California DPA Claim are GRANTED with leave to amend;

12. Defendant City of San Diego's motion to dismiss the California Unruh Act claim is DENIED;

13. Defendants Bird, Lime, Razor, Wheels Labs, Uber, and Lyft's motions to dismiss the California Unruh Act Claim are GRANTED with leave to amend;

14. Defendants Bird, Lime, Razor's motion to strike class allegations (Doc. No. 31) is DENIED as MOOT WITHOUT PREJUDICE.

Defendant City has up to and including *February 18, 2020* to file an answer to the FAC. Plaintiffs, should they elect to file a second amended complaint amending their claims against the Dockless Vehicle Defendants, must do so by *February 18, 2020*.

IT IS SO ORDERED.

Dated: January 21, 2020

_____
Hon. Jeffrey T. Miller
United States District Judge