1  Michael I. Neil, SBN 40057
   Robert W. Frank, SBN 95392
2  Matthew R. Souther, SBN 227910
   Phillip E. Stephan, SBN 283818
3  NEIL, DYMOTT, FRANK, McCABE & HUDSON
   A Professional Law Corporation
4  110 West A Street, Suite 1200
   San Diego, CA 92101
5  P 619.238.1712
   F 619.238.1562
6
   *[Additional counsel listed on following page]*
7
   Attorneys for ALEX MONTOYA, REX SHIRLEY,
8  PHILIP PRESSEL, and WYLENE HINKLE
   On Behalf of the Plaintiff Class
9

10              **IN THE UNITED STATES DISTRICT COURT**

11                 **FOR THE SOUTHERN DISTRICT**

12  ALEX MONTOYA, REX SHIRLEY,          )   **CASE NO. 3:19-cv-00054-JM-BGS**
    PHILIP PRESSEL, and WYLENE          )
13  HINKLE, individually, and on behalf of )  **SECOND AMENDED CLASS**
    all others similarly situated,        )   **ACTION COMPLAINT FOR:**
14                                       )
                      Plaintiffs,        )   1. **42 U.S.C. §12101 *et. seq.* [The**
15                                       )      **Americans with Disabilities Act];**
    vs.                                  )   2. **29 U.S.C. § 794 *et seq.* [Section 504**
16                                       )      **of the Rehabilitation Act;**
    CITY OF SAN DIEGO, a public entity,; )   3. **California Civil Code §54 *et seq.***
17  and DOES 1-100,                      )      **[California Disabled Persons Act];**
                                         )   4. **California Civil Code §51 *et seq.* [**
18                    Defendants.        )      **Unruh Civil Rights Act];**
                                         )   5. **California Government Code**
19                                       )      **§4450 *et seq.*;**
                                         )   6. **California Government Code**
20                                       )      **§ 11135 *et seq.***
                                         )
21  _____ )   **DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

                                      1

Ann E. Menasche, SBN 74774
Ann.menasche@disabilityrightsca.org
Nichole Mendoza, SBN 276632
Nichole.Mendoza@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
530 B Street, Suite 400
San Diego, CA 92101
Telephone:  (619) 239-7861/Fax:  (619) 239-7906

Navneet K. Grewal, SBN 251930
Navneet.Grewal@disabilityrightsca.org
Ben Conway, SBN 246410
Ben.conway@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone:  (213) 213-8000/Fax:  (213) 213-8001

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

2

# SECOND AMENDED COMPLAINT

## I. <u>INTRODUCTION</u>

1.     This action challenges the failure of the City of San Diego to maintain the accessibility of the City's system of public sidewalks, curb ramps, crosswalks and transit stops for people with disabilities, in the face of an onslaught of dockless vehicles. Private dockless electric scooter and bike companies have been allowed to appropriate the public commons for their own profit, regardless of the impact on the City's residents. Persons with mobility impairments, including people who use wheelchairs or walkers, and people with significant visual impairments are thereby being denied their right to travel freely and safely on our public walkways.

2.     Without full use of the sidewalk and curb ramps at street intersections, persons with mobility and/or visual impairments have significant barriers in crossing from a pedestrian walkway to a street.  This is exacerbated when the sidewalk itself is full of obstructions and no longer able to be fully and freely used by people with disabilities.

3.     When dockless vehicles are left in the middle of the sidewalk and other rights of way, at points of ingress and egress, they block off access to the public rights of way; furthermore, as the City of San Diego knows, the dockless vehicle riders often ride the vehicles on the sidewalk, turning the sidewalk into a vehicle highway rather than a space for safe pedestrian access and use.

4.     On July 26, 1990, Congress enacted the Americans with Disabilities Act (ADA), ADA §§ 2 et seq. [42 U.S.C.A. §§ 12101 et seq.], establishing the most important civil rights legislation for persons with disabilities in our country's history, including the right to have full and equal enjoyment of services, programs, or activities of a public entity.

5.     Congress explicitly stated that the purpose of the ADA was to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §12101(b)(1)-(2). Congressional statutory

findings include: "historically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; "discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services"; "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers"; and, "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101.

6.      In the House Report accompanying the ADA, Congress expressly noted that the "employment, transportation, and public accommodation sections of [the ADA] would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets." See H.R. Rep. No. 101-485(II), at 84, reprinted in 1990 U.S.C.C.A.N. 303, 367.

7.      Congress gave public entities, including state and local governments, eighteen 18 months to implement the ADA. By January 26, 1992, the effective date of the ADA, all public entities had to comply with the statutory and regulatory provisions of the ADA.

8.      Nevertheless, instead of complying with the ADA, the City of San Diego has failed to maintain and respect the public sidewalks of the City in a way that allows for disabled residents to enjoy unencumbered access. People with disabilities who wish to travel in the City using the City's walkways are being forced to either put their physical safety at risk or just stay home. This is not a choice that they should have to make.

///

4

9.    Alex Montoya, Rex Shirley, Philip Pressel, and Wylene Hinkle("Lead Plaintiffs"), as individuals and on behalf of all other similarly situated (the "Putative Class") hereby move against the City of San Diego ("Municipal Defendant" or "Defendant").

## II.  <u>VENUE AND JURISDICTION</u>

10.    The claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiffs' federal claims, Defendant has also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

11.    Venue over Plaintiffs' claims is proper in the Southern District of California because the Municipal Defendant resides in the Southern District of California within the meaning of 28 U.S.C. § 1391, and because the acts, events, and omissions giving rise to Plaintiffs' claims occurred in the Southern District of California.

## III.  <u>PARTIES</u>

12.    Alex Montoya is a San Diego, California resident. Alex Montoya is congenital triple amputee - a birth defect rendered Mr. Montoya without arms and one leg since birth, and Mr. Montoya wears prosthetics on both arms and his right leg every day. Mr. Montoya is mobility impaired. He does not drive, and for that reason, chose to live and work in the East Village neighbourhood of San Diego, where he could access several places as a pedestrian. Because of his prosthetics, Mr. Montoya's reaction time is slower than an average, non-disabled person, and he has more difficulty navigating around obstacles in his path of travel – yet, almost every single day since October of

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

2018, Mr. Montoya finds his access impeded as dockless electric scooters and bikes diminish available sidewalks for walking and diminish his enjoyment of the sidewalk, as he finds himself dodging dockless vehicles on sidewalks and street crossings, coming from all directions and rapid rates of speed without warning. As a result of the proliferation of dockless vehicles on public sidewalks and the limitation caused by his disability, Mr. Montoya now will avoid walking somewhere if he can, as he does not feel safe walking and has been deterred from accessing from the City's system of sidewalks. Mr. Montoya, as well as his special-needs brother, have nearly tripped over discarded dockless electric vehicles, as the scooters and bikes are strewn all over the sidewalks. Plaintiff Montoya is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

13.     Rex Shirley is a San Diego, California resident, in the neighbourhood of Mission Beach. Rex Shirley has been diagnosed with Parkinson's disease, which has progressively advanced over several years. Mr. Shirley requires the use of a mobility scooter for his transportation. In October of 2018, Mr. Shirley was nearly hit by an electric scooter on the Mission Beach Boardwalk. Since approximately October of 2018, Mr. Shirley has found dockless electric bikes and scooters blocking his access to the sidewalks of Mission Beach on a nearly continuous basis and has often been unable to maneuver his mobility scooter around the obstacles in his path. Mr. Shirley has seen dockless electric scooters left on their sides on the alleys and streets of Mission Beach, near his home, and those scooters block access and impede Mr. Shirley's ability to safely travel the streets and sidewalks of Mission Beach. Mr. Shirley has to drive his mobility scooter around the dockless electric vehicles to get places, and is often unable to do so. Mr. Shirley fears further close encounters with the dockless vehicles, and cannot use the sidewalks and public rights of way as he would please because of blocked access and the inability to avoid electric vehicles that, due to his Parkinson's disease,

he cannot hear coming or easily evade. As a result of these issues created by dockless vehicles, Mr. Shirley goes out less as he is deterred from utilizing the system of sidewalks, avoids the Mission Beach Boardwalk and strand areas near where he lives, and finds his local travel impeded when he does go out. For the same reasons, Mr. Shirley also finds it difficult to utilize the public rights of way to walk his dog. Mr. Shirley is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

14.     Philip Pressel is a San Diego, California resident, living in downtown San Diego. Mr. Pressel has lost the use of his left leg and is an amputee. Mr. Pressel has also undergone two back surgeries and has severe lower back pain. Mr. Pressel now requires the use of an electric mobility scooter unless walking very short distances, usually no more than one block or so. Mr. Pressel is also immune-suppressed because of an organ transplant. Mr. Pressel chose to live in downtown because of the ability to easily access numerous places. Since approximately October of 2018, Mr. Pressel has encountered dockless electric scooters and bikes on sidewalks and near or in curb cuts which, due to his disability, he is unable to safely navigate around without assistance. Mr. Pressel's wife has had to move dockless scooters and bikes out of the way for Mr. Pressel to access the pedestrian walkways, and Mr. Pressel has been deterred from utilizing the system of sidewalks both independently and with other people. Mr. Pressel has had numerous occasions where he could not see a discarded dockless scooter laying on the ground, and has nearly collided with those grounded scooters. Plaintiff Pressel is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

///

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

15.     Wylene Hinkle is a resident of the City of San Diego, living in downtown San Diego. Ms. Hinkle is a person who is blind, and has been her entire life. She uses hearing aids and has Psoriatic Arthritis, which makes it difficult for her to walk or stand for long periods of time. Because she cannot see, it is impossible for her to safely avoid dockless vehicles, whether they are being driven on the sidewalk or left strewn across her path of travel. Ms. Hinkle has had two incidents, in September of 2018 and September of 2019, where she was hit by a scooter while walking downtown near her home, causing her to sustain minor injuries. In addition, since October of 2018, Ms. Hinkle's access to crosswalks in the City has been impeded as scooters discarded and left leaning against traffic light poles block access to the buttons which trigger the audible signals which tell Ms. Hinkle whether it is safe to cross. Ms. Hinkle does not drive, and as a result of this impeded access, has been forced to use the public rights of way less often. Plaintiff Hinkle is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R. § 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926.

16.     The putative class consists of all residents of the City of San Diego with mobility and/or visual impairments. The class shall be divided into two subclasses:

      a.  Residents of the City of San Diego with mobility impairments (the "Mobility Impairment Subclass"); and,

      b.  Residents of the City of San Diego with visual impairments (the "Visual Impairment Subclass").

17.     Hereafter, references to Plaintiffs shall be deemed to include Lead Plaintiffs and each member of the Putative Class, unless otherwise indicated.

18.     Defendant City of San Diego is a public entity within the meaning of Title II of the Americans with Disabilities Act (the "ADA") and on information and belief, has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, et seq. (the "Rehabilitation Act") and state financial

assistance within the meaning of Government Code 11135. Defendant City of San Diego has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

19.   Defendant City of San Diego is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant City of San Diego is responsible for maintaining the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways within the City of San Diego.

## IV.   **FACTUAL ALLEGATIONS**

20.   The City of San Diego has failed to adequately maintain the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, by allowing dockless vehicles to proliferate unchecked throughout San Diego and to block safe and equal access for people with disabilities who reside in the City.  Defendant City of San Diego has thereby denied Plaintiffs the benefits of the City's services, programs, and activities based on their disabilities.

21.   Dockless vehicle companies have used and appropriated varying portions of the City's public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and walkways with impunity for their own private profit – effectively turning them into their private retail stores, showrooms, highways, and storage facilities - in abject disregard for the safety and access rights of San Diego's residents with disabilities.

22.   Dockless scooters and bikes present obstacles and block full access and use of the sidewalk when left on the ground. Across the City of San Diego, idle dockless vehicles clog the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways.

23.   Perhaps even more dangerous, dockless vehicles may be driven at speeds much faster than the speed of foot traffic through the system of sidewalks, crosswalks,

9

curb ramps, transit stops, pedestrian crossings and other walkways, despite the California Vehicle Code's prohibition against operation of a motorized vehicle upon the sidewalks. Effectively, the practice turns the systems of sidewalks into a dockless vehicle highway.

24.   Once a dockless vehicle rider is done using the dockless vehicle, the dockless vehicle rider can leave the dockless vehicles where the user may see fit, as part of the "dockless" business model – typically, idle dockless vehicles end up on public property in the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, either on the ground, parked upright, or left resting sideways blocking portions of the systems of sidewalks and rights of way. Groups of dockless vehicles may be discarded in close proximity, causing a blockade and diminishing full use of the sidewalks for pedestrians.

25.   37. This "dockless" practice violates San Diego Municipal Code §129.0702(a)(2), which requires a Public Right-of-Way Permit for the construction of "privately owned structures, facilities, or improvements in the public right-of-way or in a public service easement."

26.   This "dockless" practice also violates San Diego Municipal Code §54.0110, which states: "It is unlawful for any person to erect, place, allow to remain, construct, establish, plant, or maintain any vegetation or object on any public street, alley, sidewalk, highway, or other public property or public right-of-way, except as otherwise provided by this Code." Yet, the City, while vigorously enforcing this provision against homeless individuals - citing and arresting them for placing sleeping bags, shopping carts and other personal belongings on the ground – has intentionally, recklessly, or thoughtlessly overlooked the impact of dockless vehicles and their severe negative impact on disability access.

27.   To continue appropriating and re-purposing the City of San Diego's sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings, dockless vehicle companies hire independent contractors to tend to stage, recover, and return the

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

dockless vehicles to the system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

28.     Dockless vehicles cause barriers in paths of travel when they are operated. Dockless vehicles are operated on the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways. The dockless scooters are motor powered via an electric battery, propelling them at speeds around twenty (20) miles per hour, or more. Dockless bikes are also motor powered via an electric battery, propelling them at speeds around fifteen (15) miles per hour, or more. No training or education is required for people to ride dockless vehicles. The combination of high relative speeds, compared to pedestrians, and lack of restrictions regarding the operator, creates hazardous conditions which causes Lead Plaintiffs, and others in the Putative Class, difficulty, frustration, and risk of serious physical harm. Lead Plaintiffs, should they wager trying to access the benefits of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, do so in a state of hypervigilance and stress as the concern of being struck and possibly injured by a wayward dockless vehicle persists, and Lead Plaintiffs do not know whether, due to their disabilities, they will be unable to safelty navigate the obstacles caused by the dockless vehicle in their path and therefore be unable to access the sidewalks on an independent basis.

29.     Dockless vehicles hinder and inhibit Plaintiffs from using the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways due to their disabilities, and have actually caused Plaintiffs to use the sidewalks less often. As in-use dockless scooters and bikes speed by and deny safe, equal and full access to the sidewalks, and as idle dockless vehicles occupy, partition, and block the sidewalks and other pedestrian rights of way, the sidewalk has become inaccessible, dangerous, and much more difficult to trust as a walkway for people with mobility or visual impairments. As a result of the difficulty and frustration with the experience of attempting to use the sidewalks and other pedestrian rights of way and fear of injury, Plaintiffs are disheartened and deterred from using the system of

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways.

30.     The burgeoning proliferation and uncurbed growth of dockless vehicles comes at the detriment of the rights of all disabled persons with mobility and/or visual impairments who are residents of the City of San Diego, causing Plaintiffs injury and severe anxiety, diminishing their comfort and discriminating against them based on their disabilities by denying them access to and safe use of public walkways and other essential public services, resulting in isolation in their homes and deterioration in Plaintiffs' quality of life.

31.     The Municipal Defendant is responsible for maintaining the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways, which constitute an essential government program, service, and activity for residents and visitors of the City of San Diego.

32.     The Municipal Defendant is responsible for providing public transportation for the residents and visitors to the City of San Diego, which constitutes an essential government program, service and activity for residents and visitors of the City of San Diego.

33.     The Municipal Defendant has further failed to maintain the system of sidewalks and rights of way in a fashion that ensures that meaningful access is not only assured to all residents with disabilities, but also that allows residents with disabilities to enjoy the full and equal benefit of the sidewalks and pedestrian rights of way. Notably, the City of San Diego has failed to develop an adequate number of alternative lanes that are not on the sidewalk (i.e., bike lanes) that might provide for a lawful and proper use of dockless vehicles.

34.     The combination of the City of San Diego's thoughtlessness, indifference, and failure to maintain the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in compliance with the needs of disabled individuals results in Plaintiffs suffering disproportionate harm based on their

disabilities. The City of San Diego's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways is no longer readily accessible to and usable by persons with mobility and/or visual disabilities due to the pervasive and ever-growing presence of dockless vehicles that create physical access barriers along the path of travel on the City's public walkways.

35.     Lead Plaintiffs and other persons with mobility or visual impairments must roll the dice every time they choose to use the system of sidewalks and other pedestrian rights of way, as they gamble as to whether the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways might be unfettered or instead that Plaintiffs might be blocked or themselves placed in danger by encountering dockless vehicles strewn along their path that, due to their disabilities, they cannot reasonably circumvent or avoid. These obstructions deny people with disabilities equal access to the City of San Diego's system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways and strip them of their freedom and their right to safely use the public sidewalk in the same fashion and with the same benefit as enjoyed by those without disabilities.

36.     Lead Plaintiffs and class members have mobility and/or visual impairments. Lead Plaintiffs and class members have encountered dockless vehicles strewn across, blocking, and/or being driven upon the system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways in the City of San Diego, denying them full and equal access based on disability, and causing Plaintiffs difficulty, frustration and embarrassment, and placing them in danger of injury or death. Plaintiffs continue to be deterred from leaving their homes and their places of business since the invasion of these dockless vehicles onto the streets of the City of San Diego.

37.     The maintenance of an accessible system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for people with disabilities go to the heart of the purpose of the ADA and other disability rights laws, and is

13

SECOND AMENDED CLASS ACTION COMPLAINT            CASE NO. 3:19-cv-00054-JM-BGS

essential for full integration of people with disabilities into the community. The Municipal Defendant's failure to ensure that the system of public walkways is kept accessible to persons with mobility or visual impairments free of dockless vehicle obstructions causes disproportionate harm to people with disabilities and thereby discriminates based on disability in violation of multiple federal and state disability rights laws. This lawsuit seeks to ensure fair, full, and equal access to the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for all residents with disabilities in the City of San Diego.

38.    Plaintiffs thus bring this action to, among other things, remedy violations of Title II of the ADA, 42 U.S.C. §12131, et seq., and its accompanying regulations,; and, Section 504 of the Rehabilitation Act and its accompanying regulations, as well as analogous state statutes including California Government Code §11135, California Civil Code §54, et seq., California Government Code §4450, and California Civil Code §51, et seq. Plaintiffs seek declaratory and injunctive relief pursuant to the above, as well as an award of attorneys' fees and costs under applicable law. Plaintiffs also seek statutory minimum penalties under California law – Plaintiffs do not seek actual damages in this class action.

## V.   <u>CLASS ACTION ALLEGATIONS</u>

39.    The Lead Plaintiffs bring this action individually, and on behalf of all residents of the City of San Diego with mobility or visual impairments. The class shall be divided into two subclasses:

      a.   Residents of the City of San Diego with mobility impairments (the "Mobility Impairment Subclass"); and,

      b.   Residents of the City of San Diego with visual impairments (the "Visual Impairment Subclass").

40.    Each member of the Putative Class is a "qualified person with a disability" and/or a person with a "disability" within the meaning of all applicable federal and state statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104; 28 C.F.R.

14

§ 36.104; 29 U.S.C. § 705(2)(B), and California Government Code § 12926. The persons in the Putative Class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The Putative Class consists of tens of thousands of persons with disabilities of mobility or visual impairment that reside in the City of San Diego.

41.     Lead Plaintiffs are informed, believe, and thereon allege that the Defendant's policies and procedures violate the ADA, the Rehabilitation Act, and analogous state statutes with regard to the system of sidewalks, crosswalks, curb ramps, pedestrian crossings and other walkways and disability access.

42.     Lead Plaintiffs are informed, believe, and thereon allege that Defendant has not adopted and does not enforce appropriate policies to prevent discrimination against persons with disabilities and to ensure equal access to programs, services and activities for persons with disabilities.

43.     The violations of the ADA, the Rehabilitation Act and related California statutes set forth in detail above, have injured all members of the Putative Class, violating their rights.

44.     Defendant acted or refused to act on grounds generally applicable to the Putative Class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole appropriate.

45.     The claims of the Lead Plaintiffs are typical of the Putative Class that they arise from the same course of conduct engaged in by Defendant. The relief sought herein will benefit all class members alike.

46.     Lead Plaintiffs will fairly and adequately represent the interests of the class. Lead Plaintiffs have no interests adverse to the interests of other members of the class and have retained counsel that is competent and experienced in litigation complex class actions, including disability rights cases.

///

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

47.     With regard to the Putative Class, the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied as such:

a.     The class is so numerous that it would be impractical to bring all class members before the Court;

b.     There are questions of law and fact which are common to the class;

c.     The Lead Plaintiffs' claims are typical of the claims of the class;

d.     The Lead Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in class actions and the disability rights issues in this case.

e.     Defendant has acted or generally refused to act on grounds generally applicable to the class; and,

f.     The common questions of law and fact which are common to the class predominate over individual questions.

48.     The common questions of law and fact, shared by all class members, include:

a.     Whether the Municipal Defendant is violating Title II of the ADA, 42 U.S.C. § 12131 et seq., by depriving persons with disabilities access to programs, services and activities of the City of San Diego, and otherwise discriminating against persons with disabilities, as set forth above;

b.     Whether the Municipal Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq., by depriving persons with disabilities access to programs, services and activities of the City of San Diego, and otherwise discriminating against persons with disabilities, as set forth above;

c.     Whether the Defendant is violating California Government Code Section 11135(a), which prohibits denial of benefits to persons with

disabilities of any program or activity that is funded directly by the state or receives any financial assistance from the state;

d.  Whether the Defendant is violating California Civil Code §54 et seq., by depriving persons with disabilities full and equal access;

e.  Whether the Defendant is violating California Government Code §4450; and,

f.  Whether the Defendant is violating California Civil Code §51 et seq.

## VI.  FIRST CAUSE OF ACTION

### The Americans with Disabilities Act – Title II

49.  Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

50.  Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

51.  In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

52.  Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

53.  At all times relevant to this action, the Municipal Defendant was a "public entity" within the meaning of Title II of the ADA and provided and provides a program, service or activity to the general public.

54.  At all times relevant to this action, Plaintiffs were qualified individuals

17

1  with disabilities within the meaning of Title II of the ADA and met the essential

2  eligibility requirements for the receipt of the services, programs, or activities of the City

3  of San Diego. 42 U.S.C §12131.

4      55.    Municipal Defendant is mandated to operate each program, service, or

5  activity "so that, when, viewed in its entirety, it is readily accessible to and useable by

6  individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149 &

7  35.151. The system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian

8  crossings and other walkways themselves constitute an essential public service,

9  program, or activity under Title II of the ADA. 28 C.F.R. § 35.104; see *Barden v. City*

10 *of Sacramento*, 292 F.3d 1073 (2002).

11     56.    The regulations implementing Title II of the ADA provide that a public

12 entity must maintain the features of all facilities required to be accessible by the ADA.

13 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks and

14 passageways. 28 C.F.R. § 1035.104.

15     57.    Plaintiffs are informed, believe and thereon allege that the system of

16 sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other

17 walkways are not fully, equally and safely accessible to Plaintiffs when viewed in their

18 entirety.

19     58.    Plaintiffs are informed, believe and thereon allege that the Municipal

20 Defendant violated and continues to violate the ADA by failing to ensure that the system

21 of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other

22 walkways are kept free of the dockless vehicle obstructions and thereby the City of San

23 Diego denies Plaintiffs the benefits of the system of sidewalks, crosswalks, transit stops,

24 curb ramps, pedestrian crossings and other walkways, due to their disabilities.

25     59.    Plaintiffs are informed, believe and thereon allege that the Municipal

26 Defendant failed and continues to fail to adopt, implement or enforce ordinances or

27 other regulations necessary to ensure that the system of sidewalks, crosswalks, transit

28

18

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

stops, curb ramps, pedestrian crossings and other walkways are kept free of the dockless vehicle obstructions.

60.     Plaintiffs are informed, believe and thereon allege that the Municipal Defendant and their agents and employees have and continue to violate the ADA by failing to timely respond to and remedy complaints about the said barriers through their policies and practices with regard the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways thereby denying disability access.

61.     Plaintiffs are informed, believe and thereon allege that the Municipal Defendant committed the acts and omissions alleged herein with intent and/or reckless disregard, thoughtlessness and indifference to Plaintiffs' rights.

62.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities. Plaintiffs have been deterred from utilizing the system of sidewalks and pedestrian rights of way, and have been stripped of their independence.

63.     Municipal Defendant's discriminatory conduct is ongoing, and causing continuing harm, including deterrence and stripping Plaintiffs of their independence. Plaintiffs have no adequate remedy at law and are therefore entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 12133.

64.     Plaintiffs are further entitled to reasonable attorneys' fees and costs incurred in bringing this action.

## VII.   SECOND CAUSE OF ACTION
### (The Rehabilitation Act)

65.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

66.     Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified person with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

subjected to discrimination under any program or activity receiving federal financial assistance…" 29 U.S.C. § 794.

67.     Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City of San Diego. See 29 U.S.C. § 794(b).

68.     The Municipal Defendant is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and have received such federal assistance at all times relevant to the claims asserted in this Complaint.

69.     Plaintiffs are informed, believe and thereon allege that the Municipal Defendant and their agents and employees have violated and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to discrimination in the benefits and services of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways for the reasons set forth above, based solely by reason of their disabilities.

70.     Plaintiffs are informed, believe and thereon alleges that the Municipal Defendant committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

71.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to the Municipal Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

72.     Municipal Defendant's discriminatory conduct is ongoing. Plaintiffs have no adequate remedy at law and are entitled to declaratory and injunctive relief set forth in 29 U.S.C. §794(a) and the Civil Rights Act of 1964, 42 U.S.C. 2000d-7(2).

73.     Plaintiffs are also entitled to reasonable attorneys' fees and costs incurred in bringing this action.

SECOND AMENDED CLASS ACTION COMPLAINT            CASE NO. 3:19-cv-00054-JM-BGS

## VIII.  THIRD CAUSE OF ACTION
### (California Government Code §4450)

74.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

75.     The system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways are publicly funded and intended for use by the public within the meaning of California Government Code § 4450, et seq.

76.     Plaintiffs are informed, believe and thereon alleges that the Municipal Defendant and its agents and employees have and continue to violate California Government Code § 4450 et seq. and regulations implemented pursuant thereto by operating the system of sidewalks, crosswalks, curb ramps, pedestrian crossings and other walkways in violation of disability access requirements, for the reasons set forth above.

77.     The aforementioned acts and omissions of the Municipal Defendant constitute denial of equal access to and use of the system of sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways and caused Plaintiffs to suffer deprivation of their civil rights.

78.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, due to the Municipal Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

79.     The Municipal Defendant's discriminatory conduct is ongoing. There is no adequate remedy at law, and Plaintiffs are entitled to declaratory and injunctive relief.

80.     Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## IX.  FOURTH CAUSE OF ACTION
### (California Government Code §11135)

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

81.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

82.     Section 11135(a) of California Government Code provides in relevant part: "[N]o person in the State of California shall, on the basis of…disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

83.     The Municipal Defendant is funded directly by the State of California and receives financial assistance from the State of California sufficient to invoke the coverage of Government Code Sections 11135, et seq. The Municipal Defendant was and is the recipient of such funding and financial assistance at all times relevant to the claims asserted in this Complaint.

84.     Section 11150 of the California Code of Regulations defines a "program or activity" as "any project, action or procedure undertaken directly by recipients of State support or indirectly by recipients through others by contracts, arrangements or agreements, with respect to the public generally or with respect to any private or public entity."

85.     Section 11150 of the California Code of Regulations defines "[s]tate financial assistance" as "any grant, entitlement, loan, cooperative agreement, contract or any other arrangement by which a State agency provides or otherwise makes available aid to recipients in the form of… (3) real or personal property or any interest in or use of such property, including: (A) transfers or leases of property for less than fair market value or for reduced consideration…"

86.     Section 11150 of the California Code of Regulations defines "[r]ecipient" as any "person, who…receives State support…in an amount in excess of $10,000 in the aggregate per State fiscal year…by grant, contract or otherwise, directly or through another recipient…".

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS

87.     The Municipal Defendant is a direct recipient of state financial assistance.

88.     Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have and continue to violate California Government Code §11135 by unlawfully denying Plaintiffs the benefits of the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways, and unlawfully subjecting Plaintiffs to discrimination regarding the Municipal Defendant's programs and activities, for the reasons set forth above.

89.     Defendant has refused and failed to provide Plaintiffs with full and equal access to their facilities, programs, services and activities as required by California Government Code Sections 11135, et seq. through their policies and practices with regard to the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways that fail to maintain and/or that obstruct the system's accessibility for people with disabilities.

90.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

91.     Defendant's discriminatory conduct is ongoing. There is no adequate remedy at law, and Plaintiffs are entitled to declaratory and injunctive relief.

92.     Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## X.  FIFTH CAUSE OF ACTION

### California Civil Code § 54 et seq.

93.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

94.     California Civil Code § 54(a) provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of …sidewalks, walkways… and other public places."

23

95.     Plaintiffs are persons with disabilities within the meaning of California Civil Code § 54(b)(1) and California Government Code § 12926.

96.     California Civil Code Section 54.3 provides that "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2."

97.     The City of San Diego has deprived Plaintiffs of their right to have full and free use of sidewalks, walkways, transit stops, and other public places, and therefore violated California Civil Code § 54.

98.     For all the reasons outlined above, Defendant violated the rights of Plaintiffs under California Civil Code § 54.

99.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

100.    Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

101.    Plaintiffs are entitled to reasonable attorneys' fees and costs in filing this action.

102.    Plaintiffs seek an award of statutory damages of at least $1,000 per violation, available as the statutory minimum penalty for each violation of Plaintiffs' rights under California Civil Code § 54.3.

///

# XI.  SIXTH CAUSE OF ACTION

## (California Civil Code §51 et seq.)(The Unruh Act)

103.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

104.   California Civil Code § 51(b) (the Unruh Civil Rights Act) provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever".

105.   The Unruh Civil Rights Act prohibits discrimination on the basis of disability in the full and equal access to the services, facilities, and advantages of a business establishment. The term "business establishment" has been interpreted in the broadest sense reasonably possible, to include public entities such as schools, see *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057 (2002), and entities whose activities demonstrate that it is the functional equivalent of a classical place of public accommodation or amusement, see *Stevens v. Optimum Health Institute*, *San Diego*, 810 F. Supp. 2d 1074 (2011).

106.   A violation of the right of any individual under the ADA is also a violation of the Unruh Act. California Civil Code § 51(f).

107.   Defendant City of San Diego's system of public sidewalks, crosswalks, transit stops, curb ramps, pedestrian crossings and other walkways is a "business establishment" operated by the City as defined by the Unruh Act, California Civil Code § 51.

108.   Defendant has denied full and equal accommodations and/or services to Plaintiffs, harming Plaintiffs as set forth throughout this action, notably including deterring Plaintiffs from utilizing the City of San Diego's system of sidewalks,

crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways. The conduct of Defendant was a substantial factor in causing Plaintiffs' harm.

109.   Whoever denies, aids, or incites a denial, or makes any discrimination or distinction contrary to the provisions of the Unruh Civil Rights Act, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than a $4,000, suffered by a person denied rights under the Act. In addition, a court may award attorney's fees to a prevailing plaintiff. Ca. Civil Code § 52(a).

110.   Plaintiffs seek an award of statutory damages of at least $4,000 per violation, available as the statutory minimum penalty for each violation of each Plaintiffs' rights, as well as attorneys' fees and costs pursuant to Civil Code §52.

111.   Defendant is engaged in conduct of resistance to the full enjoyment of rights of people with disabilities as described herein.  Plaintiffs are therefore entitled to preventative relief including a permanent or temporary injunction and other equitable relief. Ca. Civil Code § 52(c)(3).

## XII. PRAYER FOR RELIEF

112.   Lead Plaintiffs, individually, and on behalf of the Putative Class, pray for judgment and relief against Defendant as follows:

A.   For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Putative Class described herein and appointing Lead Plaintiffs to serve as class representatives and Plaintiffs' counsel Neil Dymott Frank McCabe and Hudson, APLC as Lead Counsel for the Putative Class;

B.   For an order enjoining the City of San Diego from permitting dockless vehicles to be present in any manner, including parking and storage, on the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other walkways in the City of San Diego;

26

C.  For an order that this matter remain under this Court's jurisdiction until Defendant fully complies with the Orders of this Court;

D.  For statutory minimum penalty arising from Defendant's wrongful and illegal conduct;

E.  For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

F.  For pre-judgment and post-judgment interest at the legal rate; and

G.  For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  April 10, 2020

Respectfully submitted.
NEIL, DYMOTT, FRANK, MCCABE & HUDSON
A Professional Law Corporation

By:   *s/ Robert W. Frank*

Michael I. Neil
mneil@neildymott.com
Robert W. Frank
rfrank@neildymott.com

By:   *s/ Matthew R. Souther*

Matthew R. Souther
msouther@neildymott.com
Phillip E. Stephan
pstephan@neildymott.com
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

Dated:  April 10, 2020

DISABILITY RIGHTS CALIFORNIA

By:   *s/ Ann E. Menasche*

Ann E. Menasche,
Ann.menasche@disabilityrightsca.org
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

SECOND AMENDED CLASS ACTION COMPLAINT                    CASE NO. 3:19-cv-00054-JM-BGS

Dated:  April 10, 2020                 DISABILITY RIGHTS CALIFORNIA

                                       By:    *s/ Ben Conway*
                                              Ben Conway
                                              Ben.conway@disabilityrightsca.org
                                              Navneet K. Grewal, SBN 251930
                                              Navneet.Grewal@disabilityrightsca.org
                                              Attorneys for Plaintiffs
                                              ALEX MONTOYA, PHILIP PRESSEL,
                                              REX SHIRLEY, and WYLENE HINKLE

SECOND AMENDED CLASS ACTION COMPLAINT          CASE NO. 3:19-cv-00054-JM-BGS