Michael I. Neil, SBN 40057
mneil@neildymott.com
Robert W. Frank, SBN 95392
rfrank@neildymott.com
Matthew R. Souther, SBN 227910
msouther@neildymott.com
Phillip E. Stephan, SBN 283818
pstephan@neildymott.com
NEIL, DYMOTT, FRANK, McCABE & HUDSON
A Professional Law Corporation
110 West A Street, Suite 1200
San Diego, CA 92101
**P** 619.238.1712
**F** 619.238.1562

*[Additional counsel listed on following page]*

Attorneys for ALEX MONTOYA, REX SHIRLEY,
PHILIP PRESSEL, and WYLENE HINKLE
On Behalf of the Plaintiff Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MONTOYA, REX SHIRLEY, PHILIP PRESSEL, and WYLENE HINKLE, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SAN DIEGO, a public entity, and DOES 1-100,<br><br>Defendants. | Case No. 3:19-cv-00054-JM-BGS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**DEMAND FOR JURY TRIAL** |

Ann E. Menasche, SBN 74774
Ann.menasche@disabilityrightsca.org
Nichole Mendoza, SBN 276632
Nichole.mendoza@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
530 B St., Suite 400
San Diego, CA 92101
**P** 619.239.7861
**F** 619.239.7906

Ben Conway, SBN 246410
Ben.conway@disabilityrightsca.org
Navneet K. Grewal, SBN 251930
Navneet.grewal@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
**P** 213.213.8000
**F** 213.213.8001

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................10

II. FACTUAL BACKGROUND .............................................................10

   A.   Public Pedestrian Rights of Way Have Become Points of Sale and Storage for Dockless Vehicles ..............................................................10

   B.   The City of San Diego Has Failed to Maintain the Accessibility of its Public Sidewalk System as Required by the ADA ...................................11

   C.   Plaintiffs Are Disabled Individuals Who Rely Upon the Systems of Sidewalks and Pedestrian Rights of Way ......................................................12

      1.   Named Plaintiffs Are Individuals with Disabilities....................................12

      2.   Named Plaintiffs Have Suffered Harm.........................................................13

III. LEGAL STANDARD FOR A PRELIMINARY INJUNCTION .........................14

IV. ARGUMENT.....................................................................................15

   A.   The City Has Failed to Meet its ADA Obligations to Maintain its Public Walkways Free of Obstructions that Impede Meaningful and Equal Access to People with Mobility and Visual Disability Accommodations ........................15

   B.   Likelihood of Irreparable Harm ......................................................16

   C.   Balance of Hardships ....................................................................17

   D.   Public Interest..............................................................................18

   E.   Likelihood of Success on the Merits.................................................19

      1.   Claim for Violations of Title II of the ADA and the Rehabilitation Act .....20

          i. Applicable Law......................................................................20

          ii.Sidewalks Qualify as a Public Service Under the ADA..........................22

          iii.   Dockless Rental Scooters and Bikes Constitute a Significant Obstruction of the System of Sidewalks in the City of San Diego, Excluding Plaintiffs from the Benefits of this Vital Public Service ....23

3

iv.   The City of San Diego's New Regulations Exacerbate rather than Remedy the City's ADA Failures, and are Pre-empted by the Vehicle Code...................................................................................25

v. As the SMD Ordinance Exacerbates the Failures, The City Cannot Carry its Burden on Mootness, Especially As These Wrongs are Capable of Repetition and Declaratory Relief Is Justified .....................................30

2.   Claim for Violations of California Disabled Persons Act (CDPA) (Civil Code §54)..............................................................................................31

3.   Plaintiffs' Timing In Seeking Injunctive Relief Demonstrates Prudent Diligence, not Dilatory Delay, Given the Need to Present Credible Evidentiary Proof to the Court and the Procedural Posture of this Case ................................32

V. CONCLUSION ........................................................................................34

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Alexander v. Choate*,
     469 U.S. 287 (1985)..................................................................19, 21

6

7
*Alliance for the Wild Rockies v. Cottrell*,
     632 F. 3d 1127 (9th Cir. 2011) ...............................................15

8

9
*Amoco Production Co. v. Village of Gambell, AK*,
     480 U.S. 531 (1987)...................................................................15

10

11
*Arc of California v. Douglas ("Arc")*,
     757 F.3d 975 (9th Cir. 2014) ..............................................32, 33

12

13
*Barden v. City of Sacramento*,
     292 F.3d 1073 (9th Cir. 2002) ......................................22, 23, 28, 32

14
*Bay Area Addiction Research v. City of Antioch*,
     179 F.3d 725 (9th Cir. 1999) ..................................................23

15

16
*Biodiversity Legal Foundation v. Badgley*,
     309 F.3d 1166 (9th Cir. 2002) ..................................................31

17

18
*In re Burrell*,
     415 F.3d 994, 998 (9th Cir. 2005) .............................................30

19

20
*Carribean Marine Servs. Co. v. Baldrige*,
     844 F.2d 668 (9th Cir. 1988) ...................................................16

21

22
*Chalk v. United States Dist. Court*,
     840 F.2d 701 (9th Cir.1988) ....................................................16

23

24
*Chapman v. Pier 1 Imports (U.S.) Inc.*,
     631 F.3d 939 (9th Cir. 2011) ............................................17, 20, 23

25

26
*Clarke v. United States*,
     915 F.2d 699 (D.C. Cir. 1990) (en banc)....................................31

27

28
*Cohen v. City of Culver City*,
     754 F.3d 690 (9th Cir. 2014) ............................................19, 23, 24

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

*Crowder v. Kitagawa,*
    81 F.3d 1480 (9th Cir. 1996) .................................................................21, 24

*Ctr. For Biological Diversity v. Lohn,*
    511 F.3d 960 (9th Cir. 2007) ..................................................................30, 31

*Cupolo v. Bay Area Rapid Transit,*
    5 F. Supp. 2d 1078 (N.D. Cal. 1997)..............................................................16

*Dopico v. Goldschmidt,*
    687 F.2d 644 (2d Cir. 1982) ..........................................................................24

*Dunlap v. Ass'n of Bay Area Governments,*
    996 F. Supp. 962 (N.D. Cal. 1998)................................................................24

*Duvall v. Cnty. of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001) .......................................................................20

*Gillette Co. v. Ed Pinaud, Inc.,*
    178 F.Supp. 618 (S.D.N.Y.1959) ..................................................................33

*Headwaters, Inc. v. Bureau of Land Mgmt.,*
    893 F.2d 1012 (9th Cir.1989) .......................................................................31

*Hernandez v. County of Monterey,*
    70 F. Supp. 3d 963 (N.D. Cal. 2014)............................................................19

*Hernandez v. Sessions,*
    872 F.3d 976 (9th Cir. 2017) .........................................................................17

*Honig v. Doe,*
    484 U.S. 305 (1988)........................................................................................30

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir.2001) .........................................................................22

*Lydo Enters., Inc. v. City of Las Vegas,*
    745 F.2d 1211 (9th Cir.1984) .......................................................................33

*Mark H. v. Hamamoto,*
    620 F.3d 1090 (9th Cir. 2010) .......................................................................22

*Mark H. v. Lemahieu,*
    513 F.3d. 922 (9th Cir. 2008) ........................................................................21

6

*People v. Jordan*,
   75 Cal.App.3d Supp.1 (1977) ..................................................................29

*Regents of Univ. of Cal. v. American Broadcasting Cos.*,
   747 F.2d 511 (9th Cir. 1984) ...............................................................15

*Se. Cmty. Coll. v. Davis*,
   442 U.S. 397 (1979)..............................................................................21

*Sullivan v. Vallejo City Unified School Dist.*,
   731 F. Supp. 947 (E.D.Cal.1990) .........................................................16

*Super Tire Eng'g Co. v. McCorkle*,
   416 U.S. 115 (1974)..............................................................................32

*Tobe v. City of Santa Ana*,
   9 Cal. 4th 1069 (1995) ...................................................................18, 19

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980)..............................................................................30

*Vinson v. Thomas*,
   288 F.3d 1145 (9th Cir. 2002) .............................................................22

*Weinreich v. Los Angeles County Metropolitan Transp. Auth.*,
   114 F.3d 976 (9th Cir. 1997) ...............................................................20

*Winter v. Nat. Res. Defense Council, Inc.*,
   555 U.S. 7 (2008).............................................................................14, 18

*Wong v. Regents of Univ. of California*,
   192 F.3d 807 (9th Cir. 1999) ...............................................................22

*Zukle v. Regents of Univ. of California*,
   166 F.3d 1041 (9th Cir. 1999) .......................................................21, 22

**Statutes**

29 U.S.C. § 705(2)(B) ..............................................................................13

29 U.S.C. § 794(a) ...................................................................................20

42 U.S.C. § 12101 .............................................................................16, 19

42 U.S.C. § 12101(a)(5).....................................................................21, 24

Points and Authorities in Support of Preliminary Injunction     Case No. 3:19-cv-0054-JM-BGS

42 U.S.C. § 12131 ................................................................................................ 21

42 U.S.C. § 12131(2) .......................................................................................... 13

42 U.S.C. § 12132 .......................................................................................... 20, 22

42 U.S.C. § 12133 ................................................................................................ 22

Cal. Civ. Code §§ 54(c), 54.1(d) ..................................................................... 32

Cal. Civ. Code §54.3 .......................................................................................... 32

Cal Civ. Code § 54.3(a) ..................................................................................... 32

Cal Civ. Code § 54.3(b) ..................................................................................... 32

California Disabled Persons Act (Civil Code §54) ...................................... 31

California Government Code § 12926 ............................................................ 13

California Vehicle Code § 407.5 ...................................................................... 29

California Vehicle Code § 22500(f) ............................................................ 29, 30

California Vehicle Code § 21221 ..................................................................... 30

California Vehicle Code § 21225 ..................................................................... 29

City of San Diego Municipal Ordinance O-21070 ...................................... 25

SMD §83.0304 .................................................................................................... 25

SMD §83.0305(b)(7) ........................................................................................... 25

SMD § 83.0306 (a)(3) ......................................................................................... 25

SMD §83.0308 .................................................................................................... 25

SMD Ordinance §83.0310 ...................................................................... 25, 26, 27

SMD Ordinance §83.0310(a) ............................................................................ 30

SMD Ordinance §83.0311 ............................................................................ 26, 28

**Other Authorities**

28 C.F.R. pt. 35, app. B .................................................................................... 23

Points and Authorities in Support of Preliminary Injunction        Case No. 3:19-cv-0054-JM-BGS

28 C.F.R. § 35.104 ................................................................................................13

28 C.F.R. § 35.130(b)(7) ......................................................................................21

28 C.F.R. § 35.133(a) ...........................................................................................23

28 C.F.R. §§ 35.150–.151 ....................................................................................32

28 C.F.R. § 35.150(a)(3) ......................................................................................24

28 C.F.R. § 35.150(b)(1) ......................................................................................24

28 C.F.R. § 36.104 ................................................................................................13

Fed. R. Civ. P. 65(b)(1)(A) ..................................................................................16

H.R. Rep. No. 101-485(II), reprinted in 1990 U.S.C.C.A.N. 303 .......................10

Points and Authorities in Support of Preliminary Injunction         Case No. 3:19-cv-0054-JM-BGS

*The "employment, transportation, and public accommodation sections of [the ADA] would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets."*

*See* H.R. Rep. No. 101-485(II), at 84, reprinted in 1990 U.S.C.C.A.N. 303, 367.

# I. INTRODUCTION

Named Plaintiffs and class members respectfully request the Court to enjoin the City of San Diego from allowing pedestrian rights of way to be obstructed by dockless vehicles in violation of the Americans with Disabilities Act and parallel state laws. A preliminary injunction against the City will protect Plaintiffs' physical safety and prevent the irreparable loss of dignity, independence and deprivation of Plaintiffs' civil rights as people with disabilities to equal access and enjoyment of the City's service of pedestrian rights of way during the pendency of this action.

# II. FACTUAL BACKGROUND

## A. Public Pedestrian Rights of Way Have Become Points of Sale and Storage for Dockless Vehicles

The City has allowed dockless vehicle companies to convert the public sidewalks into showrooms, rentals stores, and storage locations for their dockless vehicle rental businesses. The dockless vehicle business model exploits the public walkways for the staging and dispersing of dockless vehicles throughout the City. The price for the City's acquiescence to this dockless business model is being paid by people with mobility and visual impairments who are being disproportionately burdened and whose independence is impeded as they are forced to navigate dangerous obstacles along their paths of travel. Due to the ubiquitous presence of dockless vehicles, people with mobility and visual impairments are denied equal access to and equal enjoyment of the City's system of sidewalks, cross walks, transit stops, and other walkways.

Alex Montoya, Rex Shirley, Philip Pressel, and Wylene Hinkle, the Named Plaintiffs, have set forth evidence in support of this motion demonstrating the pervasive presence of dockless vehicles on pedestrian rights of way within the City and the effect of such dockless vehicles on their ability to meaningfully use the City's public

10

1    walkways. *See* Declarations of Alex Montoya, Rex Shirley, Philip Pressel and Wylene

2    Hinkle in support of Plaintiffs' Motion for Preliminary Injunction.

3        Moreover, Plaintiffs have retained Mr. Jeff Mastin as an accessibility expert to

4    assess the system of sidewalks, transit stops, crosswalks and curb ramps of the City and

5    inform the Court regarding accessibility statutes and the dockless vehicle impact. Mr.

6    Mastin conducted on-site inspections in the City of San Diego, which he relied on in

7    forming his expert opinions on the accessibility of sidewalks, transit stops, cross-walks

8    and curb ramps of the City for persons with mobility and/or visual disabilities as they

9    may be affected by the presence of dockless vehicles on City rights of way. *See*

10   Declaration of Jeff Mastin, at ¶1.

11       Mr. Mastin is an experienced, licensed architect who has worked as a specialist

12   in accessibility for persons with physical disabilities since 1999. *Id*., at ¶4. Mr. Mastin

13   is also a California Certified Access Specialist in good standing, qualified to evaluate

14   plans, investigate facilities, conduct research, perform inspections, and prepare reports

15   to determine compliance with applicable state and federal accessibility provisions. *Id*.,

16   at ¶5. During his inspections, including an inspection after the City's implementation

17   of an ordinance purporting to regulate dockless vehicles in June of 2019, Mr. Mastin

18   "found that unoccupied dockless vehicles identified as Bird, Jump, Lime, Lyft and

19   Wheels, pervasively obstructed required accessible elements of the sidewalks and

20   walkways of the City, and in the case of the October inspection - in spite of these

21   ordinances." *Id*., at ¶¶56, 57, 61.

22   **B. The City of San Diego Has Failed to Maintain the Accessibility of its Public**

23       **Sidewalk System as Required by the ADA**

24       The City has deprived people with disabilities of their right to equally accessible

25   and equally enjoyable sidewalks. The City has failed to maintain the public sidewalk

26   facilities "free of obstructions" and has denied people with disabilities meaningful

27   access to its essential services. During his inspections, Mr. Mastin found that dockless

28   vehicles "pervasively obstructed required accessible elements of the sidewalks and

walkways of the City," even after the City's Ordinance was in effect in June of 2019. *Id.*, at ¶¶ 56, 57. Mr. Mastin also "observed dockless vehicles commonly in use on curb ramps and along the entire length of crowded pedestrian sidewalks during both [his] March and October [2019] inspections," and Mr. Mastin opines that "[t]his practice creates a significant safety risk to pedestrians with disabilities" *Id.*, at ¶57. Mr. Mastin concludes "the pedestrian public right of way system is not accessible to and usable by persons with mobility disabilities, and those who are blind or have low vision." *Id.* Mr. Mastin adds: "I found that unoccupied dockless vehicles pervasively obstruct required accessible elements of the sidewalks and walkways of the City. As a result, in my expert opinion, the pedestrian public right of way system is neither accessible to nor usable by persons with mobility disabilities and the blind and those with low vision." *Id.*, at ¶61; *see also Id.*, at ¶¶62, 64 ("…typical sidewalks comprised a literal obstacle course.").

**C. Plaintiffs Are Disabled Individuals Who Rely Upon the Systems of Sidewalks and Pedestrian Rights of Way**

**1. Named Plaintiffs Are Individuals with Disabilities**

Named Plaintiffs and the putative class members they represent (collectively, "Plaintiffs") are individuals with mobility or visual disabilities, who rely on the systems of walkways and pedestrian rights of way to access the City and complete their daily activities.

Named Plaintiff Alex Montoya is a congenital triple amputee. *See* Declaration of Alex Montoya, at ¶2. Mr. Montoya wears prosthetics on both arms and his right leg for daily activities. *Id.*

Named Plaintiff Rex Shirley is a person diagnosed with Parkinson's Disease, which has progressively advanced over several years; and, for that reason, Mr. Shirley uses a mobility scooter for personal ambulation. Declaration of Rex Shirley, at ¶¶2-4.

Named Plaintiff Philip Pressel had part of his left leg amputated, has a history of two spinal surgeries, and requires an electric mobility scooter unless walking short distances. Declaration of Philip Pressel, at ¶2-4. Mr. Pressel is also immunosuppressed

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

1    because of an organ transplant. *Id*.

2         Named Plaintiff Wylene Hinkle is a person who is blind, hearing impaired, and

3    has arthritis. Declaration of Wylene Hinkle, at ¶3. Ms. Hinkle requires and utilizes her

4    cane to navigate through the City. *Id.*

5         As such, each Named Plaintiff is a "qualified person with a disability" and/or a

6    person with a "disability" within the meaning of all federal and state statutes and

7    regulations at issue in this case including 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104; 28

8    C.F.R. § 36.104; 29 U.S.C. § 705(2)(B); and, California Government Code § 12926.

9              **2. Named Plaintiffs Have Suffered Harm**

10        Named Plaintiffs and class members face significant barriers and risk serious

11   injury using the rights of way of the City; in crossing from pedestrian walkways to

12   streets; and, in attempting to enter or exit busses, *inter alia*, due to the City's failure to

13   control obstructions caused by dockless rental scooters and bikes. *See* Declarations of

14   expert Jeff Mastin and Plaintiffs Alex Montoya, Rex Shirley, Philip Pressel and Wylene

15   Hinkle.

16        For example, Ms. Hinkle has been unable to access pedestrian walkways due to

17   the presence of dockless vehicles she cannot avoid or go around due to her disabilities.

18   *See* Declaration of Wylene Hinkle, at ¶¶5-8, 12-15. Ms. Hinkle now experiences

19   significant anxiety and fearfulness of dockless vehicles. *Id*. Ms. Hinkle has been

20   deterred from accessing the pedestrian walkways, physically harmed by dockless

21   vehicles, and denied equal access and enjoyment of the City's service. *Id.,* at ¶¶14-15.

22        Mr. Montoya's access to pedestrian rights of way is often impeded, blocked,

23   and/or diminished by dockless vehicles since October of 2018. *See* Declaration of Alex

24   Montoya, at ¶¶6-10. Mr. Montoya finds himself having to maintain a state of

25   hypervigilance when he does opt to use pedestrian rights of way in the City. *Id*., at ¶6.

26   Because of the consequences of dockless vehicles on his life, Mr. Montoya has been

27   deterred from using the public rights of way as often as he would if he knew the dockless

28   vehicle barriers would not be present. *Id*., at ¶¶12-13. Due to his disabilities, Mr.

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

Montoya cannot meaningfully and independently access the sidewalks and other walkways as he did before the arrival of dockless vehicles. *Id.*, at ¶14.

Due to his disabilities, Mr. Pressel is not able to independently access public walkways in the City of San Diego that are blocked by dockless vehicles. *See* Declaration of Philip Pressel, at ¶¶5-9, 11. Mr. Pressel has been deterred from using the public rights of way and has lost the ability to independently travel due to dockless vehicle obstruction. *Id.*, at ¶¶15-18.

Mr. Shirley has not been able to access public walkways, and his travel was impeded by dockless vehicles on several occasions, as he cannot go around or avoid the dockless vehicles obstructions due to his disabilities. *See* Declaration of Rex Shirley, at ¶¶5, 8-9, 11. Mr. Shirley's wife has had to move dockless vehicles out of Mr. Shirley's way for Mr. Shirley to access the sidewalk. *Id.*, at ¶¶14-15.

Given the essential nature of City pedestrian rights of way, all of these vulnerable individuals with impairments count on the public rights of way for access and intend to visit the public rights of way of the City of San Diego again. *See* Declarations of Alex Montoya, Rex Shirley, Philip Pressel and Wylene Hinkle. As such, Plaintiffs have suffered and will likely continue to suffer harm from the City allowing dockless vehicles to obstruct the pedestrian paths of travel for its people with mobility and visual disabilities.

## III. LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must establish: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit applies a "sliding scale" standard that allows for preliminary relief if the balance of hardships tips "sharply toward the plaintiff;" plaintiffs show likelihood of irreparable injury; and, the injunction is in the public interest, even if there

are serious questions on the merits. *Alliance for the Wild Rockies v. Cottrell,* 632 F. 3d 1127, 1134-35 (9th Cir. 2011); *Regents of Univ. of Cal. v. American Broadcasting Cos*., 747 F.2d 511, 515 (9th Cir. 1984). Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). "[S]erious questions going to the merits" and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## IV. ARGUMENT

### A. The City Has Failed to Meet its ADA Obligations to Maintain its Public Walkways Free of Obstructions that Impede Meaningful and Equal Access to People with Mobility and Visual Disability Accommodations

As further discussed below, the City has an affirmative obligation to maintain the accessibility of its services, programs and activities including its sidewalks and walkways.  The City has failed to meet this duty, allowing dockless vehicles to proliferate on City sidewalks and walkways. Dockless vehicle companies have been allowed to pursue their business model of renting scooters and bikes right off the sidewalks and storing them there to avoid the inconvenience and expense of a brick and mortar store. City residents with visual and mobility disabilities are suffering the consequences of the City's maintenance of an inaccessible service in that they are no longer able to safely, meaningfully and equally able to access or use public walkways. *See* Declaration of Jeff Mastin, at ¶ 56, 57, 61-64, 92, 97; *See* Sec. II. C. 1-2 *supra*.

The City's tolerance of this conversion of the public sidewalks into private businesses blocks Plaintiffs from not only accessing the sidewalks, but also from full and equal enjoyment of the sidewalks. It gives people with disabilities the draconian choice of staying isolated in their homes or venturing outside on City sidewalks, and

1    navigating a veritable obstacle course that disproportionately puts their physical safety

2    at risk due to their disabilities.[1] The City is required to maintain the sidewalk in

3    compliance with the ADA and parallel state statutes, yet has permitted an injurious,

4    discriminatory business model to disrupt that service. As a result, the sidewalk's core

5    purpose as a universal every-day public service of the City, providing pedestrian access

6    to all its residents, has disintegrated under the weight of dockless vehicles and is no

7    longer meaningfully available to Plaintiffs.

8    **B. Likelihood of Irreparable Harm**

9         As the moving party, Plaintiffs must show the harm is not only irreparable, but

10   also that they face immediate threatened injury. *Caribbean Marine Servs. Co. v.*

11   *Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); Fed. R. Civ. P. 65(b)(1)(A). The goals of

12   the ADA include assuring that individuals with disabilities enjoy "equality of

13   opportunity, full participation, independent living, and economic self-sufficiency." 42

14   U.S.C. § 12101. Injuries to individual dignity and deprivations of civil rights constitute

15   irreparable injury. *See Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084

16   (N.D. Cal. 1997) (citing *Chalk v. United States Dist. Court*, 840 F.2d 701, 710 (9th

17   Cir.1988)); *Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 961

18   (E.D.Cal.1990) (this court found injury to the ability to function as an independent

19   person constitutes irreparable injury).

20        Plaintiffs have established a "real and immediate threat of repeated injury," as

21   Plaintiffs have alleged that they were deterred from using the public rights of way

22   because of awareness of discriminatory conditions, and that they intend to attempt to

23   access and fully enjoy the public rights of way of the City again. *See* Declarations of

24   _____

25   [1] While the presence of dockless vehicles on the sidewalks may be a nuisance to

26   people without disabilities as well, they have the ability to easily circumvent the
     obstacles or avoid them altogether while people with mobility and visual impairments

27   are not ordinarily able to do so and are at far greater risk.  Thus, people with
     disabilities are disproportionately burdened by the ubiquitous presence of the dockless

28   vehicles on the sidewalks.

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

Named Plaintiffs Pressel, Montoya, Shirley, and Hinkle; *see also* Doc. No. 14 (First Amended Complaint), at ¶¶12-16, 48, 50-51. Moreover, Plaintiffs have set forth ample evidence of the injuries to their individual dignity and ability to function as independent people, establishing deprivations of civil rights and irreparable injury. *See* Declarations of Named Plaintiffs Pressel, Montoya, Shirley, and Hinkle; *see also* Declaration of Jeff Mastin. Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011). If Plaintiffs were to succeed, a favorable decision would clearly redress the alleged injuries suffered. The injury is actual and imminent because there is a sufficient likelihood Plaintiffs will be wronged again in a similar way – all Plaintiffs need to do is step onto the sidewalks of the City, and Plaintiffs will once again face a real and immediate threat of injury.

Plaintiffs will unquestionably suffer irreparable harm in the absence of injunctive relief, as their civil rights will continue to suffer. If the City continues to fail to maintain the sidewalks in compliance with the ADA, thousands of San Diegans who have disabilities will be deprived of their ability to safely, fully and freely walk and travel around the City. This misuse of the public walkways will go unchecked, and the impression that dockless rental vehicles are permissibly rented from, used on, and stored on sidewalks will normalize into accepted practice. Putative class members have already lost and continue to lose their full and free use of the City's sidewalks, walkways, transit stops, and other public places that people without disabilities take for granted. *See* Montoya Dec. at ¶5; Shirley Dec. at ¶5; Pressel Dec. at ¶5; Hinkle Dec. at ¶¶12-17, 15-16. This deprivation of rights that is causing so much harm, stripping Plaintiffs of their dignity and independence due to their disabilities, and threatening physical safety, must not be allowed to continue.

**C. Balance of Hardships**

"To obtain a preliminary injunction, a plaintiff must also demonstrate that 'the balance of equities tips in his favor.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th

Cir. 2017) (quoting *Winter*, 555 U.S. at 20). As set forth above, Plaintiffs will suffer grave and irreparable injury in the absence of injunctive relief. If the injunction is not entered, Plaintiffs will suffer irreparable harm through the continued injuries to their civil rights, obstruction of the public rights of way, and the continued diminishment of the sidewalk as a public accommodation for Plaintiffs' use and full, meaningful enjoyment. If the injunction is not granted, people with disabilities who have mobility impairments or who are blind will be forced to choose between staying in their homes or risking physical safety and mental anguish attempting to navigate the highway obstacle course that public sidewalks have become. If the injunction is entered, the only harm may be to the dockless vehicle offerings being present on sidewalks throughout the City. However, private appropriation of the public sidewalks and rights of way is surely not the only way that scooters and bikes can be displayed, parked, and stored - the City can surely find other ways that do not deprive people with disabilities of their ability to safely utilize and enjoy the sidewalks, cross-walks and transit stops of this City.

The balance of hardships tips sharply in favor of Plaintiffs, as Plaintiffs will face ongoing challenges to their independence, dignity, and civil rights based on their disabilities if the City continues to permit dockless vehicles to be present on City pedestrian rights of way, normalizing the practice. The only hardship to the City may be to keep the pedestrian rights of way unencumbered; however, the City is already required by law to do so and has the power and duty to keep its pedestrian rights of way meaningfully accessible. A city not only has the power to keep its streets and other public property open and available for the purpose to which they are dedicated, but has a duty to do so. *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995).

**D. Public Interest**

Any party seeking a preliminary injunction must show the injunction is in the public interest. *Winter*, 555 U.S. at 20. An injunction preventing discrimination against people with disabilities, some of the most vulnerable people, would only serve to uphold

the admirable purpose of the ADA and ensure that basic civil rights protections enacted by Congress are enforced. At the same time, it would only serve the public interest if the City could neither ignore its own legal obligations nor prioritize dockless scooters and bikes over the rights of people with disabilities. Surely, the City does not require the use of pedestrian points of access for rental storage of scooters or bikes – the City may still accommodate scooters and bikes in other ways that do not deprive Plaintiffs of their rights, such as by the creation of non-obstructive docks, expanded use of corrals, or other arrangements. A completely accessible walking city that is equally and fully accessible to every person with disabilities is assuredly in the public interest.

**E. Likelihood of Success on the Merits**

Sidewalks are services, programs, and activities of the City under the ADA and the City has failed to maintain those sidewalks free of obstructions so that people with disabilities have equal, meaningful access to and enjoyment of the sidewalks. "[A] city not only has the power to keep its streets and other public property open and available for the purpose to which they are dedicated but has a duty to do so." *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995).

The ADA was implemented to help individuals with disabilities integrate into the economic and social mainstream of American life. *See Hernandez v. County of Monterey*, 70 F. Supp. 3d 963 (N.D. Cal. 2014). Its language is construed broadly to advance its remedial purpose. *Cohen v. City of Culver City*, 754 F.3d 690 (9th Cir. 2014). In enacting the ADA, Congress recognized that "historically, society has tended to isolate and segregate individuals with disabilities" and that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101. Congress further acknowledged that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Id.*, 754 F.3d 690, 694 (9th Cir. 2014) (citing *Alexander v. Choate*, 469 U.S. 287, 295 (1985)). Therefore, the ADA proscribes not only "obviously exclusionary conduct," but also "more subtle

forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' full and equal enjoyment" of public places and accommodations. *Id.* (citing *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (internal quotation marks omitted)).

### 1.  Claim for Violations of Title II of the ADA and the Rehabilitation Act

#### i.  Applicable Law

Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a). Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To prove a violation of Title II of the ADA, Plaintiffs must show: (1) they are qualified individuals with a disability; (2) they were "either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination was by reason of" their disability. *Weinreich*, 114 F.3d at 978 (emphasis removed). Similarly, to establish a prima facie Section 504 claim, Plaintiffs must establish that: (1) they are individuals with a disability; (2) they are otherwise qualified to receive the benefit; (3) they were "denied the benefits of the program solely by reason of" their disability; and (4) "the program receives federal financial assistance." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).

For purposes of the ADA, "[t]he term 'qualified individual with a disability'

means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131 (emphasis added). In the "Findings" section of the ADA, Congress observed that "individuals with disabilities continually encounter various forms of discrimination, including...failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5). The Department of Justice's ADA implementing regulations specify that a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7); see also *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1046 (9th Cir. 1999).

"[T]he focus of the prohibition in § 504 is 'whether disabled persons were denied meaningful access to state-provided services.'" *Mark H. v. Lemahieu*, 513 F.3d. 922, 937 (9th Cir. 2008) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)) (internal quotation marks omitted). In this vein, "although § 504 does not require 'substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals,' it, like the ADA, does require ***reasonable*** modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access to a benefit because of their disability.'" *Id.* (emphasis in original) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979); *Alexander v. Choate*, 469 U.S. 287, 301 (1985)) (internal quotation marks omitted). In fact, the Ninth Circuit has noted that "[p]laintiffs may establish that an organization violated § 504 by showing that the public entity discriminated against, excluded, or denied the benefits of a public program to a qualified person with a disability," which "includes showing that the public entity denied the plaintiff a

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

1   reasonable accommodation." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir.

2   2010) (citing *Lemahieu*, 513 F.3d at 924-25).

3         The Ninth Circuit has recognized that, "[a]lthough Title II of the ADA uses the

4   term 'reasonable modification' rather than 'reasonable accommodation,' these terms do

5   not differ in the standards they create." *Wong v. Regents of Univ. of California*, 192

6   F.3d 807, 816 n. 26 (9th Cir. 1999), as amended (Nov. 19, 1999). "There is no

7   significant difference in analysis of the rights and obligations created by the ADA and

8   the Rehabilitation Act." *Zukle*, 166 F.3d at 1045 n.11; 42 U.S.C. § 12133 ("The

9   remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the

10   remedies, procedures, and rights [applicable to ADA claims]."). Consequently, "courts

11   have applied the same analysis to claims brought under both statutes." *Zukle*, 166 F.3d

12   at 1045 n.11; see also *Vinson v. Thomas*, 288 F.3d 1145, 1152 (9th Cir. 2002).

13         **ii.   Sidewalks Qualify as a Public Service Under the ADA**

14         Title II of the ADA provides that "no qualified individual with a disability shall,

15   by reason of such disability, be excluded from participation in or be denied the benefits

16   of the services, programs, or activities of a public entity, or be subjected to

17   discrimination by any such entity." *Barden v. City of Sacramento*, 292 F.3d 1073, 1075

18   (9th Cir. 2002) (citing 42 U.S.C. § 12132). As demonstrated above and by their

19   declarations, Plaintiffs are qualified individuals with disabilities. As residents of the

20   City, Plaintiffs are otherwise qualified to receive the benefits of the services of the City.

21         The Ninth Circuit has endorsed a broad interpretation of "services, programs, or

22   activities," concluding that the ADA's "fundamental purpose" of eliminating disability

23   discrimination is best served by including public sidewalks within the phrase "services,

24   programs, or activities." In *Barden*, the Ninth Circuit interpreted the ADA's "broad

25   language [as] bring[ing] within its scope 'anything a public entity does.'" *Barden,* 292

26   F.3d at 1076 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir.2001)). The

27   focus of the inquiry, therefore, is not whether a particular public function can technically

28   be characterized as a service, program, or activity, but whether it is "a normal function

of a governmental entity." *Barden,* 292 F.3d at 1076 (citing *Bay Area Addiction Research v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999)). *Barden* held that Title II's prohibition of discrimination in the provision of public services applies to the maintenance of public sidewalks, which is a normal function of a municipal entity - all activities of local governments are subject to this prohibition of discrimination. *Barden* 292 F.3d at 1077 (9th Cir. 2002). As such, the exclusion of people with disabilities from equal access to the public sidewalks, one of the "services, programs, and activities" of the City, constitutes a violation of Title II of the ADA and Section 504 of the Rehabilitation Act.

The City must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." 28 C.F.R. § 35.133(a). Because the regulations define "facility" to include "any portion of ... roads, walks, or passageways," city sidewalks are among those facilities the City must maintain in operable working condition. *See Id*. § 35.104. The rationale for this requirement is obvious: there is little point in building an accessible route if it is not kept in a condition that allows disabled persons to use it. See 28 C.F.R. pt. 35, app. B. As the guidance accompanying this regulation makes clear, the City is therefore required to keep disabled access routes "free of obstructions." *Id.* As the Ninth Circuit noted in *Cohen*, "obstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities. This is precisely the sort of 'subtle' discrimination stemming from 'thoughtlessness and indifference' that the ADA aims to abolish." *Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) (quoting *Chapman*, 631 F.3d at 944-5.).

        **iii.**    **Dockless Rental Scooters and Bikes Constitute a Significant Obstruction of the System of Sidewalks in the City of San Diego, Excluding Plaintiffs from the Benefits of this Vital Public Service**

As set forth in the expert declaration of Jeff Mastin, the City of San Diego's system of sidewalks "comprised a literal obstacle course" during his City inspections. *See* Declaration of Jeff Mastin, at ¶62. Mr. Mastin elaborates, declaring: "I observed the ubiquitous presence of numerous parked dockless vehicles in all areas of the pedestrian sidewalk throughway. A pedestrian with a disability traveling along such a sidewalk would be forced to constantly dodge these vehicles. Often the parked dockless vehicles obstructed the accessible curb ramp, preventing even the ability to dodge them for persons who require an accessible route." *Id*. The state of the City's sidewalks directly contradicts and transgresses the goals of the ADA, as the Ninth Circuit noted in *Cohen*. *See Cohen.* at 700.

Plaintiffs have shown that they are qualified individuals with disabilities that have been denied the full benefits of the City's services and programs, due to the exclusionary impact that dockless rental vehicle obstructions have caused.  Under the ADA, a public entity must take affirmative steps to ensure its programs, services, and activities, are readily accessible to and usable by people with disabilities unless doing so would be a fundamental alteration or present an undue burden. *See* 28 C.F.R. § 35.150(a)(3); *see also Dopico v. Goldschmidt*, 687 F.2d 644, 652 (2d Cir. 1982); *Dunlap v. Ass'n of Bay Area Governments*, 996 F. Supp. 962, 965-66 (N.D. Cal. 1998). Public entities must consider all available methods to ensure meaningful access. 28 C.F.R. § 35.150(b)(1); *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (noting that Congress intended to address not only "intentional exclusion" but also "the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices") (quoting 42 U.S.C. § 12101(a)(5)). Modest measures the City could have taken include mandating the use of docking stations or expanding the use of corrals for the rental scooters and bikes or requiring dockless vehicle companies to take affirmative steps to keep the sidewalks free of obstructions.

Instead, the City of San Diego has failed to fulfil its responsibilities under the

1   Americans with Disabilities Act. The City of San Diego's utter dereliction of its Title
2   II responsibilities was obvious during Mr. Mastin's on-site inspections. *See* Mastin
3   Declaration, at ¶¶89-90. Mr. Mastin's declaration also provides a bounty of
4   photographic evidence to support his findings, buttressing Plaintiffs' assertions that
5   dockless vehicles constitute a significant obstruction. *See* Mastin Declaration, at ¶¶70,
6   73-79, 82-85, 98-100; *see also* Mastin Declaration, Exhibits D and E. Mr. Mastin
7   concludes "the pedestrian public right of way system is not accessible to and usable by
8   persons with mobility disabilities, and those who are blind or have low vision." *Id.* Mr.
9   Mastin adds "I found that unoccupied dockless vehicles pervasively obstruct required
10  accessible elements of the sidewalks and walkways of the City. As a result, in my expert
11  opinion, the pedestrian public right of way system is neither accessible to nor usable by
12  persons with mobility disabilities and the blind and those with low vision." *Id.*, at ¶61.
13      This failure to maintain the accessibility of its sidewalks, transit stops, cross-
14  walks, and other pedestrian walkways deprives disabled residents of their civil rights
15  and equal enjoyment of services meant for all to utilize – the City of San Diego must
16  administer its duty, and the sidewalks be maintained to ensure meaningful pedestrian
17  access for those with mobility and visual impairments, to ensure that Plaintiffs do not
18  suffer continuing and ongoing infringement on their civil rights.

19      **iv.   The City of San Diego's New Regulations Exacerbate rather**
20          **than Remedy the City's ADA Failures, and are Pre-empted by**
21          **the Vehicle Code**
22      In a "supplemental" briefing stricken by this Court, the City submitted City of
23  San Diego Municipal Ordinance O-21070 ("SMD Ordinance") for the Court's
24  consideration. *See* Doc. No. 77, 77-1. The City claimed the SMD Ordinance "requires
25  devices that are made available for rent to the public such as motorized scooters and
26  motorized bicycles be: permitted (SDMC §83.0304); have age restrictions (SDMC
27  §83.0305(b)(7)); employ geofencing in designated areas ([…]SDMC § 83.0306 (a)(3);
28  SDMC §83.0308); have restricted parking/staging (SDMC §83.0310); and, timely and

1  immediate removal of devices parked in violation of State and local laws (SDMC
2  §83.0311)." *See* Doc. No. 77, at 2:10-6. However, the City's attempted paraphrasing
3  obfuscates the actual language of the ordinance, which does not accomplish what is
4  required of the City under Title II and actually further protects dockless vehicle
5  companies rather than mobility and visually impaired residents.

6      Exacerbating its ongoing failure to ensure that pedestrian rights of access are kept
7  meaningfully accessible for those with mobility or visual impairments, the City's
8  regulations not only do not go far enough to ensure meaningful practical action is taken
9  to remove any architectural barriers that obstruct the sidewalks, but also *explicitly*
10 *endorse* storage of dockless vehicles in certain areas of the City on the pedestrian rights
11 of access. Section §83.0310 of the SMD Ordinance states:

12      "(a) Shared mobility devices *shall not* be parked, displayed,
13      offered, or made available for rent:

14          (1) in violation of this Division of the Vehicle Code;

15          (2) *within 40 feet of another shared mobility device on a*
16      *City sidewalk* or other City property located in the beach impact
17      area in the Parking Impact Overlay Zone as defined in Chapter
18      13, Article 2, Division 8 of this Code, *except in groups of up to*
19      *four where the shared mobility devices are spaced no more than*
20      *one foot apart*. This section 83.0310(a)(2) does not prohibit
21      shared mobility devices from being placed in any location
22      designated by the City for shared mobility devices;

23          (3) on a City sidewalk located in the Downtown
24      Community Plan area as defined in Chapter 15, Article 6,
25      Division 3 of this Code. This section 83.0310(a)(3) does not
26      prohibit shared mobility devices from being placed in any
27      location designated by the City for shared mobility devices;
28          ///

Points and Authorities in Support of Preliminary Injunction       Case No. 3:19-cv-0054-JM-BGS

1               (4) on City sidewalks or other City property on the block

2               adjacent to a location designated by the City for shared mobility

3               devices […]". [Emphasis added]

4 *See* §83.0310 of SMD Ordinance. The City's explicit language in the SMD

5 Ordinance actually endorses the display and rental of dockless vehicles from the City's

6 sidewalks. The SMD Ordinance does not make it illegal for dockless vehicles to be

7 displayed or parked on sidewalks, which would be a logical regulation for a municipal

8 entity to enact to ensure accessible pedestrian walkways. Instead, the ordinance

9 provides specific exceptions where the sidewalk may be used and relies on hoping that

10 profit-driven providers and users of transitory travel will become experts in access

11 regulations and measurements to maintain accessibility.

12 Mr. Mastin's declaration marshals significant evidence of the ineffectiveness of

13 foisting responsibility for compliance with accessibility standards onto agents of

14 dockless vehicle rental companies or lay people. *See* Mastin Declaration, at ¶¶70-79.

15 As Mr. Mastin noted: "I observed many unoccupied dockless vehicles obstructing

16 accessible elements that were apparently placed there by users or the positions were

17 modified by passers-by. I am not aware of any training or direction given users by the

18 providers in order for them to park the vehicles without obstructing accessible elements.

19 Moreover, if they do provide such training, it would be considered ineffective based on

20 my empirical findings. Users are not expected to be educated on the nature, extent and

21 maintenance of accessible elements. As a result, they can be parked anywhere, even if

22 it negatively impacts accessibility of the public right-of-way system." *Id*., at ¶74. Mr.

23 Mastin's declaration explicitly sets forth that the City's ordinance made no discernible

24 improvement in the frequency of obstructions. *Id*., at ¶77. Mr. Mastin's declaration

25 precisely notes the City Ordinance 's contribution to the obstruction problem. *Id*., at

26 ¶85.

27 Such an ordinance undermines the ADA and parallel state statutes – worse, such

28 an ordinance enables ongoing violations of these laws and normalizes them, prioritizing

1  dockless vehicles rather than vulnerable disabled residents of the City. This deference

2  to the companies is further evidenced by §83.0311 of the SMD Ordinance, which states:

3  "(a) Within three hours of notice from the City, an operator shall

4  retrieve its shared mobility device that is in any of the following

5  conditions:

6  (1) inoperable or not safe to operate and parked on a City

7  street, sidewalk, or other City property;

8  (2) parked, displayed, offered or made available for rent in

9  violation of this Division or the Vehicle Code; or

10  (3) parked on a City street, sidewalk, or other City

11  property in a manner that prevents a reasonable person from

12  safely renting or operating the shared mobility device.

13  (b) The City may impound a shared mobility device that is:

14  (1) not retrieved within three hours of notice to the

15  operator; or

16  (2) in a condition or parked in a manner that poses an

17  imminent life safety hazard, as defined in Chapter 1 of this Code.

18  Impound may be immediate and no notice is required."

19  *See* §83.0311 of SMD Ordinance. Section 83.0311 affords three hours of notice

20  to a dockless vehicle company to retrieve its property, and allows the City to provide

21  such retrieval notice for dockless vehicles that are "inoperable," parked, displayed, or

22  offered in violation of the California Vehicle Code (CVC), or parked on a City sidewalk

23  in a way that "prevents a reasonable person" from safely paying the dockless vehicle

24  company to use that device. Not a single word of the ordinance references the City's

25  Title II duty to provide meaningful access to people with disabilities and to ensure that

26  dockless vehicles do not present barriers to access and full enjoyment of the sidewalks.

27  Contradictory to the City's duties under *Barden* and *Tobe*, the SMD Ordinance fails to

28  maintain pedestrian rights of way so they are readily accessible to and usable by people

1   with disabilities.

2       In addition to undermining the ADA and parallel state statutes, the SMD

3   Ordinance conflicts with the California Vehicle Code (CVC) by authorizing scooters,

4   which the ordinance refers to as "shared mobility devices," to be stored and displayed

5   on the sidewalk. The CVC instead classifies scooters as "vehicles," that are thus

6   subject to the CVC's restrictions on vehicles' use of the sidewalk. Under the CVC, an

7   electric scooter is defined as "any two-wheeled device that has handlebars, a

8   floorboard that is designed to be stood upon when riding, and is powered by an

9   electric motor." CVC Code § 407.5. The scooters are "motor vehicles" given that "any

10  vehicle is a motor vehicle if it is capable of moving from place to place under its own

11  power." *People v. Jordan*, 75 Cal.App.3d Supp.1, 11 (1977) (holding that a motor

12  scooter was a vehicle for purposes of intoxication laws). Even if the motor of the

13  scooter is turned off, the scooter remains a "motor vehicle." *Id.* The motor of the

14  scooter does not need to be turned on, because if a driver "simply turn[ed] off the

15  ignition when faced with apprehension," they would avoid complying with the CVC.

16  *Id.* at 12. This would be "manifestly absurd" as all "motor vehicles" can turn their

17  motors off and on, but should still be considered "vehicles." *Id.* Thus, a scooter laying

18  on the sidewalk, with the motor turned off, is still considered a vehicle. *Id.* Because

19  scooters are considered a "vehicle" whether its motor is running or not, it must

20  comply with CVC § 22500(f), which provides that a person cannot "stop, park, or

21  leave standing any vehicle" on "a portion of a sidewalk."

22      Under the CVC, a "local authority, by ordinance," can "regulat[e] the registration

23  of motorized scooters and the parking and operation of motorized scooters on pedestrian

24  or bicycle facilities and local streets and highways, **if that regulation is not in conflict**

25  **with this code**." CVC § 21225 (emphasis added). The CVC states: "Every person

26  operating a motorized scooter upon a highway has all the rights and is subject to all the

27  provisions applicable to the driver of a vehicle by this division, including, but not

28  limited to, provisions concerning driving under the influence of alcoholic beverages or

drugs, and by Division 10 (commencing with Section 20000), Division 17 (commencing with Section 40000.1), and Division 18 (commencing with Section 42000), except those provisions which, by their very nature, can have no application." CVC § 21221 (emphasis added). Thus, motorized scooters must abide by the Vehicle Code sections, which apply specifically to scooters, and are also subject to the same restrictions imposed on the drivers of any other vehicles. *Id*. Here, §83.0310(a) of the SMD Ordinance expressly authorizes scooters to be present on sidewalks; however, that local law expressly conflicts with the California Vehicle Code, CVC § 22500(f), rendering the SMD Ordinance invalid as a matter of law. The pre-emption of the CVC is obvious, as even the City's SMD Ordinance acknowledges the mandate to not contradict the CVC, even as it proceeds to do exactly that.

> **v.    As the SMD Ordinance Exacerbates the Failures, The City Cannot Carry its Burden on Mootness, Especially As These Wrongs are Capable of Repetition and Declaratory Relief Is Justified**

The Ninth Circuit has recognized several major exceptions to mootness, including for (1) "collateral legal consequences," (2) "wrongs capable of repetition yet evading review," and (3) "voluntary cessation." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (citing *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005).

In this case, the challenged conduct – the City of San Diego's decisions and lack of action - is surely capable of repetition. The Supreme Court has explained it is enough that the litigant "faces some likelihood of becoming involved in the same controversy in the future." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980). The central consideration is "whether the controversy [is] capable of repetition and not ... whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n. 6 (1988) (emphasis in original). Further, "[i]n estimating the likelihood of an event's occurring in the future, a natural starting point is

how often it has occurred in the past." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc). In the present case, Plaintiffs have challenged the City of San Diego's failure to provide meaningful access to pedestrian rights of way as the City has failed to maintain the system of sidewalks without obstructions that deprive Plaintiffs of their independence and access due to their disabilities. While some of the dockless vehicle companies have ceased doing business in San Diego, this wrong is easily capable of repetition. As the findings of Mr. Mastin detail and as argued in the foregoing, the City's ordinance has neither been effective nor rendered this action one with no live controversy.

The Ninth Circuit has held that even if an injunctive relief request were rendered moot, a case is not moot if declaratory relief would nevertheless provide meaningful relief. *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (citing *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002). In this case, "live" controversy remains between the parties, as the City's conduct casts a substantial adverse effect on the interests of Plaintiffs. *See Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir.1989) (stating that "[a] case or controversy exists justifying declaratory relief only when 'the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties'")(quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). The City's failure to ensure meaningful access has a substantial effect on the daily lives of Plaintiffs, presenting an overarching, daunting problem for those who are disabled and merely want to function as equal members of society, utilizing the services of the City's pedestrian rights of way with equal enjoyment as that of their non-disabled peers.

### 2.  Claim for Violations of California Disabled Persons Act (CDPA) (Civil Code §54)

California enacted the CDPA for the purpose of ending discrimination against

Points and Authorities in Support of Preliminary Injunction          Case No. 3:19-cv-0054-JM-BGS

people with disabilities The CDPA provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, ... and other public places." Cal. Civ. Code. § 54(a). A violation under the ADA constitutes a violation of the CDPA. Cal. Civ. Code §§ 54(c), 54.1(d). While Civil Code Section 54.3(a) discusses monetary damages, Civil Code Section 54.3(b) provides the basis for injunctive relief: "The remedies in this section are nonexclusive and are in addition to any other remedy provided by law, including, but not limited to, any action for injunctive or other equitable relief available to the aggrieved party or brought in the name of the people of this state or of the United States." Cal. Civ. Code §54.3.

The Ninth Circuit has ruled that streets and sidewalks provided by the City are a program within the meaning of Title II. *Barden*, 292 F.3d at 1074. Streets and sidewalks are therefore subject to the program accessibility regulations under 28 C.F.R. §§ 35.150–.151. As set forth above, Plaintiffs demonstrate a substantial likelihood of success in prevailing under the ADA; therefore, Plaintiffs also demonstrate a substantial likelihood of success on their CDPA claim.

The Declaration of Jeff Mastin sets forth substantial evidence, supporting the evidence put forth by Named Plaintiffs in their declarations that the sidewalk has been transformed into a scooter and bike exhibition and rental facility, storage facility, and highway. The City's system of sidewalks is not meaningfully and equally accessible to people with disabilities, and Plaintiffs have demonstrated a strong likelihood of success on the merits.

### 3. Plaintiffs' Timing In Seeking Injunctive Relief Demonstrates Prudent Diligence, not Dilatory Delay, Given the Need to Present Credible Evidentiary Proof to the Court and the Procedural Posture of this Case

Delay is but a single factor to consider in evaluating irreparable injury; courts are "loath to withhold relief solely on that ground." *Arc of California v. Douglas ("Arc")*,

757 F.3d 975, 990–91 (9th Cir. 2014) (citing *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir.1984). Although a plaintiff's failure to seek judicial protection can imply "'the lack of need for speedy action,'" *Lydo Enters, Inc*., at 1213 (quoting *Gillette Co. v. Ed Pinaud, Inc*., 178 F.Supp. 618, 622 (S.D.N.Y.1959)), such tardiness is not particularly probative in the context of ongoing, worsening injuries. Here, the alleged injury amassed over time, and is having a cumulative impact – the City's initial inaction was followed by the City's explicit endorsement of converting pedestrian rights of access into points of sale and storage for dockless vehicles, continuing the harm and exacerbating the problem. As the Ninth Circuit wrote in *Arc*: "the magnitude of the potential harm becomes apparent gradually, undermining any inference that the plaintiff was 'sleeping on its rights.'" (internal citations omitted). The *Arc* Court emphasized the importance of presenting a credible case for irreparable harm: "waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory. The significance of such a prudent delay in determining irreparable harm may become so small as to disappear." *Arc of California v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014).

On January 9, 2019, Plaintiffs filed their initial Complaint alleging the City has failed to maintain the system of sidewalks, done nothing to curb the proliferation of scooters on the sidewalk, and failed to introduce regulations to govern their use. *See* Doc. No. 1. On March 21, 2019, Plaintiffs filed their FAC, amending the allegations to include other dockless vehicle companies present in San Diego and to include dockless bikes rather than solely dockless scooters. *See* Doc. No. 14. On April 4, 2019, Defendants Neutron Holdings, Inc. d/b/a Lime ("Lime"), Bird Rides, Inc. ("Bird"), and Razor, USA, LLC ("Razor") filed a joint motion to dismiss. *See* Doc. No. 30, 30-1. On May 31, 2019, both Defendant Wheels Labs, Inc. ("Wheels Labs"), and Defendant City filed motions to dismiss. *See* Doc. No. 56 to 57-2. On June 3, 2019, Defendant Lyft filed its motion to dismiss. *See* Doc. No. 62. On June 7, 2019, Defendant Uber filed its motion to dismiss. *See* Doc. 63. On January 7, 2020, oral argument was held before the

1   Honorable Jeffrey T. Miller, addressing every single motion. On January 21, 2020,

2   Judge Miller issued an Order, denying the City's motion in its entirety and granting the

3   motions of the Dockless Vehicle Defendants with leave to amend by February 18, 2020.

4   *See* Doc. No. 89.

5        Since the filing of the FAC on March 21, 2019, Plaintiffs had to address several

6   motions to dismiss, amendments of the Complaint, and good-faith settlement

7   negotiations. The declaration of Mr. Mastin shows that Plaintiffs were doing necessary

8   diligence during March of 2019, as that is when the first of Mr. Mastin's inspections

9   occurred. *See* Mastin Declaration, at ¶2. Moreover, the City's SMD Ordinance went

10  into effect on July 1, 2019, requiring further evidentiary diligence on Plaintiffs' behalf

11  to credibly assert their claims with the thorough and detailed findings appropriate for a

12  dispute of this nature, including further findings by Mr. Mastin. *Id.*, at ¶2. Faced with

13  the Covid-19 lockdown, Plaintiffs took the opportunity to engage in settlement

14  discussions.  This use of time is not dilatory, but rather decidedly prudent, as credibility

15  and evidentiary gathering over this cumulative period was necessary to substantiate

16  Plaintiffs' claims of irreparable harm and provide evidence in this complex case

17  regarding the state of the City's system of pedestrian walkways.

18                          **V. CONCLUSION**

19       For the reasons set forth above, the Court should grant Plaintiffs' motion for a

20  preliminary injunction, and provide the relief that Plaintiffs need to meaningfully access

21  public sidewalks without encumbrance and without risk to their safety, so they have the

22  same ability to independently and meaningfully enjoy the benefits of the sidewalk as do

23  those without disabilities. The Court should enjoin the City from permitting dockless

24  vehicles to be present on the sidewalk or other pedestrian access ways in any fashion.

25  ///

26  ///

27  ///

28  ///

Points and Authorities in Support of Preliminary Injunction        Case No. 3:19-cv-0054-JM-BGS

1

2

Dated:  October 1, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 1, 2020

NEIL, DYMOTT, FRANK, MCCABE & HUDSON
A Professional Law Corporation

By:   *s/ Robert W. Frank*
Michael I. Neil
mneil@neildymott.com
Robert W. Frank
rfrank@neildymott.com

By:   *s/ Matthew R. Souther*
Matthew R. Souther
msouther@neildymott.com
Phillip E. Stephan
pstephan@neildymott.com
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

Dated:  October 1, 2020

DISABILITY RIGHTS CALIFORNIA

By:   *s/ Ann E. Menasche*
Ann E. Menasche,
Ann.menasche@disabilityrightsca.org
Nichole Mendoza
Nichole.mendoza@disabilityrightsca.org
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

Dated:  October 1, 2020

DISABILITY RIGHTS CALIFORNIA

By:   *s/ Ben Conway*
Ben Conway
Ben.conway@disabilityrightsca.org
Navneet Grewal
Navneet.grewal@disabilityrightsca.org
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKE