Robert W. Frank, SBN 95392
rfrank@neildymott.com
Matthew R. Souther, SBN 227910
msouther@neildymott.com
NEIL, DYMOTT, FRANK, McCABE & HUDSON
A Professional Law Corporation
110 West A Street, Suite 1200
San Diego, CA 92101
**P** 619.238.1712   |   **F** 619.238.1562

Ann E. Menasche, SBN 74774
Ann.menasche@disabilityrightsca.org
Nichole Mendoza, SBN 276632
Nichole.Mendoza@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
530 B Street, Suite 400
San Diego, CA 92101
**P** 619.239.7861   |   **F** 619.239.7906

Ben Conway, SBN 246410
Ben.Conway@disabilityrightsca.org
Navneet K. Grewal, SBN 251930
Navneet.Grewal@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
**P** 213.213.8000   |   **F** 213.213.8001

Attorneys for ALEX MONTOYA, REX SHIRLEY,
PHILIP PRESSEL, and WYLENE HINKLE
On Behalf of the Plaintiff Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MONTOYA, REX SHIRLEY, PHILIP PRESSEL, and WYLENE HINKLE, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SAN DIEGO, a public entity; and DOES 1-100, <br><br> Defendants. | Case No. 3:19-cv-00054-JM-BGS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Hearing Date: March 1, 2021 <br> Time: 10:00am <br> Judge:  Honorable Jeffrey T. Miller <br> Courtroom:  5D (Schwartz) <br> Magistrate Judge: <br> Honorable Bernard G. Skomal <br> 12th Floor (Carter/Keep) <br><br> Jury Trial:  October 18, 2021 |

1

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1

## TABLE OF CONTENTS

**I.      INTRODUCTION**............................................................................ **7**

**II.     FACTS COMMON TO THE CLASS**............................................. **8**

    A.     The City's Initial Inaction Creates an Ongoing Pedestrian Walkway
    Obstacle Course for People with Mobility and/or Visual Impairments............8

    B.     The City Enacts an Ineffective Shared Mobility Device (SMD)
    Ordinance.......................................................................................................10

    C.     The City's Response Continues to be Inadequate...................................12

**III.    STATEMENT OF THE CASE**....................................................... **15**

**IV.     ARGUMENT SUPPORTING CLASS CERTIFICATION**....................... **18**

    A.     The Class Is Adequately Defined.............................................................18

    B.     Plaintiffs Satisfy Rule 23(a) Prerequisites .............................................19

        1.     The proposed class is sufficiently numerous. ...............................19

        2.     Plaintiffs' claims raise issues common to the class......................21

        3.     Plaintiffs' claims are typical of the class. ....................................23

        4.     Plaintiffs and Their Counsel Will Adequately Represent
        the Class. ........................................................................................24

    C.     The Requirements of Rule 23 (b)(2) are Satisfied. .................................26

**V.      THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS
CLASS COUNSEL PURSUANT TO RULE 23(G)(1).** ................................. **29**

**VI.     CONCLUSION** ............................................................................. **30**

2

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) .................................................................................. 15

*Arenas v. San Diego County Board of Supervisors*,
   93 Cal. App. 4th 210 (2001) ........................................................................ 26

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ............................................................................. 28

*Bloom et al. v. City of San Diego*,
   2018 WL 9539239 .......................................................................................... 26

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ..................................................................... 19

*Brown v. D.C.*,
   928 F.3d 1070 (D.C. Cir. 2019) .................................................................... 26

*Bruton v. Gerber Product Co.*,
   703 F. App'x 468 (9th Cir. 2017) ................................................................ 19

*Burkhalter Travel Agency v. MacFrams Int'l, Inc.*,
   141 F.R.D. 144 (N.D. Cal. 1991) ................................................................. 15

*Californians for Disability Rights, Inc. v. California Department of
Transportation*,
   249 F.R.D. 334 (N.D. Cal. 2008) ....................................................... 20, 22, 27

*Cohen v. City of Culver City*,
   754 F.3d 690 (9th Cir. 2014) ........................................................................ 17

*Committee to Defend Reproductive Rights v. A Free Pregnancy Center*,
   229 Cal. App. 3d 633 (1991) ........................................................................ 26

*DL, et al. v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) ...................................................................... 26

*Duvall v. County of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ...................................................................... 16

3

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................................15, 23

*Fry v. Saenz*,
  98 Cal. App. 4th 256 (2002) .........................................................................26

*Gray v. Golden Gate National Recreational Area*,
  279 F.R.D. 501 (N.D. Cal. 2011) ................................................................23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................23, 24

*Hanon v. Dataproducts Corporation*,
  976 F.2d 497 (9th Cir. 1992) .......................................................................23

*Jordan v. County of Los Angeles*,
  669 F.2d 1311 (9th Cir.), vacated and rem'd on other grounds, 459
  U.S. 810 (1982).......................................................................................20, 21

*Keegan v. American Honda Motor Co. Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012)..................................................................18

*Krueger v. Wyeth, Inc.*,
  310 F.R.D 468 (S.D. Cal. 2015) ...................................................................18

*Lopez v. San Francisco Unified School District*,
  2003 WL 26114018 (N.D. Cal. Sept. 8, 2003)......................................22, 23, 29

*Mark H. v. Lemahieu*,
  513 F.3d. 922 (9th Cir. 2008) ......................................................................16

*Mazza v. American Honda Motor Co. Inc.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................21

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .......................................................................21

*Paxton v. Union National Bank*,
  688 F.2d 552 (8th Cir. 1982) .......................................................................21

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .....................................................................23

*Romero v. Producers Dairy Foods, Inc.*,
  235 F.R.D. 474 (E.D. Cal. 2006)..................................................................19

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

*Tobe v. City of Santa Ana*,
　9 Cal. 4th 1069 (1995) ...................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ................................................................18, 21, 22, 26

*Weinreich v. Los Angeles County Metropolitan Transportation Authority*,
　114 F.3d 976 (9th Cir. 1997) .......................................................................16

*Wiener v. Dannon Co.*,
　255 F.R.D. 658 (C.D. Cal. 2009) ..................................................................24

**STATUTES**

29 U.S.C. § 794(a) .............................................................................................16

42 U.S.C. § 12132 ..............................................................................................16

California Civil Code §52 ..............................................................................21, 29

California Civil Code § 52(f) ..............................................................................16

California Civil Code § 54(c) ..............................................................................16

California Government Code §§ 4450 et seq. ...............................................7, 9, 17

California Government Code §§ 11135 et seq. .......................................................7

San Diego, California Municipal Code §11.0210 ...............................................14

San Diego, California Municipal Code §132.0802 ..............................................11

San Diego, California Municipal Code §83.0304 ...............................................10

San Diego, California Municipal Code §83.0305(b)(7) .......................................10

San Diego, California Municipal Code § 83.0306 (a)(3) .....................................10

San Diego, California Municipal Code § 83.0308 ...............................................10

San Diego, California Municipal Code §83.0310 ........................................*passim*

San Diego, California Municipal Code §83.0311 ................................................10

San Diego, California Ordinance No. O-21070 ...................................................10

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................17

Federal Rule of Civil Procedure 23 ...........................................................7, 15, 18

Federal Rule of Civil Procedure 23(a)...........................................................18, 19

Federal Rule of Civil Procedure 23(a): 1 ...............................................7, 19, 20, 21

Federal Rule of Civil Procedure 23(a)(3) ...................................................................23

Federal Rule of Civil Procedure 23(a)(4) .........................................................24, 26

Federal Rule of Civil Procedure 23(b)...................................................................18

Federal Rule of Civil Procedure 23(b)(2).............................................................*passim*

Federal Rule of Civil Procedure 23(c)(1)(B) ...........................................................29

Federal Rule of Civil Procedure 23(g)...................................................................18

Federal Rule of Civil Procedure 23(G)(1)...............................................................29

Federal Rule of Civil Procedure 23(g)(1)(A)(i)-(iv) ...............................................30

**OTHER AUTHORITIES**

J. Moore's Federal Practice - Civil § 23.22[1][b] ..................................................19

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

# I. INTRODUCTION

The City of San Diego must – pursuant to Title II of the ADA, Section 504 of the Rehabilitation Act, the California Disabled Persons Act, the Unruh Civil Rights Act, and California Gov't Codes §4450 et seq. and § 11135 et seq. – maintain accessible rights-of-way, including sidewalks, crosswalks, and transit stops, so that people with mobility and/or visual disabilities may move about freely. But instead of doing so, the City has applied uniform policies and practices to regulate – or not regulate – an obstacle course of dockless vehicles strewn on the City's public rights-of-way in a manner that denies people with mobility and/or visual disabilities access to free, safe, and independent travel through the walkways that people without disabilities enjoy.

Named Plaintiffs now move the Court to certify a class in this lawsuit, consisting of:

> Residents of the City of San Diego with mobility and/or visual impairments who, based on their disabilities, have been denied free, safe, and independent access to public pedestrian walkways in the City, including sidewalks, cross-walks, and transit stops; have been denied equal enjoyment of these walkways; and/or, who have been deterred from using these walkways because of the obstructive presence of dockless vehicles on the City's rights-of-way.

This case is well-suited for class certification because it meets all of the requisites of Federal Rule of Civil Procedure 23(a): 1) the class is numerous; 2) resolution of the lawsuit involves common questions of law that can be answered by common proof; 3) Named Plaintiffs' claims are typical of the class; and, 4) Named Plaintiffs will be adequate class representatives because they have no conflicts with other Class Members. *See* Fed. R. Civ. P. 23. Indeed, the City's policies and practices uniformly apply to all Class Members. Furthermore, the injuries suffered by Class Members – the pervasive obstruction of and resulting deterrence from the public

rights-of-way – is susceptible to class-wide proof. This case also meets the requirements of Rule 23(b)(2). *Id.* Named Plaintiffs plead for a common remedy uniformly applying to all Class Members: injunctive relief ensuring accessible public pedestrian walkways, declaratory, and other equitable relief. Furthermore, the class can be readily ascertained as it is defined by objective criteria and is geographically limited. Finally, Named Plaintiffs request to be appointed class representatives and to name their attorneys as class counsel as they have no conflicts with the class and have experience in complex litigation and disability rights law.

## II.  FACTS COMMON TO THE CLASS

A.     **The City's Initial Inaction Creates an Ongoing Pedestrian Walkway Obstacle Course for People with Mobility and/or Visual Impairments.**

When dockless vehicles arrived to San Diego *en masse*, the City did nothing to regulate them, creating a "literal obstacle course" for people with disabilities. *See* ECF No. 106-2 ("Mastin Decl.") ¶62. Named Plaintiff Wylene Hinkle, who is blind and has a mobility disability, describes that since 2018, dockless scooters and bikes, "have greatly interfered with my ability to safely and enjoyably walk and take the bus in the City." *See* Hinkle Decl., ¶4.   She explains: "I have been forced to walk into the streets to get around scooters blocking my path, which is particularly frightening because I cannot see." *Id*. She has also encountered scooters blocking audio signal boxes, curb cuts, and bus stops. *Id*. at ¶5. She has been physically struck by the vehicles. *Id.*; *See also* Montoya Decl.,¶ 5 ("I used to walk outside almost every single day, and when doing so, I found myself dodging dockless vehicles on sidewalks and street crossings, coming from all directions at rapid rates of speed without warning."); Pressel Decl., ¶ 9 ("Other times, the dockless vehicles are left in the middle of the sidewalk and I either almost hit them, risking damage to my mobility scooter and myself, or I am forced to backtrack and take an alternative route."); Shirley Decl., ¶ 9 ("I go out of my home less often because of these issues with dockless electric vehicles, and when I do

go out, I find my travel impeded by dockless vehicles in a way that I cannot avoid or go around due to my disabilities.").

Plaintiffs are not alone. Plaintiffs' accessibility expert, Jeff Mastin elaborates:

> I observed the ubiquitous presence of numerous parked dockless vehicles in all areas of the pedestrian sidewalk throughway. A pedestrian with a disability who is blind or mobility impaired traveling along such a sidewalk would be forced to constantly dodge these vehicles. Often the parked dockless vehicles obstructed the accessible curb ramp, preventing even the ability to dodge them for persons who require an accessible route.

*See* ECF No. 106-2, Mastin Decl., ¶62. Further, according to Mr. Mastin, "…unoccupied dockless vehicles pervasively obstruct required accessible elements of the sidewalks and walkways of the City." *Id.* at ¶ 61. He states further, "…measures the [C]ity has taken to mitigate these negative effects are inadequate and ineffective." *See* ECF No.131-4 ("Mastin Supp. Decl.," Dec. 5, 2020) ¶2. Yet, as Mr. Mastin states, "The City has simple and straight-forward means at hand of regulating or prohibiting dockless vehicle parking and use on sidewalks and curb ramps…" *See* ECF No. 106-2,  Mastin Decl., ¶59. For example, "the City could provide additional corrals where none exist and dockless vehicles obstruct the sidewalks, and/or enlarge them in areas where they are not large enough to accommodate the number of dockless vehicles they serve." *Id.* at ¶ 84. As such, the state of the City's sidewalks directly contradict the mandated goals of the ADA, Section 504 of the Rehabilitation Act, the California Disabled Persons Act, the Unruh Civil Rights Act, and California Gov't Codes §4450 et seq. and § 11135 et seq.

The City of San Diego's dereliction of its Title II responsibilities was obvious during Mr. Mastin's on-site inspections in March and October of 2019. *See* ECF No. 106-2, Mastin Decl., ¶¶ 89-90. Mr. Mastin's expert declaration also provides a bounty

9

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

of photographic evidence to support his findings, buttressing Plaintiffs' assertions that dockless vehicles constitute a significant obstruction. *See* ECF No. 106-2, Mastin Decl., ¶¶ 70, 73-79, 82-85, 98-100, Exs. D, E. Mr. Mastin concludes in his report that, "the pedestrian public right of way system is not accessible to and usable by persons with mobility disabilities, and those who are blind or have low vision." *Id* at ¶ 61.

**B.    The City Enacts an Ineffective Shared Mobility Device (SMD) Ordinance.**

On May 17, 2019, the City adopted the City of San Diego Municipal Ordinance O-21070. *See* ECF No. 77, 77-1. The City has noted that this Shared Mobility Device (SMD) Ordinance, "requires devices that are made available for rent to the public such as motorized scooters and motorized bicycles be: permitted (SDMC §83.0304); have age restrictions (SDMC §83.0305(b)(7)); employ geofencing in designated areas (Exhibit A, page 2 paragraph 2; SDMC § 83.0306 (a)(3); SDMC §83.0308); have restricted parking/staging (SDMC §83.0310); timely and immediate removal of devices parked in violation of State and local laws (SDMC §83.0311)." *See* ECF No. 77 at 2:10-16. But, the City's paraphrasing obfuscates language of the ordinance that permits dockless vehicles to remain on sidewalks. Specifically, §83.0310 of the SMD Ordinance states:

> "(a) Shared mobility devices shall not be parked, displayed, offered, or made available for rent:
>
> (1) in violation of this Division of the Vehicle Code;
>
> (2) *within 40 feet of another shared mobility device on a City sidewalk* or other City property located in the beach impact area in the Parking Impact Overlay Zone as defined in Chapter 13, Article 2, Division 8 of this Code, *except in groups of up to four where the shared mobility devices are spaced no more than one foot apart.* This section 83.0310(a)(2) does not prohibit shared mobility devices from being placed in any location designated by the City for shared mobility devices;

10

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

(3) on a City sidewalk located in the Downtown Community Plan area as defined in Chapter 15, Article 6, Division 3 of this Code. This section 83.0310(a)(3) does not prohibit shared mobility devices from being placed in any location designated by the City for shared mobility devices;

(4) on City sidewalks or other City property on the block adjacent to a location designated by the City for shared mobility devices […]".  [Emphasis added]

*See* S.D. Mun. Code §83.0310; ECF No. 77-1 at 14. Though written in the negative, the SMD Ordinance allows the display and rental of dockless vehicles from the City's sidewalks, and even in certain restricted areas, allows their presence including in groups of up to four. *See* Declaration of Ann Menasche In Support of Plaintiffs' Motion for Class Certification ("Menasche Decl.") ¶4, Ex. A ("Within the Beach Impact Area of the Parking Impact Overlay Zone (SDMC §132.0802), up to four Shared Mobility Devices may park adjacent to one another, if they are parked within one foot of one another."). Indeed, the City's own document entitled "Shared Mobility Device (SMD) Parking and Staging Guidelines" includes a photograph of dockless scooters blocking a sidewalk, and answers the questions "Is this OK?" with "Yes." *See* Menasche Decl., ¶4, Ex. A at COSD-20023. The same document states under "Allowed Locations" that parking and staging dockless vehicles on, "[s]idewalks outside of the beach impact area and the Downtown Community Plan Area" is allowed. *Id.* at COSD-20018. The SMD Ordinance does not make it illegal for dockless vehicles to be displayed or parked on sidewalks, which would be a logical regulation for a municipal entity to enact to ensure accessible pedestrian walkways.

Unsurprisingly, Mr. Mastin's declaration marshals significant evidence of the ineffectiveness of the SMD Ordinance at keeping pedestrian walkways clear, noting that he discerned during his second inspection which took place after the ordinance was implemented "only a marginal improvement" in conditions as compared to conditions observed during his first inspection prior to the passage of the ordinance.

*See* ECF No. 106-2, Mastin Decl., ¶ 56. As Mr. Mastin noted: "I observed many unoccupied dockless vehicles obstructing accessible elements that were apparently placed there by users or the positions were modified by passers-by. I am not aware of any training or direction given users by the providers in order for them to park the vehicles without obstructing accessible elements. Moreover, if they do provide such training, it would be considered ineffective based on my empirical findings. Users are not expected to be educated on the nature, extent and maintenance of accessible elements. As a result, they can be parked anywhere, even if it negatively impacts accessibility of the public right-of-way system." *Id*. at ¶74. Mr. Mastin's declaration explicitly sets forth that the City's ordinance made little discernible improvement in the frequency of obstructions. *Id*. at ¶ 77. Mr. Mastin's declaration precisely notes the City's SMD Ordinance contributes to the obstruction problem by allowing up to four vehicles to be parked on the sidewalk. *Id*. at ¶85. For further evidence that the ubiquitous obstructions caused by dockless vehicles persisted after the implementation of the SMD Ordinance, please see the Declaration of Ali Faraj (ECF No.131-3, ¶6) and the Declaration of Jonathan Freeman (ECF No.131-5, ¶¶ 4, 6-8, Ex. A-M).

## C.   The City's Response Continues to be Inadequate.

The City's ADA Coordinator describes a "safe walkable neighborhood" as one where "you can get around a neighborhood safely, [with] no barriers existing for people with disabilities. They would be able to go to the same places as somebody without a disability." *See* Menasche Decl., ¶5, Ex. B (Curtis Depo.) 37:3-11. But despite the pervasive impact that dockless vehicles have on the public rights-of-way in San Diego, the City continues to fail to address the systemic impact on people with disabilities. The City ostensibly addresses problems created by stray scooters in response to complaints by contracting with a company called Sweep, Inc. which moves some of the scooters. *Id.* at Ex. B, 65:5-16; Ex. H.

The City's complaint application, "Get it Done" began tracking complaints regarding dockless vehicles in June 2019. *See* Menasche Decl., ¶ 6, Ex. C (Ellsworth

12

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

Depo.) 32:21-22, Ex. 12. During the week of July 12-18, 2019, 185 individuals logged 1,169 separate complaints. *Id.* at Ex. C, 86:18-21. Complaints drastically reduced coincident with the lockdown related to the COVID-19 pandemic, but have begun to swing upward once again. For example, during the week of August 21-27, 2020, 43 individuals logged 46 complaints. *Id*. This comports with Class Members' experiences. *See* ECF No. 131-5; ECF No. 131-3. As recently as December 23, 2020, Ms. Hinkle was struck by a dockless vehicle riding on the sidewalk. *See* Hinkle Decl., ¶ 5.

Despite the volume of complaints the City receives regarding problems related to dockless vehicles through the "Get It Done" application, the City does not, in the "shared mobility device" section of Get it Done, request information regarding whether the complaint is related to disability.  *See* Menasche Decl., ¶ 7, Ex. D. In contrast, such a request regarding disability is included in the form for a complaint, for example, that involves sidewalk repair. *Id.* at ¶ 8, Ex. E; Ex. C (Ellsworth Depo) 58:8-10. Indeed, the person in charge of "Get It Done" complaints does not work with the City's ADA Coordinator, Thyme Curtis, of the Office of ADA Compliance and Accessibility, nor does that office review the many hundreds of dockless vehicle complaints submitted through the "Get It Done" App. *Id.* at Ex. C (Ellsworth Depo.) 60:4-7; Ex. B (Curtis Depo.) 39:14-23.

City practice has thus effectively isolated and removed the City's ADA office from being able to effectively address the disabled access problems posed by the proliferation of dockless vehicles on the City's sidewalks. The ADA office though fully aware of the issue, has only reviewed a total of 14 complaints from persons with disabilities regarding dockless vehicles that were likely sent directly to its office, and none in the past year.[1] *See* Menasche Decl., ¶ 5, Ex. B (Curtis Depo.) 51:14-53:15,

---

[1] For some of those 14 complaints, the ADA office had their own staff go out to remove scooters because it would not otherwise be handled quickly enough. *Id.* at ¶ 5,

13

63:17-19. The ADA office does not coordinate with the Get it Done App. *Id*. at ¶ 5, Ex. B, 44:5-45:13, 39:14-23. Ms. Curtis also played virtually no role in the drafting of the City's SMD Ordinance (*Id*. at ¶ 5, Ex. B, 29:20-30:6); nor has the ADA office trained Sweep, Inc. personnel whose job it is to remove improperly stored scooters. *Id*. at ¶5, Ex. B, 59:20-60:22. The access compliance officer for the ADA office was never brought in to address the scooters interfering with access. *See* Menasche Decl., ¶ 9, Ex. F (Warner Depo.) 45:24-46:2. These facts impact all persons with visual and/or mobility impairments in the City in the same manner.

Despite the numerous complaints the City receives regarding dockless vehicles, it has never placed limits on the number of scooters that can be permitted, never denied or revoked any permits, never limited the number of scooters that can operate within geographic areas, and never verified the number of scooters an operator deployed, or other information during the permitting process. *Id*. at ¶ 10, Ex. G (Torres Depo.) 24:6-15, 22:3-6, 51:23-24, 19:3-9, 54:14- 55:14, 42:3-7.

Sweep, Inc. was hired in January of 2020 to remove dockless vehicles that were in the public rights-of-way in violation of the SMD Ordinance. *See* Menasche Decl., ¶ 12, Ex. H, COSD-0153-0155, 0163-0166. The company was authorized to remove any dockless vehicles that constitute an "imminent safety hazard."[2] *Id*. While the company recognized that blocking an ADA curb ramp or a cross-walk posed an imminent safety hazard, there is no indication that dockless vehicles were treated as an imminent safety hazard and removed solely for being in the middle of the sidewalk, despite the serious risk this poses to people with disabilities. *See* Menasche Decl., ¶12, Ex. I, COSD 00223-20026, 00239-00241, 00249-00251, 00265-00267. This apparent lack of adequate training and oversight was confirmed by the City official charged

---

Ex. B, (Curtis Depo.) 57: 5-25, 48:13-49:16, 64:21-66:4, 66:14-67:21, 57: 5-25, 59:20-60:22.

[2] The San Diego Municipal Code defines "imminent safety hazard" as "any condition which creates a present, extreme and immediate danger to life, property, health or public safety. *See* S.D. Mun. Code  §11.0210.

with overseeing the impound program, who testified during his deposition that he is unaware of anyone tasked with ensuring Sweep is adequately performing its services. *Id*. at ¶ 13, Ex. J (Haulcey Depo.) 85:20-86:3.

The City's SMD Ordinance not only fails to meet the City's obligations under the ADA, Section 504, and parallel state statutes to maintain the accessibility of its sidewalks, it enables ongoing denial of access. The City's policies condone, normalize and facilitate the placement and storage of dockless vehicles on sidewalks and its practices fail to create a system to keep the walkways clear of obstructions for people with disabilities. These actions ultimately prioritize the bottom lines of private for-profit dockless vehicle companies over the civil rights of the City's disabled residents.

### III.   STATEMENT OF THE CASE

In general, the court does not consider the merits of plaintiffs' claim in determining whether plaintiffs have met the requirements under Rule 23 for class certification. *See Burkhalter Travel Agency v. MacFrams Int'l, Inc*., 141 F.R.D. 144, 152 (N.D. Cal. 1991). Rather, in deciding motions for class certification, the court "examine[s] the merits of the underlying claim . . . only in as much as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *See Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983 n.8 (9th Cir. 2011); see also *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. . . . [A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." (Citation and quotation marks omitted.)

Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

29 U.S.C. § 794(a). Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[3]

To prove a violation of Title II of the ADA, Plaintiffs must show: (1) they are qualified individuals with a disability; (2) they were "either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity[;]" and, (3) "such exclusion, denial of benefits, or discrimination was by reason of their disability. *See Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis removed). Similarly, to establish a prima facie Section 504 claim, Plaintiffs must establish that: (1) they are individuals with a disability; (2) they are otherwise qualified to receive the benefit; (3) they were "denied the benefits of the program solely by reason of their disability; and, (4) "the program receives federal financial assistance." *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (*citing Weinreich,* 114 F.3d at 978). "[T]he focus of the prohibition in § 504 is 'whether disabled persons were denied meaningful access to state-provided services.'" *See Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)) (internal quotation marks omitted).

Sidewalks are services, programs, and activities of the City under the ADA and Plaintiffs allege that the City has failed to maintain those sidewalks free of obstructions so that people with disabilities have equal, meaningful access to and

---

[3] The ADA is incorporated into California law – the Unruh Act and the Disabled Persons Act – and establishes a floor of protection. Therefore, under these acts, liability may be found on the same basis as under the ADA. *See* CA Civil Code § 52(f) and CA Civil Code § 54(c).

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

enjoyment of the sidewalks. "[A] city not only has the power to keep its streets and other public property open and available for the purpose to which they are dedicated but has a duty to do so." *See Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995). Indeed, "[o]bstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities. This is precisely the sort of 'subtle' discrimination stemming from 'thoughtlessness and indifference' that the ADA aims to abolish." *See Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) (reversing summary judgment where vendors blocked access to a curb ramp and, "a jury could conclude that the City discriminated . . . by reason of . . . disability by failing to take simple, low-cost, reasonable measures to accommodate persons who rely on curb ramps to navigate public sidewalks.").

Accordingly, Plaintiffs filed an initial Complaint on January 9, 2019, and a First Amended Complaint (FAC) on March 21, 2019. *See* ECF No. 1; ECF No. 14. The FAC alleged that the City as well as six private companies in the business of renting dockless vehicles to the public violated the ADA, Section 504 of the Rehabilitation Act, and their state law corollaries – the California Disabled Persons Act, the Unruh Civil Rights Act, and California Gov't Codes §4450 et seq. and § 11135 et seq. *See* ECF No. 14.

All Defendants filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 30, 56, 57, 62, 63. After having heard oral argument on January 13, 2020, the Court entered, on January 21, an Order denying the City of San Diego's motion and granting the remaining Defendants' motions. *See* ECF No. 89. Indeed, the Court found "Plaintiffs' allegations sufficient to support the contention that City may have engaged in the simple exclusion of disabled persons through 'thoughtlessness' and 'inaction' that constitutes discrimination under the ADA." *Id*. at 12:10-13. The Court also rejected the City's immunity arguments, noting that Plaintiffs seek injunctive and declaratory relief, and statutory penalties, which are not grounded in tort recovery. *Id*. at 15, 22-23, 24, 27, 32, 33. On April 15, 2020,

17

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1   Plaintiffs filed their Second Amended Complaint, the operative complaint for this

2   motion, and now seek class certification. *See* ECF No. 97.

3   **IV.   ARGUMENT SUPPORTING CLASS CERTIFICATION**

4   A proposed class should be certified if it meets (1) the four threshold

5   requirements of Rule 23(a), ("numerosity," "commonality," "typicality," and

6   "adequacy"); (2) at least one of the provisions of Rule 23(b); and, (3) Rule 23(g),

7   governing appointment of class counsel. *See* Fed. R. Civ. P. 23. As discussed below,

8   the proposed class meets all of the Rule 23(a) requirements, the requirements of Rule

9   23(b)(2), as well as Rule 23(g).

10   The Supreme Court has noted that "Rule 23 does not set forth a mere pleading

11   standard. A party seeking class certification must affirmatively demonstrate his

12   compliance with the Rule—that is, he must be prepared to prove that there are in fact

13   sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*

14   *Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (italics in original). "[S]ometimes it

15   may be necessary for the court to probe behind the pleadings before coming to rest on

16   the certification question," and "[f]requently that 'rigorous analysis' will entail some

17   overlap with the merits of the plaintiff's underlying claim." *Id*. (citations and internal

18   quotations omitted).

19   **A.   The Class Is Adequately Defined.**

20   Although not specifically stated in Rule 23, courts have held the class must be

21   adequately defined to proceed. *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504,

22   521 (C.D. Cal. 2012). A class definition is sufficient when it relies on objective,

23   verifiable criteria. *Id*. "Under the law of th[e] [Ninth [C]ircuit, it is enough that the

24   class definition describes 'a set of common characteristics sufficient to allow' an

25   individual to determine whether she is a class member with a potential right to

26   recover." *See Krueger v. Wyeth, Inc.*, 310 F.R.D 468, 475 (S.D. Cal. 2015). "[T]he

27   language of Rule 23 neither provides nor implies that demonstrating an

28   administratively feasible way to identify class members is a prerequisite to class

18

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

certification." *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). Here, Plaintiffs seek to certify the following class of individuals:

> Residents of the City of San Diego with mobility and/or visual impairments who, based on their disabilities, have been denied free, safe, and independent access to public pedestrian walkways in the City, including sidewalks, cross-walks and transit stops; have been denied equal enjoyment of these walkways; and/or, who have been deterred from using these walkways because of the obstructive presence of dockless vehicles on the City's rights-of-way.

The class definition ensures that only residents of the City of San Diego, all of whom are entitled to the services of the City of San Diego, have mobility and/or visual impairments, and have been denied free, safe and equal access to public pedestrian walkways due to the City's decisions regarding the rental and storage of dockless vehicles, qualify to make a claim.

The Ninth Circuit has clarified that no separate ascertainability requirement exists. *See Briseno*, 844 F.3d at 1133 ("We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement."); *see Bruton v. Gerber Prod. Co*., 703 F. App'x 468, 470 (9th Cir. 2017) (noting "ascertainability" is synonymous with "administrative feasibility"). Prospective Class Members in the action at bar can self-identify whether they were residents of the City of San Diego, have visual or mobility impairments, and whether their access to pedestrian walkways were obstructed.

### B.   Plaintiffs Satisfy Rule 23(a) Prerequisites

#### 1.   The proposed class is sufficiently numerous.

The proposed Class is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). As a general rule, classes of 40 or more suffice. *See* J. Moore's Fed. Prac.- Civil § 23.22[1][b]; see also *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006) ("A class with over forty

19

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1   members is presumed to satisfy the numerosity prerequisite."). Though the exact

2   number of Class Members is unknown, given the ubiquitous nature of the dockless

3   vehicles on the public walkways, Plaintiffs have met this requirement.

4         Census records, the declarations of Class Members, the complaints logged to

5   the City's "Get It Done App", and common sense indicate the Class is comprised of a

6   minimum of several hundred to many thousands of persons. First, the 2018 American

7   Community Survey indicates that approximately 53,863 San Diegans have visual

8   disabilities and 162,730 have  ambulatory disabilities. *See* Menasche Decl., ¶ 16, Ex.

9   L. Further, the many hundreds of complaints regarding dockless vehicles that have

10  been made through the City's "Get it Done" App. indicate that dockless scooters have

11  impeded pedestrian access for people with disabilities. *Id*. at  ¶ 6, Ex. C (Ellsworth

12  Depo.) Ex. 12. Though the App. does not provide a space for a person to indicate that

13  they have a disability, one can logically deduce that at least some number of those

14  complainants do in fact come from those who have a mobility or visual impairment.

15  Moreover, a "court may make common sense assumptions to support a finding that

16  joinder would be impracticable." 1 Newberg on Class Actions, § 3:3 ("Where the

17  exact size of the class is unknown but general knowledge and common sense indicate

18  that it is large, the numerosity requirement is satisfied."). *See Californians for*

19  *Disability Rights, Inc. v. California Dep't of Transp*., 249 F.R.D. 334, 347 (N.D. Cal.

20  2008) (holding that a combination of census data and common sense suffice for

21  demonstrating numerosity.). Here, census data about the number of people with

22  mobility and/or visual disabilities in the population, in general, and in San Diego,

23  specifically, combined with the large number of complaints and common sense,

24  indicate that the proposed class is sufficiently numerous.

25        In determining the impracticability of joinder under Rule 23(a)(1), the court

26  may consider other factors besides the sheer size of the class. *See Jordan v. County of*

27  *Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.), vacated and rem'd on other grounds, 459

28  U.S. 810 (1982); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

1    One such factor is the "relatively small size of each class member's claim." *Jordan*,

2    669 F.2d at 1319. Here, primary relief is injunctive and declaratory. At most, class

3    members would be eligible for statutory penalties and the dollar amount of each class

4    member's claim is relatively small, four thousand dollars. *See* CA Civil Code §52.

5        A second factor is whether the "class is composed of unnamed and unknown

6    future" members since the "joinder of unknown individuals is inherently

7    impracticable." *Jordan*, 669 F.2d at 1320. The proposed class in the case includes

8    unnamed and unknown future residents of San Diego with mobility and/or visual

9    disabilities. A third factor in determining the impracticability of joinder is "whether

10   injunctive or declaratory relief is sought." *Id*. at 1319. This lawsuit seeks *primarily*

11   injunctive and declaratory relief to ensure disabled access on the City walkways. In

12   sum, the proposed class meets the requirements of Rule 23(a)(1).

13         **2.**     **Plaintiffs' claims raise issues common to the class.**

14       Commonality requires that class members share a common claim that is

15   "capable of class-wide resolution," meaning that determination of the claims' "truth or

16   falsity will resolve an issue that is central to [the claims'] validity. . . in one stroke."

17   *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes II*").

18   Commonality is a "limited burden": there need be only one common question. *See*

19   *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012). "Where the

20   circumstances of each particular class member vary, but retain a common core of

21   factual or legal issues with the rest of the class, commonality exists." *See Parsons v.*

22   *Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (alteration in original). "What matters to class

23   certification . . . [is] the capacity of a class-wide proceeding to generate common

24   answers apt to drive the resolution of the litigation." *Dukes II*, 564 U.S. at 350

25   (quotation marks and citation omitted).

26       The overarching question in this case is whether the City of San Diego's

27   approval – through its policies and practices, or lack thereof– of dockless vehicles

28   being displayed and stored on sidewalks, conflicts with federal and state disability

21

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

access requirements? All Named Plaintiffs are persons with visual and/or mobility impairments, as would be everyone in the proposed class. "In cases brought under the ADA and section 504 where the allegations in the complaint stem from allegedly exclusionary policies and barriers, these barriers provide a common nucleus of operative fact from which to seek injunctive relief." *See Lopez v. San Francisco Unified Sch. Dist.*, 2003 WL 26114018, at *3 (N.D. Cal. Sept. 8, 2003). Such exclusionary policies and barriers provide the common nucleus of fact here: Do the City's systemic policies and practices, or lack thereof, condone, create, and/or fail to remediate the barriers to accessible pedestrian rights-of-way created by dockless vehicles?

As laid out in Section II. above, the City's policies and practices allowing or even authorizing dockless vehicles to proliferate on the City's sidewalks are uniform. The City's policies and practices are laid out through its SMD Ordinance and centralized complaint and enforcement mechanisms. The City has failed to actively and in an effective and coordinated fashion address the issue. This results in all proposed Class Members being exposed to the same results of the City's action and inaction – diminished access to public rights-of-way. The issue of whether or not equal access and enjoyment was available to Class Members will resolve a common issue central to all claims "in one stroke." *Dukes II,* 564 U.S. at 350.

The district court's decision in *Californians for Disability Rights, Inc. v. California Department of Transportation*, 249 F.R.D. 334 (N.D. Cal. 2008), is illustrative. *Disability Rights* certified a *statewide* class of mobility and visually impaired persons who alleged that "Caltrans has a 'centralized policy of 'discrimination' in violation of Title II,'" and the Rehabilitation Act, by making inaccessible "barriers along sidewalks, crosswalks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California…" *Id*. at 335-336. The district court did so even though the thousands of barriers were not identical and no named plaintiff claimed to have encountered every

barrier. *Id.* at 344–45; see also *Gray v. Golden Gate National Recreational Area*, 279 F.R.D. 501, 510 (N.D. Cal. 2011) (citing *Disability Rights* and certifying a class of all mobility impaired and visually impaired persons across the 75,000 acres of the Golden Gate National Recreation Area because all class members were affected by the same systemic access barriers). Named Plaintiffs ask essentially the same question here, but on a smaller scale.

Named Plaintiffs "[seek] certification on the grounds that architectural and policy barriers precluded their access." *See Lopez v. San Francisco Unified Sch. Dist.*, 2003 WL 26114018, at *3 (N.D. CA 2003). In this type of case, courts in "this circuit as well as other circuits ... have routinely held that class certification of classes composed of people with disabilities affected by…systemic access barriers is appropriate." *Id.*

### 3.    Plaintiffs' claims are typical of the class.

Rule 23(a)(3) typicality is satisfied where a named plaintiff's claims are "reasonably co-extensive" with absent class members' claims. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); see also *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *See Hanon v. Dataproducts Corporation*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Thus, the test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *See Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 984 (9th Cir. 2011) (citations and internal quotations omitted).

Typicality is met here because Plaintiffs and the proposed Class assert the same claims arising from the same course of conduct: the City of San Diego's uniform policies which Plaintiffs allege create barriers to access and Plaintiffs' desire to access

23

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

San Diego's public rights-of-way. Named Plaintiffs are people with disabilities. *See* Hinkle Decl., ¶ 3; Montoya Decl., ¶ 3; Pressel Decl., ¶ 3-4; Shirley Decl., ¶ 3-4; see also Menasche Decl., ¶ 14, Ex. K (Hinkle Depo.) 13:3-5, 98:2-99:5. Named Plaintiffs' injuries arose in the same manner as every other Class Member, namely that the City's policies and lack of policies regarding dockless vehicles impeded their access to public rights-of-way. *See* Hinkle Decl., ¶ 4 ("Since the dockless scooters and bikes first appeared in San Diego in 2018 and continuing through the present, the pervasive presence of these vehicles parked on the City's sidewalks, bus stops and walkways have greatly interfered with my ability to safely and enjoyably walk and take the bus in the City."); see also Montoya Decl., ¶ 7 ("These dockless vehicles impede my access to and enjoyment of the sidewalk."); Pressel Decl., ¶ 6 ("Ever since dockless vehicles arrived in San Diego, their presence has made it very difficult for me to utilize and enjoy the sidewalks and pedestrian rights of way."); Shirley Decl., at ¶ 5 ("These dockless rental vehicles impede my ability to safely travel the sidewalks and pedestrian access points in the City of San Diego.") Lastly, the City's actions and inactions with regard to dockless vehicles apply across the City, not just to the Named Plaintiffs' individual situations. Typicality is met.

### 4. Plaintiffs and Their Counsel Will Adequately Represent the Class.

Plaintiffs Mr. Montoya, Mr. Pressel, Mr. Shirley, and Ms. Hinkle seek to be appointed as Class Representatives. Rule 23(a)(4) requires Plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Class representatives are adequate when: (1) there is no conflict of interest between the representatives, their counsel, and absent class members; and (2) the representative and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F. 3d at 1020; see also *Wiener v. Dannon Co.*, 255 F.R.D. 658, 667 (C.D. Cal. 2009).

24

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

Here, Mr. Montoya, Ms. Hinkle, Mr. Shirley and Mr. Pressel's interests are aligned with those of the Class Members because they have been harmed by the same common misconduct and seek the same or similar relief. *See* Montoya Decl., ¶¶ 5-12, Pressel Decl., ¶¶ 3-18, Shirley Decl., ¶¶ 5-17, Hinkle Decl., ¶¶ 3-18. The Named Plaintiffs each claim the state of the City's sidewalks contradicts the ADA and the Rehabilitation Act, and the City's dereliction in satisfying its duties denies equal, safe, and meaningful access and results in discrimination based on disability. All four Named Plaintiffs have actively participated in this litigation on behalf of the Class by consistently communicating with counsel; responding to discovery, and sitting for depositions. The Named Plaintiffs are fully aware that they are pursuing this action as potential Class Representatives of a Class of City of San Diego residents with mobility and/or visual impairments, and they are knowledgeable and informed about the claims in this action and the relief they are requesting. *See* Montoya Decl., ¶¶ 13-15, Pressel Decl., ¶¶ 19-21, Shirley Decl., ¶¶ 18-20, Hinkle Decl., ¶¶ 19-21. Their interests are aligned with those of other Class Members, they have no conflicts of interest, and they understand the risks associated with pursuing these claims; thus, they are adequate and qualified to be appointed as Class Representatives. *Id*.

The Named Plaintiffs have retained counsel who have the resources and expertise to prosecute this action vigorously on behalf of the class. For example, lead counsel Robert Frank of Neil, Dymott, Frank, McCabe & Hudson is the firm's Senior Trial Attorney with over 40 years of experience and has tried over 75 jury trials and approximately the same number of administrative law licensing hearings for various licensed professionals. *See* Frank Decl., ¶ 1-8. Additional counsel of Neil, Dymott, Frank, McCabe & Hudson- Matthew Souther, is also well qualified. *See* Souther Decl., ¶ 1-12. Plaintiffs' counsel has also aggressively pursued this case for the past two years. This has included advancing over $5,317.48 in costs to date, engaging in extensive discovery and law-and-motion work (as demonstrated, in part, by this Court's electronic docket), and conducting depositions of a myriad of City officials

1    and defending depositions for proposed class representatives. *See* Souther Decl., ¶11.

2           Disability Rights California (DRC) is the country's largest disability rights legal

3    organization. Ann Menasche, a Senior Attorney at DRC, has been litigating civil

4    rights cases for over four decades and is an expert in the ADA and Rehabilitation Act.

5    She has been sole or lead attorney in 10 jury trials and dozens of administrative

6    hearings and court trials, and has argued cases before state appellate courts and the

7    Ninth Circuit. She has been involved in obtaining four published decisions: *Bloom et*

8    *al. v. City of San Diego,* 2018 WL 9539239; *Arenas v. San Diego County Board of*

9    *Supervisors*, 93 Cal. App. 4th 210 (2001); *Fry v. Saenz*, 98 Cal. App. 4th 256 (2002);

10   and *Committee to Defend Reproductive Rights v. A Free Pregnancy Center*, 229 Cal.

11   App. 3d 633 (1991). Additionally, she has been named class counsel on several cases.

12   *See* Menasche Decl., ¶18-21. The three additional attorneys from DRC are also well

13   qualified. *See* Declarations of Navneet K. Grewal, Ben Conway, and Nichole

14   Mendoza. Plaintiffs and their counsel meet the Rule 23(a)(4) requirements.

15          **C.      The Requirements of Rule 23 (b)(2) are Satisfied.**

16          A class action is proper where the party against whom relief is sought has acted

17   (or refused to act) on grounds *generally* applicable to a class of persons, thereby

18   making appropriate declaratory or injunctive relief with respect to the class as a

19   whole.  *See* Fed. R. Civ. P. 23(b)(2). The "Supreme Court has called '[c]ivil rights

20   cases against parties charged with unlawful, class-based discrimination' . . . 'prime

21   examples' of what (b)(2) is meant to capture." *Dukes II*, 564 U.S. at 361 (alteration in

22   original) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)); see

23   also *DL, et al. v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) ("Rule

24   23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can

25   avoid piecemeal litigation when common claims arise from systemic harms that

26   demand injunctive relief.");  *Brown v. D.C.*, 928 F.3d 1070, 1083 (D.C. Cir. 2019) (a

27   case holding a (b)(2) class was properly certified where disabled individuals who

28   received Medicaid-funded, long-term care services alleged violations of Title II of the

26

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1   ADA and Rehabilitation Act for failure to provide transition services to community-

2   based care, leading to unnecessary isolation and segregation).

3       "Cases challenging an entity's policies and practices regarding access for the

4   disabled represent the mine run of disability rights class actions certified under Rule

5   23(b)(2)." *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249

6   F.R.D. 334, 345 (N.D. Cal. 2008). Indeed, in *Californians for Disability Rights*, the

7   court certified a class consisting of the following:

8       "[a]ll persons with mobility and/or vision disabilities" who were

9       allegedly "denied access under Title II of the Americans with

10      Disabilities Act and the Rehabilitation Act of 1973 due to barriers along

11      sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses

12      and any other outdoor designated pedestrian walkways throughout the

13      state of California which are owned and/or maintained by the California

14      Department of Transportation."

15  *Id*. at 350. The court held that "the common question addressed by this lawsuit is

16  whether and to what extent Caltrans has violated the ADA on a 'systematic basis for

17  many years through the use of improper design guidelines and the failure to ensure

18  compliance with even those deficient guidelines.' The question of such system-wide

19  discriminatory practices is an issue common to all plaintiffs." *Id*. The same is true

20  here, where Plaintiffs' common question is analogous:

21      Whether the City is, on a systemic basis, violating Title II of the ADA,

22      42 U.S.C. § 12131 et seq. and Section 504 of the Rehabilitation Act, 29

23      U.S.C. § 794 et seq., the California Disabled Persons Act, the Unruh

24      Civil Rights Act, and California Gov't Codes §4450 et seq. and § 11135

25      et seq. by depriving persons with disabilities access to programs,

26      services and activities of the City of San Diego, and otherwise

27      discriminating against persons with disabilities, by allowing dockless

28      vehicles to obstruct private rights-of-way, failing to adopt policies that

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1     regulate dockless vehicles in a manner that allows people with mobility

2     and/or visual impairments to travel freely, and by failing to adopt any

3     policies that allow for timely response to and remedy of complaints.

4          Certification of a class under Rule 23(b)(2) does not require that every single

5     class member must have been injured or aggrieved in the same way by defendant's

6     conduct. A class may properly be certified under Rule 23(b)(2) if the opposing party's

7     "action or inaction is directed to a class . . . even if it has taken effect or is threatened

8     only as to one or a few members of the class, provided it is based on grounds which

9     have general application to the class." *See* Fed. R. Civ. P. 23(b)(2) Advisory

10    Committee's Notes, 1966 Amendment. Thus, it is sufficient if the defendant has

11    adopted or engaged in a pattern of activity that is "central to the claims of all class

12    members irrespective of their individual circumstances and the disparate effects of the

13    conduct." *See Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

14         While the City denies that it has acted on grounds generally applicable to the

15    proposed class, it nonetheless admits that it continues to permit dockless vehicles to

16    be on the public rights-of-way, "pursuant to and within the limits set forth in the

17    California Vehicle Code and the San Diego Municipal Code." *See* Menasche Decl., ¶

18    16, Ex. M (City's Responses to Plaintiffs' First Set of Requests for Admissions, at

19    Request for Admission 1). Moreover, many hundreds of residents have continued to

20    complain to the City through its "Get It Done" App. about the presence of dockless

21    vehicles on its walkways, showing that the problem, while waxing and waning during

22    various points of the pandemic, is ongoing and ubiquitous. *See* ECF No. 131-5.

23    Further, despite contracting with Sweep, Inc. to remove dockless vehicles, those

24    parked in the middle of the sidewalk are not targeted for immediate removal despite

25    the imminent hazard they pose for people with visual and mobility disabilities. *See*

26    Menasche Decl., ¶ 4, Ex. A, COSD- 20018-20025; Section II.B. *supra*.  Defendant's

27    admission along with the above-stated facts establish that injunctive and declaratory

28    relief are appropriate.

28

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

More specifically, Plaintiffs seek injunctive relief to modify the City's policies and practices to comply with the ADA and Rehabilitation Act statutory standards, and their state corollaries. Plaintiffs seek an injunction that would prohibit the City from allowing dockless vehicles to be stored and displayed on sidewalks, and would ensure that its policies and enforcement of its policies met its obligations to keep those pedestrian rights-of-way accessible. Such relief would significantly impact all San Diegans with mobility and/or visual impairments in the same manner: it would make them free to independently and safely navigate their city. Plaintiffs further seek declaratory relief making clear the City's accessibility obligations.

Finally, incidental to the injunctive and declaratory relief, Plaintiffs seek statutory penalties, which require no separate proof.  All individuals who are determined to be members of the Class[4] will automatically be entitled on an equal basis to a minimum statutory penalty under CA Civil Code § 52. The relief sought is generally applicable to the class as a whole, and will not require a claim-by-claim individual analysis, therefore meeting the requirements of (b)(2). *See Lopez v. San Francisco Unified Sch. Dist.*, 2003 WL 26114018, at \*6 (N.D. Cal. 2003) (stating that incidental penalties do not preclude class certification especially where they "do not require separate hearings to determine the merits or scope of each individual's case and injury.").

## V. THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL PURSUANT TO RULE 23(G)(1).

When a class is certified, the court must appoint class counsel (*See* Fed. R. Civ. P. 23(g)(1)) and the class certification order must list these counsel. *See* Fed. R. Civ. P. 23(c)(1)(B). The Federal Rules list four factors the court must consider in

---

[4] This could be accomplished by a simple declaration from each class member to establish that they are persons with visual or mobility impairments and that the presence of dockless vehicles on the public sidewalks, cross-walks and transit stops of the City have interfered with their free, safe, and independent access and/or deterred their use of these walkways.

appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (iii) counsel's knowledge of the applicable law, and (iv) the resources counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Pursuant to these four factors, Plaintiffs' counsel qualify for appointment as class counsel in this case. The papers which Plaintiffs have filed concurrently with this motion demonstrate the hard work that Plaintiffs' counsel have done on this action up until the present day. Counsel have interviewed and obtained declarations from Named Plaintiffs and other Class Members, obtained an expert report, defended six motions to dismiss, and have taken several depositions. The moving papers also reflect counsel's gathering of documentary evidence regarding Defendants' policies and procedures and legal research into the merits of a number of different claims.

As discussed above (*See* Sec.III.B.4. at 20-21 *supra*), Plaintiffs' counsel have extensive knowledge and experience in handling class actions and other complex litigation, including ADA and civil rights cases, and are knowledgeable as to the applicable law. Plaintiffs' counsel fully intend to commit the necessary resources to represent the proposed class in this case. In short, the Court should appoint Plaintiffs' counsel as class counsel in its class certification order.

## VI.   CONCLUSION

For all of the above reasons, Plaintiffs' motion should be granted. Plaintiffs request the Court certify the proposed Class, designate Mr. Montoya, Mr. Pressel, Mr. Shirley and Ms. Hinkle as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

///

///

///

///

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted:

Dated:  January 29, 2021

NEIL, DYMOTT, FRANK, MCCABE & HUDSON
A Professional Law Corporation

By:   *s/ Robert W. Frank*

Michael I. Neil
mneil@neildymott.com
Robert W. Frank
rfrank@neildymott.com

By:   *s/ Matthew R. Souther*

Matthew R. Souther
msouther@neildymott.com
Phillip E. Stephan
pstephan@neildymott.com
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

Dated:  January 29, 2021

DISABILITY RIGHTS CALIFORNIA

By:   *s/ Ann E. Menasche*

Ann E. Menasche,
Ann.menasche@disabilityrightsca.org
Nichole Mendoza
Nichole.mendoza@disabilityrightsca.org
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

Dated:  January 29, 2021

DISABILITY RIGHTS CALIFORNIA

By:   *s/ Navneet K. Grewal*

Navneet K. Grewal
Navneet.Grewal@disabilityrightsca.org
Ben Conway
Ben.conway@disabilityrightsca.org
Attorneys for Plaintiffs
ALEX MONTOYA, PHILIP PRESSEL,
REX SHIRLEY. and WYLENE HINKLE

Memo. Of Points And Authorities iso Plaintiffs' Motion For Class Certification
Case No. 3:19-cv-00054-JM-BGS