UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MONTOYA; REX SHIRLEY; PHILIP PRESSEL; and WYLENE HINKLE; individually, and on behalf of all others similarly situated, | Case No.:  19cv0054 JM(BGS) |
| Plaintiffs, | **ORDER ON MOTION FOR CLASS CERTIFICATION** |
| v. | |
| CITY OF SAN DIEGO, a public entity; and DOES 1-100, | |
| Defendants. | |

Presently before the court is Plaintiffs' Motion for Class Certification.  (Doc. No. 135.)  The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the reasons set forth below, Plaintiffs' motion is denied without prejudice.

## I.    Background

On January 9, 2019, Plaintiffs, who are individuals with disabilities, filed a putative class action complaint asserting claims for violations of the ADA, 42 U.S.C. § 12101 *et seq*., section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* California Civil Code section 51, *et seq.,* (the "Unruh Act"), California Civil Code section 54, *et seq.,* (the

"DPA"); California Government Code section 4450, *et seq.,* and California Government Code section 11135, *et seq.* (Doc. No. 1.)[1]

In the operative Second Amended Complaint it is alleged that Plaintiffs have found their access to San Diego's sidewalks diminished by the proliferation of dockless electric vehicles currently in use in the City. (Doc. No. 97, "SAC", ¶¶ 1, 2, 12, 13, 14, 15.) They allege that people using the dockless electric vehicles either travel on the sidewalks or block paths of travel because the vehicles are discarded in the middle of sidewalks or at other rights-of-way, making it difficult for people with disabilities to safely traverse the pathways. (*Id*. at 2, 3.[2]) Further, the SAC alleges that as usage and abandonment of these vehicles and the speed at which they travel increases, Plaintiffs are denied safe, equal, and full access to the sidewalks. (*Id.* ¶¶ 20-29.) In Plaintiffs' words, the vehicles' "burgeoning proliferation and uncurbed growth comes at the detriment of the rights of all disabled persons with mobility and/or visual impairments who are residents and visitors of the City of San Diego, causing Plaintiffs injury, severe anxiety, diminishing their comfort and discriminating against them based on their disabilities…." (*Id.* at ¶ 30.) Plaintiffs direct allegations at the City regarding its responsibilities as a municipality and the duty it has to maintain the sidewalks. (*See, e.g., id.* at ¶¶ 31-34, 37, 41-42, 53, 55-61, 68-72, 76-79, 83, 87-91, 97-100, 107-108, 111.) As set forth in the SAC, Plaintiffs seek to represent a putative class of all residents of the City of San Diego with mobility or visual impairments divided into two subclasses:

---

[1] On March 21, 2019, Plaintiffs filed the First Amended Class Action Complaint ("FAC"). (Doc. No. 14.) The court issued a detailed order denying the City's motion to dismiss the FAC but granting the motions to dismiss brought by the private entities that rent the dockless vehicles to third party individuals, which Plaintiffs categorized as the "Dockless Vehicle Defendants." (*See* Doc. No. 89.) Plaintiffs chose not to amend their claims against the Dockless Vehicle Defendants.

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

a.      Residents of the City of San Diego with mobility impairments (the Mobility Impairment Subclass") and,

b.      Residents of the City of San Diego with visual impairments (the "Visual Impairment Subclass").

SAC ¶ 39.

On January 29, 2021, Plaintiffs filed the motion for class certification.  (Doc. No. 135.)  On February 18, 2021, the City filed an *ex-parte* motion seeking to reset the hearing and briefing schedule on the class certification motion that was granted by the court.  (Doc. Nos. 136, 137.)   Accordingly, the City duly filed its opposition, (Doc. No. 138) and Plaintiffs filed their reply (Doc. No. 139).

## I.      Legal Standard

District courts retain the discretion to determine whether to certify a class.  *Bouman v. Block,* 940 F.2d 1211, 1232 (9th Cir. 1991).  "Parties seeking class certification must satisfy each of the four requirements of [Federal Rule of Civil Procedure] 23(a) . . . and at least one of the requirements of Rule 23(b)."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)."  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (internal quotation marks, brackets, and ellipses omitted).

When considering class certification, district courts must engage in "a rigorous analysis" to determine whether "the prerequisites of Rule 23(a) have been satisfied."  *Wal–Mart v. Dukes*, 564 U.S. 338, 350-51 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not turn

class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).

Plaintiffs also contend that in addition to satisfying these four Rule 23(a) requirements, class certification is warranted under Rule 23(b)(2) requirements.  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases [], can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *Brown v. D.C.*, 928 F.3d 1070, 1083 (D.C. Cir. 2019).  In making this showing, the plaintiffs must submit evidence to support class certification under Rules 23(a) and (b).  *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977). If the plaintiffs fail to show that all elements of class certification are satisfied, class certification should be denied.  *Gen. Tel. Co. of the Sw.* 457 U.S. at 161.

## II.   Discussion

In opposition to Plaintiffs' request for class certification, the City argues that the motion should be denied because the proposed class is not ascertainable and is inadequately defined.  (Doc. No. 138 at 27-29.)  The court finds City's arguments to be persuasive.

"The ascertainability of a class ensures that class members are reasonably identifiable." *Romero v. Securus Techns.,* Case No. 16cv1283 JM (MDD), 2018 WL 1782926, *2 (S.D. Cal. Apr. 12, 2018).  The Ninth Circuit has never expressly adopted a threshold ascertainability requirement, *see, e.g., Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, (9th Cir. 2017), although it has addressed ascertainability issues through analysis of Rule 23's requirements.  *See, e.g., Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1136- 39 (9th Cir. 2016) (addressing claim that class definition was overboard as a Rule 23(b)(3) predominance issue); *Pierce v. Cnty. of Orange,* 526 F.3d 1190, 1200 (9th Cir. 2008) (Rule 23(b) does not offer "a superior method of fair and efficient adjudication in light of expected difficulties identifying class members"); *Probe v. State Teachers' Ret. Sys.,*

780 F.2d 776, 780 (9th Cir. 1986) (indicating that a class must be "sufficiently definite to conform to Rule 23.").

A class definition must be "precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 416 (C.D. Cal. 2000). "An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" *Campbell v. PricewaterhouseCoopers*, LLP, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). As observed by the Manual for Complex Litigation, "Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not."

Here, Plaintiffs seek certification of a class consisting of:

> Residents of the City of San Diego with mobility and/or visual impairments who, based on their disabilities, have been denied free, safe, and independent access to public pedestrian walkways in the City, including sidewalks, cross-walks, and transit stops; have been denied equal enjoyment of these walkways; and/or, who have been deterred from using these walkways because of the obstructive presence of dockless vehicles on the City's rights-of way.

Doc. No. 135-1 at 7. This proposed class definition differs from the one set forth in the SAC as it no longer contains subclasses, *see* SAC at ¶¶ 16, 39.

City contends that the class is not ascertainable and the definition is inadequate because: (1) it is not limited in time and includes future disabled individuals; (2) "mobility and/or visual impairments" is not defined so the extent a person must be impaired to be a member of the purported class is unknown; (3) the terms "free, safe, and independent access" are not defined; (4) the use of broad terms like "public pedestrian walkways" and the City's rights-of-way increases the risk that class members will become confused as to

5

whether the City or another government agency owns various "rights-of-way;" and (5) how obstructive the dockless vehicle needs to be is not defined.  (Doc. No. 138 at 27-29.)

To cure any potential defects pertaining to the definition of the disabilities of class members, in their reply brief Plaintiffs proposed additional language to further define the class.  Plaintiffs suggest the following addition:

> For the purpose of class certification, persons with mobility impairments are those who use wheelchairs, scooters, crutches, walkers, canes or similar devices and/or have prosthetic limbs or medical conditions that make walking more difficult or slow their reaction time; persons with visual impairments are those who due to their impairments use canes or service animals for navigation.

Doc. No. 139 at 4 n. 3.

District courts have the discretion to modify a class definition during the certification process.  *See Nevarez v. Forty Niners Football Co., LLC,* 326 F.R.D. 562, 575 ("[D]istrict courts have broad discretion to modify class definitions," including considering changes to class definitions proposed in reply briefs.)  (citations omitted).  However, the proposed additional language[3] addresses only one of the many issues the court has with the broadness of the currently proposed class definition.

Not only does the definition of disability need to be better defined, so too does the harm suffered, specifically the terms "denied" and "deterred."  A definition that simply uses the term "denied" or "deterred", without more, provides nothing to differentiate the nuisance the presence these dockless vehicles on sidewalks and public rights-of-way create to potentially all members of the general public when carelessly abandoned by the user.

---

[3] The court does not take issue with the proposed language regarding a class members' qualifying disability and finds it to be in keeping with case law.  *See, e.g., Californians for Disability Rights, Inc. v. Cal. Dep't Transp.*, 249 F.R.D. 334, 343, 350 (N.D. Cal. 2008) (defining class of persons with mobility disabilities as "those who use wheelchairs, scooters, crutches, walkers, canes, or similar devices to assist their navigation along sidewalks" and those with vision disabilities as "those who due to a vision impairment use canes or service animals for navigation along sidewalks.").

As the court explained previously, "the City cannot guarantee that individuals with disabilities will not encounter some impediments when they move around on the sidewalks. The realities of everyday life mean that a 'perfect' ADA accessible sidewalk does not exist in the constantly changing variable that is city living." (Doc. No. 142 at 8.)  *See also Evans v. Bird Rides*, Case No. 19-CV-01207-VC, 2019 WL 5864583, at *2 (N.D. Cal. Nov. 8, 2019) (noting that "temporary denials of access do not violate the ADA").  Moreover, a person with vision impairments may be injured differently than a mobility impaired individual, and a person who walks with a limp or with the assistance of a cane may be injured differently than someone who uses a wheelchair.  Similarly, how the presence of the dockless vehicles "deters" any of the proposed class members from using sidewalks, crosswalks, and transit stops is not accounted for in the broad, catchall definition provided by Plaintiffs.  *See Labowitz v. Bird Rides, Inc.*, Case No. CV 18-9329-MWF (SK), 2020 WL 2334116, at *18 (C.D. Cal. Mar. 31, 2020) (court denied motion to strike class allegation but voiced skepticism about the proposed class's breadth, explaining, while wheelchair-bound individuals or those using guide dogs are injured differently than the general public, "the Court is unsure that same logic applies to those who walk with a limp, or have disabilities to a lesser extent.").  And, to the extent that either "denial" or "deterred" claims would stem from the fear of a moving dockless vehicle, in other words one based on psychological injury, such a fear cannot be the basis of an ADA Title II denial-of access claim.  *See Evans*, 2019 WL 5864583, at *2 n. 1 ("it seems unlikely that this sort of psychogenic difficulty gives rise to denial-of-access claims under Title II or section 504.").  Along the same lines, it is also unclear what exactly is meant by "denied free, safe or independent access."  The words "free," "safe" and "independent" may embody different meanings for different people, therefore, leaving these terms undefined with no clarification, provides no guidance to potential class members or to the court.

The court also takes issue with the lack of explanation surrounding the phrase "obstructive presence of dockless vehicles."  As the City points out, "if a disabled person is able to navigate around [the dockless vehicle], as the named plaintiffs admit they are

often able to do, is that an 'obstructive' presence?" (Doc. No. 138 at 28.)  In other words, what constitutes an obstruction for one member of the class, may not necessarily constitute an obstruction for another.  Such an open-ended phrase provides little help to potential class members as to whether they may file a claim.  *See Krueger v. Wyeth*, Inc. 310 F.R.D 468, 475 (S.D. Cal. 2015) ("Under the law of th[e] [N]inth [C]ircuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' an individual to determine whether she is a class member with a potential right to recover.").

Furthermore, absent from the class definition is any specified time period.   In response to City's concerns regarding this omission, Plaintiffs respond that its argument is "baseless since the dockless vehicles entered the City three years ago," (Doc. No. 139 at 4 n. 1).  But the lack of a specified period of time overlooks the fact that courts are divided as to whether to apply a two- or three-year statute of limitations to Unruh damages claims, *see O'Shea v Cnty. of San Diego*, Case No. 19-cv-1243-BAS-BLM, 2019 WL 4674320 at *4 (S.D. Cal. Sept. 24, 2019)[4], whereas the injunctive relief claim brought under Title II of the ADA is subject to a three-year statute of limitations.

Finally, while ascertainability, like numerosity, does not require a precise number of class members, the motion summarily concludes that "common sense indicate[s] the Class is comprised of a minimum of several hundred to many thousands of persons."  (Doc. No. 135-1 at 20.)  Plaintiffs reach this conclusion by pointing to the number of individuals with

---

[4] "Some hold California's two-year personal injury statute of limitations applies to Unruh claims, like it does to section 1983 claims. *See, e.g.*, *Gatto v. Cnty. of Sonoma*, 98 Cal. App. 4th 744, 760 (2002); *Hartline v. Nat'l Univ.*, No. 2:14-cv-0635 KJM AC, 2015 WL 4716491 (E.D. Cal. August 7, 2015). Others have applied a three-year statute of limitations to claims under the Unruh Act. *See, e.g.*, *Kramer v. Regents of Univ. of Cal.*, 81 F. Supp. 2d 972, 978 (N.D. Cal. 1999); *see also Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 501 n.11 (9th Cir. 1993) (indicating in dicta that the three-year statute of limitations of California Code of Civil Procedure § 338(a) should apply to claims under the Unruh Act)." *O'Shea,* 2019 WL 4674320 at *4.

vision and mobility-related disabilities living in San Diego[5], and the number of dockless vehicle complaints filed with the City on the "Get it Done" App.  But it does not follow that every mobility impaired or vision impaired person resident of San Diego has encountered a dockless vehicle.  Neither does it necessarily follow that a number of disabled persons were among the individuals who submitted complaints on the "Get it Done App."  Thus, at the present time, the court is unable to determine a reasonable estimate of the number of people constituting the purported class, let alone the exact contours of the proposed class.  *See Feinman v. Fed. Bureau of Investigation,* 269 F.R.D. 44, 49 (D.D.C. 2010) ("plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.").

### III.    Conclusion

For the foregoing reasons, the court **DENIES** the motion for class certification without prejudice because Plaintiffs fail to sufficiently identify an ascertainable and adequately defined class.  (Doc. No. 138.) Accordingly, Plaintiffs' may file a renewed motion for class certification, with a more defined class, **within 30 days** of entry of this order.

IT IS SO ORDERED.

Dated:   June 9, 2021

Hon. Jeffrey T. Miller
United States District Judge

---

[5] In doing so, Plaintiffs ask the court to rely on two pages of data pulled from the 2018 American Community Survey census. (*See* Doc. No. 135-1 at 20; Doc. No 135-15; Doc. No. 139 at 4-5.)

19cv0054 JM(BGS)