1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

ALEX MONTOYA; REX SHIRLEY;
PHILIP PRESSEL; and WYLENE
HINKLE; individually, and on behalf of
all others similarly situated,

13

Plaintiffs,

14

v.

15
16

CITY OF SAN DIEGO, a public entity;
and DOES 1-100,

17

Defendants.

Case No.:  19cv0054 JM(BGS)

**ORDER ON RENEWED MOTION
FOR CLASS CERTIFICATION**

18
19
20
21

    Presently before the court is Plaintiffs Alex Montoya's, Philip Pressel's and Wylene
Hinkle's Renewed Motion for Class Certification[1].  (Doc. No. 158-1.)  The motion has
been fully briefed and the court held oral argument on August 23, 2021.  For the reasons
set forth below, the motion is **denied**.

22

**I.    Background**

23
24
25

    On January 9, 2019, Plaintiffs, who are individuals with disabilities, filed a putative
class action complaint asserting claims for violations of the Americans with Disabilities

26
27
28

---

[1] Mr. Rex Shirley no longer seeks to represent the class and is only proceeding in this
litigation in an individual capacity.  (*See* Doc. No. 158-1 at 27; Doc. No. 169 at 12; Doc.
No. 179 at 3.)

Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* California Civil Code section 51, *et seq.,* (the "Unruh Act"), California Civil Code section 54, *et seq.,* (the "DPA"); California Government Code section 4450, *et seq.,* and California Government Code section 11135, *et seq.* (Doc. No. 1.)[2]

In the operative Second Amended Complaint it is alleged that Plaintiffs have found their access to San Diego's sidewalks diminished by the proliferation of dockless electric vehicles currently in use in the city. (Doc. No. 97, "SAC", ¶¶ 1, 2, 12, 13, 14, 15.) They allege that people using the dockless electric vehicles either travel on the sidewalks or block paths of travel because the vehicles are discarded in the middle of sidewalks or at other rights-of-way, making it difficult for people with disabilities to safely traverse the pathways. (*Id.* at 2, 3.[3]) Further, the SAC alleges that as usage and abandonment of these vehicles and the speed at which they travel increases, Plaintiffs are denied safe, equal, and full access to the sidewalks. (*Id.* ¶¶ 20-29.) In Plaintiffs' words, the vehicles' "burgeoning proliferation and uncurbed growth comes at the detriment of the rights of all disabled persons with mobility and/or visual impairments who are residents and visitors of the City of San Diego, causing Plaintiffs injury, severe anxiety, diminishing their comfort and discriminating against them based on their disabilities…." (*Id.* at ¶ 30.) Plaintiffs direct allegations at the City regarding its responsibilities as a municipality and the duty it has to maintain the sidewalks. (*See, e.g., id.* at ¶¶ 31-34, 37, 41-42, 53, 55-61, 68-72, 76-79, 83, 87-91, 97-100, 107-108, 111.) As set forth in the SAC, Plaintiffs seek to represent a

---

[2] On March 21, 2019, Plaintiffs filed the First Amended Class Action Complaint ("FAC"). (Doc. No. 14.) The court issued a detailed order denying City's motion to dismiss the FAC but granting the motions to dismiss brought by the private entities that rent the dockless vehicles to third party individuals, which Plaintiffs categorized as the "Dockless Vehicle Defendants." (*See* Doc. No. 89.) Plaintiffs chose not to amend their claims against the Dockless Vehicle Defendants.

[3] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

putative class of all residents of the City of San Diego with mobility or visual impairments

divided into two subclasses:

> a.    Residents of the City of San Diego with mobility impairments (the Mobility Impairment Subclass") and,
> b.    Residents of the City of San Diego with visual impairments (the "Visual Impairment Subclass").

SAC at ¶ 39.

The prayer for relief seeks an order:

> enjoining the City of San Diego from permitting dockless vehicles to be present in any manner, including parking and storage, on the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other sidewalks in the City of San Diego.

*Id.* at ¶ 112.B.

On January 29, 2021, Plaintiffs filed a motion for class certification. (Doc. No. 135.) This motion was denied because the proposed definition was too broad and numerous terms were undefined, with this court expressing concern that: "to the extent that either 'denial' or 'deterred' claims would stem from the fear of a moving dockless vehicle, in other words one based on psychological injury, such fear cannot be the basis for an ADA Title II denial of access claim." (Doc. No. 147 at 7.)

On July 9, 2021, Plaintiffs filed a Renewed Motion for Class Certification. (Doc. No. 158-1.) The renewed motion seeks to certify a class consisting of:

> **Persons with visual and/or mobility disabilities residing in the City of San Diego, who on or after January 1, 2018 have used the pedestrian rights-of-way located in the Central Areas of the City and whose access, due to their disabilities, is allegedly negatively impacted by the City's challenged policies and practices regarding the presence of dockless vehicles on these pedestrian rights-of-way**.
>
> "**Persons with mobility disabilities**" are those who have disabilities affecting mobility as recognized by the ADA and who use wheelchairs, scooters, crutches, walkers, canes, and/or similar devices for navigation due to their disabilities or have prosthetic limbs or other medical conditions that make walking, and safely and independently avoiding, removing, or circumventing obstacles on sidewalks more difficult than for persons without disabilities.

"**Persons with visual disabilities**" are those who have disabilities affecting vision as recognized by the ADA and use canes or services animals for navigation due to their disabilities, and whose disabilities make safely and independently identifying, avoiding, removing or circumventing obstacles on sidewalks more difficult than for persons without disabilities.

"**Central Areas of the City of San Diego**" consist of these ten major communities in the City of San Diego and all of the sub-communities within them: (1) Downtown; (2) Greater Golden Hill; (3) North Park; (4) Uptown; (5) Balboa Park; (6) Pacific Beach; (7) Mission Beach; (8) Mission Bay Park; (9) Ocean Beach; (10) Old Town San Diego.

"**Pedestrian rights-of-way**" consist of sidewalks, crosswalks, curb ramps, and transit stops under the jurisdiction of the City of San Diego located in Central Areas of San Diego.

*Id.* at 9-10.  On July 26, 2021, the City filed its opposition, (Doc. No. 168) and Plaintiffs duly filed their reply (Doc. No. 169).

## II.   Legal Standard

As this court previously explained, district courts retain the discretion to determine whether to certify a class. *Bouman v. Block,* 940 F.2d 1211, 1232 (9th Cir. 1991). "Parties seeking class certification must satisfy each of the four requirements of [Federal Rule of Civil Procedure] 23(a) . . . and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (internal quotation marks, brackets, and ellipses omitted).

When considering class certification, district courts must engage in "a rigorous analysis" to determine whether "the prerequisites of Rule 23(a) have been satisfied." *Wal–Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350-51 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis v.*

*Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits."  *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).  In addition, the court must determine whether class counsel is adequate (Fed. R. Civ. P. 23(g)), and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchem Prod.*, 521 U.S. at 614).

## III.  Discussion

In their papers, Plaintiffs argue they have made significant changes to the proposed class definition that now warrant certification of the class, including: (i) dropping the request for statutory damages on behalf of the class; (ii) narrowing the geographic scope; (iii) specifying a time period; (iv) removing open-ended terms; and (v) more precisely describing the class.  (Doc. No. 158-1 at 19-31.)  In opposition, City maintains that the proposed class is not ascertainable, neither Rule 23(a)'s nor Rule 23(b)'s requirements have been satisfied, and the putative class is an impermissible fail-safe class.  (Doc. No. 168 at 12-31.)

### 1.  Ascertainability of Class

"The ascertainability of a class ensures that class members are reasonably identifiable."  *Romero v. Securus Techns.*, Case No. 16cv1283 JM (MDD), 2018 WL 1782926, *2 (S.D. Cal. Apr. 12, 2018).  District courts have the discretion to modify a class definition during the certification process.  *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 ("[D]istrict courts have broad discretion to modify class definitions," including considering changes to class definitions proposed in reply briefs.)  (citations omitted).

The need to finely spin a definition that locks down every connotation for certain proposed words and/or phrases is lessened now that this action is one for prospective relief. Thus, at the hearing, the court worked with the parties to craft a new class definition that

took into consideration City's concerns and Plaintiffs' proposed modifications. Accordingly, the court will use the following, agreed upon, class definition:

> Persons with visual and/or mobility disabilities residing in the City of San Diego, who on or after January 1, 2018, have used the pedestrian rights-of-way and whose access was and continues to be impaired by the presence of dockless vehicles on pedestrian rights-of-way due to City policy and practices.

### 2. Rule 23(a) Requirements

#### a. Numerosity

The "numerosity" requirement is satisfied if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement …." *Walker v. Hewlett-Packard Co.*, 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

Plaintiffs claim the numerosity requirement has been met. (Doc. No. 158-1 at 22-24.) They argue the following combination of evidence establishes a class of 40 or more: (i) the San Diego Census records showing approximately 53,863 San Diegans have visual disabilities and 162,730 have ambulatory disabilities (*see* Doc. No. 158-14 at 2, 3); (ii) an on-line petition to Mayor Todd Gloria protesting scooters on San Diego walkways signed by 110 unduplicated signatures of people self-identifying as individuals with disabilities[4] (Doc. No. 158-31 at ¶ 6); (iii) a declaration from Leticia Zuno, the executive director of Access to Independence, a San Diego based independent living organization for people with disabilities, wherein she attests that she has personally received complaints from "many dozens of consumers" with disabilities regarding the presence of the scooters (Doc. No. 158-2 at ¶ 3); (iv) three declarations from putative class members regarding their experiences (Doc. No. 158-23; Doc. No. 158-25; Doc. No 158-29; Doc. No 158-

---

[4] Notably, this petition was started by Jonathon Freeman, of Safe Walkways, one of Plaintiffs' own experts.

33[5]);(v) the declarations of the named plaintiffs (Doc. No. 158-22; Doc. No. 158-30, Doc. No. 158-38; Doc. No. 158-35; Doc. No. 158-36[6]); and (vi) the number of scooter infractions reported on the Get It Done app[7]. (*See* Doc. No 169 at fn. 6.)   Additionally,

---

[5] A declaration from Mr. Ali Faraj, who is legally blind, recounts how the arrival of the dockless vehicles has impacted his ability to walk around the city. (Doc. No. 158-23.) Similarly, a declaration from Helen Allen, who is legally blind and has mobility issues that cause her to walk poorly, relays that she has had "regular uninvited and unpleasant contact with scooters" in the Uptown and Downtown areas. (Doc. No. 158-29 at ¶¶ 4, 6.). And a declaration from Marcia Liss, who is certified disabled and uses a cane, explains how she has had to maneuver around sidewalks on her walks in the Central San Diego area stating: due to her disability and "use of a cane, it is difficult and unsafe for me to have to get around scooters strewn across the sidewalks. I am at high risk of losing my balance and falling which is very scary and makes me anxious to take my usual walks." (Doc. No. 158-33 at ¶¶ 3, 5.)

[6] Mr. Montoya was born without arms or a right leg and wears prosthetics on these limbs. His declaration describes how he has to "dodge dockless vehicles," "maintain a state of hypervigilance," and has nearly tripped over discarded scooters several times, asserting that "he no longer feel[s] safe walking" and the dockless vehicles have blocked his way and caused him to "take an alternate route since [he] cannot go around or avoid the impediments due to [his] impairments." (Doc. No. 158-22 at ¶¶ 3, 5-7, 12.) In her declaration, Ms. Hinkle, who is totally blind, hearing-impaired and has arthritis, reports how the presence of the dockless vehicles has greatly interfered with her ability to walk and take the bus in the city safely and enjoyably. (Doc. No. 158-30 at ¶¶ 4, 6-8; *see also* Doc. No. 158-38, second declaration filed by Ms. Hinkle.) In his declaration, Mr. Pressel, who has lost the use of both legs, is a double amputee, and requires the use of a mobility scooter, states that the presence of the scooters in San Diego has made it very difficult for him to "utilize and enjoy the sidewalks," and attests that the scooters block his way and that he has almost been hit on numerous occasions. (Doc No. 158-35 at ¶¶ 3, 4, 6- 10, 14, 15, 17.) The declaration of Mr. Shirley depicts his regular encounters with dockless vehicles in the Mission Beach neighborhood that have blocked his access because he is dependent on the use of a mobility scooter for most of his transportation. (Doc. No. 158-36 at ¶¶ 5, 8, 9, 12.)

[7] Although Plaintiffs have cited to the Get It Done App data, the court is mindful of the role Mr. Freeman and fellow Safe Walkways members have played in filing complaints on it. For example, during the week of June 27, 2021, to July 4, 2021, 1002 complaints were

Plaintiffs claim that because they are no longer seeking statutory damages for the class and are pursuing solely injunctive and declaratory relief as a class-wide remedy, this modification "changes the standard for establishing numerosity and obviates the need to identify individual class members." (Doc. No. 158-1 at 10.)  City counters that none of this evidence provides a reasonable estimate of the number of purported class members. (Doc. No. 168 at 13-15.)

Considering the evidence supplied by Plaintiffs, and applying common sense, the court is comfortable concluding that the proposed class will be comprised of more than forty members. *See Californians for Disability Rights,* 249 F.R.D. at 347 (court found numerosity requirement met by "extrapolating" from the census data plaintiffs provided and making common sense "assumptions"); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008) ("Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity requirement, mere speculation as to the number of parties involved is insufficient.") (citation omitted.)  *See also* 1 Newberg on Class Actions, § 3:13 ("[A] good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable.  The estimate generally should be supported by more than speculation …").  Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement has been met.

### b. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). "[W]hen determining typicality, the

---

made, 646 of which were attributable to Safe Walkways. (*See* Doc. No. 168-8 at ¶ 21; Doc. No. 168-10 at ¶ 21.)

Court focuses on the defendant's conduct and the plaintiff's legal theory, not the specific facts from which the claim arises." *Allen v. Simlaisan Corp.,* 206 F.R.D. 635, 645 (S.D. Cal. 2015) (citing *Parsons v. Ryan,* 754 F.3d 657, 865 (9th Cir. 2014)).   Typicality can be measured by looking at "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanlon*, F.2d at 508)).

Plaintiffs argue that the typicality requirement is satisfied because the claims of the lead Plaintiffs and the proposed class arise from the same course of conduct, namely the City's uniform policies which allegedly created "barriers to access and Plaintiffs' desire to access San Diego's public rights-of-way."   (Doc. No. 158-1 at 26-27.)   Further, they contend that the injury is the same or similar for every proposed class member because these individuals have had "their access to sidewalks burdened in a way that is different from, and greater than, the access enjoyed by people without disabilities. (*Id.* at 27.)   City counters that there is little typicality amongst the named Plaintiffs, pointing to the fact that they all live in different locations, have experienced different injuries, have varying disabilities, and rely on different devices to maneuver around the city. (Doc. No. 168 at 18-22.)

City's argument misses the mark.   The claim, or injury, is impairment of access to pedestrian rights-of-way due to dockless vehicles, in combination with a mobility or visual disability.   It is not the disability that is the claimed loss, rather loss of access.   In other words, the loss of access is common and typical to all plaintiffs.   Accordingly, this requirement has been met.

### c. Commonality

The requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.,*

19cv0054 JM(BGS)

670 F. Supp. 114, 1121 (E.D. Cal. 2009).  In *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019), the Ninth Circuit explained:

> the commonality element may be fulfilled if the court can determine 'in one stroke' whether a single policy or practice which the proposed class members are subject to 'expose them to a substantial risk of harm.'  These policies and practices are the 'glue that holds together the putative class … either each of the policies and practices is unlawful as to every [proposed member] or it is not.  Allegations of individual instances of mistreatment, without sufficient evidence, do not constitute a systemic deficiency or overarching policy of wrongdoing.

(Citations omitted).

Plaintiffs contend the commonality requirement is satisfied because the class claims involve common questions of law and fact regarding City's alleged violation of the ADA and section 504.  (Doc. No. 158-1 at 24-26.)  City opposes, arguing that the harms alleged by the Plaintiffs and potential class members differs widely and are caused by third parties violating state laws, city ordinances, or guidelines established by the dockless vehicle companies, (Doc. No. 168 at 16-18).

City is indeed correct that members' interactions with dockless vehicles may be different based on their individual disability, and therefore, the manner of each harm has the potential to vary slightly.  But Plaintiffs are all complaining about the same policies, policies which have been clearly and amply described in the SAC.  The allegations of the SAC regarding the barriers to access provide an overarching common factual matrix regarding City's policies and enforcement procedures for the scooters from which to seek injunctive relief.  *See Lopez v. S.F. Unified Sch. Dist.*, No. C. 99-3260 SI, 2003 WL 26114018, at *3 (N.D. Cal. Sept 8, 2003).  Here, it is City's policies regarding the dockless vehicles and the alleged impediments to access, or loss of access, which comprise the proverbial "glue" holding this putative class together.  *Willis,* 943 F.3d at 885.  The loss or impairment of access is common to the class, regardless of the finely differentiated attenuations of the underlying disabilities.  Accordingly, this requirement has been met.

### d.  Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requires the court address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class."  *In re Mego*, 213 F.3d at 462.  A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *Id.* at 23(g)(1)(B).

### (i)  Supplemental Briefing

Before getting into the substantive arguments, the supplemental briefing submitted on the issue of the class representatives waiving statutory damages for the class while initially reserving these damages for themselves, must be addressed.  At oral argument, the following exchanged occurred between the court and Ms. Menasche from Disability Rights California, counsel for Plaintiffs:

> The Court: I just wanted to clarify with you on the record that you are, on behalf of the class, waiving all monetary damages on any kind for the class and are pursuing solely injunctive and declaratory relief.
> Ms. Menasche: Yes, for the class itself, correct.  We are only seeking injunctive and declaratory relief.  We are waiving our previous claim for statutory damages for the class.
> The Court: Well, not just statutory damages but damages of any kind.
> Ms. Menasche: Of any kind.  Correct.  Correct.

Doc. No. 180 at 6-7.  The court then questioned Plaintiffs' counsel about any potential conflict in Plaintiffs continuing to seek individual statutory damages while choosing to waive damages for absent class members.  (*Id.* at 7-8.)  Plaintiffs' counsel requested the

opportunity to address the issue in a separate brief, (*Id*. at 9-10).   The court granted counsel's request and set a briefing schedule.  (*Id*. 180 at 36-38.)

In their supplemental briefing, the three proposed class representatives responded by waiving their individual damages claims but did not address the legal issue posed by the court.  (Doc. No. 179 at 3.)  Mr. Shirley, who is not a proposed class representative, did not waive his statutory damages claims.  (*Id*.)  City duly filed its response, contending that this inability by the named Plaintiffs to reach a uniform decision regarding the relief being sought in this action does not portend well for the class and raises the possibility that 25 percent of the proposed putative class will not want to waive statutory damages.  (Doc. No. 181 at 3-4.)

On September 17, 2021, Plaintiffs filed an *Ex-parte* Application to Permit Filing of Clarification Regarding Plaintiffs' Renewed Motion for Class Certification seeking to "provide necessary clarification regarding [their] decision to strike the claim for statutory damages for the putative class and the three proposed class representatives."  (Doc. No. 182-1 at 4.)  Plaintiffs state that they "did not intend to waive the right of putative class members to file *subsequent separate actions* to seek damages regarding dockless vehicles." In the accompanying declaration, Ms. Menasche declares "[u]nder current law, such class members are, of course, free to file subsequent individual lawsuits for damages regarding dockless vehicles, should they choose to do so."  (Doc. No. 182-2 at ¶ 5.)  City opposed Plaintiffs' application, arguing that, in the application, Plaintiffs again change course, now maintaining that they did not intend to waive the right of putative class members to pursue subsequent actions seeking damages, "though by their own admission, Plaintiffs had previously stated that Plaintiffs 'waived' damages on behalf of the class."  (Doc. No. 183 at 3.)

The court **GRANTS** the *Ex-parte* application (Doc. No. 182) but cannot help noting how difficult and elusive it is for both the court, and City, to respectively manage and litigate this case when Plaintiffs constantly change positions, move the goal posts with each filing, yet decline the court's numerous invitations to submit briefing on substantive issues.

At this point in time, the court is left with an action consisting of three plaintiffs, not representing a class, but seeking only injunctive and declaratory relief, one plaintiff who refuses to waive his claim to statutory damages that counsel now suggests may be severed from this case, and a Plaintiffs' attorney who has finessed and oversimplified an important issue affecting the interests of putative class members as well as the viability of this action being maintained as a class action, as discussed, *infra*.

### (ii)   Waiver of Statutory Damages Claim on Behalf of Class

The named Plaintiffs Mr. Montoya, Ms. Hinkle, and Mr. Pressel seek to be appointed as class representatives, asserting that their interests are aligned with those of the class members "because they have been harmed by the same common misconduct and seek the same or similar relief." (Doc. No. 158-1 at 27.) Plaintiffs have retained lead counsel Robert Frank of Neil, Dymott, Frank, McCabe & Hudson, along with Disability Rights California. However, Plaintiffs' decision in this case to drop their claims for statutory damages to have an easier time certifying a 23(b)(2) class gives the court pause for concern. This is because Rule 23(b)(2) class members are not subject to notice and do not have the right to opt out. *Wal-Mart Stores,* 564 U.S. at 362[8].

In the Ninth Circuit, "the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events." *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996). But this must be weighed alongside an equally important judicial concept, namely: the decision in a class action is binding on the parties in subsequent decisions. *Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 874 (1984) ("Basic principles of res judicata (merger and bar of claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim,

---

[8] The *Wal-Mart Court* held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores*, 564 U.S. at 361.

which merges into the judgment granting relief."). *See also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396, 116 S. Ct. 873, 134 L.Ed.2d 6 (1996) (Ginsburg, J., concurring in part and dissenting in part) (citing 7B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1789, p. 245 (2d ed. 1986)) (there is an inherent risk whenever a party waives claims to secure class certification because "[a] court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action."). The reasoning behind the general rule is that claims for monetary damages typically rely upon different facts than claims for injunctive relief. *See., e.g., Cooper*, 467 U.S. at 876 ("The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'").

However, because a Rule 23(b)(2) class can both limit individual opt-outs and sacrifice class members' rights to avail themselves of significant legal remedies, some courts have found it too high of a price to impose. *See, e.g., McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th 2008) (affirming denial of Rule (b)(2) class certification where plaintiffs sought backpay but not compensatory or punitive damages); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011) (finding that "[plaintiff's] attempt to split her putative class members' claim by excluding stigma damages creates a conflict between her interests and the interests of the putative class"); *Sanchez v. Wal Mart Stores*, No. 06-CV-02573 (JAM) (KJM), 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (finding that a class representative was inadequate because her decision to forego personal injury damages could harm the class).

In *Zachery v. Texaco Exploration and Production, Inc*., 185 F.R.D. 230, 244 (W. D. Tex. Mar. 18, 1999) (see attached), the court expressed concern that if it certified a class on the disparate treatment claim and the class prevailed on this issue, no one would receive compensatory or punitive damages because the seven plaintiffs unilaterally chose not to seek them. It recognized the "very real possibility, if not [] probability, that another court

of competent jurisdiction could determine that the proposed class members would be barred from bringing individual actions for damages arising from intentional acts of discrimination if the class obtained a finding of intentional discrimination in this Court." 185 F.R.D. at 243-44.  The *Zachery* court concluded that it was "not willing to gamble away the proposed class members' potential rights to compensatory damages" because the lack of an opt-out provision and "the very high risk of a preclusive effect of any class judgment on the claims for intentional discrimination makes this a very real risk."  *Id.* at 244.  In so doing, the court noted that "the class members the Plaintiffs seek to represent must be given the opportunity to pursue intentional discrimination claims and seek monetary damages, and certifying this class may very well deny them that chance."  *Id.*

In *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. Mar. 28, 2012), the court looked closely at whether plaintiff had satisfied Rule 23(b)(2)'s requirements and whether plaintiff and his counsel were adequate.  Cholakyan filed suit on behalf of a putative class alleging violations of consumer protection statutes due to purchases of defendant's vehicles.  He sought an injunction and a declaration that the defendant's vehicles possessed a defectively designed water management system.  However, the allegations surrounding the alleged defects in the vehicles involved multiple different components, "each of which may or may not be defectively designed, and each of which may or may not be causally linked to the alleged water leak defect."  *Id*. at 552.  Cholakyan ultimately failed to identify a single system causing the water leaks or rebut defendant's evidence regarding design variations among class vehicles.  *Id.* at 554.

Unlike here, Cholakyan originally sought certification as a Rule 23(b)(3) class, but later disavowed any claim that class members were entitled to compensatory damages and sought to certify a 23(b)(2) class.  The court analyzed the applicability of both *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984) and *Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996) to the case and determined that their applicability to "putative class members' hypothetical individual compensatory damages is not clear."  *Cholakyan*, 281 F.R.D. at 563.  It expressed concern that Cholakyan's request for declaratory relief

regarding a design defect could be used affirmatively by defendant later to defeat a class member's efforts to obtain compensatory damages for the very defect found not to have existed in the case before the court. *Id.* The *Cholakyan* court concluded that in seeking injunctive and declaratory relief on behalf of a class, plaintiff, had:

> at a minimum, placed class members' ability to pursue individualized claims for monetary damages in question. While *Cooper* indicates that under some circumstances individual damages claims remain available to class members even after an adverse judgment in a Rule 23(b)(2) class action, the Court clearly stated that a plaintiff could not relitigate the exact question that was adjudicated in the prior litigation. *See id.* ("[C]laims for monetary damages typically rely upon different facts than claims for injunctive relief," citing *Cooper*, 46 U.S. at 875; *Fosmire,* 277 F.R.D. at 634 ("As a result of Ms. Fosmire's claim splitting, class members from other states who have both diminished value claims arising from residual property damage, as well as stigma damages, cannot bring their stigma damages claims in this lawsuit. Progressive asserts that these class members risk being prevented by the doctrines of claim or issue preclusion from ever pursuing stigma damages in another lawsuit. The court agrees, and concludes that Ms. Fosmire's attempt to split her putative class members' claim by excluding stigma damages creates a conflict between her interests and the interests of the putative class, rendering her an inadequate class representative"). This is the situation threatened in this case.

> … The fact, however, that Cholakyan and his attorneys are willing potentially to sacrifice individual class members' right to pursue recovery of monetary damages without fully exploring the implications of their actions raises concerns about their adequacy.

*Id.* at 565.

Here, Plaintiffs are pursuing injunctive relief in the form of:

> enjoining the City of San Diego from permitting dockless vehicles to be present in any manner, including parking and storage, on the system of sidewalks, crosswalks, curb ramps, transit stops, pedestrian crossings and other sidewalks in the City of San Diego.

SAC ¶ 112.B. It is Plaintiffs position that the injunction they seek will ensure "ADA compliance by prohibiting the City from authorizing or encouraging dockless vehicles to be stored and displayed on sidewalks, requiring effective methods of monitoring dockless

1   vehicles that present barriers to access, and ensuring timely and effective enforcement

2   policies." (Doc. No. 158-1 at 31.)  According to Plaintiffs, this relief will impact all class

3   members the same, and provide them the same freedom to "safely and independently

4   navigate the central areas of the City as people without disabilities enjoy."  If an injunction

5   is entered, a different court could view the injunction as a declaration of liability, i.e., that

6   City has violated the ADA.

7      But such an injunction could have potentially preclusive effects.  Plaintiffs have

8   failed to address, despite this court's invitation to do so, their decision to waive damages

9   for the putative class.  This court is concerned that the injunctive relief being sought

10   forecloses and/or waives a class member's potential later claim for statutory damages under

11   Unruh, since "a violation of the right of any individual under the federal Americans with

12   Disabilities Act of 1990 shall also be a violation of [the Unruh Act]."  CAL. CIV. CODE.

13   § 51(f).  Based on the statutory language, the court is not convinced that a class member

14   will be able to prove a "different set of operative facts" to prove injury for the Unruh claim

15   than were used to craft the injunctive relief that may be granted here.  The inescapable

16   overlapping of the ADA and Unruh claims, and the confluence of operative facts common

17   to both, create a built-in conflict that this court cannot ignore, as the recognized authorities

18   outlined by the court make it highly likely that such a conflict could be fatal to any class

19   member's future Unruh claims.  Enhancing the scale of risk associated with this conflict is

20   Plaintiffs proffered evidence that 53,863 San Diegans have visual disabilities and 162,730

21   have ambulatory disabilities.  Faced with such a large class, the court is reluctant to bind

22   so many individuals who would neither receive notice of, nor an opportunity to opt out of

23   any settlement.[9]  Such a result would create a high likelihood of forfeiture of claims for

24   any class members seeking individual damage remedies under Unruh[10].

25

26

27   [9] Class notice is not required under Rule 23(b)(2), an action this suit purports to be.

28   [10] Damages under Unruh are defined as "any amount that may be determined by a jury, or
court sitting without a jury, up to a maximum of three times the amount of actual damage

19cv0054 JM(BGS)

A case from the Northern District of California, while not exactly on point, is illustrative. In *Anderson v. SeaWorld Parks & Entertainment, Inc.*, 132 F. Supp. 3d 1156, 1166 (N.D. Cal. 2015), the court was faced with an FAL claim that sought only injunctive relief for the class and monetary damages for the individual class members. The court addressed the issue of whether preclusion would prevent the filing of individual claims if the injunctive only suit were permitted to continue in state court. Although it noted that the law generally supported the ability of absent class members to still seek to bring claims for damages, it explained:

> the key difference here -- and where Plaintiffs' argument fails -- is that the claims for monetary damages which <u>typically</u> rely on different facts than claims for injunctive relief here rely on almost exactly the <u>same</u> facts. Thus the edict of *Cooper* as reflected in *LCD* are, in this specific case, inapposite. *See Cooper,* 467 U.S. at 876; LCD, 2012 WL 273883, at *2 (*citing Cooper*). Plaintiffs pleaded a summary of all or all the same facts as their cases for damages.
>
> …where a case requesting only injunctive relief relies on the same facts as another, already pending case that requests damages, and the injunctive case is comprised of a subset of members who are a party to the earlier damages case(s), a court's concern may be reasonably heightened that the effects of issue preclusion from hearing the injunctive case first may effectuate claim preclusion. The Court is therefore concerned that, in the unusual procedural posture of this case and on these specific facts, named Plaintiffs (and their counsel) may not be adequate representatives.

*Id.* at 1167.

In light of the foregoing conflict concerns which have been inadequately addressed by Plaintiffs in response to this courts invitation to brief the relevant issues, the court finds that Plaintiffs and their counsel have not demonstrated that they will fairly and adequately

---

but in no case less than four thousand dollars ($4000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.1, or 51.6." CAL. CIV. CODE § 52(a).

protect the interests of the other members of the class as required by Rule 23. Accordingly, this requirement has not been met.[11]

### 3. Rule 23(b)(2) Requirements

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon,* 150 F.3d at 1022. Here, Plaintiffs contend that in addition to satisfying the Rule 23(a) requirements, class certification is warranted under Rule 23(b)(2).

***Plaintiffs purport to bring a 23(b)(2) action***. Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases [], can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *Brown v. D.C.*, 928 F.3d 1070, 1083 (D.C. Cir. 2019). In making this showing, the plaintiffs must submit evidence to support class certification under Rules 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977). If the plaintiffs fail to show that all elements of

---

[11] The court's adequacy finding is limited to the specific issue of the potential effects of waiving of statutory damages on behalf of the class. The court is not persuaded by City's argument that Mr. Frank, while an experienced lawyer, is not adequate class counsel because he has admitted to this being his first class action case and, therefore, should not be appointed class counsel, "given the presence of multiple other counsel for Plaintiffs with class action experience." (Doc. No. 168 at 22.) As the court explained at the hearing, notwithstanding the Neil Dymott firm's lack of experience in the class action arena, they have decades of trial experience and would be able to handle a case like this from a trial perspective. The Neil Dymott firm has also advanced the costs of this litigation and have the resources to prosecute this action vigorously. (*See* Doc. Nos. 158-34, 158-37.) Additionally, Disability Rights California is the country's largest disability rights legal organization, and counsel there have extensive class action background and experience. (*See* Doc. No. 158-2 at ¶¶ 18-26; Doc. No. 158-24 at ¶¶ 6-19.)

class certification are satisfied, class certification should be denied.  *Gen. Tel. Co. of the Sw.* 457 U.S. at 161.

Plaintiffs argue that certification of a class under Rule 23(b)(2) does not require that every single class member must have been injured or aggrieved in the same way.  They contend that the City has: (i) continued to permit dockless vehicle usage; (ii) failed to address the problems posed by the scooters as evidenced by the number of complaints filed on the "Get it Done" app; and (iii) not provided Sweep, Inc., with the necessary resources nor adequate authority to address the problem.  Plaintiffs take the position that the injunction they seek will ensure "ADA compliance by prohibiting the City from authorizing or encouraging dockless vehicles to be stored and displayed on sidewalks, requiring effective methods of monitoring dockless vehicles that present barriers to access, and ensuring timely and effective enforcement policies."  (Doc. No. 158-1 at 31.) According to Plaintiffs, this relief will impact all class members the same, and provide them the same freedom to "safely and independently navigate the central areas of the City as people without disabilities enjoy."  City counters that Plaintiffs have simply recited the Rule without actually fulfilling its requirements.  (Doc. No. 168 at 28-30.)  City argues that Plaintiffs have not demonstrated the required irreparable harm for each putative class member i.e., that there is an imminent risk that each putative class member will suffer irreparable harm caused by the City's conduct.

In *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021), the Supreme Court reiterated that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."[12]  Here, the Plaintiffs are pursuing injunctive relief in the form of:

---

[12] In so doing, the Court clarified: "a plaintiff must 'demonstrate standing separately for each form of relief sought.'" *TransUnion,* 141 S. Ct. at 2210 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 185, (2000)).  A plaintiff who has

19cv0054 JM(BGS)

> enjoining the City of San Diego from permitting dockless vehicles to be present in any manner, including parking and storage, on the system of sidewalk crosswalks curb ramps transit stops, pedestrian crossings and other sidewalks in the City of San Diego.

SAC ¶ 112.B.

Further, Plaintiffs maintain that the harm is ongoing. They contend that as the number of dockless vehicles within the city have proliferated, vehicle usage, abandonment and the speed at which they travel has also increased, resulting in the continued denial of Plaintiffs', and putative class members' safe, equal, and full access to the sidewalks and rights-of-way. (*Id*. ¶¶ 1, 2, 12, 13, 14, 15, 20-29.) Thus, the alleged harm is not so tangential to the request that declaratory relief would be inappropriate with respect to the class as a whole. Indeed, Plaintiffs' allegations regarding City's policies which have purportedly resulted in a group of disabled persons' civil rights being violated falls squarely in line with the kinds of cases routinely certified under Rule 23(b)(2). *See, e.g., Cal. for Disability Rights,* 249 F.R.D. at 345-46. (collecting cases).

However, when one weighs the risk of the potentially waived or barred claims against the strategic benefit of the waiver (proceeding solely as a Rule 23(b)(2) class and obtaining injunctive/declaratory relief for the class), the concerns of the court, as expressed at oral argument and in its request for further briefing, are not allayed. Further, the court is left wondering about the necessity of pursuing this as a class action if the named Plaintiffs are seeking only injunctive and declaratory relief. (*See* fn. 1 re: Plaintiff Shirley.) The relief sought remains available to the three named plaintiffs without the need to bind putative class members to a proposed settlement or trial result that may have detrimental effects on any future individual claims that may be brought.

_____

standing to seek injunctive relief, does not necessarily have standing to seek retrospective damages.

## IV. Conclusion

For the foregoing reasons, the court **DENIES WITHOUT PREJUDICE** the renewed motion for class certification. (Doc. No. 158-1.)

Plaintiffs may either file a third motion for class certification or proceed with this action solely with the individually named Plaintiffs pursuing only injunctive and declaratory relief. By ***October 27, 2021***, Plaintiffs must file with the court a Notice of Intent to file a third motion for class certification, if that is that course of action they intend to pursue.

If the renewed motion for class certification is made pursuant to Rule 23(b)(2), notwithstanding class notice is not expressly required under 23(b)(2), any renewed motion must include a plan on (1) how notice will be provided to putative class members, sufficient to notify them of the likelihood that they may be waiving the right to sue under California law if they remain a class member and, (2) how the ability to opt out of the class action will be provided to each class member. Plaintiffs have up to and including ***November 10, 2021,*** to refile their third motion for class certification.

IT IS SO ORDERED.

Dated: October 20, 2021

_____
Hon. Jeffrey T. Miller
United States District Judge

22

19cv0054 JM(BGS)